Raymond Max Snyder
PO Box 69
Aurora, Utah 84620
Phone: 801-641-6844
maxsnyder@yahoo.com

.405 ... DEC 2 2 2025
. 3-1204

_Filed _Received _Entered _Served On
Counsel/Parties of Record

DEC 2 2 2025

Clerk of ... Court
District of Nevada

By:_____ Deputy

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RAYMOND MAX SNYDER

      Plaintiff,

vs.

THE STATE OF NEVADA, for allowing the defendant judges, courts, and private party defendants to violate Plaintiff's Civil Rights.

JUDGE KRISTON N. HILL, Individually and in Her Official Capacity as Justice of The Fourth Judicial District Court, of Elko County, Nevada,

JUDGE ROBERT E. ESTES, Individually and in His Official Capacity as Justice of The Fourth Judicial District Court, of Elko County, Nevada,

JUDGE TAMMY RIGGS, Individually and in Her Official Capacity as Justice of The Second Judicial District Court, of Elko County, Nevada,

FOURTH JUDICIAL DISTRICT COURT, Clerks Office
Elko County, Nevada,

FOURTH JUDICIAL DISTRICT COURT, Elko County, Nevada,

Case No.:  3:25-cv-00751

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 1

1  FOURTH JUDICIAL DISTRICT COURT,
2  Attorney, Megan Smith
   Elko, County Nevada
3
   SECOND JUDICIAL DISTRICT COURT.
4  Washoe County, Nevada,

5  THE NEVADA SUPREME COURT
6  Washoe County, Nevada,

7  THE NEVADA STATE BAR
   Clark County, Nevada
8
   THE UTAH STATE BAR
9  Salt Lake County, Utah,

10
   And collectively,
11
   Shawn B. Meador, Jose Tafoya, Seth
12 Adams, Woodburn & Wedge, Lauara Ann
   Lisk, et al, The WW Defendants.
13
14 And collectively

15 Matthew Howell R. Howell, Fillmore
   Spencer, The Fillmore Spencer Defendants
16
17 And collectively,

18 Debra M. Amens, Amens Law. Ltd., The
   Amens Defendants.
19
   The Nevada Judicial Commission,
20
21 The Nevada State Bar,

22 The Utah State Bar.

23 And

24 John and Jane Does 1 through 10

25        Defendant(s)

26

27        Plaintiff Raymond Max Snyder, pursuant to Rule 8(a), Fed.R.Civ.P.,
28 COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
   THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
   ATTORNEY FEES, AND FOR A NEW TRIAL - 2

complains and alleges a cause of action against Defendant(s) as follows:

## PRELIMINARY STATEMENT

This is a civil rights action in which the Plaintiff, Raymond Max Snyder, seeks relief for the Defendant(s) violation of his rights guaranteed by the United States Constitution, specifically, the Fifth and Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Nevada. Plaintiff seeks damages, both compensatory and punitive; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This is further action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the Plaintiff by the Fifth and Fourteenth Amendments of the Constitution of the United States and arises under the law and statutes of the State of Nevada.

## I.    The Parties to This Complaint

### A. The Plaintiff

Raymond Max Snyder,
Address                        PO Box 69
                               Aurora, Utah 84620
County                         Sevier
Telephone Number               (801) 641-6844
Email Address                  maxsnyder@yahoo.com

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 3

**B. The Defendant(s)**

Judge: Kriston N. Hill
Address                  Forth Judicial District Court
                         571 Idaho Street
                         Elko, Nevada 89801
County                   Elko
Telephone Number         (775) 748-0269

Fourth Judicial District Court, Court Clerk(s),
Address                  Fourth Judicial District Court
                         571 Idaho Street
                         Elko, Nevada 89801
County                   Elko
Telephone Number         (775)  733-4600

Megan Smith, Staff Attorney, Department 1.
Address                  Fourth Judicial District Court
                         571 Idaho Street
                         Elko, Nevada 89801
County                   Elko
Telephone Number         (775)  733-4600

Fourth Judicial District Court
Address                  571 Idaho Street
                         Elko, Nevada 89801
County                   Elko
Telephone Number         (775) 748-0269

Judge Tammy M. Riggs
Address                  Second Judicial District Court
                         75 Court Street
                         Reno, Nevada 89501
County                   Washoe
Telephone Number         (775) 328-3189

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 4

Lauara Ann Lisk
Address     Wendover Ambulance
427 Mesa Street
West Wendover, NV 89883
County     Elko
Telephone Number     (801) 891-7260
Lauara@yahoo.com

Shawn B. Meador
Address     Woodburn & Wedge
6100 Neil Road, Suite 500
PO Box 2311
Reno, Nevada 89505
County     Wausau
Telephone Number     (775) 688-3000

Woodburn & Wedge
Address     6100 Neil Road, Suite 500
PO Box 2311
Reno, Nevada 89505
County     Washoe
Telephone Number     (775) 688-3000

Jose Tafoya
Address     Woodburn & Wedge
6100 Neil Road, Suite 500
PO Box 2311
Reno, Nevada 89505
County     Washoe
Telephone Number     (775) 688-3000

Seth Adams
Address     Woodburn & Wedge
6100 Neil Road, Suite 500
PO Box 2311
Reno, Nevada 89505
County     Washoe
Telephone Number     (775) 688-3000

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 5

Matthew R. Howell
Address                       Fillmore Spencer
                             3301 N.
                             Provo, UT 84604
County                       Utah
Telephone Number             (801) 426-8200

Fillmore Spencer
Address                       Fillmore Spencer
                             3301 N.
                             Provo, UT 84604
County                       Utah
Telephone Number             (801) 426-8200

Debra M. Amens
Address                       Amens Law Ltd.
                             432 S. Broad St.
                             Battle Mountain, NV 89820
Telephone Number             (775)235-2222


Amens Law, Ltd
Address                       Amens Law Ltd.
                             432 S. Broad St.
                             Battle Mountain, NV 89820
Telephone Number             (775)235-2222


The Nevada State Bar
Address                       3100 W Charleston Blvd. Ste 100
                             Las Vegas, NV 89102
County                       Clark
Telephone Number             (702) 382-0504


The Nevada Judicial Commission
Address                       PO Box 18123
                             Reno, NV 89511
County                       Washoe
Telephone Number             (775) 687-4017

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 6

The Utah State Bar, Office of Professional Conduct
Address                      645 South 200 East, Suite 205
                             Salt Lake City, Utah 84111
Telephone Number             (801) 531-9110


The Nevada Supreme Court
Address                      201 S. Carson Street
                             Carson City, NV 89701
Telephone Number:            (775) 684-1600

## II.    Basis of Jurisdiction

This suit is against State official(s) (a 1983 Claim). This is a follow-up to Case

No. 3:24-cv-00267 and the still active appeal to the Ninth Circuit Court of Appeals, Case

No. 24-7088. The WW Defendants in that case simply added more defendants and

another judge and district court they had in their pocket, stole from me hundreds of

thousands of dollars with their fraud and escalated their criminal acts, with the Fourth

Judicial District Court, using Judge Kriston N. Hill's, the Second Judicial District court,

using Judge Tamy Riggs vindictive and intentional violations of NTS 195.012, my due

process and violations of my Constitutional rights to assist the defendants in stealing

millions from me while preventing my access to the courts to protect myself.

The general legal principle that judges are not held criminally responsible for

actions taken in their official capacity suggests that a judge could potentially be

prosecuted for continuing criminal acts. This is supported by the legal doctrine of

judicial immunity, which protects judges from civil liability for actions taken in their

judicial capacity. However, this immunity does not extend to criminal acts that violate

the law, and judges can be held accountable for criminal behavior if that behavior occurs

in the context of their official duties. See *Nevada Judicial Commission v. Michele Fiore*.

Fourth Judicial District Court Judge Hill is counting on this Court to excuse her

ongoing criminal violations of aiding and abetting the theft of millions from me.

This Complaint includes:

A.    Judge Robert E. Estes (Judge Estes), Judge Kriston N. Hill (Judge Hill), the

Fourth Judicial District Court Clerk's Office, Megan Smith (Ms. Smith) Staff

Attorney Department 1, Fourth Judicial District Court attorney, Elko, Nevada,

the Fourth Judicial District Court, Elko Nevada, Aaron Bushur (Mr. Bushur),

Staff Attorney Department 3, Fourth Judicial District Court, Elko, Nevada,

Tammy N. Riggs, (Judge Riggs), Reno, Nevada, the Second Judicial District

Court, Reno Nevada, Lauara Ann Lisk, (Lauara), Shawn B. Meador (Mr.

Meador), Woodburn & Wedge, Jose Tafoya, (Mr. Tafoya) Seth Adams (Mr.

Adams), Matthew Howell (Mr. Howell), Fillmore Spencer, Debra Amens and

Amens Law Ltd., The Nevada Judicial commission, the Nevada State Bar, and

the Utah State Bar, et al for the private parties 1) aiding and abetting and

accessories to the state official(s) and 2) for collusion between the private

parties with the state actors making them "joint participants". The actions of

Attorneys Mr. Howell, for Filmore Spencer, Mr. Meador, Mr. Adams, and Mr.

Tafoya for the firm of Woodburn & Wedge in filing false declarations and

improper pleadings aided and abetted the actions of Defendants Judge Estes

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 8

and Judge Hill in filing fraudulent orders in Case No. DR-MD-17-757,

including Judge Estes's May 29, 2024, ORDER AFTER SUPREME COURT

REMAND and Judge Hill's orders in Case No. DC-CV-23-151 her January 26,

2024, ORDER GRANTING DEFENSE MOTION TO DISMISS CASE *WITH*

PREJUDICE and her improper May 26, 2024, ORDER GRANTING

MOTION TO PLACE PLAINTIFF ON VEXATIOUS LITIGANT LIST, and

Judge Riggs Case CV22-01929, in the Second Judicial District Court, Reno,

Nevada in her August 8, 2025 NOTICE OF ENTRY OF ORDER GRANTING

ATTORNEY'S FEES AND COSTS PURSUANT TO NRS 18.010(2)(b), and

improperly placing me on the State of Nevada Vexatious Litigant List to

prevent my access to the Court to me from further exposing the criminal acts of

the defendants. These individuals and firms aided in the Nevada court's

improper award of damages against me. This action arises under the United

States Constitution and federal law, particularly under the provisions of the

Fifth and Fourteenth Amendments of the Constitution of the United States, and

42 U.S.C. §§ 1983 and 1988.

B.  This action seeks redress for violations of the civil rights laws of the United

States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and

42 U.S.C. § 1983.

C.  The claims made in this Complaint occurred and arose in the State of Nevada,

the District Courts of Nevada, the Nevada State Bar and the Nevada Judicial

Commission, and the State of Utah, the Sixth District Court of Utah, and in the Utah State Bar. Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

D.  Plaintiff is seeking damages under federal law pursuant to the claims for relief specified below, in amounts to be proved at trial.

E.  This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

F.  This Court also has jurisdiction over any pendant State claims Plaintiff may wish to bring, or has brought, pursuant to 28 U.S.C. § 1367.

G.  This Court also has jurisdiction over pendant claims Plaintiff may wish to bring, or has brought, pursuant to FRCP Rule 60(b)(1), (b)(2), (b)(3), (b)(4), (b)(5), and (b)(6).

H.  This Court has jurisdiction over defendants from different locations pursuant to 42 U.S.C. § 1983 and § 1985.

I.  This Court has jurisdiction over Judge Hill's order on May 24, 2024, and Judge Riggs' order designating Plaintiff a vexatious litigant pursuant to 28 U.S. Code § 1291.

## III    Statement of the Claim

1.    I have exhausted all my remedies in the Nevada regulatory entities in the Nevada State courts up through and including the Nevada Supreme Court.

2.    Defendants' continuing fraud, fabrication of evidence, violations of

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 10

Rules 11 and 60, Violations of NRS 195.020, and threats have caused the extended length

and documentation. The length and documentation provided do not cover it all. However,

it will reduce the need for excessive pleadings following this Complaint.

3.     This Complaint is for sums certain, for the value of the loans to

Defendant Lauara Ann Lisk's (Lauara) son, Adam Lisk (Adam); my attorney fees;

replacing my Utah home with a comparable property of my choice following destroying

its value by stealing the water rights and by destroying my reputation in the county by

filing false criminal charges against me, for my costs; treble punitive damages, elder

abuse damages; plus, a new divorce trial to determine all sums.

4.     *The State of Nevada is responsible for the misconduct of its courts
and officers of the courts through the Nevada Commission on
Judicial Discipline. The commission was created by a Constitutional
amendment and is composed of judges, attorneys, and lay persons. It
has the power to discipline or caution judicial officials for failure to
adhere to the Revised Nevada Code of Judicial Conduct.*

A suit against the Nevada Commission on Judicial Discipline is a suit against the State of

Nevada.

I have filed numerous complaints with the Nevada State Bar for the misconduct of

the attorneys mentioned above.  See Exhibit 93. In the beginning, I filed Complaints

against Andrew Wasilewski, Debra Amens, Aaron Bushur, Shawn Meador…

Without informing me, the State Bar dismissed every single complaint I made,

stating, **dismissed – issues heard and dismissed by court."** See Exhibit 93.

The Court and the Nevada State Bar handle disciplinary matters separately. You

must file a complaint against an attorney with the <u>State Bar of Nevada</u> for professional misconduct. **The Court has no authority to hear and dismiss a Complaint**. See Exhibit 93.

The Nevada State Bar did not list the original Complaint against Debra Amens or Aaron Bushur, see Exhibits 100 and 101, confirming that they declined their duty to investigate them. I first learned they had not been investigated in November 2025. See Exhibit 93. The statute of limitations began when the Bar confirmed it had not investigated the original Complaints. The recent Complaint against Debra Amens was made for Ms. Amens' recent fraud committed for the 10/14-16/2025 hearing; the Bar dismissed the Complaint, citing SCR 106. See Exhibit 93. The Bar hid the original complaints. The four-year statute of limitations in SCR 106 does not apply to either of the original Complaints against Ms. Amens or Mr. Bushur. The Complaint shown by the Nevada State Bar against Ms. Amens was dismissed, citing SCR 106, showing only Ms. Amens's violations immediately prior to and during the October 14-16 Hearing.

The State Bar covered up the original Complaints, as they would have the Wasilewski Complaint if Clark County had not prosecuted Mr. Wasilewski. The Bar declined to protect me from the misconduct of the attorneys, officers of the court. The actions of allowing the theft of millions from me by Judges Estes, Hill, and Riggs are more despicable, yet the Nevada Commission on Judicial Discipline allowed and covered it up.

I was forced to file complaints with law enforcement. The only law enforcement branch that would act on a complaint was the Clark County, Nevada, which filed a complaint against my first attorney, Andrew Wasilewski, after the Nevada Bar had declined to investigate it. The County obtained a judgment against Mr. Wasilewski independent of the Nevada State Bar. See Exhibit 94. The Nevada State Bar refused and colluded with Lauara and her attorneys in refusing to obtain justice on my behalf. Following his conviction, Mr. Wasilewski voluntarily reported his crime to the Nevada Supreme Court. Only then did the Nevada State Bar act, taking credit and falsely claiming to have "pursued SCR 111 and gotten a 5-year and 1 day suspension order 10/30/2023", 5 years after I filed a complaint against Mr. Wasilewski. It was actually the Southern Nevada Disciplinary Board hearing panel that did this a year after Mr. Wasielewski turned himself in, and 5 years after I filed a complaint with the State Bar. See Exhibit 94, the Supreme Court Order October 31, 2022, and the Southern Nevada Disciplinary Board's hearing on October 19. 2023. The Nevada State Bar colluded with the Courts and Lauara's attorneys in covering up their violations of my civil rights and allowing the theft of millions from me.

For the professional misconduct of a judicial officer for ethical violations, you can file a separate complaint with the <u>Judicial Discipline Commission</u>.

I have filed four Writs of Mandamus. In the last Writ, the Nevada Supreme Court allowed the misconduct of the attorneys for Woodburn & Wedge by falsifying Rules NRAP 32 and NRAP 25 to avoid ruling against the attorney's fraud.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 13

I had filed numerous complaints against these individuals with the Nevada Judicial Commission. See Exhibit 93. To date, the Commission has declined to protect me from the misconduct of the courts or the officers of the courts. The Nevada Judicial Commission quietly covered up the misconduct of Judge Estes without a single report or finding being provided to me. They seem to be in the process of doing the same with Judge Riggs and Judge Hill. Beginning with Judge Estes, it has failed to discipline the judges acts which include criminal misconduct. A review of Exhibit 14, my Brief for the October 11, 2023, Hearing… and other pleadings confirms that Judge Estes was a part of the fixed divorce in August 2020 and that he colluded with Defendant Lauara Ann Snyder (Lauara) and her attorneys, including Shawn B. Meador (Mr. Meador) to fix the trial.

> *The State of Nevada is responsible for regulating the practice of law in the state and ensuring that attorneys adhere to the Rules of Professional Conduct. The Nevada Supreme Court has the authority to impose sanctions for violations of these rules, including disbarment, suspension, or public reprimand. The State Bar of Nevada, Office of Bar Counsel, is responsible for investigating and processing lawyer discipline cases filed against attorneys practicing in Nevada. If a violation is deemed to have occurred, a formal complaint alleging a violation of the Nevada Rules of Professional Conduct is filed, and the case is reviewed by the Nevada Supreme Court.*

I have filed complaints against these attorneys with law enforcement in Reno Nevada, Elko, Nevada, and Provo, Utah. Not one of these law enforcement agencies have investigated my complaints. Had they done their job and investigated, like the Clark County Attorney's Office, they would have found in my favor and the Nevada State Bar

and Judicial Commission would be taking credit. The Nevada State Bar colluded with the courts, Lauara and her attorneys, including Mr. Meador, in stealing millions from me and refusing to obtain justice on my behalf. The Nevada State Bar has violated my civil rights with every complaint I have filed against attorneys, including Mr. Wasilewski, and with Lauara's attorneys, including Mr. Meador. The State Bar continues its violation of my civil rights. The Bar continues its collusion with Lauara and her attorneys in violating my civil rights and allowing these individuals to steal millions from me.

    5.  This Complaint covers the unpardonable, vindictive, and retaliatory actions of the Defendants listed hereinabove as they relate to and their involvement with the inexcusable actions of Judge Robert E. Estes (Judge Estes) in Case No DR-DM-17-757, including Judge Estes's improper May 29, 2024 ORDER AFTER SUPREME COURT REMAND and Judge Kriston N. Hill (Judge Hill) in Case No. DC-CV-23-151, including Judge Hill's January 26, 2024, ORDER GRANTING DEFENSE MOTION TO DISMISS CASE *WITH* PREJUDICE and her May 26, 2024, ORDER GRANTING MOTION TO PLACE PLAINTIFF ON VEXATIOUS LITIGANT LIST, and including Judge Hill's Order from the 10/14-16/2025 hearing. These actions also include the cover-up by defendants of Judge Estes's lack of jurisdiction and that of Judge Hill, and the Fourth Judicial District Court of Elko, Nevada.

    The events related to this Complaint and covered up are ongoing. This action also includes the fabrication of evidence and the drafting and entry of false affidavits by Defendants that were knowingly allowed by the courts. It took Defendants only minutes

to fabricate evidence and hide documents. It has taken me years and considerable documentation to refute the fabrications.

6.    This Complaint covers the unpardonable actions of Judge Rigg's in her August 4, 2025, NOTICE OF ENTRY OF ORDER GRANTING ATTORNEY FEES AND COSTS PURSUANT TO NRS 18.010(2)(b) Case No. 22CV-09129, colluding with attorneys Matthew Howell, Jose Tafoya, Seth Adams, the firm of Woodburn & Wedge and the firm of Filmore Spencer in finding me vexatious and awarding attorney fees and costs in an effort to prevent me from exposing the criminal actions of these individuals..

7.    All Defendants listed hereinabove as they relate to and their involvement with the inexcusable actions.

8.    Attorney Debra Amens, colluding with attorneys Shawn B. Meador, the firm of Woodburn & Wedge, Fourth Judicial District Court, and Judge Hill in allowing Ms. Amens' billing for non-existent hours, failure to amend a Federal complaint, filing a false affidavit, and violating HIPAA, in Case No. DR-MD-17-757. See Exhibit 95, 10/14/2025 Hearing transcripts page 151:17-152:2. Debra Amens colluded with Lauara and her attorneys to allow them to file discovery that violated HIPAA regulations.

Lauara and her family began their thefts from me when we were married in 2001. Lauara and her attorneys continue the thefts, refusing to turn over all our financial documents, including joint banking statements, the reasons for, and documentation of the large amounts transferred by Lauara from out of the couple's joint accounts to company

accounts that were requested in discovery. Defendants' refusal to provide the requested

documents is ongoing and violates NRS 16.2.

The documentation in these cases is much the same. To prevent furnishing the

surplus of documents provided in the first case, I will use pleadings that cover the issues

in both the trial before Judge Estes and the Independent Rule 60 Complaint for Relief

from Judgment from the divorce decree before Judge Hill.

**Case No. 3:24-cv-00267 Previously Before This Court and Still Active in the Ninth
Circuit Court of Appeals, Case No. 24-7088**

This matter in which Judge Hill was sued in this Court for colluding with the

Defendants is still active in the Ninth Circuit Court of Appeals. Following Judge Estes's

recusing himself and the district court pursuant to NRS 1.230(3) and NCJC 2.11(A) in

Case No. DR-MD-17-757, see Exhibit 54. Judge Hill, who was previously named a

defendant in Case No. 3:24-cv-00267, took over Case No. DR-MD-17-757 following the

Federal Complaint, in violation of NRS 1.230(3) and NCJC 2.11(A). Judge Hill continues

colluding with the same Defendants and with Ms. Amens and her firm, Amens Law Ltd.

The Elko Court and Judge Hill lacked jurisdiction.

**U. S. District Court District of Nevada, Case No. 3:23-cv-00048-ART-CSD.**

I sued Judge Estes in the U. S. District Court District of Nevada, Case No. 3:23-

cv-00048-ART-CSD. The Federal Court entered its Order Granting the Defendant's

Motion to Dismiss without prejudice on November 21, 2023. The Order confirmed that

Judge Estes 1) failed to let a qualified witness testify; 2) issued an order in violation of a

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 17

prior financial restraining order; 3) unfairly awarded money to my ex-wife; 3) made

erroneous findings of fact; 4) knowingly issuing orders containing false statements; 5)

oversaw fraud committed by the opposing party; and 6) refused to recuse himself despite

bias. A review of my BRIEF FOR OCTOBER 11 HEARING, Exhibits 14 and 15,

confirms these as fact. Judge Estes never denied my allegations. The Court found that

Judge Estes was immune from bad faith or malice and, "Judicial immunity is not lost

when a judge conspires with one party to rule against another party, *Ashelman*, 793 F.2d

at 1078." See Exhibit 74, Order Case No 3:23-cv-00048. Judge Estes had remained on

the case for four (4) years following my first complaints and for two (2) years following

the Federal complaint, which found he had committed the above acts. Pursuant to NRS

1.230(3) and NCPC 2.11(A) cited by Judge Estes in his October 4, 2024, Recusal of

himself and the Fourth Judicial District Court. Judge Estes had improperly remained on

the case for two years without jurisdiction. See Exhibit 54. Both he and Judge Hill lacked

jurisdiction and can be held liable for their actions.

**October 14-16, 2025 COA Remand Hearing**

    Exhibit 37.1 is my testimony for and the exhibits for the 10/4-16/2025, COA

remand hearing in Case No. DR-MD-17-757. Exhibit 37.1 was refenced in Exhibit 96,

the 10/152025, hearing transcripts in three places, pages 113:19-114:2, and 119:5 through

124:18. Judge Hill stated she did not believe NRS 50.245 allowed it and that she would

not allow it. Judge Hill's statement disallowing Exhibit 37.1 is referenced but not

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 18

included in the transcripts. I asked for a recording of the transcripts and to be allowed to edit mistakes. The Court declined both.

This Complaint is for sums certain, the value of the loans to Defendant Lauara Ann Lisk's son, Adam Lisk, my attorney fees, replacing my Utah home with a comparable property following destroying its value by stealing water rights and by destroying my reputation in the county by filing false criminal charges against me, my costs, treble punitive damages pursuant to NRS 42.005, elder abuse damages pursuant to NRS 41.1395, plus a new divorce trial to determine the other sums.

I sued the Fourth Judicial District Court and Judge Kriston Hill in 2024, Case No. 3:24-cv-00267. See Exhibit 72, Parts 1-3.

At the **October 14-16, 2025, Hearing,** in Elko, Nevada, Judge Kriston Hill falsely stated she did not know she had been sued. See Exhibit 95, October Hearing Transcripts page 235:15-239:3. Judge Hill had been served. See Exhibit 72 Part 1, Proof of Service Federal Case No 3:24-cv-000267. The first page confirms that Judge Robert Estes filed, Notice of Intent not to File an Answering Brief. Exhibit 58, the cover page of the Complaint and the remainder of the 72 Exhibits, confirms that all the Fourth Judicial Defendants, including Judge Robert E. Estes and Judge Kriston N. Hill, were served. Exhibit 72 Part 2, the Docket confirms that Judge Hill is a Defendant. Exhibit 72.3 confirms that Judge Hill and Judge Estes were served with Plaintiff's Amended Complaint and Jury Demand.

Following my informing Judge Hill at the October 14-16, 2025 Hearing that I could not find an attorney to represent me following suing Judge Estes and her, see Exhibit 95, transcripts day 1, page 135:17-19, and page 230:10-15, Judge Hill improperly and without an order authorizing my Response to the Affidavit of Shawn B. Meador, refused to allow me to file anything except a request for transcripts and an appeal. See Exhibit 83. Judge Hill's action followed my Response to the Affidavit of Shawn B. Meador, exposing the fraud and lies in Mr. Meador's affidavit. This further violated my due process and civil rights, which were confirmed in Exhibit 67.

Knowing it was impossible for me to find an attorney to represent me, three weeks later, on November 7, 2025, Judge Hill entered the Second Order Amending Order Placing Plaintiff On Vexatious Litigant List, preventing me from filing any pleadings with the Court without an attorney. See Exhibit 99. Judge Hill intentionally violated my due process, my civil rights, and colluded with Mr. Meador to allow his fraudulent affidavit, one of several. Pursuant to the Nevada case, *Allison v. U.S. District Courts Clerks Office*, Case 2:2022-cv-01114, July 8, 2022, I cannot be declared vexatious, and my Response to the Affidavit of Shawn B. Meador must be allowed. A review of this Complaint confirms that, with all the defendants' fraud, if I do not prevail, the hearing, like the original trial, was fixed. It should be noted that Judge Hill's first Vexatious litigant designation, like all previous, relied upon Mr. Howell's Utah vexatious litigant designation, which Mr. Howell and attorney Seth Adams agreed at the May 13, 2025, hearing in the Second Judicial District Court in Reno, was improper.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 20

Judge Hill lacked jurisdiction to enter any orders in this case. See Judge Estes's

Recusal, Exhibit 54. Judge Estes confirmed that I had filed three separate civil complaints

against the Court and its individuals and that case N. 3:24-CV-267-MMD-CSD, which

Judge Estes confirms in his Recusal, remains open. It named Judge Hill as a Defendant.

Judge Hill and the Court are in violation of NRS 1.230(3) and NCPC 2.11(A).  As

confirmed above, Judge Hill and Judge Estes lacked jurisdiction.

Judge Kriston Hill's claim that she did not know she was a defendant is false. She

should have recused herself. I cited the *Rippo* case numerous times, which required the

judge to recuse herself. Instead, she stayed on. Judge Hill refused to allow one of my

Exhibits for the 10/14-16/2025 hearing. Judge Hill allowed every Exhibit Defendant's

entered, including those I opposed and confirmed were HIPAA violations, and

documents I had never seen. Lauara's Exhibits for the 1014-16/25 hearing included

numerous documents she had Bates-numbered that were in violation of HIPAA,

documents I had not seen. See Exhibit 95, Oct. 14 Hearing Transcripts, page 152:1-6,

page 191:3-24, pages 202:20-203:16, and pages 204:12-213:12. Also see Exhibit 97.

10/16/2025, hearing transcripts, pages 37:21-38:5. I opposed all of Lauara Exhibits

because they were in violation of HIPAA. The Court colluded with Lauara and allowed

every single one.

On October 16, 2024, I attempted to question Ms. Amens about her allowing

Lauara's discovery that violated  HIPAA, which Ms. Amens never provided me. See

Exhibit 97. Oct. 16, 2025, Hearing Transcripts pages 19:21-21:20. Judge Hill refused to

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 21

allow me to argue that I had never been provided with these, that Ms. Amens had improperly received them without providing me with copies. She said to bring it up on appeal. On page 37:5-10, I confirmed I had never seen some of the documents that violated HIPAA prior to being furnished shortly before the hearing. Ms. Amens colluded with Lauara and her attorneys to allow HIPAA documents that violated the law.

I first became aware of Lauara's HIPAA violations when she produced these exhibits for the 10/14-17/2025 hearing. I became aware of her violations of HIPAA and that my attorney, Debra Amens's (Ms. Amens) violations of HIPAA, allowing the HIPAA documents Lauara had furnished. Ms. Amens colluded with Lauara and entered them without my knowledge. Judge Hill refused to allow me to cite the HIPAA violation verbiage.

**Rippo V. Baker:**

Judge Kristion Hill falsely stated at the 10/14-16/2025 hearing that she had never been served a Complaint against her and had never heard of the *Rippo* case I cited, confirming she should have recused herself. See Exhibit 95, 10/14/2025, transcripts pages 235:15-236:16. I cited it on pages 25-26 of my Exhibit 37.1, my testimony for the hearing pursuant to NRS 50.245. My testimony from pages 25 through 31 referenced below confirms that Judge Hill's statement that she had never heard of the *Rippo* case was false. Judge Hill and the Fourth Judicial District Court were referenced on page 26, confirming that they were in violation of NRS 1.230(3) and NCJR 2.11(A). Judge Hill had seen Judge Estes' recusal and the Writ of Mandamus restated below.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 22

Recusal is required when, objectively speaking, "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Rippo v. Baker*, 580 U.S. 285, 137 S. Ct. 905 (2017); *Withrow v. Larkin*, 421 U. S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); see *Williams v. Pennsylvania,* 579 U. S. 1, 8, 136 S. Ct. 1899, 195 L. Ed. 2d 132, 141 (2016) ("The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias" (internal quotation marks omitted)). All the Nevada Courts, including the Nevada Supreme Court, must now recuse themselves and their personnel from this case.

I have cited numerous times the Nevada Supreme Court Case, *Rippo v. Baker*, which was overturned by the U.S. Supreme Court. The Nevada Supreme Court's action confirms that it, its personnel, this Court, and its personnel should recuse themselves. I cited it again on page 19 of my Petition for **Writ of Mandamus**... Page 19 is cut and pasted below. Both Courts have chosen to violate NRS 1.230(3) and NCJC 2.11(A).

Pursuant to my Exhibit 54 for the October 14-17, 2025, hearing, Judge Estes's October 4, 2024, **Order Recusing the Hon. Robert Estes Pursuant to NRS 1.230(3) and NCJC 2.11(A)** in which the Judge recused both himself and the Court on October 4, 2024, all lack jurisdiction. After that date, the Fourth Judicial District Court and its judges lacked jurisdiction to continue. Judge Hill's actions in this case are in violation of that recusal.

Judge Hill's actions were vindictive and in retaliation for my naming her in the Federal Complaint. The Nevada Supreme Court in *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025, confirms this. Her actions in this case were improper and must be vacated.

**JUDGE ESTES ORIGINAL COMPLAINT**

Judge Estes confirmed in his recusal that there were three complaints by me, and that one was still active. The complaint in the 9th Circuit Court of Appeals. That complaint included Judge Hill, Judge Estes, the Fourth Judicial District Court, and the Court Clerk's Office. The original complaint, only against Judge Estes, was dismissed. Where Judge Estes did not respond, everything in my complaint was assumed true. See Order Exhibit 74.

Judge Hill declined to answer the Federal Complaint against her. Therefore, my Complaint against Judge Hill, the Fourth Judicial District Court, and the Court Clerk's Office is presumed true.

**JUDGE KRISTON HILL'S STATEMENT AT TRIAL SHE DID NOT KNOW SHE HAD BEEN SUED IN FEDERAL COURT.**

Judge Hill stated at the 10/14-16/2025, hearing that she did not know she had been sued by me. I attempted to have Judge Kriston Hill, Judge Robert Estes, the Fourth Judicial District Court, and the Court's Clerk's Office served by the Elko County Sheriff's Office at the Fourth Judicial District Court in Elko, Nevada. They told the Sheriff's Office that the vexatious litigant order they had against me prevented them from

being served and refused to accept the Summons and Complaints. They were each then served via U.S. Priority Mail, signature required. See Exhibit 72 Part 1. The Federal Court's docket confirms they were defendants. The docket for the Federal Complaint, Case No. 3:24-cv-00267 against Judge Hill, Judge Estes, and the Court... 07/09/2024, No. 10, confirms Judge Hill was served on 7/6/2024. See Exhibit 72 Part 2. Exhibit 72 Part 3 confirms that the defendants were provided with all documentation in the case. The last page of Exhibit 72 Part 3 confirms that Judge Robert Estes filed a Notice of Intent not to file an Answering Brief, confirming that all had been served. Judge Hill intentionally declined to respond.

Judge Hill's statement that she did not know about the suit was false. Pursuant to Judge Robert Estes' recusal, Exhibit 54, Judge Hill improperly remained on the case in violation of NRS 1.230(3) and NCJR 2.11(A).

Any Order by Judge Hill must be vacated.

**VEXATIOUS LITIGANT DESIGNATION AGAINST RAYMOND MAX SNYDER, DOCKET CASE NO. DC-CV-23-151, RAYMOND MAX SNYDER V. SHAWN B. MEADOR, LAURA ANN SNYDER ET AL, before judge Kriston Hill, attorneys for defendant Mr. Meador and Ms. Snyder, Seth J Adams, and Jose A. Tafoya**

The docket confirms that on 01/26/2024, the attorney for the defendants, Seth Adams, filed a motion to place me on a vexatious litigant list. The docket confirms that on 05/16/2024, I filed a Notice of Collusion between defendants and the judge, Judge Hill. The docket confirms that on 05/22/2024, I filed a Writ of Mandamus for the

violation of NSCR Rule 2.11 and my due process by the Court. The docket confirms that on 05/24/2024, Judge Hill entered, Order Granting Vexatious Litigant Order against me.

The vexatious litigant order was in retaliation and vindictiveness for my exposing that Judge Hill was colluding with the defendants. The retaliation and vindictive actions I claim are upheld by the Nevada Supreme Court's case of the Nevada Supreme Court in *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025, ruled,

> *To combat the potential vindictiveness in sentencing, the United States Supreme Court in North Carolina v. Pearce, 395 U.S. 711 (1969), overruled in part on other grounds by Alabama v. Smith, 490 U.S. 794, 799 (1989), recognized a rebuttable presumption of such when a more severe sentence is imposed after an original conviction has been set aside and the defendant is again convicted after a retrial. This court has also recognized this presumption of vindictiveness in such cases. See Holbrook u. State, 90 Nev. 95, 98, 518 P.2d 1242, 1244 (1974); Bowser v. State, 135 Nev. 118, 120, 441 P.3d 540, 542 (2019).*

On 11/30/2022, I filed a RICO Complaint, Case No. CV22-0192 against Defendant Lauara Ann Snyder, her Nevada attorneys, Shawn B. Meador, Shay Wells, Bronagh Kelly, their firm, Woodburn &Nevada Wedge, Lauara's Utah attorney, Matthew Howell, and his firm, Fillmore Spencer LLC. Mr. Howell, working with Lauara and her Nevada attorneys, entered the judgment obtained against me from Nevada in Utah. The Order was obtained through their fraud in the divorce action in the Fourth Judicial District Court. Their misconduct and theft in the divorce and their interactions with Lauara's family and her family's businesses and Lauara's son's bankruptcies in North Carolina qualified the Complaint as a RICO action. Following the Recusal of the head judge because of a friendship with Mr. Meador, "**and to avoid any actual or perceived**

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 26

**conflict and/or appearance of impropriety**", the judge disqualified herself. See Exhibit 50, **Recusal of Judge Case No CV22-01929**. Because of the perceived conflict of the Second Judicial District Court, I filed a voluntary dismissal of the Complaint prior to any defendant answering the Complaint. My argument confirms that Judges Estes, Hill, and Riggs should have recused themselves for the same conflict. Instead, they violated NRS 1.230(3) and NCJC 2.11(A) and remained.

Attorneys Seth Adams and Jose Tafoya cited a motion and vexatious determination obtained by Lauara's Utah attorney, Mathew Howell (Mr. Howell), in Utah, to have me declared vexatious in the Nevada Second Judicial District Court. To be allowed to get the vexatious litigant designation against me, at the May 13, 2025, Nevada hearing, all the defendants' attorneys, including Mr. Adams and Mr. Tafoya, agreed that all the previous vexatious litigant designations against me were improper. See Exhibit 37.1, my testimony, pages 15, beginning with **I'm Going to Cite Corroborating Confirmation**... through page 20, which is my testimony for the October 14-17, 2025, hearing on Case No. DR-MD-17-757. Attorney Seth Adams, who drafted the motion to have me declared vexatious in the 4th District Court and included his supporting affidavit, and Jose Tafoya, who was present and, along with Mr. Adams, represented defendants in the Case No. DC-CV-23-151, agreed that the previous vexatious designations, including the one he obtained in the Nevada Fourth Judicial District Court and entered by Judge Hill against me, were improper. I filed a Complaint against Mr. Howell with the Utah State Bar for his part in assisting Lauara's Nevada attorneys in stealing millions from me.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 27

The Utah State Bar agreed but ruled the matter would be better brought in another forum.
See Exhibit 98. I have chosen this forum to include Mr. Howell and his firm, Filmore
Spencer.

When I first brought it up, questioning Lauara at the 10/14-16/2025 hearing in
Elko, Mr. Tafoya was present. No one contested it. See Exhibit 96, 11/15/2025,
transcripts page 35:5-23. To cover it up, Judge Hill sustained an objection, refusing to
allow the question. When I brought it up the second time, on the last day, Mr. Tafoya,
who was at the Reno hearing and participated in the vexatious designations, was not
present. Attorney Mr. Meador objected, stating that I was lying. Knowing I had testified
that I could not hire an attorney, Judge Hill improperly allowed the objection and stated
that she would amend the vexatious litigant order disallowing me from responding to Mr.
Meador's claims without an attorney. See Exhibit 97, Oct. 16, 2024, hearing transcripts
page 70:15-71:24. Mr. Meador's lies were all accepted by Judge Hill.

The Second Judicial District Court ruled, and all the attorneys present, including
Jose Tafoya and Seth Adams from Woodburn & Wedge, and Lauara's Utah attorney,
Matthew Howell, through his Nevada attorney, Adam McMillen, agreed that all the
previous vexatious litigant orders against me, which were all based upon Mr. Howell's
Utah vexatious designation, were improper. See Exhibit 37.1, pages 15 through 20, and
all referenced exhibits.

I had prevailed on appeal prior to the vexatious litigant designations. I stood a
chance of prevailing on everything with another court.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 28

As a result of Judge Hill's improper, vexatious designation against me in the Fourth Judicial District Court, it prevented me from filing pleadings. It violated my constitutional rights and my due process. It was implemented to prevent me from further exposing defendants' fraud and to allow their future fraud and theft.

Following my confirmation that the vexatious designations were improper, Judge Hill stated she would enter another stronger vexatious designation. The Order confirms that if you are just disabled, elderly, a common person, and not a member of the officers of the court in Nevada, you have no due process or civil rights in the Nevada courts. The additional vexatious designation by Judge Hill was unlawful and vindictive in violation of the Nevada Supreme Court in *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025.

Utah Rule, URCP 83, and the decision I cited on page 18 of Exhibit 37.1, my testimony for the hearing, citing the Utah case, *Strand v. Nupetco,* required that to be declared vexatious, a party had to stand no chance of prevailing. I had already prevailed on appeal. I cited the Nevada Federal court case, *Allison v. U.S. District Courts Clerks Office,* Case 2:2022-cv-01114, July 8, 2022, on page 14 of Exhibit 37.1, confirming that to be declared vexatious in Nevada, I had to stand no chance of prevailing. I had prevailed on appeal. Mr. Adams and Mr. Tafoya, who had obtained the vexatious designation in the Fourth District Court, knew it was improper and testified to that in the Second District Court. Defendant's designation violated my civil rights and due process. It improperly prevented me from filing any pleadings to protect myself. If Judge Hill's

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 29

first vexatious Order was improper, her second Amended Vexatious designation intentionally violates my civil rights and due process was made knowing she was intentionally violating my rights.

The Order from the Remand hearing must be vacated. The defendants must be sanctioned, and I must be given a new trial.

**HEARING EXHIBITS ON REMAND**

<u>The Fourth Judicial District Court of Nevada does not specify the exact exhibits allowed on remand from the Nevada Appellate Court.</u>

In the context of a remand from the Nevada Court of Appeals to the District Court, you are generally allowed to use a trial motion with exhibits as an exhibit. I did and entered them with the Court without them being objected to. The judge allowed me to go into a pleading to cite a doctor's report, Exhibit 14, **No. 23** of my **Brief for the October 2023 Hearing,** and the referenced exhibits and its Exhibit 5007 confirming that my back injury was in 1986. Judge Hill disallowed the original doctor's report on my purported injury, which confirmed the injury Lauara was claiming was a back injury during the marriage, for which I missed work and collected workers' compensation, was a lie, and was only a buttocks contusion, that my back injury was twenty years previous and before the defendant, and I were married. See Exhibit 95, 10/14/2025, hearing transcripts page 194:19-195:10. The defendant was claiming I had a back injury during the marriage. She produced her Exhibit B, my settlement agreement (Stipulated Agreement) with the insurer. Lauara and Mr. Meador falsely claimed that the Stipulated Agreement was for

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 30

workers' compensation received for an injury and missed work during the marriage. I

showed that it was a penalty with interest for the insurer's bad faith, not compensation for

missed work. I read directly from the Stipulated Agreement they provided as their Exhibit

B, confirming it was for the insurer's bad faith, not workers' compensation for missed

work. See Exhibit 95 page 194:17 through 200:12. I confirmed that if it had been benefits

for missed work from July 1, 2006, through September 2013, as Lauara and Mr. Meador

insisted, the total would have been closer to $1,000,000. Mr. Meador could not dispute

my statement that he was perpetrating a fraud on the court.                    I

confirmed it, and several other exhibits Lauara had taken from my records prior to

leaving violated HIPAA regulations. Judge Hill refused to allow my HIPAA argument.

See Exhibit 95, 10/14/2025 hearing transcripts, pages 191:11- 213:13.

　　　　Judge Hill refused to allow my payroll records exhibit or my housing receipts

exhibit, confirming I had not missed work. See Exhibit 95, 10/14/2025 hearing transcripts

page 144:8-146:4. Judge Estes had colluded with Lauara and her attorneys in allowing

the fabricated workers' compensation claim for an injury with lost wages during the

marriage. The Nevada Judicial Commission and the Nevada State Bar allowed the

criminal actions of Judge Estes and Mr. Meador. See Exhibits 92.5 and 93. In retaliation

for exposing the criminal acts of Judge Estes and Mr. Meador and his client, Judge Hill

colluded with the defendants and Judge Estes and allowed their fraud in retaliation for me

exposing Judge Estes' criminal acts. See the Nevada Supreme Court in *Stewart v. Nevada*

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 31

*Board of Parole*, Case No. 89355, September 25, 2025. Also see Exhibit 96.10/15/2025

hearing transcripts page 113:15-18, confirming Judge Hill refused to allow the exhibits.

The Nevada Test Site, where I was working at the time of the purported injury in

July 2006, had a staffed medical clinic on site. Judge Hill refused to allow the physicians'

initial injury diagnosis, confirming the injury was a buttocks contusion, and the back

injury happened in 1986, 15 years prior to the marriage. See Exhibit 95, the 10/14/2025

hearing transcripts, pages 222:23-127:19.

Following Judge Hill's refusal to enter the initial report of injury, I continued

questioning Lauara and attempted to enter my Exhibit 60, the physician's report of my

back injury in 1986. Judge Hill refused to accept my Exhibit 60, confirming the 1986

back injury. See Exhibit 95. 10/14/2025 hearing transcripts 227:10-229:14. Judge Hill

disallowed my ligament exhibits but allowed the HIPAA documents from Lauara in

violation of the law, knowing that they were a criminal. Judge Hill's actions were

vindictive and in retaliation for my exposing the criminal acts by Judge Estes and her.

See the Nevada Supreme Court decision in *Stewart v. Nevada Board of Parole*,

At the hearing, I disclosed that my former attorney, Debra Amens, declined to

provide me with the discovery produced by the defendant when I purportedly stopped

paying her. Ms. Amens did not refute this. I also disclosed that Ms. Amens declined to

provide my discovery to the defendant, for which I was sanctioned. The defendants'

exhibits produced to Ms. Amens and not provided to me were all allowed, including

exhibits that had never been provided to me, and that violate HIPAA regulations; my

alleged workers' compensation medical records that I neither authorized nor did they

obtained a court order to use. I testified at the hearing that my attorney, Ms. Amens, had

refused to provide these documents when she claimed that I had stopped paying her and

that she had refused to provide my discovery to the Defendant. See Exhibit 97, Oct 16,

2025, transcripts page 61:8-25. Judge Hill refused to allow my testimony, stating I still

owed Ms. Amens for the work she had done. Page 62:23-25. This was not a hearing it

was a predetermined violation of my civil rights and due process. I asked Ms. Amens if

she was familiar with HIPAA. Judge Hill colluded with Ms. Amens and refused to allow

the question. Judge Hill stated I could bring it up on appeal. See Exhibit 97 Oct 16

transcripts page 20:16-21:2

> *A spouse cannot unilaterally disclose protected health information
> without the spouse's permission or a court order. **HIPAA** regulations
> require that any disclosure of a patient's health information must be
> authorized by the patient or a legally authorized representative. This
> includes any family member, such as a spouse, unless the patient has
> explicitly granted permission or designated a personal representative.*
> *   **HIPAA** governs who can access and share PHI, and divorce does
> not grant a **spouse** or their attorney automatic rights to obtain or
> disseminate this information.*
> *   **PHI** protected health information includes insurer correspondence
> and billing.*

My ex-wife, Lauara, runs an ambulance service and a drug testing company. She

is familiar with HIPAA. Even I, who worked construction, knew it was a violation. Half

of my ex-wife's exhibits for the remand hearing were never provided to me during

discovery, never introduced into evidence at trial, and violated HIPAA.

The Judge allowed a purported appraisal of my property done a month prior to the

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 33

hearing, which I confirmed was fraudulent. The judge's allowance of Defendant's

Exhibits confirmed that nothing was out of bounds for the defendants.

Judge Hill declined to allow a single exhibit for me. See my Exhibit 68, page 2, D,

of Mr. Meador's Supplemental Affidavit, in which he confirms that the Court did not

allow my exhibits because I did not "offer any exhibits." The transcripts confirm that Mr.

Meador and the Court know this is a lie. The Court declined to consider my objections.

Judge Hill allowed every defendant exhibit and sustained every objection Lauara and Mr.

Meador made.

On day two of the hearing, when Judge Hill refused to allow an exhibit and

refused to allow me to show the tracing of my separate money, I stated that she might as

well break my arms and throw me out into the hall. See Exhibit 96, page 23:17-25.

Within minutes, I commented:

> Obviously, uhm, uhm -- maybe I'm the only one in this room that
> can see how much stolen from me.

See Exhibit 96, page 38:20-39:25. It is confirmed below that the statement was

true, but Judge Hill refused to allow it.

Judge Hill's actions were vindictive and in retaliation for my naming her in the

Federal Complaint. The Nevada Supreme Court in *Stewart v. Nevada Board of Parole*,

Case No. 89355, September 25, 2025, confirms this. Judge Hill obstructed justice

pursuant to 197.190 and 18 U.S. Code § 1505.

## IV.    MEMORANDUM OF POINTS AND AUTHORITIES
## STATEMENT OF FACTS

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 34

## LOANS TO THE BUSINESSES.

Without documentation, Lauara claimed that my son, Casey Snyder (Casey), repaid the loans that Lauara and I made to the businesses. At the 10/14/2025 Hearing, see transcripts Exhibit 95, pages 28:10-31:7, Casey testified that he signed no checks repaying the loans and that he would have known if he had. From page 35:1-40:6, I testified that the loans had never been repaid and that there was no accounting documentation confirming they had repaid the loans. Lauara and her attorneys committed extrinsic fraud on the court. The loans were never repaid.

## MISTAKES BY THE COURT OF APPEALS IN AWARDING THE BUSINESSES TO LAUARA.

On page 13 of the Order from the Court of Appeals, it states,

> "Raymond also testified that he did not sign the originating documents for the SBA loan, that he was not aware of signing any personal guarantees for the loans to the businesses, and that he had no personal knowledge of how the SBA used the personal financial statement at issue."

This statement is false. Exhibit 47, the transcripts from day 1 of trial, page 102:25-112:6, confirm that I signed the SBA document placing my property as a guarantee for the SBA loans. This section confirms that I paid cash for my home in 1978 and that I made three improvements to my home during the marriage from materials I had: the gazebo, the grape arbor, and the RV shed. The rest was basically maintenance, a remodel of a bathroom, and painting. I confirmed that Lauara was underwater when we married,

and we had to refinance her home. I had to put my name on the SBA loans because

Lauara's finances did not allow her to continue the loans by herself. The top portion of

the SBA loan document confirmed that I was an owner in the business. See Exhibit 75,

Plaintiff's Trial Exhibit 15, the SBA Loans.

It should be noted that the judge at trial, Judge Estes, was a Nevada Supreme

Court Senior Judge and that Lauara's attorney, Mr. Meador, was a Nevada Supreme

Court Mediation Judge. The appellate court had a conflict and was prejudiced towards its

two judges. See the Nevada Supreme Court case *Stewart v. Nevada Board of Parole*,

Case No. 89355, September 25, 2025.

I sued Judge Estes in Federal Court. Judge Estes declined to respond to the

complaint, resulting in an order accepting all my allegations. See Exhibit 74, Order Case

No. 3:23-cv-00048.

## CASH LOANS TO THE COMMUNITY.

On pages 15 through 16 of its Remand, the Appellate court addresses the

purported cash loans Lauara claimed to have made to the community estate. The Court

stated, "we must reverse and remand for resolution of the issue."

At the 10/14/2025 hearing, Lauara changed her mind and stated the loans were not

loans but something else. The Court accepted Lauara's change in her testimony.

I tried to enter documentation that Lauara fabricated the loans. Her first document

provided to her attorney confirmed the purported loans were less than $100,000.

My Exhibit 37.1, my testimony for the hearing, Page 49, which states,

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 36

*Let's go to my **December 2020 Motion for Summary Judgment**, Exhibits 17-21, Exhibit 17, beginning on page 28, **Ms. Snyder's Fraudulent Cash Loans to Herself.** This addresses the cash loans Lauara claimed to have made to us from Wendover Ambulance's cash. It references Exhibit 6, page 19, which confirms that the purported loans began at under $100,000.*

Exhibit 6 is located in Exhibit 18 Part 2 of the 2020 Motion for Summary Judgment, about ¼ the way down, a Motion for Leave to Supplement and its Exhibit B beginning on page 17, Lauara's email to her attorney Mr. Meador confirms that from time to time she has taken cash from the companies, that it amounts to about $100,000, that Max does not know about it and that he is going to be mad when he finds out. At the 10/15/2025 hearing, Exhibit 96, transcripts page 52.5-57:2. Lauara, prodded by Mr. Meador, testified that the amount was only $100,000. My cross-examination began on page 57:27. Judge Hill declined to allow me to introduce this. See Exhibit 96, 10/15/2025 hearing transcripts page 62:4.

Lauara and her attorney, Mr. Meador, were committing perjury. The purported loans began under $100,000. Within a few weeks, the $100,000 skyrocketed to $240,188. See my Exhibit 19, the 2020 Motion for Summary Judgment... Exhibit 37 (Exhibit 37 begins on page 108 of **Exhibit 19 Motion** for Summary Judgment Part 3, provided with this document). Exhibit 37 begins a little over halfway down. The page numbered 4 on the second copy of the document confirms the document was created on 10/6/2017, which was a few months after Lauara began secretly seeing her attorney, Mr. Meador.

Every document the defendant and her attorney file is fraudulent. When I confirmed their $240,000 plus claim was fraudulent, they simply changed their testimony

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 37

and dropped to a more acceptable $100,000 with no documentation or company accounting confirming any of it existed, and now insisted that they were not loans but that I still owed half.

Following the purported $240,000 in loans to herself, Lauara transcribed notes she thought she might get away with to notes at 10% interest and furnished those during discovery as LS000312-LS000378. See Exhibit 102, Lauara's Fabricated Cash Loans. These loans totaled $154,493. Comparing them to the $240,088 loans Lauara drafted and entered and shown in Exhibit 19's Exhibit 37, SNY000031-SNY000032, plus the email Lauara sent it to Mr. Meador, the note on 10/10/2006 is different, and the $10,000 loan shown on 2/8/2009 is missing. I was not allowed to disclose this at the October 14-16, 2025, Hearing. The purported loans were fraudulent.

Mr. Meador asked me about the purported loans on day 2 of the trial, and I confirmed that I knew nothing about them. See Exhibit 45 Trial transcripts day 2, pages 96:10-97:17.

Lauara and Mr. Meador claimed the cash was loans. The Court of Appeals was still under the impression that the money was loans. See COA Remand pages 15-16.

Lauara, Mr. Meador, and their Registered Agent realized they were in trouble with claiming the loans were cash and only provided a fraction of the fabricated cash loans before stopping. At that time, they decided they would claim they were something else. They changed their fraudulent claims a fourth time to fit a new scenario they believed they might be able to sell.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 38

How many times is Lauara allowed to change her testimony and documentation before her and her attorneys' lack of credibility is questioned?

## IMPROVEMENTS TO THE MARITAL HOME.

On pages 16-17 of its Remand, the court addresses Lauara's claim that we made $260,000 in improvements to my Utah property.

The Appellate Court stated on page 17,

> *While Lauara also provided specific examples of what the parties did to the property, including the addition of irrigation systems, a diversion dam, a steel roof, and an RV barn, she did not provide any evidence of how these changes to the property affected its value, much less how everything encompassed by her $260,000 figure did so... we therefore reverse and remand for further proceedings on the issue. Our decision in this respect is reinforced by Lauara's failure to present any cogent argument on the improvements issue in her answering brief. See Edwards, 122 Nev. At 330 n. 38, at 1288 n. 38.*

At trial, I addressed the improvement to my home. See Exhibit 47, trial transcripts, day 1. Exhibit 47, page 102:25-112:6, confirms that I signed the SBA document placing my property, which I had owned outright since 1978, as a guarantee for the SBA loans. This section confirms that I paid cash for my home in 1978 and that I made three improvements during the marriage from materials I had: the gazebo, the grape arbor, and the RV shed. The rest was basically maintenance, a remodel of a bathroom, and painting.

In my Exhibit 37.1, my testimony for the October 14-17, 2025, hearing, beginning with 6, THE APPELLATE COURT REMANDED LAUARA'S PURPORTED HOME IMPROVEMENTS TO MY HOME, pages 70 and 71, and citing my Exhibits 14 and 15,

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 39

my October 11, 2023, Hearing Brief Nos. 105-110 and my Exhibit 17 for the hearing, my December 2020 Motion for Summary Judgment..., I discuss Lauara's purported home improvements, confirming they were fraudulent. The documents confirm that Lauara's list of home improvements was listed as Exhibit 12 in my hearing exhibits, Exhibit 18, and my December 2020 Motion for Summary Judgment Part 2. You will note that these documents were Lauara's discovery, LS005418-LS005453, followed by 9 pages of documents, copies of cancelled checks with no Bates Numbers, and documents that were not disclosed. This document was not provided until after the trial to prevent me from exposing the fraud, perjury, and subornation of perjury. It confirmed that Lauara's purported improvements originated in her pre-Trial Statement, drafted by Mr. Meador, entered a few days before trial, and never provided to me. The Bates-stamped discover document numbers confirm that Lauara showed less than $173,500 in improvements. Lauara lists on LS005418 before adding the undisclosed checks, confirms the checks were added to bring the amount up to Mr. Meador's fraudulent claim in his Trial Statement, that there was $260,000 in improvements.

The documents furnished for the 10/14-16/2025 hearing, following Lauara's Exhibit Home Improvement Exhibit, which was first provided to me following the divorce trial, begin with LS006485; the HIPAA documents were never furnished to me by Ms. Amens, and were Bates Numbered similarly.

At the remand hearing, Lauara introduced a new appraisal of my property, her Exhibit W, completed on September 17, 2025, a few weeks prior to the hearing. Lauara

basically produced a list of credit card receipts similar to the original home improvement exhibit of her purported improvements to my Utah property, which had not been produced for trial, and could not be confirmed. Lauara forwarded the new documents to an appraiser. See Exhibit W and my Exhibit 76, Lauara's new purported upgrades to my home, and an appraiser's testimony reduced Lauara's original testimony and her $260,000 upgrade exhibit provided following the trial by more than $110,000. The revised exhibit also contained canceled checks that had never been produced.

The new Revised Appraisal confirmed the first was fraud.

The new appraiser had never met Lauara, had not inspected, and had never seen the property and home, had never looked at a site map of the property, had no idea how large the property was, had no idea the property had 1 hot tub not two, had no idea that the purported ½ mile gravel road upgrade would have ran across three properties the size of mine, allowed a backhoe as an improvement… See exhibit 95, 10/14/2025 hearing Transcripts page 93:5-112:12. The appraiser relied totally upon Lauara's new never-produced spreadsheet of unsupported credit card purchases, and the never-produced checks. Lauara insisted they were materials for improvements. I confirmed on examining the appraiser that several of the claims were false, including two hot tubs, a backhoe, a half mile of graveled road, etc.

As the Appellate Court stated.

> *Our decision in this respect is reinforced by Lauara's failure to present any cogent argument on the improvements issue in her answering brief. See Edwards, 122 Nev. At 330 n. 38, at 1288 n. 38.*

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 41

Lauara misled the appraiser, who could only rely upon Lauara's word that the improvements, supported by no receipts and with cancelled checks that were never disclosed, See Exhibit 95, 10/14/2025 Hearing transcripts page 105:6-106:12. I testified that most were improvements Lauara claimed were maintenance, including the concrete sidewalks and patio, which were poured on top of existing concrete. I confirmed that the new concrete went bad, I sued the contractor and won, was reimbursed 100% and put the money back into the joint account. See Exhibit 95, 115:15-116:12. The purported improvements and Lauara's credibility are laughable. Her home improvement claim, drastically reduced to make it less ridiculous, is laughable. They committed extrinsic fraud on the court, for which Lauara and her attorney should be sanctioned.

A notable distinction of this Exhibit allowed by the Court is that it was a month old at the hearing, it was not presented at trial, and it had no basis. **It CLEARLY confirms that the Court, which rejected every exhibit of mine, had no established rule for exhibits entered at the hearing**. Nothing was off limits for Defendants, and nothing I tried to enter was accepted. The Court declined to allow me to argue the home improvements using the December 2020 Motion for Summary Judgment... parts 1-5, my Exhibits for trial 17-21. Judge Hill declined this Exhibit and every single exhibit I tried to enter. See my Exhibit 68, page 2, D, of Mr. Meador's Supplemental Affidavit, in which he confirms that the Court did not allow my exhibits because I did not "offer any

exhibits." The transcripts confirm that Mr. Meador and the Court know this is a lie, in violation of my due process and civil rights.

**The Court's Confirmation on Allowing Me to Use My Pleadings**

On May 30, 2025, Megan Smith, Judge Hill's Department 1, Staff Attorney, sent all parties an email with a Dropbox link confirming the Exhibits she agreed could be used at the 10/14/16 COA hearing. See Exhibit 108. As Ms. Smith states, these were documents to be allowed to be used at the October 11, 2023, hearing. Ms. Smith included my Brief for the October 11, 2023, hearing… and its Exhibits, which I provided as my Exhibits 14 and 15 for the hearing. I cited that document the most. Defendant did not object to Ms. Smith's, the district court's allowing these. I filed the Brief for the October 11, 2023, Hearing and the others with the district court as directed. I attempted to use these exhibits, and the others that Ms. Smith, the court, agreed to accept if she had missed any. Judge Hill allowed all of Lauara's exhibits, including her new, never-before-seen revised Exhibit on improvements to my home and the exhibits that violated HIPAA. Judge Hill refused to allow a single one of mine, including the ones the Court agreed to accept.

Judge Hill intentionally violated my civil rights and my due process and colluded with Lauara and her attorneys to rule against me on every single exhibit I tried to use.

My exhibits were all based on fact and documentation previously provided to the Court for consideration. All should have been allowed. The Court declined to allow one.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 43

The Court's actions of allowing all Defendants and refusing all my exhibits, allowing all Defendants' objections and none of mine, were based on vindictiveness and retaliation for my suing Judge Hill, Judge Estes, the Court, and the Court Clerk's Office. See the Nevada Supreme Court case *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025.

How many times is the Defendant allowed to change her testimony before her and her attorneys' credibility becomes moot?

## **WORKERS' COMPENSATION BENEFITS**

The Appellate Court addressed my workers' compensation/disability benefits on pages 18 through 23. The Appellate Court reversed the Court's finding that Lauara was entitled to half my disability, stating on page 22,

> *Consequently, we conclude that reversal is required with respect to the classification of the subject funds.*

On page 23. The Appellate Court states,

> *However, the traceability of the funds in Raymond's personal bank account that stem from separate property sources may change depending on how the district court classifies the funds that he received as workers' compensation benefits on remand. Consequently, we remand with instructions for the district court to evaluate the underlying nature of Raymond's workers' compensation benefits and, if it determines that a portion of these benefits were separate property, to further consider whether any portion of the funds in Raymond's personal bank account may be traced to a separate property source.*

My Exhibit 37.1, my testimony for the 10/14-16/2025 hearing, states on page 56,

Mr. Meador stated on day 3 of trial, page 141,

> *The Workers Compensation earned during the*
> *marriage replaces lost wages, and, therefore, the part*
> *of the Workers Compensation earned during the marriage*
> *is community property. The part of the Workers*
> *Compensation subsequent to the divorce would be*
> *Mr. Snyder's separate property because it would be*
> *replacing, in effect, wages that would have been earned after the divorce.*
> *The case law is cited in my **trial statement** from both Nevada and other*
> *states.*

See Exhibit 46, Trial Transcripts, day 3.

At trial, I tried to introduce my Exhibit 5, my housing receipts from the Nevada Test Site, which confirmed that I continued renting my room onsite through the period Lauara claimed I was off work and receiving workers' compensation. Judge Hill refused to allow me to enter any exhibits. See Exhibit 95. 10/14/2025 hearing transcripts pages 143-144:21.

At trial, I tried to introduce my payroll records from the Nevada Test Site, which confirmed that I continued working through the period Lauara claimed I was off work and falsely claimed I was receiving workers' compensation for missed wages. See my Exhibit 37.1, my testimony page 59, **No. 25.** of the **Brief for the 2023 Hearing** (Exhibits **14** and **15**) confirms that the Appellate Court's "analytical approach" to workers' compensation, which the Court used, was for lost wages and reduced earning capacity. There were no wages lost. There was reduced earning capacity. I continued working and sustained no losses prior to retirement in 2008. This is confirmed in **No. 30** of my **Brief for the October 2023 Hearing**, with Exhibit 5008-5019, my payroll records from National Security Technologies (NSTec) from July 2006 through December 2007.

See Exhibit 95. Oct. 14, 2025, hearing transcripts pages 143-144:21. I confirmed that I

missed no work for an injury during the marriage, and that the documents that Lauara and

her attorney furnished Ms. Amens, Ms. Amens refused to furnish me. Ms. Amens did

absolutely nothing and billed me in excess of $30,000. Judge Hill refused to allow me to

enter any exhibits. See Exhibit 95. Oct 14 hearing transcripts 149:20-154:7

Judge Hill allowed Lauara's Exhibit B, a Stipulated Settlement Agreement with

the insurer Liberty Mutual, claiming it confirmed I missed work from a back injury

during the marriage, even though I went through the Settlement Agreement language and

confirmed that it was a penalty for the insurer's bad faith and that Nos. 2 and 3 on pages

2-4 confirmed the penalty was for the insurer's bad faith, not for missed work. The

agreement paid me disability payments as a penalty from July 1, 2006, through

September 30, 2008, with interest. It actually covered the period from July 1, 2006,

through the date the Stipulated Agreement was entered, September 24, 2013. I testified

that had it been for missed work for that entire period that with interest it would have

been closer to $1,000,000.  I noted that Lauara and her attorney produced this document

and those that followed, including correspondence with the insurer, which were HIPAA

violations. See Exhibit 95, 10/14/2025 hearing transcripts, pages 191:11- 213:13.

My testimony for the hearing, Exhibit 37.1, page 62, states,

> *My December 2020 Motion for Summary Judgment (Exhibits 17-21)
> provided by the Court to be used at this hearing, Exhibit 19, Part 3's
> Exhibit 36, is my December 2007 Request for Layoff from NSTec at the
> Nevada Test Site and the layoff on December 13, 2007. I continued working
> and requested a layoff in December 2007 in order to retire in 2008. My*

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 46

*payroll records discussed earlier confirm this. The **HOUSING RECEIPTS** Document I provided further confirm this. Exhibit 5008-5019, my payroll records from National Security Technologies (NSTec). Lauara lied about me being off work and receiving $137,942 in workers' compensation for lost wages, and that I deposited reimbursements for medical bills into my separate account.*

The Stipulated Agreement penalty on the insurer required that the insurer's penalty go several years beyond the time I retired and beyond the time I began receiving Social Security and an additional retirement from my time at the Nevada Test Site. The records confirming all this were provided for the hearing. Judge Hill refused to allow them.

I attempted to introduce Exhibit 60, confirmation that the injury to my back was in 1986, 20 years prior to the purported injury to my back in 2006. Judge Hill refused to allow it. See Exhibit 95, Oct 14 Trial transcripts, pages 226:20-231:25. My employer at the Nevada Test Site had a staffed medical clinic. I tried to introduce the physician's examination of me on July 3, 2026, which confirmed the injury was a buttocks contusion and the back injury was 20 years previous, 15 years prior to my marriage to Lauara. See Exhibit 95, 10/14/2025 hearing transcripts, pages 191:11- 213:13.

I tried to enter from my Trial Exhibit 14, Hearing Brief for October 11 Hearing, and its Exhibit No. 5007, confirming it caused muscle cramping at night. Judge Hill refused to allow any portion of the exhibit. See Transcripts 95, 10/15/2025 hearing transcripts, pages 223:11-1279.

The injury is confirmed in Exhibit 37.1, page 58, No. 23.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 47

I testified that my separate account contained nothing but my premarital pension, my Social Security, my disability check, and half of my pension earned during the marriage. See Exhibit 95, the 11/14/2025 hearing transcripts, pages 216:2-218:11. Mr. Meador could not refute my testimony, so he moved on. Defendant provided her Exhibit Q, confirming the accepted my list of deposits of my separate disability check made into the joint account. It should be noted that I mistakenly agreed that the 10/12/2015, $142,237.98 was deposited into my separate account. That is not the case. My testimony, Exhibit 37.1 on page 57, states.

> On day 2 of the trial, Exhibit 45 of this document, page 39:5-16 of the trial transcripts, Mr. Meador was questioning me about the disability check.
> Q. And when you -- your claim was finally accepted, you got a large check.
> A. I did.
> Q. Do you recall the amount of that check?
> A. Not offhand.
> Q. Roughly $140,000?
> A. It could have been.
> Q. And you deposited it in the joint account, didn't you?
> A. For -- just to hold it until I created -- well, no, just to hold it for a month, and then I put it in the other account.
> At the time, my separate account was not set up for direct deposits with the insurer.

My testimony for the hearing, my Exhibit 37.1, page 4, states,

> No. 32 of my **Brief for the October 2023 Hearing** (Exhibits 14 and 15) referenced Exhibits XIX5026-5054, the deposits into my separate Zions Bank account. They confirm that Defendant Lauara and her attorney, Mr. Meador, lied when they stated that my separate account contained comingled funds. My Exhibits from the **Brief for the October 2023 Hearing**, 6124-6134, which were Lauara Trial Exhibit G and Lauara's own discovery, LS006034-006042, were only a partial list of the

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 48

*documentation I just provided. You'll note that the discovery documentation provided by Lauara began 3 months after I opened my separate account. Lauara's discovery, which began 3 months after the account was opened, was designed to make it appear there were commingled funds with an existing account. They were counting on you to believe that and began their discovery with an account that was already established. The funds deposited into my separate account were my Intermountain Ironworkers Pension, half my Cal Ironworkers pension, my Social Security, and my bi-monthly disability payments.*

Going to my discovery, 5020-5054 is an email to my attorney, Aaron Bushur. The bolded portions of pages 5021-5024 are from Mr. Meador's email. They confirm 1) that Mr. Meador is not receiving my discovery from Ms. Amens, 2) that my disability payments are being deposited into a separate account that may have community funds, 3) that in bad faith I have refused to provide copies of the account information, 4) at the bottom of page 2022, my attorney, Mr. Bushur confirmed that Judge Estes had ruled Mr. Heideman could not represent me at a December 2019 hearing and not prior to that, 5) page 5023-5024 confirm that my previous attorney, Ms. Amens, is refusing to produce my discovery or provide it to Mr. Bushur. Ms. Amens did nothing and billed fraudulently. Ms. Amens declined to furnish the discovery to cover her collusion with Lauara and her attorneys. She has never produced them to anyone. It is possible they were never disclosed to her, and she was simply colluding with Lauara at the 10/14-16/2025 hearing to be awarded attorney fees for the work she never did.

Mr. Bushur's email confirmed that Mr. Meador's ongoing claim that I violated two court orders when I hired Mr. Heideman was a lie. My Exhibit 16 for the hearing, the 07/24/2019, Motion for Leave to Commence Joint Representation… and the following:

On 08/13/2019, Mr. Meader filed Opposition to Motion to Commence Joint Representation. On 08/20/2019 and 11/13/2019, a Request for Review was entered in Motion for Leave to Commence Joint Representation. On 12/17/2019, a Hearing on Motion for Leave was held. See Exhibit 89, the Case Docket. These confirm that Mr. Meador's claim that I violated two court orders in hiring Mr. Meador is a lie, made knowing it was a lie, and knowing it violated Rules 11 and 60.

Following Ms. Amens' refusal to quit, she continued billing, and refused to produce mine or disclose Lauara's unlawful discovery. I was forced to retain Mr. Bushur to be present to allow Mr. Heideman to argue his Motion to Commence Joint Representation. See Exhibit 89, Docket entry 12/16/2019, Entry of Aaron Bushur. Mr. Bushur was present at the Hearing on Motion for Leave to Commence Joint Representation.

I testified to the fact that Ms. Amens refused to provide me with the discovery from Lauara, or mine to Lauara. This email confirms that Ms. Amens refused to provide my attorney, Mr. Bushur, with the discovery I had provided her. Ms. Amens did not dispute this. I was blindsided by the documentation provided at the hearing, which was disclosed and violated HIPAA. I specifically told Ms. Amens not to disclose confidential information. I told Mr. Bushur to tell her not to disclose confidential Information. See Exhibit 14, **Hearing Brief for October 11, 2023 Hearing**, and its Exhibit 5021, the referenced email between Mr. Bushur and Mr. Meador, where Mr. Bushur states, "**Max is not in agreement for her to divulge confidential information.**" Ms. Amens accepted

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 50

the HIPAA documents. Ms. Amens knew the HIPAA documents were restricted and colluded with Lauara and Mr. Meador, allowing the documents into the divorce without my knowledge. Ms. Amens then filed a Motion to Withdraw. The email between Mr. Bushur and Mr. Meador confirms that Ms. Amens declined to furnish Mr. Meador, my discovery and refused to furnish it to Mr. Bushur, who had replaced her following Mr. Meador's threats to have her removed for the conflict of interest, going after the loans to Adam Lisk, which his client had sold.

Page 5025 is the joint account I testified to prior to Lauara splitting the account, and the $140,998.20 I testified was wired from the insurer Liberty Mutual. Pages 5026-5029 confirm that I took the $140,998.20 from the joint account, 5030-5054 is the separate account. It is confirmed that every deposit was my separate money and not community property. Ms. Amens declined to produce this. Ms. Amens is responsible for creating the problem.

I have confirmed that all the funds deposited into my separate account are not community property. See my testimony for the hearing, my Exhibit 37.1, page 4, states,

> No. 32 of my **Brief for the October 2023 Hearing** (Exhibits 14 and 15) referenced Exhibits XIX5026-5054, the deposits into my separate Zions Bank account. They confirm that Defendant Lauara and her attorney, Mr. Meador, lied when they stated that my separate account contained comingled funds

As a result of the appellate Court's statement on page 22,

> Consequently, we conclude that reversal is required with respect to the classification of the subject funds.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 51

I am entitled to all deposits into my separate fund and all checks written from it, including the June 3, 2019, $150,000 check to Justin Heideman shown on page 5046 of my separate account confirmed above. I must be awarded the funds deposited into the joint account from my disability, confirmed by Lauara's Exhibit Q.

All the awards to Lauara from my separate account must be overturned. The order for an unequal disbursement of community funds and attorney fees, to Lauara for their false claims of my bad faith, must be vacated for her and her attorney's violations of Rules 11 and 60.

## RAYMOND'S USE OF FUNDS FROM HIS PERSONAL ACCOUNT CONTAINING HIS WORKERS' COMPENSATION AND RETIREMENT BENEFITS TO PAY AN ATTORNEY.

I have confirmed herein above that, 1) the check to Justin Heideman came from my separate account that contained no community funds, 2) that Lauara and her attorneys' claim that there were Order's preventing me from hiring Mr. Heideman were made knowing they were false and made in violation of Rules 11 and 60, 3) that my argument that there were no orders at the time I hired Mr. Heideman preventing from representing me was true, 4) that I confirmed herein above that Mr. Heideman petitioned the Court to be allowed to represent me but was denied, 5) that Mr. Heideman never represented me, 6) that the funds in my personal account were not community property, 7) that $7,000 of the payment to Mr. Heideman was to file a Petition for Joint representation and, 8) that the payment to Mr. Heideman was not marital waste that warranted an unequal distribution of the community estate.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 52

The funds in my separate account were my separate property. Ms. Amens testified

at the hearing that those funds were used to pay her attorney fees.

Pages 64-65 of my Exhibit 37.1 state,

> *No. 14 confirms with Exhibit XIX 6225-6236, Mr. Meador's **Motion for
> Pre-Trial Conference**, confirms on page 7:11-16 of 6231 that I paid Mr.
> Heideman to file one document. On page 11:1-4 (6235), Mr. Meador
> confirms that the amount was $7,000, the request to represent both Casey
> and me, and the rest was for my son, Casey's attorney fees. Casey
> confirmed this was a lie. The $7,000 was for the **Motion for Leave to
> Represent** me confirmed in XIX 5005. That was all there was. Mr.
> Heideman never represented me. He simply petitioned the court to be
> allowed to.*

Lauara and her attorney were provided this information prior to the hearing and

still lied that I paid Mr. Heideman $150,000 to represent me.

The lie by the defendant and her attorney that I used community funds to receive

an unequal distribution of the community property is a violation of Rules 11 and 60. For

their fraud, I am entitled to my attorney fees and an unequal distribution of the

community property in my favor.

Exhibit 14, **Brief for the October 11, 2023, Hearing,** in Exhibit 5022, in an email

chain between Aaron Bushur, my last attorney, and Mr. Meador, Mr. Bushur informed

Mr. Meador,

I regards to the above statement, I believe the Jud e denied that firm from representing Max at the
December 2019 hearing and not prior to. I have b en Max's attorney since that time and the Utah firm has
not represented him since my entry in the case. It ayment was made to that firm(and I am awaiting Max's
documentation of fees) it was again, prior to my en y into this case. As stated above, I will get you that
information. I would also like to receive informatio as to what and how your client provided to you for fees
as well. Should a final round of discovery requests be required by both sides?

5022

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 53

Heideman was not licensed in Nevada. Mr. Bushur was Mr. Heideman's Nevada counterpart, required of attorneys not licensed in Nevada. Mr. Meador was there in opposition to Mr. Heideman's Motion for Leave to Represent. Mr. Meador knew from day one that I hired Mr. Heideman to file a Motion for Joint Representation and that he never violated any court order and never represented me. Lauara's case depends on one lie after another committed by her or her attorney, Mr. Meador. I paid Mr. Heideman $7,000.00 to file the Motion for Joint Representation. When Ms. Amens began threatening me to pay her fees after I had fired her, I asked Mr. Heideman to pay her to prevent her from following through on her complaint to prejudice the Court against me. Ms. Amens testified at the 10/14-16/2025 hearing that Mr. Heideman paid some of my attorney fees to her, which required her to update her billing in September just prior to the hearing. See Exhibit 97 11/16/2025 Hearing transcripts page 8:20-9:4.

## THE 401K ACCOUNTS AND INDIVIDUAL RETIREMENT ACCOUNTS (IRAs)

On page 28 of its Remand, the Appellate Court stated,

> *Consequently, we must reverse the divorce decree insofar as it required the parties' to equally split their 401K and IRA accounts and remand for the district court to consider the parties' in light of its characterization of Raymonds' personal bank account concerning their expenditures of community funds.*

At the hearing, I testified that my personal account contained only my separate funds. See Exhibit 95, the 11/14/2025 hearing transcripts, pages 216:2-218:12. Mr. Meador could not refute this and simply moved on. Judge Hill refused to consider or

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 54

allow me to furnish my documentation confirming this. Judge Hill allowed all of

Lauara's exhibits for the hearing and refused all of mine.

I confirmed herein above in **Worker's Compensation Benefits** and **Raymond's Use Of Funds From His Personal Account Containing His Workers' Compensation And Retirement Benefits To Pay An Attorney**, that no funds in my personal/separate account contained community funds. Defendant and her attorney were provided this information in my Exhibit 37.1. Their continuing claim that it was community property is extrinsic fraud on the court in violation of Rules 11 and 60.

**THE PROMISSORY NOTES....The Loans To Defendant Lauara Lisk's son, Adam Lisk.**

My December 2020 Motion for Summary Judgment Parts 1-5, Exhibits 17 through 21, confirmed the loans to Adam Lisk had been repaid. My Exhibits 14 and 15,

**HEARING BRIEF FOR THE OCTOBER 11, 2023 HEARING, AND SUPPORTING ARGUMENT FOR RULE 60(b)(1) THROUGH 60(b)(6), RULE 60(d)(3), NRS 199.210, NSCR 2.11, AND THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT..., FOR VACATING THE DIVORCE DECREE**

referencing my **December 2020 Motion for Summary Judgment** (Exhibits 17-21) and newly discovered evidence that the Notes to Adam Lisk had been repaid. The documents confirmed that Lauara and Adam had secretly sold their debt in Adam's Bankruptcy, provided as Exhibit 9's Exhibits 7 and K for that pleading. I would prevail in a RICO against Lauara, her family, her attorneys, and the courts' actions.

My Exhibit 9...

**CONSOLIDATED MOTION FOR NEW TRIAL**
**AND**
**OPPOSITION TO DEFENDANT'S MOTION TO AMEND THE COURT'S ORDER**
**AFTER SUPREME COURT REMAND ENTERED ON MAY 29, 2024,**
**AND**
**REIMBURSEMENT OF LOANS TO ADAM LISK**

and its Exhibit K confirmed that Lauara and Adam had sold the loans. Exhibit 9's Exhibit 7 confirmed that Lauara and her son, Ryan Lisk, provided false testimony at their depositions in North Carolina, falsely claiming the loans had not been repaid.

Exhibit 9's Exhibit 7, confirmed in my North Carolina Deposition in February 2020, I had discovered that Lauara had been repaid the loans, and that the loans were now her debt to me. See Exhibit 9's Exhibit 7.

On June 21, 2023, Lauara filed, **Opposition to Nevada Justice. Ct. R. CIV. Rule 11 Motion for Sanctions Against Attorney Shawn B. Meador**…, (See Exhibit 26 and Exhibit 11's Exhibit B), which was included in my exhibits for the October 14-16, 2025, hearing. It was drafted by Mr. Meador and included Exhibit 1, the **Affidavit of Adam Lisk**, drafted by Mr. Meador, in which Adam Lisk falsely claimed the loans had not been repaid.

On October 13, one day before the October 14-16, 2025, hearing, Mr. Meador filed Affidavit of Shawn B. Meador, his Wilfong affidavit. See Exhibit 68. In response, on the same day I filed, Objection To Defendant's Attorney, Shawn B. Meador's Wilfong Affidavit, Entered October 13, 2025, and Plaintiff Raymond Max Snyder's Declaration Supporting His Request For All Costs, The Value Of The Loans To Defendant's Son,

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 56

Adam Lisk, Sold By Defendant, Plus Treble Damages Pursuant To NRS 42.005. See Exhibit 69.

Mr. Meador's Affidavit Pre-Hearing Statement, stated on page 17,

I.          ADAM LISK'S PROMISSORY NOTES

"The COA Order affirms this Court's ruling regarding the promissory notes. However, the COA Order noted that if Max had newly discovered admissible evidence, he would have the legal right to seek to modify or amend."

The Fourth Judicial District Court found that the notes had not been repaid. It claimed that they were undoubtedly uncollectible. So, the district court awarded them to me.

I stated that this was just one of Mr. Meador's and his client's lies. I went on to confirm the notes to Adam Lisk had been repaid/sold by Adam and his mother, Lauara, and then, to further hide them, they had the records sealed by the bankruptcy court. See my Exhibit 77, my Opposition to the Affidavit of Shawn B. Meador, and my Request for Review and to Set for Decision.

Mr. Meador requested the Court review his affidavit filed the afternoon prior to the hearing, filed too late for me to fully respond to. The Court agreed.

I then requested that the Court also review my Opposition and Request to Submit. The Court agreed. See Exhibit 95, 11/14/2025 hearing transcripts page 239:18-241:11 and Exhibit 96, 10/15/2025 hearing transcripts page 117:4-118. The Court agreed.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 57

My Complaint against Judge Hill and the Fourth Judicial District Court, its Clerk's Office, and Judge Estes contained the same Exhibit K. It was provided in my testimony for the October 14-16,2025, hearing. See Exhibit 73, Federal Case No. 3:24-cv-00267, the Exhibit logs, Exhibit E2's Exhibit K. Exhibit K confirms that Lauara secretly sold the notes to Adam Lisk, which she had secretly allowed Adam to put into his bankruptcy. It confirms that the same Exhibit was included in the Fourth Judicial District Court Case No. DC-CV-23-15 before Judge Hill. Judge Hill had seen this document in both the Fourth Judicial District case before her and the Federal Case against her. The Exhibit confirms that Lauara and her sons sold their creditor debt in her son, Adam Lisk's bankruptcy, which was the $650,000 in loans to Adam Lisk from Lauara and me. See Exhibit 37.1, my testimony for the October 14-16 hearing before Judge Hill, and Exhibit 11, my November 7, 2023, Amended NRCP Rule 60 and NRCP Rule 59(b)(2) Motion for New Trial confirming the newly discovered evidence on page 5.

Judge Hill was made aware of the fraud by Lauara and her attorney in both the case in the Fourth Judicial District Court and the Federal Court. By declining to answer the Federal Complaint, all the facts asserted by me are assumed true. Judge Hill colluded with Lauara and her attorneys against me. See Exhibit 74, the Judge Estes Order, page 4:15-20.

Lauara and Mr. Meador's false statements, false affidavits, perjury, subornation of perjury, and violations of Rules 11 and 60 amount to fraud on the court, which subjects them to actual damages and special, treble damages pursuant to NRS 42.005.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 58

Lauara and Mr. Meador confirm in their Pre-Hearing statement that regarding the loans to Adam Lisk, the *"COA Order noted that if Max had newly discovered admissible evidence, he would have the legal right to seek to modify or amend."* My **December 2020, Motion for Summary Judgment**; my **Brief for the October 11, 2023 Hearing**; my Complaint against **Judge Hill and Judge Estes**; my original **Complaint Against Judge Estes**; my **Objection to the Affidavit of Shawn B. Meador**; and my testimony at the **October 14-17, 2025 Hearing**, and more qualify to having the Divorce Decree amended to order Lauara and Mr. Meador be ordered to pay me the damages I seek with regards to the loans.

I did not request the district court to award me loans to Adam. Knowing Lauara had been repaid the loans, I pushed my attorney, Mr. Bushur, not to have them awarded to me. However, Lauara and Mr. Meador insisted at trial that they be awarded to me at the value I set, and the court awarded the loans to me at their request

Beginning on page 20 of my Exhibit 37.1, my testimony for the October 14-17 hearing, I confirmed that the Nevada Supreme Court ruled on my Writ of Mandamus. Beginning on page 20 and running through page 27 of my Exhibit 37.1, my testimony for the October 14-16, 2025, hearing, from **This Court Agrees to Provide Me with Documents**, through page 27, I confirm that the Nevada Supreme Court colluded and covered up the criminal act of the defendants, Lauara, and Mr. Meador by violating Rules NRAP 32 and NRAP 25. The Nevada Supreme Court's actions were deliberate and to cover up the fraud and biased actions of the Fourth Judicial District Court and its Judges,

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 59

Judge Robert Estes and Judge Kristin Hill outlined in my **Plaintiff's Argument Allowed by Nevada Supreme Court… Rule 60 Motion to be Relieved of Judgment… Dec. 2022, (Plaintiff's Argument)** provided herewith as Exhibit 36.

The Divorce Decree must be vacated. For their fraud, Lauara and her attorneys must be ordered to reimburse me for the loans to Adam Lisk, confirmed by an up-to-date amortization schedule, plus treble damages pursuant to NRS 42.005.

## THE AFFIDAVIT OF SHAWN B. MEADOR, OCTOBER 13, 2025, FOR THE OCTOBER 14-16, 2025, HEARING, EXHIBIT 68.

Meador's affidavit confirmed that he and my second attorney, Ms. Amens, were colluding and that he claimed to be keeping her up to speed. Mr. Meador knew the HIPAA documents he was being provided by Ms. Amens during discovery were prohibited. Ms. Amens, Mr. Bushur, Lauara, and Lauara's attorneys knew that the home improvement exhibit Lauara produced at trial, which Ms. Amens refused to provide prior to trial, contained copies of checks that were never disclosed. Mr. Meador should have confirmed that following the trial. He did not because he was a part of the fix.

On October 22, 2025, I filed a Response to the Affidavit of Shawn B. Meador. See Exhibit 78. On October 22, 2025, the Court received the Response. See Exhibit 83, page 1. On October 22, 2025, the Court rejected the Response, stating, "*Hello, Judge Hill has advised in open court that you are only allowed to submit a Notice of Appeal or a Request for Transcripts; therefore, this pleading has been denied. Thank you*". See Exhibit 83. Page 2. On October 22, 2025, the Court filed. *The Notice below is*

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 60

*RESCINDED: The filing was not filed.* There was no Order in place. Judge Hill violated my due process, my civil rights, colluded with the defendant and her attorneys in allowing their thefts of millions from me, allowing their fraud, allowing their false affidavits, allowing their violations of NRPC 8.3, and violations of NRS 195.020. Judge Hill's actions were in retaliation for my filing a Federal Complaint against her and complaints against her with the Nevada Judicial Commission. See, the Nevada Supreme Court in *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025. Judge Hill's actions in this case were improper and must be vacated.

Judge Hill's rejection of my Response to Mr. Meador's affidavit was intended to quash my exposure of Mr. Meador's lies in his Affidavit.

On pages 1-3 of his Affidavit, Mr. Meador bragged about how smart he was and how qualified his assistants, Bronagh Kelly and Jose Tafoya, were.

Mr. Meador claimed on page 4 of his affidavit, "The incredible fees and costs of this litigation were greatly and unreasonably increased by a) Max's dishonesty, false claims, and perjury.

At the October 14-16 hearing, in addition to exposing Mr. Meador's lies, I testified that Lauara and Mr. Meador had entered 135 pre-trial pleadings to my 26. Mr. Meador denied the claim, calling me a liar. Mr. Meador committed perjury. See Exhibit 97, the 10/16/2025 hearing transcripts, pages 59:14-60:3. Exhibit 79, the pre-trial pleadings, confirm that I was correct, that Mr. Meador was the vexatious litigant who committed perjury, increasing the costs of the litigation to line his pockets. The document was

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 61

produced in my Exhibit 14, Brief for October 11, 2023, hearing… from exhibits 5454-5467. Mr. Meador cannot tell the truth.

    With Mr. Tafoya, seated alongside him, Mr. Meador claimed on page 4 of his affidavit that "Max's abusive litigation is well documented by at least four vexatious designations across Utah and Nevada, including this Court." At the hearing, I disclosed that at the May 13, 2025, hearing in Reno, Nevada's Second Judicial District Court that Lauara's attorneys, including Mr. Tafoya, and Judge Riggs had acknowledged that those vexatious designations were improper. See Exhibit 37.1, my testimony, pages 15, beginning with **I'm Going to Cite Corroborating Confirmation**… through page 20, which is my testimony for the October 14-17, 2025, hearing on Case No. DR-MD-17-757. Attorney Seth Adams, who drafted the motion to have me declared vexatious in the 4th District Court, included his supporting affidavit for the vexatious designation. Mr. Tafoya, who was present, along with Mr. Adams, represented Lauara and their firm, Woodburn & Wedge, in the Case No. DC-CV-23-151. Both agreed that the previous vexatious designations against me were improper. Attorneys Seth Adams and Jose Tafoya joined the motion to have me declared vexatious in the Nevada Second Judicial District Court. To be allowed to get the vexatious litigant designation against me, at the May 13, 2025, hearing in Reno, Nevada, all the defendants and attorneys, including Mr. Adams and Mr. Tafoya, agreed that all the previous vexatious litigant designations against me were improper. See Exhibit 37.1, my testimony, pages 15, beginning with I'm Going to Cite Corroborating Confirmation… through page 20.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 62

Mr. Meador's claims on page 10 of his affidavit that Ms. Amens' expert witness was not an expert and her discovery was improper were the first time I heard this. Ms. Amens should have objected. She should have filed a complaint pursuant to NRPC 8.3. She did neither. She was a part of the fix.

Mr. Meador's claim that I screamed at Ms. Amens on page 11 is false. My Exhibit 61, the email chain with Ms. Amens, confirms I was pleasant with Ms. Amens, who was making threats against me.

Mr. Meador's claim on page 11 that he had to bring Ms. Amens and Mr. Bushur up to speed is false. He had them in his pocket. He used the discovery Ms. Amens had purportedly been furnished and refused to divulge even to Mr. Bushur. Ms. Amens never denied she had received the documents. She was a part of the collusion against me. Mr. Meador's claim that these lawyers had conflicts of interest when the notes to Adam Lisk had been repaid is false. Ms. Amens and Mr. Bushur should have reported Mr. Meador under NRPC 8.3 for forcing her to quit with fraudulent claims. The fact that she did not, the fact that she declined to amend her Federal Complaint against Adam Lisk when she discovered that the loans were $650,000, and the fact that she declined to replace Adam Lisk with Lauara as the defendant in the Federal case when I discovered that Lauara had been repaid the loans, further confirms her collusion.

Following several requests, on November 29, 2025, I was provided the minutes of the 12/17/2019 Hearing Motions. This is newly discovered evidence. At the December 17, 2019, status hearing, Mr. Meador stated that Mr. Bushur had a conflict of interest

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 63

"due to Mr. Bushur representing the parties in a lawsuit to collect promissory notes made payable to both parties." See Exhibit 91, Hearing on Motions, page 2. This is the same conflict of interest that Mr. Meador had gotten my first attorney, Mr. Wasilewski, dismissed for, and my second attorney, Ms. Amens, was forced to withdraw following his motion and continuing pressure to have her dismissed for the same false conflict. Like Mr. Bushur, Ms. Amens represented me alone, going after the notes that did not exist.

By this time, I had exposed that Lauara had been reimbursed for the loans, and there was no conflict of interest. See my North Carolina Deposition Exhibit 9's Exhibit 7 and Exhibit K. There was no conflict. Mr. Meador knew from the beginning that there was no conflict. The Court ordered Mr. Meador to prepare a brief in support of his argument for Mr. Bushur to be disqualified as counsel due to his purported conflict of going after the loans to his client's son for both Lauara and me. Mr. Meador had gotten away with the same lie for years. At this point, he could no longer get away with his fraud. In November 2025, I discovered that Mr. Bushur, now the Court attorney for the Fourth Judicial District Court, Elko, Nevada, No. 1, was sanctioned on May 31, 2024, Case No. SBN 23-00898 and fined by the State bar for declining to draft an order he was ordered to draft, in violation of RPC 3-4(c) (Fairness to Opposing Party and Counsel), and RPC 8.4(d) (Misconduct). The Bar must sanction attorney Shawn B. Meador the same. Mr. Bushur declined to provide my Exhibit 40, Audio Tape A, confirming that Lauara had always informed me that I was a co-owner of the Nevada Businesses and the Wendover Home. See Exhibit 40, both the transcripts and the audio tape. The Complaint

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 64

against Bushur confirmed this on page 4, no. 4, and page 17, the 1/2/2020 email to Mr. Bushur.

Both Ms. Amens and Mr. Bushur knew the loans had been repaid. Both knew that had they amended the complaint and added Lauara as the defendant in place of Adam, there could not possibly have been a conflict, and the divorce would have been decided at that point. Both colluded with Lauara and her attorneys, allowing the divorce to continue based on fraud. At this point, Mr. Meador knew he had gotten away with his lie for as long as possible. To protect himself and Lauara, he ignored the Court's Order and declined to file a brief to have Mr. Bushur removed. See Exhibit 89, Docket Case No. DR-MD-17-757. When Mr. Meador refused to provide the motion as ordered, he violated NRS 35.240.

**Penalty for refusal to obey order of court.**
Any person who, without good reason, refuses to obey an order of the court, as provided in this chapter, shall be deemed guilty of a contempt of court, and shall be fined in any sum not exceeding $5,000, and imprisoned in the county jail until the person complies with the order, and shall be further liable for the damages resulting to any other person on account of the person's refusal to obey such order.

Mr. Meador must be charged. Mr. Meador and his client's actions have drug this divorce on for seven years, costing me millions. Though Mr. Meador is a Nevada Supreme Court Mediation Judge who aspires to finish his career as a full-time Nevada Supreme Court Judge, his fraud is not acceptable. He must be sanctioned and ordered to pay me the value I set for the loans. I must be awarded all attorney fees, all my damages, my costs, an unequal distribution of the community estate, treble punitive damages

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 65

pursuant to NRS 42.005, and elder abuse damages pursuant to NRS 41.1395. I must be given a new trial.

In his affidavit, Mr. Meador acknowledged that the criminal claims purported to have been made by me, including the poisoning, were never addressed by the court. My response to his affidavit, which was disallowed by Judge Hill, confirmed the poisoning was factual and that Mr. Meador divulged the product used to poison me. See Exhibit 78, No. 14. The Fourth Judicial District aided and abetted the poisoning in violation of NRS 195.020.

**ATTEMPTED MURDER**

I confirmed in my Exhibit 80, my October 27, 2023, NRCP Rule 60(b)(2) and NRCP Rule 59(b)(2) Motion for New Trial for Newley Discovered Evidence and Motion for a New Trial Based Upon Judge Robert Estes's Violation of Nevada Code of Judicial Conduct 2.11(A)(1) Through (A)(6), that Lauara poisoned me several times. I confirmed that the poisonings had damaged my heart. See Exhibit 80 and its Exhibits 7, 11, and 25. The Motion was submitted for review and decision and never ruled on. See Exhibit 81. The district court refused to review or enter an order on one of my important pleadings that exposed their fraud. Their actions violated several of the Nevada Rules of Professional Conduct, including NRPC 8.3.

By the Court and Judge Hill refusing to allow my Response to Mr. Meador's affidavit, she covered up the poisoning and the millions stolen from me. This is confirmed by my objection to Mr. Meador's affidavit and my trial Exhibit 11, referenced

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 66

in my Objection. Following agreeing to review and rule on that document, Judge Hill knew she had made a mistake in her continuing refusal to accept my supported facts in the case and altered the vexatious litigant designation against me, refusing to allow me to respond or object to Lauara's or Mr. Meadors' pleadings.

**Adam Lisk's Threat To Shoot Me.**

Emboldened by Lauara's attorneys' influence over the district court and its judge, and believing he and they were immune from any violation of the law, including threatening to kill me, Mr. Lisk sent me an email taunting me, threatening to shoot me, and insinuating that Lauara and her attorneys would have me jailed. See Exhibit 106.

Lauara, Mr. Meador, and Lauara's family are so confident the district court will allow anything they do, they feel free to taunt and threaten my life.

I confirmed in my Exhibit 80 provided herewith, my October 27, 2023, NRCP Rule 60(b)(2) and NRCP Rule 59(b)(2) Motion for New Trial for Newley Discovered Evidence and Motion for a New Trial Based upon Judge Robert Estes's Violation of Nevada Code of Judicial Conduct 2.11(A)(1) Through (A)(6)'s Exhibit 38-U that Lauara had filed a false second degree auto theft charge against me with her friends at the Sevier County Sheriff's Office. The Sheriff's Office refused to investigate my poisoning and was forced to dismiss the auto theft charge with prejudice when I refused to plead to something else. See Exhibit 82, the dismissal of Lauara's and Mr. Meador's fabricated criminal act with prejudice. Their fabricated charge and my arrest made the local newspaper and destroyed my reputation in the community.

Mr. Meador's claim on page 13 of his affidavit that I could not prove Lauara stole my documents is false. HIPAA documents Lauara provided for the hearing were the first time those had been used, and I had seen them. They violated HIPAA and were produced by Lauara, who took them from my records without my permission. Lauara manages an ambulance service and a drug collection business. She is aware of the HIPAA regulations and her violation of using those documents.

On page 13 of his affidavit, Mr. Meador confirms he assisted Lauara's North Carolina attorney, who claimed the loans to Adam still existed and obtained a judgment against me based upon that false claim. Mr. Meador's affidavit is nothing but lies. His claiming the notes to Adam had never been repaid is fraud on the court, and allowed by the court, knowing that it was fraud and knowing that it cost me millions.

On page 14 of his affidavit, Mr. Meador confirms the Motion for Leave to Commence Joint Representation. This again confirms that he lied, stating that there were two orders against my hiring Mr. Heideman.

Mr. Meador declines to mention the Federal Complaint I filed in district court against Judge Estes, where Judge Estes declined to answer, and the court found my claims were true but dismissed the complaint for financial damages against the judge. See Exhibit 74.

On page 15 of his affidavit, Mr. Meador claims the couple owned minimal personal property when, in fact, the property was commercial property that Lauara had found a buyer for. Mr. Meador filed a motion to have the property quitclaimed to Lauara

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 68

by the court, and Lauara sold it for $125,000. Mr. Meador is a liar and a thief. He intentionally violated the rule of professional procedure, Rule 8.3. The jointly owned small business that Mr. Meador claimed was worth nothing, Professional Services, I confirmed in my Response to his affidavit, was the most important Nevada business. It allowed the ambulance service to remain in business. See my Response and my Affidavit to Meador's affidavit. I confirmed in my Exhibit 80 provided herewith, my October 27, 2023, NRCP Rule 60(b)(2) and NRCP Rule 59(b)(2) Motion for New Trial for Newley Discovered Evidence and Motion for a New Trial Based upon Judge Robert Estes's Violation of Nevada Code of Judicial Conduct 2.11(A)(1) Through (A)(6) in its Exhibit 33's Exhibit 2 that Lauara violated the court order, changed the name of the company, retained the customers and continued in business.

Judge Hill disallowed me to file documents, violating my due process, knowing that the decision in the Federal District Court of Nevada case of *Allison v. U.S. District Court's Clerks Office,* Case 2:2022-cv-01114, July 8, 2022, and Lauara's attorneys' confirmation that all the vexatious designations against me were improper. I filed a complaint in Federal Court against Judge Hill, claiming she colluded with the defendant and her attorneys. Judge Hill's refusal to allow me to file further confirmed her collusion with the opposing parties and the cover-up of her collusion.

Mr. Meador's claim on page 16 of his affidavit that I refused to cooperate with Lauara in amending the taxes was disproven at the hearing, see 10/14/2025 transcripts pages 75:21-79:25. I confirmed that the loans that began at $100,000 went to $240,000.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 69

Neither Lauara nor Mr. Meador disagreed. I confirmed, citing my Exhibit 59, that I had gone to the IRS when they refused to allow me to help in amending the returns, and the IRS determined they had never taken place and returned all Lauara's funds, which I returned to her several times. I confirmed that Lauara still filed a fraudulent affidavit claiming she had paid the IRS $28,000 and expected the Court to award her $14,000. My Exhibit 59 confirmed that the IRS returned the funds that Lauara had sent them several times. I had the last set of checks and produced them at the hearing. Lauara acknowledged she had no accounting for the purported loans but that she had drafted notes for them. They agreed to provide the notes, which had never been produced, but declined. The notes never existed

and were never produced. If they are provided in the future, they, like the other documents provided by Lauara, will be fabricated to cover her crimes. Mr. Meador entered hearsay evidence without documentation and offered to provide it if the Court wanted. The Court did not. Mr. Meador objected to my testimony, and without producing any documentation of the loans, Judge Hill declined to allow my Exhibit 59 and sustained Mr. Meador's objection as she did with every one he made. It was disproven in my Exhibit 37.1, my Brief for the October 11, 2023, Hearing… page 51, No. 4, and pages 73-74

Exhibit 95, 10/14/2025, hearing transcripts page 54:14-56:25: Lauara and her attorney claim something entirely different, that the amount of cash Lauara brought home was $78,000, and it was to pay the attorney for Mountain West, which was being sued by

U.S. Welding. Lauara admitted there was no QuickBooks accounting for the loans, but that she had the account and could produce it. It has never been produced. She has refused to produce it. Mr. Meador stated that this is the money for the U.S. Welding lawsuit that necessitated the amended tax returns. That was the first time that claim was made. The amended tax returns Lauara filed were for the years 2013-2016. The four different cash loans Lauara produced show the loans began in 2004 and ran through 2016. She confirmed the fabricated loans in her emails to Mr. Meador and the partial loan documents she drafted from 2004-2009. See Exhibit 102 LS000312-LS000378, Lauara's Fabricated Cash Loans totaling $154,493. Lauara and her attorneys have so convoluted this case with their changing testimony and changing dates that they must be sanctioned. Every statement they made must be disallowed. To date, I am the only litigant who has been consistent and told the truth.

Exhibit 31.7 page 56 references the Brief for the October 11, 2023, Hearing… my Exhibit 14 for this case. The document confirms the $240,000 loans at Nos. 61-103 and the referenced Exhibits within the document confirming Lauara's lies. See Exhibit 14, pages 18-24, Nos 63-103.

This is Lauara's fifth explanation for the cash she claims to have brought home/loaned herself. Judge Hill allowed it, ruled against me, and refused to consider my testimony or my Exhibit 59, confirming the checks were returned, the checks I brought with me.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 71

The trial transcripts, Exhibit 45, day 2, pages 109:1-113:9, confirm that the first time I was made aware of Lauara embezzling money from the business was after the divorce had begun, and at that time, she began trying to get me to sign an amended personal return to cover up the embezzlement for the 2013 taxes.

On page 17, Mr. Meador acknowledged that the appellate court asked him to focus on jurisdiction. That's because I was a resident of Nevada while working at the Nevada Test Site. Upon retiring, I spent months in Wendover, Nevada, with Lauara, remodeling the businesses. Lauara and Mr. Meador's claim that I was not a resident was false. Also see Exhibit 45, trial transcript's day 2, page 12:3-13:13.

At the October 14-16 hearing, Mr. Meador confirms he will be filing an additional Wilfong Affidavit following the 10/15/2025 hearing. He asked and was given permission by the Court. See Exhibit 96, hearing transcript 11/15/2025 page 143:21-147:14. Mr. Meador confirmed that Judge Estes mistakenly entered his final Order, which included attorney fees, without a Wilfong Affidavit from Mr. Meador, and as a result, his award of attorney fees from the divorce was entered improperly. See Exhibit 96, 10/15/2025 hearing transcripts page 143:21-144:5. **THE FIRST DIVORCE DECREE AND ITS AWARD OF ATTORNEY FEES TO LAUARA IS THEREFORE VOID. I MUST BE GIVEN A NEW TRIAL**. Mr. Meador confirmed that with his additional Wilfong Affidavit, the Court would be able to enter a new judgment against me for all his attorney fees. Wasn't that special? With the Court refusing to allow me to object to or refute affidavits, everything, including the fraudulent statements Mr. Meador puts into one, is

accepted as fact. With me not allowed to defend myself, and with Judge Hill refusing my

Response to Mr. Meador's affidavit, every lie produced by Mr. Meador was accepted as

true. This was the intent of Lauara, her attorneys, and the Court declaring me vexatious.

The Court did allow my original Objection to Mr. Meador's Affidavit, which only

addressed the issue of Lauara being repaid the loans to her son, Adam, and nothing else.

Judge Hill agreed to rule on it. See Exhibit 95, 11/14/2025 hearing transcripts page

239:18-241:11 and Exhibit 96, 10/15/2025 hearing transcripts page 117:4-118. That

Objection contained my Exhibit 11 and referenced its Exhibits, confirming that the loans

to Adam Lisk had been repaid. Judge Hill allowed herself to rule on the $2,600,000

Lauara, her son Adam, and her attorney, Mr. Meador, had allowed Lauara to steal from

me with their false affidavits and claims that the loans to Adam had not been repaid.

Mr. Meador's claims on page 18 of his affidavit, concerning my claim of

ownership in Lauara's separate property, I addressed in my response and affidavit. My

exhibit 40, audio tape A, and its transcripts, were produced for Ms. Amens and Mr.

Bushur to be used at trial. The tape confirms that Lauara and I had confirmed that she

always assured me that the companies were jointly owned and that we carried them for

years on our credit cards. Ms. Amens and Mr. Bushur's declining to use them confirms

the trail was fixed, and that he and Mr. Meador violated RPC 8.4 and RPC 3-4(c).

Mr. Meador seems to believe that by telling everyone how smart he and his

colleagues are, at the beginning of his Affidavit, it is acceptable to fabricate evidence, lie,

perjure himself, file false affidavits, and violate Rules 11 and 60. The Court and Judge

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 73

Hill have colluded with these individuals to steal millions from me and to cover up my attempted murder. The Court used the improper vexatious litigant designation against me to prevent me from further disclosing the criminal actions and fraud of Lauara, her attorneys, the Court, and Judges Hill and Estes.

**SUPPLEMENTAL AFFIDAVIT OF SHAWN B. MEADOR, OCTOBER 24, 2025, Exhibit 68.**

The Court prevented me from filing my Response Affidavit confirming that the first Affidavit of Shawn B. Meador was fraudulent in violation of my civil rights, violated my due process, and to prevent me from exposing the criminal actions of Lauara, her attorneys, Lauara's family, the Court, and Judges Hill and Estes. See Exhibit 83 and Exhibit 78.

On October 24, 2025, Mr. Meador entered Supplemental Affidavit of Shawn B. Meador. The Court declined to produce a copy for me. Mr. Meador sent a complimentary unstamped copy. See Exhibit 84.

On page 2. B. Mr. Meador admits the Court rejected every objection I made.

On page 2, C, Mr. Meador states that I made false statements against Ms. Lisk and her counsel. Every statement I made was supported by my exhibits for trial, my Exhibit 37.1, my testimony for the hearing, supported by exhibits, and my actual testimony at the hearing. The Court improperly disallowed every exhibit I filed and allowed every exhibit Lauara and Mr. Meador entered, including exhibits that were not furnished in discovery, including Lauara's revised home improvement exhibits that were not Bates numbered.

On page 2, D, of Mr. Meador's Supplemental Affidavit, he confirms that the Court did not allow my exhibits because I did not "offer any exhibits." Mr. Meador and the Court know this is a lie. The Court refuses to allow me to respond to or object to any documents. In an intentional violation of my due process and civil rights, by the district court, every single lie and every fabricated document by Lauara and Mr. Meador was accepted as fact.

On page 2, E, Mr. Meador falsely stated that the case law I cited did not support my position. Mr. Meador stated this, knowing it was false. A review of the case law cited, including *Rippo v. Baker*, preventing Judge Hill from hearing the case, and *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025, confirms that Judge Hill's actions were vindictive for my suing her and for confirming her collusion with Lauara and her attorneys.

On page 3, F. Mr. Meador stated I was trying to relitigate jurisdiction. I was trying to confirm that Mr. Meador's Resident Witness Affidavit was fraudulent, that I was a resident of Nevada despite Mr. Meador's fraud on the court, and his claims otherwise.

On page 3, G, Mr. Meador references his intentionally false claim of the $78,000 cash deposited into the joint checking account he cited at the hearing. Exhibit 96, the 10/15/2025 Hearing transcripts, pages 60:7 through page 70. Mr. Meador falsely insisted several times that the $78,000 was shown in the Divorce Decree. He stated,

> MR. MEADOR: Objection, Your Honor.
> The court has already found that $78,000 of cash came into the

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 75

house. It's undisputed that they were not actual loans. They were simply a way to keep track of the money, because my client knew that the money had to be reported on taxes.

This was the sixth time they had changed their testimony, perjured themselves on the cash taken by Lauara. Lauara and Mr. Meador also admitted that the actual amounts were $78,000 and $200,000. When I asked Mr. Meador and the Court to show me the $78,000 in cash loans in the Decree, they went silent. I asked them again to show me where the $78,000 was shown in the Decree. Mr. Meador and the Court refused to provide the documentation, and when I went to the Decree and confirmed that he was lying, Mr. Meador claimed he had made a mistake. When Mr. Meador and Lauara are caught in a lie, perjuring themselves, Mr. Meador simply claims it is a mistake. The problem is that with the Court refusing to allow me to respond to or object to anything, Mr. Meador's statements, though they are intentional perjury, are accepted by the court.

I confirmed in my Exhibit 40, Audio Tape A, provided to Mr. Bushur to be disclosed and was never disclosed, that Lauara and I had carried the Nevada companies, including Wendover ambulance service, on our credit cards when things were bad, and that the Ambulance Service had repaid us when it could. See Exhibit 40, the transcripts, and the audio tape. Also see Exhibit 101, the complaint against Mr. Bushur, page 4, no. 4, and page 17, my 1/2/2020 email to Mr. Bushur. There were no accounting documents to confirm these purported repayments, which, by Lauara's own admission, were made in good faith, and were not simply taking cash and obligating me for half. Mr. Bushur declined to produce these and colluded with the Court and the defendant.

On page 3, H, Mr. Meador claims I repeatedly tried to relitigate the promissory notes signed by Lauara's son, Adam Lisk, though the Court of Appeals had not remanded it. Lauara and Mr. Meador confirmed in their Pre-Hearing Statement that regarding the loans to Adam Lisk, the *"COA Order noted that if Max had newly discovered admissible evidence, he would have the legal right to seek to modify or amend."* My **December 2020, Motion for Summary Judgment**; my **Brief for the October 11, 2023 Hearing**; my Complaint against **Judge Hill and Judge Estes**; my original **Complaint Against Judge Estes**; my **Objection to the Affidavit of Shawn B. Meador**; and my testimony at the **October 14-17, 2025 Hearing**, and more qualify to have the Divorce Decree vacated, and to order Lauara and Mr. Meador be ordered to pay me the damages I seek with regards to the loans.

On page 3, I, Mr. Meador, citing my disability, claimed the COA Order stated: "Raymond received the funds as workers' compensation...." The COA Order specifically states that the payments "constitute separate property to the extent they compensate for economic loss arising after the marriage." That is another lie. Referencing pages 20-21, it does not say that. Mr. Meador is manufacturing evidence again, knowing that the Court will not allow me to respond. My payroll records and Exhibit 5, my housing receipts, confirmed I missed no work during the marriage resulting from an injury. At the hearing, I tried to introduce my payroll records from the Nevada Test Site, which confirmed that I continued working through the period Lauara claimed I was off work and receiving workers' compensation for missed wages. See my Exhibit 37.1, my testimony page 59,

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 77

No. **25.** of the **Brief for the 2023 Hearing** (Exhibits **14** and **15**) confirms that the Appellate Court's "analytical approach" to workers' compensation, which the Court used, was for lost wages and reduced earning capacity. There were no wages lost, nor was there reduced earning capacity. I continued working and sustained no losses when I retired. This is confirmed in **No. 30** of my **Brief for the October 2023 Hearing**, with Exhibit 5008-5019, my payroll records from National Security Technologies (NSTec) from July 2006 through December 2007. See my Exhibit 37.1. At trial, I tried to introduce my Exhibit 5, my housing receipts from the Nevada Test Site. Judge Hill refused to allow me to enter any exhibits. Mr. Meador acknowledged that I was not allowed to enter my exhibits. See my response to Mr. Meador's D. above.

On page 4, J, Mr. Meador falsely states that I offered no exhibits confirming my back injury happened prior to the marriage. I offered my Exhibit 60 for the hearing, confirming the back injury occurred in 1986. The Court refused to allow it. I offered the doctor's report of the July 3, 2006, buttocks contusion, in which the treating physician confirmed the back injury was 20 years previous. I offered from my Exhibit 37.1, Exhibit 14, **No. 23** of my **Brief for the October 2023 Hearing,** and the referenced Exhibits, including 5007, which confirmed my injury was a low back sprain and muscle cramps. Exhibit 5007 confirms that I had an actual back injury 20 years previous, and 15 years before Lauara and my marriage. Judge Hill refused to allow it. See Exhibit 95, 10/14/2025, and Exhibit 96, 10/15/205 hearing transcripts. The Nevada Test Site, where I worked, had a staffed medical clinic. I tried to introduce the physician's examination of

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 78

me following a buttocks contusion on July 3, 2026, which confirmed the injury was a buttocks contusion and the back injury was 20 years previous, 15 years prior to my marriage to Lauara. See Exhibit 95, 10/14/2025 hearing transcripts, pages 191:11-213:13. I tried to enter from my Trial Exhibit 14, Hearing Brief for October 11 Hearing, and its Exhibit No. 5007, confirming it caused muscle cramping at night. Judge Hill refused to allow any portion of the Exhibit. See Exhibit 95, hearing transcripts, 10/15/2025, pages 223:11-127:9.

The injury is confirmed in Exhibit 37.1, page 58, No. 23.

Lauara had taken my medical records and disclosed those that she believed supported her argument. 5007, the initial doctor's report of the buttocks contusion accident did not, so she declined to disclose it.

On page 4, K, Mr. Meador stated that I offered no supporting evidence that the community estate is owed money for the loans to Ms. Lisk's separate businesses made during the marriage. Without documentation, Lauara claimed that my son, Casey Snyder (Casey), repaid the loans to us that we made to the businesses. At the 10/14/2025 Hearing, see transcripts Exhibit 95, pages 28:10-31:7, Casey testified that he signed no checks repaying the loans and that he would have known if he had. From page 35:1-40:6 I testified that the loans had never been repaid and that there was no accounting documentation confirming they had. The loans were never repaid.

On page 5, L, Mr. Meador stated that my position that the purported cash receipts that were not reported on the tax returns were not enforceable debt was a change of his

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 79

and Lauara's position from the beginning, when they insisted I pay half the tax obligation on the notes, which, like the COA acknowledged, would obligate me to repayment of the purported loans. I confirmed the loans were fabricated to obligate me for the debt and taxes. When I confirmed there were no loans, Lauara and her attorney changed their argument to that they were not enforceable debts. They acknowledged filing a false affidavit claiming Lauara had paid the IRS $28,000 plus and that I owed her half, when in fact the IRS continued to send the payments back to me, and I returned the last checks to Lauara at the October 14-16, 2025, hearing. See 59.

On page 5. M, Mr. Meador claims I did not provide documentation on what the businesses owed the community estate for the attorney fees it incurred defending Ms. Lisk's separate property, Lisk Parts. That statement was false. I confirmed that Lauara took all our bank records when she left. My Exhibit 37.1, page 72, No. 7, confirmed with documentation that the amount was at least $50,613.

On page 5. No. N. Mr. Meador claims I offered no admissible evidence that the improvements to my property did not increase the property value. I confirmed above that 1) the original claim of $260,000 in improvements was fabricated by Mr. Meador and included in his Trial Statement, 2) that Lauara and Mr. Meador had originally produced $178,000 in credit card receipts claiming they were the improvements that was not provided to me prior to trial, 3) that in an attempt to get the sum to the $260,000 Mr. Meador had fabricated, Lauara added cancelled checks that were not Bates numbered, which had not been disclosed and they still could not get to $260,000, 4) I confirmed

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 80

above that at the remand hearing, Lauara introduced a new appraisal of my property, her

Exhibit W, completed on September 17, 2025. Lauara produced an altered, partial list of

credit card receipts from her original Exhibit A, produced following the trial, which could

not be confirmed, and forwarded them to an appraiser. See my Exhibit 76, Lauara's

October 14-16, 2025, Hearing Exhibit W, Lauara's new purported upgrades to my home,

and an appraiser's testimony reduced the original testimony and her $260,000 upgrade

exhibit provided following the trial by more than $110,000. The Exhibits were not Bates-

numbered and never produced at trial. They cannot be considered.

The appraiser had never met Lauara, had not inspected, and had never seen the

property and home, had never looked at a site map of the property, had no idea how large

the property was, had no idea the property had 1 hot tub not two, had no idea that the

purported ½ mile gravel road upgrade would have ran across three properties the size of

mine, allowed a backhoe as an improvement... The appraiser relied upon Lauara

spreadsheet of unsupported credit card purchases, claiming they were materials for

improvements. I confirmed on examining the appraiser that several of the claims were

false, including two hot tubs, a backhoe, a half mile of graveled road, etc. See exhibit 95,

10/14/2025 hearing Transcripts page 93:5-112:12.

On page 5, O, Mr. Meador states that I did not produce credible evidence that I

paid Mr. Heideman with my separate funds. Mr. Meador made this statement knowing it

was false.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 81

I have confirmed that all the funds deposited into my separate account are not community property. See my testimony for the hearing, my Exhibit 37.1, page 4, states,

> *No. 32 of my **Brief for the October 2023 Hearing** (Exhibits 14 and 15) referenced Exhibits XIX5026-5054, the deposits into my separate Zions Bank account. They confirm that Defendant Lauara and her attorney, Mr. Meador, lied when they stated that my separate account contained comingled funds.*

I have confirmed herein above that, 1) the check to Justin Heideman came from my separate account that contained no community funds, 2) that Lauara and her attorneys' claim that there were Order's preventing me from hiring Mr. Heideman were made knowing they were false and made in violation of Rules 11 and 60, 3) that my argument that there were no orders at the time I hired Mr. Heideman preventing from representing me was true, 4) that I confirmed previously, and above, that Mr. Heideman petitioned the Court to be allowed to represent me but was denied, 5) that Mr. Heideman never represented me other than to file the request for joint representation, 6) the funds in my personal account were not community property, 7) that $7,000 of the payment to Mr. Heideman was to file a Petition for Joint representation and, 8) that the payment to Mr. Heideman was not marital waste that warranted an unequal distribution of the community estate.

Mr. Meador and his client are as despicable as any thief.

The funds in my separate account were my separate property. Ms. Amens testified at the hearing that those funds were used to pay her attorney fees.

Pages 64-65 of my Exhibit 37.1 state,

> *No. 14 confirms with Exhibit XIX 6225-6236, Mr. Meador's **Motion for Pre-Trial Conference**, confirms on page 7:11-16 of 6231 that I paid Mr. Heideman to file one document. On page 11:1-4 (6235), Mr. Meador confirms that the amount was $7,000, the request to represent both Casey and me, and the rest was for my son, Casey's attorney fees. Casey confirmed this was a lie. The $7,000 was for the **Motion for Leave to Represent** me confirmed in XIX 5005. That was all there was. Mr. Heideman never represented me. He simply petitioned the court to be allowed to.*

Lauara and her attorney were provided this information prior to the hearing and still lied that I paid Mr. Heideman $150,000 to represent me.

The lie by the defendant and her attorney that I used community funds to receive an unequal distribution of the community property is a violation of Rules 11 and 60. For their fraud, I am entitled to my attorney fees and an unequal distribution of the community property in my favor.

On page 6, P, Mr. Meador claims there was no credible evidence that the unequal division of the retirement accounts was improper. Mr. Meador's statement is an intentional lie. It takes Mr. Meador only a few seconds to fabricate a lie. It takes me thousands of hours of research to refute his lies.

On page 28 of its Remand, See Exhibit 85, the Appellate Court stated,

> *Consequently, we must reverse the divorce decree insofar as it required the parties' to equally split their 401K and IRA accounts and remand for the district court to consider the parties' in light of its characterization of Raymonds' personal bank account concerning their expenditures of community funds.*

My Exhibit 37.1, pages 69-70 and 75-56, and my testimony at the October 14-16 hearing, (see Exhibit 96, Hearing transcripts 10/15/2025, 6:5-16:11, and 123:22-124:18), confirm that 1) Lauara had filed a Financial Restraining Order with the Court preventing either of us from touching our IRAs, 2) that Lauara had approximately $312,000 in her community property IRAs and used them to pay personal debts and her attorney, Mr. Meador, in violation of the Financial Restraining Order, running her IRAs down to about $70,000, 3) that my IRA had approximately $180,000, 4) that I honored the Financial Restraining Order, and 5) that the Divorce Decree drafted by Mr. Meador added my $180,000 to Lauara remaining $70,000, split the two and ordered me to pay Lauara approximately $55,000. This was fraud on the court by Mr. Meador, an officer of the court. Their violation of the Financial Restraining Order was intentional and intended to steal additional community funds from me. The district court and Judge Estes allowed the fraud.

**The Theft by Lauara and Mr. Meador from Lauara's IRAs in violation of the Temporary Financial Restraining Order.**

Between 2010 and 2013, Lauara had been repaid millions for the loans she and I had made to her son, Adam. See Exhibits 104, 105, and Exhibit 9's Exhibit's 7 and K. To steal the community funds in Lauara's IRA, like Lauara had stolen the loans to her son Adam, Lauara and Mr. Meador drafted and entered a Financial Restraining Order preventing either party from removing assets from their IRAs and immediately began withdrawing funds in violation of the Order to pay Mr. Meador's attorney fees. Lauara

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 84

and Mr. Meador did not need to take the withdrawals from her IRAs to pay Mr. Meador's attorney fees or for any other reason. See Exhibits 104, 105, and Exhibit 9's Exhibits 7 and K. Lauara had millions at hand. Their fraud was simply their con to steal Lauara's community property IRAs.

Pursuant to NRPC 8.3, Judge Estes and my attorneys should have filed complaints against Lauara and her attorney. They did not. They were part of the fix.

On page 6, Q, Mr. Meador states that he and his client do not object to the Court reviewing my briefs (my Exhibit for the Hearing) and that a review of my brief will confirm they are without merit. The claim was knowingly false. **I challenge the Court to review my Brief, my Exhibit 37.1, and this pleading, and to provide the information to the appropriate law enforcement agency to investigate**.

I have confirmed above that the Fourth Judicial District Court of Nevada does not specify the exact exhibits allowed on remand from the Nevada Appellate Court.

In the context of a remand from the Nevada Court of Appeals to the District Court, you are generally allowed to use a trial motion with exhibits. I did and entered them with the Nevada Fourth Judicial District Court without them being objected to. The judge allowed me to go into a Motion to cite a doctor's report, then disallowed the original doctor's report on my purported injury, which confirmed Lauara claim that I was injured at work and missed work was only a buttocks contusion, that my back injury was twenty years previous and before the defendant and I were married, and I missed no work.

Lauara and her attorneys claimed I had a back injury during the marriage. They

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 85

produced the Stipulated Agreement with the insurer, claiming it confirmed workers'
compensation I received for missed work during the marriage. I confirmed the insurer
was the same as for the 1986, premarital injury. I showed that it was a penalty with
interest for the insurer's bad faith, not compensation for missed work. I confirmed it, and
several other exhibits Lauara had taken from my records prior to leaving violated HIPAA
regulations. Judge Hill refused to allow my payroll records exhibit and my housing
receipts exhibit, confirming I had not missed work. The Court colluded with Defendant's
fraud and intentionally violated my due process.

On page 6, R, Mr. Meador stated that I did not present credible evidence that
would grant me a new trial. This statement was false. **(1)** I cited Exhibit 37.1, my
testimony for the October 14-16 hearing before Judge Hill, and Exhibit 11, my November
7, 2023, Amended NRCP Rule 60 and NRCP Rule 59(b)(2) Motion for New Trial
confirming the newly discovered evidence on page 5. **(2) ATTEMPTED MURDER.**
Mr. Meador, in his first Affidavit for the October 14-16 hearing, stated I had accused
Lauara of poisoning me, attempted murder. I confirmed in my Exhibit 80 provided
herewith, my October 27, 2023, NRCP Rule 60(b)(2) and NRCP Rule 59(b)(2) Motion
for New Trial for Newley Discovered Evidence and Motion for a New Trial Based upon
Judge Robert Estes's Violation of Nevada Code of Judicial Conduct 2.11(A)(1) Through
(A)(6), that Lauara poisoned me several times. The Motion was submitted for review and
decision. See Exhibit 81. The district court declined to review it. **(3)** My hearing Exhibit
my December 2020 Motion for Summary Judgment Parts 1-5, exhibits 17-21, confirmed

I should be given a new trial. **(4)** My Exhibit 37.1 page 4-9, I cited my December 2020 Motion for Summary Judgment, Rule 59, the cases of *Lioce v. Cohen, Dejesus v. Fleck, Michales v. Pentair Water & Pool,* and *Rippo v. Baker,* confirming I should be given a new trial. **(5)** Exhibit 37.1, page 2, confirms Judge Estes ordered me to file a Consolidated Motion for New Trial. I did---my Exhibit 10 for the hearing. It was never considered. **(6)** My Exhibit 37.1, **(7)** I cited *Lioce v. Cohen* and my December 2020 Motion for Summary Judgment throughout my Exhibit 37.1, allowing a new trial.

On page 6, S, Mr. Meador states that when Judge Hill stated she did not know I had sued her that I called her a liar to her face. This is an outright lie and cannot be found anywhere in the transcripts. However, this document, and Exhibits 73.1-73.3 referenced and included herewith, confirm that Judge Hill was served. Mr. Meador is playing Judge Hill to negate her purported alleged collusion with him. On day 3 of the hearing, Judge Hill screamed at me, threatened to find me in contempt, and threatened to throw me in jail for 25 days for pointing out that Mr. Meador was a liar. See Exhibit 97, Oct. 16 hearing transcripts page 33:15-19. I was careful not to call Judge Hill a liar. Had I called the judge a liar or even insinuated it, she would have found me in contempt and jailed me. Mr. Meador is an addicted liar, willing to say anything he believes will further his fraud.

From this point, Mr. Meador goes to 5, his summary of the proposed damages to Lauara. These fraudulent statements, if they were not designed to steal everything I had taken my life to accumulate, would be laughable. They are criminals. D. addresses the

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 87

$70,000 in Lauara's community Property IRAs, which Lauara agrees is correct.

However, this figure follows her violation of her Financial Restraining Order, taking

disbursements from the original $312,000. Lauara never disclaimed the inappropriate

withdrawals or that I had $180,000 in my IRA. Lauara and Mr. Meador claim that Lauara

is entitled to $55,000 of my IRA after combining her IRAs were fraudulently depleted to

$70,000, and my full IRA. This fraudulent claim, like the other, was fabricated by Mr.

Meador and entered in the Divorce Decree. A review of the Decree, Exhibit 85, confirms

that Judge Estes signed it but did not date it, confirming he received it at the trial or

before, and the district court entered it later.

Mr. Meador's affidavit is followed by Exhibit A, Ms. Lisk's Affidavit, confirming

that everything is true in Mr. Meador's Affidavit. Swearing to Mr. Meador's fabricated

and false statements is knowingly accepting and allowing Mr. Meador's false claims, his

criminal acts and a violation of Rule 11, Rule 60, NRS 195.020 and violated NRPC 8.3.

Mr. Meador and Lauara declined to comment on my Response to his first

Affidavit, which was allowed and filed by the Court. My Response confirmed 1) that the

loans to Lauara's son, Adam, were allowed be argued at the hearing,  2) that Lauara

and her son, Adam Lisk, had secretly sold our loans, 3) that Lauara, Adam, and Mr.

Meador covered it up, 4) that the Court agreed to review and rule on the pleading, and 5)

that Lauara owed me in excess of $2,600,000 for those loans. See Exhibit 92,

Amortization Schedules of the Loans to Adam Lisk.

## DEBRA AMENS' AFFIDAVIT AND CLAIMS

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 88

Ms. Amens states in her Affidavit,

**(2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation;**

Ms. Amens cited Nevada RPC 1.16(b)(1) in her Motion for withdrawal, swearing, "withdrawal can be accomplished without material adverse effect on the interests of the client." Ms. Amens then refused to provide my discovery to the Defendant or to my new attorney. See Exhibit 63. She declined to provide me or my last attorney, Mr. Bushur, with the discovery produced by the Lauara. I was blindsided at the 10/14-16/2025 Hearing with HIPAA documents that Lauara unlawfully disclosed, and Ms. Amens unlawfully allowed. Her improper actions deliberately caused a **material adverse effect on my interests**. Ms. Amens' affidavit is a violation of Rules 11, Rule 60, and NRS 195.020 and starts a new clock for a civil rights suit.

Ms. Amens confirms that she became involved in my North Carolina Litigation. I confirmed in my Exhibit 61, the email chain between Ms. Amens, me, and my North Carolina Attorney, Ms. Cooper, that Ms. Amens improperly had the North Carolina attorneys serve Lauara following being warned by Mr. Meador of the consequences. Miss Amens declined to include me in the problems of serving Lauara. Following Mr. Meador's warning, Ms. Amens instructed the North Carolina attorney to serve Lauara. It

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 89

cost me millions. Ms. Amens lied to me about her involvement and blamed it on the North Carolina attorney. When I furnished her with the confirmation that she was at fault, she threatened to quit repeatedly. The email on page 15 of Exhibit 61 confirms that it was Ms. Amens' idea to quit. Her ongoing threats forced me to find Mr. Heideman and engage him to file a Motion for Joint Representation. Ms. Amens' email on page 15 also confirms that she refused to quit following all her threats and continued billing me.

Ms. Amens then used an altered version of the email in her Motion for Attorney Fees..., Exhibit 2, to make it appear that she had not made threats to quit, which forced me to look for new representation. See my Exhibit 71. This amounts to extrinsic fraud on the court and a violation of the attorney-client privilege.

The docket confirms that, following Ms. Amens' threat to quit, she quit filing pleadings on my behalf. See Exhibit 89, the Docket for Case No. DR-MD-17-757. Ms. Amens then reinstated herself into representing me against my instructions. She threatened to prejudice the Court if I did not continue paying her bills.

Ms. Amens acknowledged that she amended her claim to allow payments by Mr. Heideman on my behalf. See Exhibit 88, Ms. Amens' amended claim, her Supplemental Information in Support of Motion. However, Ms. Amens' Supplemental Information fails to show the payments by Mr. Heideman or what a single one of her bills is for that has been paid. When Mr. Heideman was denied joint representation, my contract with him provided that he pay my attorneys fees going forward. When Mr. Heideman paid Ms. Amens, he brought my fees up to date. Ms. Amens' Supplemental Information, her

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 90

billing, and receipt of payments show that they were made on 06/16/2025. Mr.

Heideman's payments to Ms. Amens began three months later, on 09/16/2019. See

Exhibit 88.7, Mr. Heideman's billing and payments. Ms. Amens' claims are fraud on the

court.

Ms. Amens continually changed her billing, the amounts shown, and what the

billing was for. See Exhibit 88.5, Amens Billing, Pervious Billing v. Supplemental

Billing Provided to the Court in Exhibit 88.5. Ms. Amens' original billing, confirmed in

her July 2019 billing statement, confirmed what she was billing for. See Exhibit 88.5,

pages 1-3. When Ms. Amens decided to quit, and her production went to nothing, her

billing amounts increased. At that point, she declined to show what the billing was for.

See Exhibit 88.5, Billing July 2020 page 4 through Billing 2024 page 17. A review of

these documents confirms that the billing amounts provided by Amens are inconsistent,

again confirming Ms. Amens' fraud. Page 5 confirms that when I retained Heideman, I

gave Ms. Amens notice to quit immediately, that she did not, and that she declined to

provide confirmation that I had again retained her services.

Ms. Amens testified at the 10/16/2025 hearing, see Exhibit 97 transcripts page

14:16-26, that the two of us decided she would remain on after I fired her. On page 35:3-

7, Ms. Amens stated,

> *Yes, Your Honor. That was not the basis of, uhm, my withdrawal. The basis of my withdrawal was the breakdown of, uhm, our working relationship and a mutual agreement that as soon as he had an attorney, I would withdraw.*

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 91

That was a lie. Ms. Amens began her withdrawal and collusion with Lauara and Mr. Meador when I exposed her mistake in North Carolina, which cost me everything. Her withdrawal was to prevent having to file a claim with her malpractice insurer. I confirmed Ms. Amens' continuing threats to quit following the exposure of her North Carolina mistake in my Exhibit 61. See Exhibit 61. Judge Hill declined to allow Exhibit 61.

On pages 36:17-37, Ms. Amens stated again that it was our agreement that she remain on. I testified I never agreed to that. **Exhibit 88.5 page 5, an August 9, 2020, email between Ms. Amens and me confirms that Ms. Amens lied at the October 16 hearing and that I asked her to furnish documentation that I allowed her to remain and that she did not and could not produce any.** The statute of limitations for Ms. Amens' fraud began on October 16, 2025.

My Exhibit 100, my Complaint against Ms. Amens to the Nevada State Bar confirms on pages 4 - 5,

On June 25, 2019 in an email to Ms. Amens, Stephanie Cooper, Justin Heideman and Thomas McCosh, Mr. Snyder notified Ms. Amens that he had retained Justin Heideman of Heideman and Associates to represent him and asked Ms. Amens to cease working on his behalf and to notify the court.

On June 25 ,2019 Debra Amens sent Max Snyder and email stating that as per his instructions that she had ceased working on his behalf.

On July 5, 2019, approximately 10 days after acknowledging she had been fired by Mr. Snyder, Debra Amens sent Mr. Snyder an email stating that she was still working for Mr. Snyder. Ms. Amens again states that Mr. Snyder needs to get a firm with multiple associates. She was the lone attorney in her firm. Ms. Amens states she is representing Mr. Snyder with others (attorneys).

Ms. Amens continued working for Mr. Snyder against his instructions and continued billing Mr. Snyder. Ms. Amens threatened to destroy Mr. Snyder's reputation with the court for not paying her bills though Mr. Snyder had instructed her to quit.

## TIMELINE OF AMENS' COLLUSION WITH LAUARA AND MR. MEADOR

1.      On June 19, 2019, Ms. Amens sent me emails refusing to involve her insurer and threatening to quit if I held her liable in any way for NC. See Exhibit 103, Volume I AP0047-0048.

2.      Ms. Amens had asked me to find another firm with more associates. See Exhibit 103, VI AP051.

3.      On June 25, 2019, I sent Ms. Amens a notice that I had retained Heideman & Associates to represent him. See Exhibit 103, Volume AP0050.

4.      On July 2, 2019, Ms. Amens replied, stating she had quit working on the case and would send all information coming to her to Mr. Heideman and me. See Exhibit 3, VI AP0049-0050.

5.      On July 5, 2019, Ms. Amens confirmed in an email that she would make sure things were sent to me and responded to on a timely basis. See Exhibit 3, VI AP51.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 93

6.    Following my replacing Ms. Amens, and Ms. Amens stating she would forward all future information/documents to Mr. Heideman and me, Ms. Amens declined several requests from me to even acknowledge the discovery sent by Lauara's attorney to her. See Exhibit 103, VI AP0085-0087

7.    On September 4, 2019, my expert, witness accountant Tori Warren, retained by Ms. Amens, was disposed by Mr. Meador. Ms. Warren confirmed the $650,000 in loans that Lauara and I had made to Lauara's son, Lisk. See Exhibit 3, VI AP0072-0076.

8.    Ms. Amens informed me that day that she had amended the U.S. District Court complaint to reflect the $650,000 in loans to Lisk. She had not. She had begun her collusion with the defendants.

9.    At Lauara's NC deposition on February 26, 2020, Lauara acknowledged the $650,000 that she and I had loaned her son, Adam Lisk, and that she allowed Lisk to place in his bankruptcies. See Exhibit 103, VI AP0077-0084.

10.    On December 19 and 21, 2020, I asked Ms. Amens about Lauara's discovery beyond the 4,000s that were used at trial, which I had never seen.  See Volume I AP 0086-0087. Ms. Amens declined to answer. Ms. Amens received the documents but declined to provide them to me or anyone else. There has never been documentation that Ms. Amens received any discovery from Lauara, and yet she billed for that. There were Bates-numbered discovery documents purported to have been disclosed by Lauara and used at trial by Lauara that I had never been provided.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 94

11.     I asked Ms. Amens for a copy of the agreement, in which I confirmed that I agreed to retain her. See Exhibit 103, VI AP0114. There was not one, and Ms. Amens declined to provide one.

12.     On July 13, 2019, Ms. Amens sent me an email refusing to provide my discovery to Lauara. See Exhibit 103, VI AP0115. Ms. Amens was doing nothing and billing as if she was.

13.     On October 15, 2019, I asked Ms. Amens to notify the Court and the defendant that she no longer worked for me. She declined. See Appendix Volume I AP0118.

14.     Ms. Amens filed an Opposition to Motion for Disqualification on June 5, 2019, with a purported Declaration by me signed May 26th, 2019. I was never provided this Declaration with my signature dated May 26, 2019. See Exhibit 103, Volume I AP0125-0132. This is a forgery under NRS 205.090 and NRS 207.360(13).

15.     Ms. Amens attempted to get me to sign one ten days later, on June 5, 2019, but I declined. See Exhibit 103, VI AP0156. This confirmed Ms. Amens' fraud, collusion, and forgery of my signature.

16.     Ms. Amens continued to bill me, though she acknowledged I had new attorneys and threatened to harm my reputation with the court if I did not pay her. See Exhibit 103, VI AP0175. This amounts to extortion.

17.     Following discussions with Ms. Amens' liability insurer, ALPS, on April 16, 2020, I opened a claim against Ms. Amens and Amens Law with their liability

insurer, ALPS, and forwarded several documents confirming the claim. See Exhibit 103, VI AP0088-0108 and VI AP0111-0112.

18.    ALPS refused to acknowledge or open a claim. See Exhibit 103, VI AP0109-0110.

All this discovery had been provided to Ms. Amens.

Following Ms. Amens's threat to destroy my reputation with the Court for refusing to pay her, to prevent her from damaging my reputation with the district court, I instructed attorney Justine Heideman to pay her from the retainer I had provided him. See Exhibit 88.7. A review of Mr. Heideman's billing confirmation confirms that Ms. Amens did not properly credit Mr. Heideman's payments on my behalf.

I confirmed in my testimony and questioning of Ms. Amens that she had not followed NRS 18.170 and had provided the required affidavit in her Motion for fees, and that her Motion for Attorney fees was void. See Exhibit 97, 10/16/2025 hearing transcripts page 10:7-11:7.

Ms. Amens agreed she had provided the altered email between her and me in her Motion for Attorney Fees. By eliminating the last two sentences, that email made it appear that it was not her decision to quit and leave me without representation. It also violated our attorney-client privilege. See Exhibit 97, 10/16/2025 hearing transcripts page 40:11-41:7. The court reporter mistakenly wrote admitted instead of omitted. Judge Hill refused to allow my Exhibit 61, the email chain between Ms. Amens and me, which Ms. Amens had testified about, confirming this. See Exhibit 97, 10/16/2025 hearing

transcripts page 41:8-11. Judge Hill colluded with Ms. Amens to allow her to find a reason for ruling against me. When I revealed that Ms. Amens had not included the affidavit and that, as a result, her Motion for Attorney fees was void. Judge Hill disagreed.

Ms. Amens declined to provide my discovery to Lauara and to provide me with the discovery that Lauara was producing. Lauara and her attorney were producing discovery to Ms. Amens, which I was not provided, which violated HIPAA regulations. See Exhibit 97, 10/16/2025 hearing transcripts pages 151:15-152_15, pages 19:11-25, and pages 202:18-213:12. Judge Hill improperly allowed every Exhibit produced by Lauara and Mr. Meador, though I confirmed they were criminal violations. When Lauara produced her exhibits for the October 14-16 hearing, they included my medical information that Lauara had taken from my files when she left. When they provided the hearing exhibits for the October 14-16 hearing, I discovered and confirmed that Ms. Amens had violated HIPAA by allowing Lauara to produce them. I had instructed Ms. Amens not to disclose confidential. See Exhibit 14, Hearing Brief for the October 11, 2023 Hearing… and its Exhibit 5021 and email between Mr. Bushur and Mr. Meador, in which Mr. Bushur tells Mr. Meador, **"Max is not in agreement for her to divulge confidential information."** Ms. Amens acknowledged that she had allowed Lauara and her attorneys to violate HIPAA by introducing my medical records. The statute of limitations began when I discovered the records that had been hidden from me by Ms. Amens, Lauara, and her attorneys.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 97

When I discovered that Lauara had been repaid the loans to her son Adam Lisk, and following Ms. Amens' discovery the loans were actually $650,000 during Lauara's deposition in March 2019, Ms. Amens declined to amend the Federal Complaint against Adam Lisk to show that it who was Lauara responsible for the theft of the loans and that the loans were actually $650,00. The total unsecured creditor debt in Old Mill Forestry was $670,179. Lauara was the largest unsecured debtor. See Exhibit 104, Old Mill Disclosure Statement, page 19, filed 03/28/11. The total available for the unsecured creditors, of which Lauara was one, was $5,694,624. See Exhibit 104, page 21.

The total unsecured creditor debt for Carol Lynn Properties was $3,092,020. See Exhibit 105, CL Properties Disclosures filed 06/02/10 page 20. The total unsecured debt was $440,000, of which Lauara had $210,000. See Exhibit 105, page 19. Lauara was fully reimbursed for our loans to her son, Adam Lisk, with interest. The complete documents of the sale by Lauara and her sons, Adam and Ryan, were sealed a year later in 2014. See Exhibit 107, the Old Mill Forestry docket, numbers 190, 191, and 192. The bankruptcy court inadvertently missed completely sealing the sale of the Old Mill creditor debt shown in Exhibit 9's Exhibit 7 and Exhibit K.

Ms. Amens testified at the 10/16/2025 hearing that the Federal case was closed, that I had paid her in full, and that the fact that she did not amend the complaint was not relevant. Judge Hill colluded with her and refused to consider Ms. Amens' breach of contract. Judge Hill lied about her lack of jurisdiction resulting from my suit against her. See Exhibit 95, 10/16/2025 hearing transcripts page 31:18-25. Had Ms. Amens amended

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 98

her Federal Complaint at that time, it would have drastically altered the divorce in my favor. She did not. At the 10/16/2025 Hearing, Exhibit 95, pages 52:10-54:20, I confirmed that Ms. Amens should have amended her Complaint against Adam Lisk to the $650,000, but that she did not, and it cost me everything. This section also confirmed with my Exhibit 17, my December 2020 Motion for Summary Judgment, that the loans had been repaid and that there was no conflict of interest, that Mr. Meador and his client had committed fraud on the court, claiming they still existed. I confirmed on page 35:8-37 that the loans awarded to me had been repaid and that Judge Hill had agreed to review Mr. Meador's Affidavit and my Response, which included my Exhibit 11 confirming that the loans had been repaid, Lauara.

During the time Mr. Meador was pressuring the Court to disqualify Ms. Amens for the purported conflict of interest that she was going after the loans to Lauara's son, Adam Lisk, Ms. Amens never disclosed that the loans to Adam had been repaid. On April 25, 2019, Mr. Meador filed a Motion to Disqualify Counsel, Ms. Amens. See Exhibit 22. It contained Ms. Amens' original Verified Complaint as Exhibit B. Exhibit B confirmed on page 7, No. 30, that the loans to Lauara's son, Adam, were $265,000. At the time, that was all I could find. Lauara had taken all our financial records when she left. On May 8, 2019, Ms. Amens hurriedly filed Substitution of Attorney into Federal Case, substituting Aaron Bushur in her place, going after the loans to Adam. See Exhibit 26. By this time, Ms. Amens knew the loans to Adam were $650,000, not $265,000. On June 5, 2019, Ms. Amens filed Opposition for Motion for disqualification. See Exhibit 27. On page 2:26-

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 99

3:8, Ms. Amens confirmed that during Lauara's deposition, she had discovered that the loans were $650,000 and included that deposition as her Exhibit 1. Ms. Amens had 14 days to file her Opposition. She took six weeks. Ms. Amens was not protecting me. She wanted out to protect her practice from a malpractice claim and to join at the feeding trough, going after my assets.

Ms. Amens' Supplemental Information in Support of Motion, Exhibit 88, her purported billing confirms that I was not shown what Ms. Amens was billing for, that I was just billed, and paid the bills. Ms. Amens' actions are fraudulent.

By this time, Ms. Amens knew the loans to Adam had been repaid to Lauara and that those loans totaled $650,000. She declined to amend the Federal Complaint or have Mr. Bushur amend it to name Lauara as the defendant and increase the amount to $650,000. Ms. Amens declined to bring Mr. Bushur up to speed. Ms. Amens claims in her October 15, 2025, Affidavit are false. That affidavit restarted the statute of limitations.

Ms. Amens had decided she was quitting. See Exhibit 61. She had decided to join the gravy train, milking me for whatever she could. Ms. Amens was colluding with Lauara and her attorney.

Ms. Amens's actions cost me millions. Her actions resulted in dragging the divorce on, with me being sanctioned and losing everything that I had taken my life to accumulate.

The statute of limitations of a new cause of action did not begin until I discovered a violation. This was the case when Lauara disclosed the documents in violation of HIPAA for the hearing, when Ms. Amens entered a false affidavit for the 10/16/2025 hearing, and Ms. Amens committed perjury at the hearing. In Nevada, the statute of limitations can be tolled (paused) by the discovery rule for the attorney who conceals their negligent act(s).

Judge Hill knew Ms. Amens had concealed the HIPAA information and still allowed the information, thus violating my due process.

Ms. Amens did not credit Mr. Heideman's payments on my bill. See Exhibit 88.7, 09/16/2019, the first payment to Ms. Amens by Mr. Heideman, which is not shown on Ms. Amens's Supplemental Information provided to the Court in October 2025. I paid Mr. Heideman, who paid Ms. Amens. Ms. Amens' testimony was fraud on the court. Ms. Amens colluded with Lauara and her attorneys against me to extort money from me. The statute of limitations on filing malpractice or a new cause of action did not begin until her fraud on the court, Ms. Amens' testifying to her filing her Supplemental Information to include the Heideman payments, and the discovery of the documents that violated HIPAA.

A review of the record confirms that Ms. Amens quit representing me when I exposed that she had gotten me sued in North Carolina, and she began to threaten to quit. Her billing violates Rules 11 and 60.

**Ms. Amens states at the end of her October 15, 2025, affidavit,**

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 101

> Undersigned worked diligently to present a thorough and detailed case. At the time of withdrawal, the case was ready for trial and new counsel had been retained and confirmed that he was up to speed with where the case stood.

This statement by Ms. Amens is an intentional lie. At the 10/16/2025 hearing, Ms. Amens testified that we had an agreement that she was no longer my attorney, no longer going to be working together, and that she **kinda represented me while I approached Mr. Heideman**. This is a lie. See Exhibit 95, 10/16/2025 hearing transcripts pages 72:11-93:5. How do you **"kinda represent"** someone by doing nothing and billing more than when you were representing them? I had retained Heideman and asked her to immediately quit and inform the Court.

Ms. Amens was working with the North Carolina attorneys and knew the loans to Adam had been repaid to Lauara. My Exhibit 9's Exhibit 7 confirmed that I had discovered before my North Carolina deposition that Lauara had been repaid the loans, and that the loans were now Lauara's debt to me, not her son Adam's. See Exhibit 9's Exhibit 7, including my deposition. Lauara's North Carolina deposition, also in that exhibit, confirms that Lauara still insisted that the loans existed. Exhibit 9's Exhibit K has the contracts signed by Lauara and Adam selling the creditor debt. Ms. Amens was provided this information prior to filing her October 15, 2025, Affidavit with the Court. See Exhibit 90.

Ms. Amens's statement in her October 15, 2025, Affidavit was made knowing it was a lie. Ms. Amens had allowed Lauara's discovery in violation HIPAA. When she

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 102

discovered that the loans to Adam were $650,000, and that I had discovered they had been repaid to Lauara, Ms. Amens declined to amend the Federal Complaint, which was against Adam Lisk, replacing Adam with Lauara and increasing the loan amounts to $650,000. Both she and Mr. Bushur declined to notify the Court that loans had been repaid.

Ms. Amens declined to have Mr. Bushur amend the Federal Complaint or inform the Court that Lauara had been repaid the loans. Ms. Amens's claim that the case was ready for trial is fraud on the court and an attempt to steal $35,000 from me.

Had Ms. Amens informed the Court that Lauara had been repaid the loans, this case would have taken a drastic turn in my favor in 2019. She did not. Instead, she clouded with the Defendant and bellied up to their feeding trough to get a share of my estate.

The statute of limitations and a new cause of action began the day Ms. Amens filed her Affidavit on October 15, 2025, which included, among other things, fabricated attorney fees that were unsupported by documentation confirming what the charges were for. See Exhibit 70.

At the October 14-16 Hearing, Ms. Amens stated that I had sued her and that the case was dismissed. Ms. Amens intentionally misled the Court. I filed suit against Ms. Amens in the Nevada Eleventh Judicial District Court for her malpractice in handling my case. See Exhibit 87. Like Judge Hill and the Fourth Judicial District Court, the Eleventh Judicial District Court was rejecting my pleadings. See Exhibit 87, pages 1-3.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 103

Defendants' Response to Plaintiff's Request RE Rejection of Filings and Change of Venue. To avoid ongoing violations of my due process, I filed a Notice of Voluntary Dismissal... prior to any Defendant Answering the Complaint. See Exhibit 87, pages 4-6. The Court entered the Voluntary Dismissal. See Exhibit 87, pages 7-9.

Ms. Amens's insinuation that the motion to dismiss was for any other reason was made knowing it was false.

The courts have held that withdrawal pursuant to both RPC 1.16(a) and (b) is limited by RPC 1.16 (c), which states that "[w]hen required to do so by rule or when ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." RPC 1.16(c) recognizes the notion that "even if withdrawal is otherwise appropriate, other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's resources and efficiency." *Haines v. Liggett Group, Inc.,* 814 F.Supp. at 423.

Courts have held, "An attorney does not have the right to withdraw as counsel for his or her client at his or her whim. "A sudden disenchantment with a client or a cause is no basis for withdrawal." *Rusinow v. Kamara,* (D.N.J. 1996) 920 F. Supp. at 72, An attorney has certain obligations and duties to a client once representation is undertaken, and the obligations in this respect "do not evaporate because the case becomes more complicated or work more arduous or a retainer not as profitable as first contemplated or imagined." Kriegsman, 150 N.J. Super. at 479-8.

In the case of *McDaniel v. Sankyo, the U. S. District Court for the District of New*

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 104

*Jersey Camden Vicinage*(Doc. No. 4, 6) 08/15/18, the court stated: As a result, the ruling in Kriegsman to deny the Motion to Withdraw is even more applicable in this case. While it will undoubtedly be expensive to litigate the case, this is a risk counsel undertook when they chose to represent the plaintiff. Haines, 814 F. Supp. at 427. Counsel's obligations to their client do not evaporate when counsel's economic interests are at risk. As noted in Haines, the firm] knowingly assumed the risk that its arrangement with [the plaintiff] would not match its initial prediction of costs and returns." 814 F. Supp. at 427. Further, "the needs and obligations dictate that [the law firm] not be permitted to close the door to the courts which it has opened.  Counsel must accept the good with the bad.

The United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division (12 Aug 1988) 12 ... In re Pair, supra, 77 B.R. at 978 (citing *Kriegsman v. re Pair*, citing *Kriegsman v. Kriegsman*, 150 N.J. Super, held that [A]n attorney has certain obligations and duties to a client once representation is undertaken. These obligations do not evaporate because the case becomes more complicated or the work more arduous, or the retainer not as profitable as first contemplated or imagined. Attorneys must never lose sight of the fact that `the profession is a branch of the administration of justice and not a mere money-getting trade.' As Canon 44 of the Canons of Professional Ethics so appropriately states: `The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect.

The Texas Court of Appeals stated in its review of *Lee v. Daniels::* 1964::
COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 105

Supreme Court of Texas 377 S.W.2d 618 (1964) *As a professional, an attorney's relationship to his client is not to be guided by " the morals of the marketplace." Otherwise, we relegate our profession to an ordinary business relationship.*

Once an attorney "agrees to undertake the representation of a client, he or she is under an obligation to see the work through to completion." *Id.* at 424; *see also Streetman v. Lynaugh,* <u>674 F.Supp. 229</u>, 234 (E.D.Tex.1987).

Ms. Amens' practice was and still is merely a money-making machine with little regard for clients, including me. I was thrown aside while she refused to quit, refused to stop billing, and refused to provide discovery. She joined the Defendant at her and her attorneys' feeding trough, draining my account.

**Bribes**

Exhibits 104, 105 and Exhibit 9's Exhibits 7 and K confirm the sources of the funds Lauara, and her attorney would have used to pay bribes to obtain their fraudulent judgment from judges Estes and Hill, and other officers of the court, including her and my attorneys.

**Responsibility of the State of Nevada for the Misconduct of its Courts and Officers of the Court.**

*The State of Nevada is responsible for the misconduct of its courts and officers of the courts through the Nevada Commission on Judicial Discipline. The commission was created by a Constitutional amendment and is composed of judges, attorneys, and lay persons. It has the power to discipline or caution*

*judicial officials for failure to adhere to the Revised Nevada Code of Judicial Conduct.*

I have filed numerous complaints against these individuals with the Nevada Judicial Commission, including complaint Nos. 2025-257, 2025-214, 2025-212, 2025-213, 2020-164, 20222-091, 2023-196, 2012-071, 2023-134, 2023-105, 2023-104, and others. The Commission has failed to protect me from the misconduct of the courts and from the officers of the courts. It has failed to discipline the courts or the officers of the courts for their misconduct, which includes criminal misconduct. See Exhibit 93. The Nevada Judicial Commission quietly covered up the misconduct of Judge Estes without a single report or finding being provided to me. The Judicial Commission declined to include my complaint against the Nevada Supreme Court for violations of NRAP Rules 25 and 32. It appears the Commission is in the process of doing the same with Judge Riggs and Judge Hill. See Exhibit 93.

*The State of Nevada is responsible for regulating the practice of law in the state and ensuring that attorneys adhere to the Rules of Professional Conduct. The Nevada Supreme Court has the authority to impose sanctions for violations of these rules, including disbarment, suspension, or public reprimand. The State Bar of Nevada, Office of Bar Counsel, is responsible for investigating and processing lawyer discipline cases filed against attorneys practicing in Nevada. If a violation is deemed to have occurred, a formal complaint alleging a violation of the Nevada Rules of Professional Conduct is filed, and the case is reviewed by the Nevada Supreme Court.*

I have filed numerous complaints with the Nevada State Bar for the misconduct of the attorneys mentioned above.  See Exhibit 93. In the beginning, I filed Complaints against Andrew Wasilewski, Debra Amens, Aaron Bushur, Shawn Meador… Without

informing me, the State Bar dismissed every complaint I made, stating **Dismissed – issues heard and dismissed by court."** See Exhibit 93. The court and the Nevada State Bar handle disciplinary matters separately. You must file a complaint against an attorney with the State Bar of Nevada for professional misconduct, and you can file a separate complaint with the Judicial Discipline Commission against a judicial officer for ethical violations. **The Court has no authority to hear and dismiss a Complaint**. The Nevada State Bar declined to list the original complaints against Debra Amens and Aaron Bushur, see Exhibits 100 and 101, confirming that they never as much as looked at them. The State Bar has covered up those complaints and declined to act, declined to protect me from the misconduct of the attorneys, officers of the court. The Nevada State Bar is bound to keep a complainant up to date on the progress of his complaint. It did not with any of the complaints. The Nevada Supreme Court allowed the misconduct of the attorneys of Woodburn & Wedge by falsifying Rules NRAP 32 and NRAP 25 to avoid ruling against the attorney's fraud. I was forced to file complaints with law enforcement. The only law enforcement branch that would act was the Clark County Attorney's Office, which filed a complaint against my first attorney, Andrew Wasilewski, after the Nevada Bar had refused to investigate it. See Exhibit 94. The Nevada State Bar refused and colluded with Lauara and her attorneys in refusing to obtain justice on my behalf. Following his conviction, Mr. Wasilewski voluntarily reported his crime to the Nevada Supreme Court and the Nevada State Bar parachuted into the front of the complaint against Mr. Wasilewski, taking credit for Clark County's prosecution of Mr. Wasilewski.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 108

# ARGUMENT

1) The company cash that Lauara and Mr. Meador claimed Lauara took home changed at least six times---beginning at less than $100,000 then rising to $240,000. They then changed to $154,493 in Lauara's discovery LS000312-378, Exhibit 102. They then changed again to $78,000 with Lauara and her attorney claiming they were not loans, but money Lauara brought home to pay the attorney fees Lauara caused when she was sued by US Welding. Mr. Meador then falsely claimed the $78,000 was addressed in the Divorce Decree. When I exposed his lie he claimed he made a mistake that the amount was both $78,000 and $200,000. Exhibit 31.7 The **2020 Motion for Summary Judgment**, Exhibits 17-21, page 78, shows the debt to US Welding, which is the attorney fees we paid from the joint account shown as Exhibit 62. My discovery SNY001042-SNY001068 confirms $50,613,82. I was unable to complete the total because Lauara refused to disclose all the 2008 and previous check ledgers and other documentation. The US Welding suit was around 2008. The cash Lauara claims to have taken was from 2004 through 2016. See my Exhibit 19, the 2020, Motion for Summary Judgment'... Exhibit 37 (Exhibit 37 begins on page 108 of **Exhibit 19 Motion for Summary Judgment Part 3**, provided with this document). Exhibit 37 begins a little over halfway down. The page numbered 4 on the second copy of the document confirms the document was created on 10/6/2017, which was a few months after Lauara began secretly seeing her attorney, Mr. Meador. The timeline does not match.

2) Judge Estes refused to consider any of the documentation furnished at the

divorce trial constituting a violation of my due process and civil rights.

3)   Without my knowledge that it existed, the Divorce Decree was drafted by Mr. Meador, from his fraudulent Trial Statement, prepared and entered a few days prior to trial. The fraud was allowed and never challenged by either Judge Estes or my attorney, Mr. Bushur. Mr. Meador's actions violated NRCP Rules 11 and 60 and entitle me to sanctions.

4)   My witness, Casey Snyder, was not called as a witness because Mr. Bushur declined to follow through on his promise to call him. Mr. Bushur violated my civil rights and due process.

5)   My Expert Witness was not allowed to testify following Mr. Meador's false statements against her. My attorney, Mr. Bushur, declined to protect her, and Judge Estes declined to allow her testimony following his confirmation of how qualified she was. Mr. Meador's actions violated NRCP Rules 11 and 60, entitling me to sanctions against him.

6)   I was not injured during the marriage, requiring me to miss work and collect workers' compensation. To steal hundreds of thousands of dollars from me, Lauara entered as an exhibit that violated HIPAA regulations, a Stipulated Agreement, and insisted the Stipulated Agreement showed that I had missed work during the marriage from a work injury and that for the injury, I had collected workers' compensation. It did

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 110

not. I confirmed that the Stipulated Agreement confirmed I was awarded money for the insurer's bad faith, not workers' compensation for missed work. My Exhibit 60 confirmed that the injury occurred in 1986, prior to the marriage. I never missed work during the marriage for an injury. Judge Hill declined to allow my exhibits that also confirmed that I missed no work, my housing receipts, and my payroll records. Lauara and Mr. Meador violated NRCP Rules 11 and 60, entitling me to sanctions against them.

7) I did not pay my attorney, Mr. Heideman, with joint funds; he did not represent me, nor were there orders preventing him from representing me. He filed a motion to be allowed to represent both me and my son, Casey. Lauara and Mr. Meador's false claim was made to steal thousands and thousands from me. They were violations of NTCP Rules 11 and 60, and entitle me to sanctions against Lauara and Mr. Meador.

8) There were no joint funds in my separate account. The claim by Lauara and her attorneys that there were violations of NRCP Rules 11 and 60 entitling me to sanctions.

9) Lauara was secretly repaid the loans to her son, Adam, with interest. See Exhibit 9's Exhibit 7 and Exhibit K and Exhibit Z. Also see Exhibits 104 and 105. Lauara falsely claimed the loans had never been repaid. She had the court award the loans to me at the value I set. She and her attorneys owe me the present value of those loans, plus punitive damages for their violations of NRCP Rules 1a and 60.

10) To steal thousands from me, Lauara provided false testimony that the loans Lauara and I made to Mountain West Inc. to purchase the company from her ex-husband were never repaid. For her violations of NRCP Rules 11 and 60, Lauara owes me the

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 111

loans value plus interest.

11) Lauara and her attorneys drafted, entered then intentionally violated the Temporary Financial Restraining Order to steal hundreds of thousands from me in the Community funds in Lauara's IRAs. They owe me half the amount of Lauara's IRAs, $312,000, and my $180,000, plus interest, etc.

12) The original $260,000 of home improvements to my home, claimed by Lauara, were fabricated and did not exist. The false improvements violated NRCP Rules 11 and 60 and were fabricated to steal thousands from me. The second revised claim of home improvements to my home by Lauara, her Exhibit W, was different from the first and fabricated. Both were designed to steal funds from me for improvements that did not exist and could not be proven. It should be noted that maintenance is not a home improvement. It is to maintain the property at its original value.

13) The loans to Adam had been repaid to Lauara. The purported conflict of interest that my attorneys were representing both Lauara and me in going after the loans was fraud and violated NRCP Rules 11 and 60. Even more disturbing, my attorneys, Ms. Amens and Mr. Bushur, knew the loans had been repaid to Lauara, and because there were no loans, there was no conflict. They should have amended the Federal Complaint, replacing Adam with Lauara as the defendant. Everyone knew that with Lauara as the defendant in the Federal Complaint, there could have been no conflict because my attorneys would be going after Lauara, not representing her in going after the loans.

Everyone but me was in on the fix.

14)    Every Nevada judge, every Nevada court, and its employees and all attorneys involved in the case, including mine, were in on the fixed trial.

15)    The Fourth Judicial District Court allowed every lie by Lauara and her attorneys, every exhibit they entered, allowed every change to their testimony, allowed every change in their purported facts, and allowed their fabricated evidence and false affidavits. The Court disallowed every Exhibit I tried to enter and disallowed every objection I made to the false statements by Lauara and her attorneys.

Judge Estes, Judge Hill, and Judge Riggs *held a deep-seated favoritism and antagonism that made a fair judgment impossible*. All should have recused themselves pursuant to NCJC Rule 2.11(A)(1). See Nevada Supreme Court in *Canarelli v. Eight District Court,* March 2022. All knew about this ruling. I cited it in my Brief to the October 11, 2023, hearing. Judge Hill's antagonistic treatment of me, including refusing to allow my exhibits and improperly strengthening the vexatious litigant designation against me to disallow all my pleadings, and allowing anything the defendants presented. me confirms I was not allowed a fair hearing. confirmed Judge Hill knew she lacked jurisdiction and proceeded anyway. She has no immunity.

The United States Court of Appeals for the Ninth Circuit reversed the Circuit Court's ruling in *Waco v. Baltad*, 934 F.2d 214 (1991). The court determined that Judge Mireles was not immune from suit. The Supreme Court stated,

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 113

Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227 -229; *Stump v. Sparkman*, 435 U.S., at 360 . [502 U.S. 9, 12]  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Id., at 356-357; *Bradley v. Fisher*, 13 Wall., at 351.

Neither Judge Estes nor Judge Hill is immune from damages resulting from their actions in this case.

16)     The vexatious litigant determinations against me allowed the Defendants to continue fabricating evidence against me without me being able to respond. Judge Hill's last amended vexatious designation, followed by her agreement to allow Mr. Meador to file another Wilfong Affidavit, was a signal to Mr. Meador that whatever he fabricated, no matter how outrageous, would be considered by the district court as an irrefutable fact.

17)     Attorney Shawn B. Meador admitted that the original attorneys awarded by the district court were improper because he had not entered a Wilfong Affidavit. To correct the oversight, he was allowed to file two Wilfong Affidavits for the 10/14-16/2025 hearing in order to be awarded attorney fees, including his increased fees. I have confirmed that those two Wilfong Affidavits were filled with several lies and violations of NRCP Rules 11 and 60. Therefore, Mr. Meador is not entitled to any attorneys, and I am entitled to sanctions against him and Lauara

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 114

18)    My Wilfong Affidavit provided herewith is supported by the argument and exhibits in this pleading. Therefore, I am entitled to and should be awarded my past and future attorney fees.

**"Lies can only last so long. Eventually, the truth will come out."** Alexei Navalny.

To date, Lauara and her attorneys' lies have been exposed, and the truth has come out. However, to protect the attorneys and Judge Estes and the others involved in the fixed trial, Judges Estes, Hill, Riggs, and others buried the truth with one vexatious designation after the other. All violated the decisions in *Strand* and *Allison*.

What started as a fixed trial between Lauara, her attorneys, Judge Estes, and my attorneys, evolved into collusion involving other judges, attorneys, and courts to cover the criminal actions of Judge Estes and to prevent me from further exposing that fraud.

I.    **Collusion between the Fourth Judicial District Court, Judge Robert Estes, the Court Clerk's Office, Defendant Lauara Ann Lisk, Defendant's attorneys, Woodburn & Wedge, Defendant's North Carolina Family, including Adam Lisk, Ryan Lisk, Deniese Lisk, attorney Debra Amens, and attorney Aaron Bushur.**

Exhibit 37.1 was my prepared testimony and exhibits for the October 14-16 Hearing before Judge Kristen Hill. Pages 11-15, and pages 30-83, and the referenced documentation/exhibits, confirm the Divorce Decree from the August 2020 divorce trial did not result from the documents or testimony at trial but from Lauara's fraudulent Trial Statement entered a few days prior to trial. The documentation confirms that the trial was

fixed. It also confirms the fraud and participation of my attorneys, Debra Amens and Aaron Bushur, cited below.

The documents confirm the fraud by Lauara's North Carolina family, Adam Lisk, Ryan Lisk, and Denise Lisk, their fraudulent affidavits, and their fraudulent testimony at their depositions in regards to the loans to Lauara's son, Adam Lisk. It confirms that Lauara's family used the bankruptcy of Adam Lisk's LLC to fraudulently hide the money owed me.

Lauara's and her family's fraud began in or around 2004 and continues today. A RICO Action could be brought against the Lauara, her family, her attorneys, and her attorneys' firms for their involvement in the cover-up of the fraud confirmed in Exhibit 37.1.

The collusion included Judge Hill amending the vexatious designation against me to prevent me from responding to or objecting to any of the Defendants' pleadings, then following Mr. Meador's admitting that Judge Estes had improperly signed the divorce decree, which included awarding Lauara attorneys' fees without requiring him to file a Wilfong Affidavit. This is cited above and referenced Exhibit 96, hearing transcript 11/15/2025 page 143:21-147:14. Mr. Meador admitted the divorce decree was improper.

Mr. Meador filed, and the court entered his second Wilfong Affidavit following the October 14-16, 2025, hearing. See Exhibit 84. Judge Hill's order allowed Mr. Meador's statements in his affidavits to be allowed even when the court knew they were fraudulent. In a tit for tat appreciation for Judge Hill's amended vexatious designation,

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 116

Mr. Meador fraudulently stated in his second Wilfong affidavit that I had entered no exhibits for the October 14-16, 2025, hearing for consideration. Like the trial and the hearings that followed, including the Order to Show Cause Hearings, the October 14-16, 2025, hearing was fixed, the original divorce decree was invalid, and any decree entered subsequent to it by Judge Hill will be invalid.

**Debra Amens' Collusion**

Ms. Amens' fraudulent testimony and her fraud of allowing Lauara's documents violating HIPAA into discovery produced by Lauara that was first provided at the October 14-16 Hearing set the time beginning the statute of limitations at the October 14-16 Hearing.

When Ms. Amens' mistake of having Lauara served in North Carolina, doomed my claims in North Carolina and the divorce in Nevada, she refused to engage her malpractice insurer to cover the damages she caused me. Instead, she began threatening to quit. She talked me into firing her because she was no longer working on my behalf.

At first, she accepted her firing and quit working on my behalf. Ten days later, to protect herself from a claim against her malpractice insurer, she began colluding with Lauara and her attorneys against me. She threatened to destroy my credibility with the Court unless I started paying her again. She quit working on my behalf, allowed Lauara to file discovery that violated HIPAA, and declined to provide my discovery to Lauara. Ms. Amens then filed a Motion to Withdraw with false statements and included with it an altered email between her and me that made it appear that I had agreed to allow her

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 117

continued representation while she did nothing. The email violated the attorney-client

privilege. Ms. Amens' collusion included declining to amend the Federal Complaint from

$260,000 to $650,000 when we discovered the increased amount of the loans to Lauara's

son, Adam Lisk. Ms. Amens declined to add Lauara as the defendant whom I had shown

had been repaid the loans in place of her son, Adam. The loans to Adam had been repaid.

There was no conflict of interest because the loans had been repaid. Ms. Amens was

aware that if Lauara had been added as the defendant in the Federal Case going after the

loans, that Lauara and Mr. Meador's already false claim of a conflict of interest for

representing both of us in going after the loans would vanish. Instead of amending the

Federal Complaint, Ms. Amens chose to collude with Lauara and the Court, quit, and

allow Lauara and Mr. Meador to continue their lie.

Ms. Amens took the easy way out to prevent having to file a complaint against

her malpractice insurer, and in doing so, doomed my chances in the divorce. Ms. Amens

must be ordered to pay for my damages.

Without providing me with Lauara's discovery used for the purported

improvements to my property, Ms. Amens knowingly allowed fraudulent discovery

against me that contained no receipts, only unsupported credit card invoices. To bring the

original fraudulent claim of $260,000 in home improvements, Lauara added to the

document cancelled checks that had not been disclosed and had no Bates numbers.

Had Ms. Amens amended the Federal Complaint against Adam Lisk as she

claimed, increasing the claim to $650,000 and replacing Adam with Lauara who had been

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 118

repaid the loans, 1) Defendant could not have continued with the lie that there was a conflict of interest, 2) my life would not have been destroyed, and 3) six years later I would still be trying to get justice. The divorce would have been decided in my favor at that point. Instead, she filed a motion to withdraw and colluded with Lauara.

Lauara and her attorney, Mr. Meador, who had finished their portion of the hearing on 10/14-16, 2025, on 10/15/2025, stayed over on 10/16/2026 and assisted Ms. Amens in her argument, further confirming the collusion between them, Ms. Amens, and the Court.

The extent of Ms. Amens' fraud and collusion is further confirmed in my Exhibit 101.

**Aaron Bushur Collusion**

Mr. Bushur's collusion included declining to amend the Federal Complaint from $260,000 to $650,000 when I disclosed the increased amount of the loans to Lauara's son, Adam Lisk. Mr. Bushur declined to amend the complaint naming Lauara as the defendant when I confirmed that she had been repaid the loans in place of her son, Adam. With Lauara as the defendant, there was no possible way there could have been a conflict.

The loans had been repaid to Lauara. Lauara's claim that there was a conflict of interest for loans that no longer existed was fraud on the court. Mr. Bushur declined to ask Lauara a single question at trial about her being repaid the loans or to refute at trial Lauara's testimony that the loans still existed.

Against my adamant instructions not to have the loans awarded to me, Mr. Bushur allowed the Court to award them to me.

Mr. Bushur declined to provide me with any discovery provided by Lauara following my firing of Ms. Amens, including the purported improvements to my property. Without providing me with Lauara's discovery used for the purported improvements to my property, Mr. Bushur knowingly allowed the fraudulent discovery against me that contained no receipts but only unsupported credit card invoices.

To bring the fraudulent claim of $260,000 in home improvements that Lauara claimed in her Trial Statement and at trial, Lauara added to the document cancelled checks that had not been disclosed. Mr. Bushur declined to provide this document to me or refute it at trial.

To prevent me from fully understanding the extent of Lauara and her attorneys' fraud, Mr. Bushur declined to provide me a copy of Lauara's fraudulent Trial Statement, drafted by Mr. Meador, that was used to draft the Divorce Decree, or to argue against it at or following trial. Mr. Bushur allowed the Divorce Decree to be drafted from this document, which I did not obtain for several months following the trial.

Mr. Bushur declined to enter a single discovery document for me despite being offered and instructed to file several. See. Exhibits 37.1 and Exhibit 101, my complaint against Mr. Bushur. Exhibit 101 confirms the extent of the fraud by Mr. Bushur

Though he agreed to and made preparations to call my son Casey Snyder as a witness, Mr. Bushur declined.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 120

Mr. Bushur declined to protect my expert witness and allowed her to be disqualified without objection. Mr. Bushur was a part of the divorce trial fix between the Court and Lauara's attorneys.

I paid Mr. Bushur for completing the Federal Complaint against Adam that was transferred to him by Ms. Amens. Mr. Bushur hurriedly withdrew at the end of the trial without amending or completing the Federal Complaint against Adam Lisk for the loans that Lauara and I had made him. I was forced to take it over but prevented from amending it to show the amount was $650,000 or changing the defendant to Lauara. See Exhibit 64.

Mr. Bushur knew Lauara had been repaid the loans to her son, Adam. See Exhibit 101, No. 12 and No. 13, and the 7/31/2020 email to Mr. Bushur. Had Mr. Bushur amended the Federal Complaint against Adam Lisk as I instructed, increasing the claim to $650,000 and replacing Adam with Lauara who had been repaid the loans, 1) Defendant could not have continued with the lie that there was a conflict of interest, 2) my life would not have been destroyed, and 3) six years later I would still not be trying to get justice.

Mr. Bushur colluded with Lauara, her attorneys, and the Court in a fixed trial. See Exhibit 101. Mr. Bushur is judgment proof. He carries no insurance and regularly takes out a bankruptcy to escape responsibility. The most I could expect going after him is his disbarment.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 121

## II. Collusion, Improper Vexatious Designation Sixth Judicial District Court, Utah, Defendant Lauara Lisk, her Utah Attorney, Matthew Howell, Filmore Spencer, Lauara's Nevada attorneys, and Woodburn & Wedge

Knowing the Divorce Decree and North Carolina Judgments were obtained with fraud, and that the Nevada Divorce Decree was drafted by Mr. Meador in his Trial Statement and entered a few days prior to trial, they provided it to Lauara's Utah attorney, Matthew Howell, for entry in Utah. Mr. Howell, knowing it was the product of a fixed fraudulent trial, entered the foreign Judgment in Utah.

Following my prevailing on appeal, the Judgments should have been dropped. They were not. Instead, Mr. Howell drafted and obtained the first vexatious designation against me. Every vexatious designation that followed was based upon Mr. Howell's original Utah vexatious designation. Utah Rule of Civil Procedure 83 and the Utah Court of Appeals case of *Strand v. Nupetco*… cited above, and upheld by the U.S. Supreme Court, confirmed the designation was improper. The *Allison v. Court Clerks*…Nevada case cited above confirmed that the vexatious designations in the Fourth and Second Judicial District Courts of Nevada were improper.

## III. Collusion, Improper Vexatious Designation Fourth Judicial District Court, Nevada, Judge Kriston N. Hill, The Fourth Judicial District Court, Defendant Lauara Lisk, her attorneys, including Seth Adams, Shawn Meador, and Woodburn & Wedge.

See Exhibit 37.1, my testimony, pages 15, beginning with **I'm Going to Cite Corroborating Confirmation**… through page 20, which is my testimony for the

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 122

October 14-16, 2025, hearing on Case No. DR-MD-17-757. The document confirms that

Lauara's Nevada attorney, Seth Adams, citing Mr. Howell's Utah vexatious designation,

drafted and obtained the motion to have me declared vexatious in the Nevada 4th District

Court. Mr. Adam included his supporting affidavit. Mr. Adams and Jose Tafoya, who

were present at the June 13, 2025, hearing in the 2nd District Court in Reno, Nevada,

represented the defendants in the Case No. DC-CV-23-151. The defendants included

Lauara, Woodburn and Wedge, and Mr. Meador. All agreed that the vexatious

designation obtained by Mr. Adams in Nevada's 4th Judicial District Court, and all the

previous vexatious designations against me, were improper. All attorneys present, and

Judge Tammy Riggs, agreed that the previous vexatious designations were improper.

### IV.  Collusion, Improper Vexatious Designation Second Judicial District Court, Nevada, Judge Tammy Riggs, The Second Judicial District Court, attorneys Seth Adam, Jose Tafoya, and Matthew Howell.

See Exhibit 37.1, my testimony, pages 15, beginning with **I'm Going to Cite**

**Corroborating Confirmation**… through page 20, which is my testimony for the

October 14-16, 2025, hearing on Case No. DR-MD-17-757. The document confirms that

Lauara's Utah attorney, Mr. Howell's attorney, Adam McMillen, Lauara's Nevada

attorney, Mr. Adams attorney, who obtained the Nevada vexatious designation based

upon Mr. Howell's Utah designation, and Lauara's second attorney, Jose Tafoya, were

present at the May 13, 2025, Reno, Nevada's Second Judicial District Court, Case No.

DC-CV-23-151. All agreed with Judge Riggs that all previous vexatious designations

were improper.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 123

Judge Riggs cherry-picked what she claimed allowed the Second Judicial District Court to declare me vexatious. It is noted that all the claims I made in Case No. DC-CV-23-151 were the same as those I made in the divorce, on which I prevailed on appeal. In any court outside of Nevada, I would have prevailed against these individuals. Judge Riggs found me vexatious, stating that my suit against the defendants was made to harass them. You cannot harass a group of thieves who have stolen your entire life's accumulations, destroyed your health, your reputation, and covered up your poisoning. The Order was made in retaliation for exposing Judge Estes and Mr. Meador's criminal acts in obtaining a decree based on fraud on the court.

V.    **Amended Vexatious Designation from the October 14-16, 2025, Nevada Fourth Judicial District Court Hearing, Judge Kriston Hill. The Fourth Judicial District Court, The District Court's Clerk's Office, the Court's attorney, Megan Smith, Lauara Ann Snyder, attorneys Shawn B. Meador and Jose Tafoya.**

Judge Hill and the Fourth Judicial District Court were provided with my Exhibit 37.1, my testimony, pages 15, beginning with **I'm Going to Cite Corroborating Confirmation**… through page 20, which was my testimony for the October 14-16, 2025, hearing on Case No. DR-MD-17-757. The document confirmed that Lauara's Utah attorney, Mr. Howell's attorney, Adam McMillen, citing the vexatious designation obtained by attorney Seth Adams in the Fourth Judicial District Court of Nevada was obtained by citing Mr. Howell's original Utah vexatious designation. It confirmed that Mr. McMillen, Mr. Adams, and Jose Tafoya, who were all present, agreed that it and all the previous vexatious designations against me were improper. Judge Riggs agreed and

cherry-picked what she claimed allowed the Second Judicial District Court to declare me

vexatious. It's noted that all the claims I made in Case No. DC-CV-23-151 were the same

as those I made in the divorce, on which I prevailed on appeal. In any court outside of

Nevada, I would have prevailed against these individuals. Judge Riggs found me

vexatious, stating that my suit against the defendants was made to harass them. You

cannot possibly harass a group of thieves who have stolen your entire life's

accumulations, destroyed your health and reputation, and covered up your poisoning. The

Order was made in retaliation for exposing Judge Estes and Mr. Meador's criminal acts

in obtaining a decree based on fraud on the court.

Though Judge Hill knew her previous vexatious designation against me was

unlawful. She enhanced it by refusing to allow me to fill any response to or objection to a

defendant's motion or pleading, or any pleading of any type. Judge Hill knowingly

allowed all of the Defendants' fraud and allowed Lauara's attorney, Mr. Meador, to file

any future fraudulent documents which the Court would sign off on, including a new

Divorce Decree doubling the attorney fees, which the Court would enter knowing they

were fraudulent. Judge Hill and the Court violated my due process and civil rights.

**VI.** **Collusion, State of Nevada State Bar. The Nevada State Bar Knowingly Improperly Dismissed every Complaint I filed against Attorneys, with the Exception of Andrew Wasilewski, whom the Clark County Attorney's Office had pursued following the Bar's Refusal to investigate. The Bar Declined to Investigate a Single Complaint and Dismissed Everyone Without Notice to Me.**

The Nevada State Bar declined to include or investigate my Complaints against my attorneys, Debra Amens and Aaron Bushur. The Nevada State Bar intentionally violated my civil rights and due process. Though the Nevada State Bar refused to investigate my Complaint against Andrew Wasilewski, it took credit for disbarring him following the Clark County conviction of him for theft. See Exhibits 94, 100, and 101.

Following successfully having the Clark County Attorney's office file charges against my first attorney, Andrew Wasilewski, five years later, in October 2023, the Nevada State Bar took the credit. The Nevada State Bar originally refused to get involved with my complaint against Mr. Wasilewski and would have dropped it like the others had Clark County not pursued the matter. The State Bar, Lauara, her attorneys, the Fourth Judicial District Court, the Second Judicial District Court, their personnel, and Debra Amens are responsible for stealing from me several million which the State Bar and Judicial Commission have allowed and covered up. The Nevada State Bar also colluded with defendants by dismissing all complaints without an investigation and without furnishing me its findings in the way prescribed by its own regulations.

Defendant Seth Adams is an attorney for Lauara, a partner in Woodburn & Wedge, a partner of Shawn B. Meador. Mr. Adams drafted and obtained the vexatious litigant designation against me in the Nevada Fourth Judicial District Court. To have a stronger one entered in the Nevada Second Judicial District Court, he later agreed that the designation he obtained in the Fourth Judicial District Court and all that preceded it were improper. I filed a complaint confirming this with the Nevada State Bar. Mr. Adams

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 126

represents the U.S. District Court, District of Nevada at the Nevada State Bar. Defendants and the Nevada State Bar colluded to improperly dismiss the complaint without going through the proper process, and in violation of my civil rights. Where this Court is represented by defendant, Seth Adams, with the Nevada State Bar, there is an appearance of a conflict of interest. Venue should be changed to the Southern Division.

### VII.    Collusion, the Nevada Judicial Commission, the Defendants, and the State of Nevada Court's

The Nevada Judicial Commission dismissed all complaints against Judge Robert Estes, though Judge Estes was responsible for a fixed trial and stealing millions from me. The Judicial Commission in *Judicial Commission v. Michele Fiore*, convicted Judge Fiore of stealing $70,000 from a fund, not a disabled senior. Judge Michele Fiore was found guilty in federal court of stealing **more than $70,000** in funds that were meant for a memorial statue for two fallen Las Vegas police officers. The Nevada Commission on Judicial Discipline took action to suspend her from her judgeship following her indictment and subsequent conviction based on these federal charges. The Defendants are liable to me for the millions they allowed Judge Estes and Lauara's attorneys to steal from me.

The Nevada Judicial Commission declined to list or investigate my complaint against the Nevada Supreme Court for violating NRAP Rules 25 and 32. It is responsible for my damages.

### VIII.  Collusion, The Utah State Bar, Utah Office of Professional Conduct, With Defendants, the Nevada Courts, the Nevada Judicial Commission, and the Nevada State Bar.

On November 18, 2025, I received a notification from the Utah Office of Professional Conduct, dismissing my Complaint against Matthew Howell for 1) Mr. Howell's purported threat to sue me following my claim that Mr. Howell stole $150,000 from me, and 2) that my claim that Mr. Howell's conduct of having me declared vexatious and that he had just admitted that his original vexatious designation was improper had been brought previously.  See Exhibit 109.

I have never claimed that Mr. Howell made the threat, that he stole $150,000 from me, or that Mr. Howell threatened to sue me for asking him to go before a panel with the Utah Bar to argue the $150,000 I alleged Mr. Howell stole from me. I alleged neither See IV.    Collusion, Improper Vexatious Designation, Second Judicial District Court, Nevada, Judge Tammy Riggs, The Second Judicial District Court, attorneys Seth Adam, Jose Tafoya, and Matthew Howell. That was a new Complaint. The Office of Professional Conduct declined to investigate the claim and provided false facts for dismissing my Complaint. It colluded with Mr. Howell to allow Mr. Howell's theft of millions from me, not the $150,000 that the Bar alleges he threatened to sue me for.

### IX.    Collusion, the Nevada Supreme Court, Woodburn and Wedge, Shawn Meador, Seth Adams, Jose Tafoya.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 128

The Nevada Supreme Court falsified its response to my Request for Review of my December 2020 Motion for Summary Judgment for Violations of Rule 60... by misrepresenting NRAP Rules 25 and 32 to allow the trial fixed by Judge Estes and the defendants, in Case No. DR-MD-17-757.

The Supreme Court covered up the fact that I confirmed prior to trial that Lauara had been repaid the loans to her son, Adam Lisk, and that she and her attorney had continued the lie that the loans still existed and had the district court award them to me, knowing they had been repaid to Lauara.

This is but a fraction of the thefts from me by the above-named individuals, courts, and judges. This matter must be turned over to an impartial Federal law enforcement agency for investigation and the filing of the proper charges.

. Rule 60(b)(3) does not limit the power of a court to . . . set aside a judgement for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action. I brought a proper motion. The standard for setting aside a decree of divorce was met and satisfied in this case. My December 2020 motion, Exhibits 17-21 provided herewith, was timely brought in accordance with the discretion of the district court. See *Petersen v. Petersen*, 105 Nev. 133, 771 P.2d 159 (1989*); Dobson v. Dobson*, 108 Nev. 346, 830 P.2d 1336 (1992) (bringing a motion under NRCP 60(b)(3) is a proper avenue for attacking a void judgment.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 129

In violation of my due process and civil rights, the district court and finally the Nevada Supreme Court improperly allowed the original order to stand, first by dismissing my original 2020 motion and finally my Writ of Mandamus by misapplying NRAP Rules 25 and 32 to allow the fraudulent Order by Judge Estes, which violated my due process. For the private party defendants' acts, and the collusion of the courts in those acts, 1) the decree must be voided, 2) I must be awarded all my costs and attorney fees to this point, 3) I must be awarded treble punitive damages pursuant to NRS 42.005, 4) I must be awarded punitive damages for elder abuse pursuant to NRS 41.1395, and 5) my past and future attorney fees pursuant to my Wilfong Affidavit provided herewith.

## X.    Private Party Defendants' Lauara's Attorney Their Firms, and my Attorney, Debra Amens and her Firm

Lauara's attorneys, Shawn B. Meador, Jose Tafoya, Seth Adams, Matthew Howell, and their firms Woodburn & Wedge and Filmore Spencer, my attorney Debra Amens and her firm. assisted Lauara's fraud, fabricating evidence, filing false affidavits, and violating NRCP Rules 11 and 60, aided and abetted Lauara in violation of NRS 195.020 and the Ninth Circuit Court of Appeals Rule 4.1 Aiding and Abetting (18 U.S.C. § 2(a)). They have obstructed justice in violation of NRS § 197.190 and 18 U.S. Code § 1505. For their unlawful acts, these private party defendants are obligated for actual damages, including all my costs and attorney fees confirmed herein, treble punitive damages pursuant to NRS 42.005, Elder abuse damages pursuant to NRS 41.1395, plus a new divorce trial to determine the other sums, plus my costs and attorneys' fees going forward.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 130

## JOINT PARTICIPANTS/ACTORS:

All Defendants acted in collusion as "joint participants", the private parties entered fabricated evidence, and the state actors, with the knowledge that the evidence was fabricated, acted and ruled upon that fabricated evidence in ruling against me.

The Fifth Circuit found the attorneys could be held liable as state actors, noting that private parties can be deemed state actors if they were "joint participants" with a government official in the unlawful action. *Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005). The private parties in this case are therefore to be treated as government officials without immunity. The *Ballard* court held that the attorneys conspired together and that Judge Lambert provided "significant aid" to the attorneys in their effort. *See Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. The *Ballard* court confirmed Ballard satisfied the requirements pursuant to Rule 12(b) to prevent the dismissal of his claims by the state district court.

The Ninth Circuit recognizes at least four different criteria or tests to evaluate whether a private actor has engaged in "significant" state action: (1) public function, (2) joint action, (3) compulsion or coercion, and (4) governmental nexus. *Kirtley v. Rainey* ,326F.3d1088,1092; see also *Sutton*, 192 F. 3d at 835-36; *Johnson v. Knowles*, 113F.3d1114, 118, (9th Cir. 1996); *Howerton*, 708F.2d at 382-83. In *Brunette v. Humane Society of Ventura County*, 294 F. 3d 1205 (9th Cir. 2002), the court potentially expanded those criteria by applying what it called the symbiotic relationship test. Satisfaction of any one of the tests is sufficient to find state action by a private actor. *Lee v. Katz,* 276 F.3d 550, at 554 (9th Cir.. 2002).

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 131

This case fits all the criteria to find the private actors are responsible for my damages. Given the fact that my case was dismissed based upon evidence the judges knew was fabricated and had colluded with the private parties, in a fair assessment of my Complaint, I enjoyed the probability of prevailing. My Complaints were improperly dismissed by Judges Estes and Hill.

This Court has jurisdiction over Judge Riggs, Judge Hill, and Judge Estes's improper allowance of the Defendants' use of fabricated evidence that violated NRS 199.210. There can be no question that Judge Riggs, Judge Hill, and Judge Estes allowed the fabricated evidence and used it as if it were appropriate in reaching their decisions.

## FABRICATED EVIDENCE:

"Federal courts have repeatedly found that terminating sanctions are appropriate when a party commits the cardinal sin of litigation since "fabricating evidence has been referred to as the **most egregious misconduct** which justifies a finding of fraud upon the Court." *Kenno v. Colorado's Governor's Off. of Info. Tech.*, 2021 WL 2682619, at *19 (D. Colo. June 30, 2021).

"A plaintiff can prove deliberate fabrication in several ways. Most basically, a plaintiff can produce direct evidence of deliberate fabrication. Alternatively, a plaintiff can produce circumstantial evidence related to a defendant's motive." *Caldwell, v. City of S.F.* 889 F.3d at p. 1112 (9th Cir. 2018).

"[T]here is no such thing as a minor amount of actionable perjury or of false evidence that is somehow permissible. Why? Because government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts. There are no circumstances in a dependency proceeding that would permit government officials to bear false witness ..."
(Hardwick v. County of Orange (9th Cir. 2017) 844 F.3d 1112, 1119.)

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 132

Judge Riggs, Judge Hill's, and Judge Estes's Orders were based upon evidence presented by Defendants that the judges knew was fabricated. The judges aided and abetted the Defendants' criminal fabrication of evidence in violation of NRS 195.020 and NRS 195.030.

There can be no doubt that the Fourth Judicial District Court of Elko, Nevada, its clerks, and judges colluded with Lauara, her attorneys, and the firm of Woodburn & Wedge in allowing these Defendants' fraud and in ruling against me. Following my exposing that Mr. Meador had drafted false affidavits for himself, Lauara, her son, and Lauara's Resident Witness, Mr. Meador continued drafting and entering two false Wilfong Affidavits for the October 14-16, 2025, COA Remand hearing

## PRO SE LITIGANTS:

Pro Se litigants' pleadings are to be construed liberally. The Supreme Court has provided guidance on the general meaning of liberal construction. The best description is simply an exaggerated version of the *Conley* "no set of facts" standard. Each pronouncement of the relaxed pleading standard is accompanied by the *Conley* Court's instruction not to dismiss a claim unless it is "beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Justice Scalia confirmed this understanding when he asserted that "[l]iberal construction of pro se pleadings is merely

an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure."

In *Mack v. Williams*, 138 Nev. Adv. Op. 86 (Dec. 29, 2022)" (2023), the Nevada Supreme Court held that a private right of action for money damages exists to vindicate violations of search-and-seizure rights under Article 1, Section 18 of the Nevada Constitution. Additionally, the Court held that qualified immunity cannot be used as a defense to claims under the same constitutional provision. <u>While qualified immunity remains fully available at the federal level, with the exception of a judge acting outside his jurisdiction,</u> the Nevada Supreme Court again charted a different path and held the defense unavailable to the correctional officers in Nevada. The court explained that a statute had waived the government's immunity from suit and not carved out anything like qualified immunity as an exception. Since waiving or conferring immunity from suit was a legislative function, the Nevada Supreme Court believed creating qualified immunity would usurp the legislature's role. As a result, qualified immunity is not available to court employees who knowingly violate the law. As in *Mack v. Williams*, my property was unlawfully seized. I should be allowed the same consideration.

The U.S. Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409 No. 74-5435, stated,

> As the language itself makes clear, the central purpose of § 1983 is to "give a remedy to parties deprived of constitutional rights, privileges and immunities by an *official's* abuse of his position." *Monroe v. Pape,* 365 U. S. 167, 365 U. S. 172 (1961) (emphasis added). The United States Constitution, among other things, places substantial limitations upon state

action, and the cause of action provided in 42 U.S.C. § 1983 is fundamentally one for"[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. "*United States v. Classic,* 313 U. S. 299, 313 U. S. 326 (1941). It is manifest, then, that all state Page 424 U. S. 434 officials as a class cannot be immune absolutely from damage suits under 42 U.S.C. § 1983, and that, to extend absolute immunity to any group of state officials is to negate *pro tanto* the very remedy which it appears Congress sought to create. *Scheuer v. Rhodes,* 416 U. S. 232, 416 U. S. 243 (1974). Thus, as there is no language in 42 U.S.C. § 1983 extending *any* immunity to any state officials, the Court has not extended *absolute* immunity to such officials in the absence of the most convincing showing that the immunity is necessary. Accordingly, we have declined to construe § 1983 to extend absolute immunity from damage suits to a variety of state officials, *Wood v. Strickland,* 420 U. S. 308 (1975) (school board members); *Scheuer v. Rhodes, supra,* (various executive officers, including the State's chief executive officer); *Pierson v. Ray,* 386 U. S. 547 (1967) (policemen); and this notwithstanding the fact that, at least with respect to high executive officers, absolute immunity from suit for damages would have applied at common law. *Spalding v. Vilas,* 161 U. S. 483 (1896); *Alzua v. Johnson,* 231 U. S. 106 (1913). Instead, we have construed the statute to extend only a qualified immunity to these officials and they may be held liable for unconstitutional conduct absent "good faith." *Wood v. Strickland, supra* at 420 U. S. 315. Any other result would "deny much of the promise of § 1983." *Id.* at 420 U. S. 322.

Clearly, the district courts and their employees are not covered by absolute immunity. They lost their qualified immunity when they acted in bad faith. They must be held accountable. The private parties deemed state actors pursuant to *Ballard Id,* have no immunity. Judge Estes, Riggs, and Judge Hill, in different cases, acting outside the scope of their authority, colluded with the private party defendants and thus lost their immunity.

Judge Estes's and the district court's actions in refusing to recuse Judge Estes when I filed  Writs of Mandamus; when I filed complaints with the Nevada Judicial Commission; when I filed motions to have Judge Estes removed for prejudice; and when

I filed a criminal complaint against Judge Estes with the Office of the Nevada Attorney General were administrative rather than Judge Estes acting in a judicial capacity. Thus, these actions by Judge Estes and the district court were not entitled to absolute immunity. I am entitled to the damages I seek, plus the increase in those damages and treble punitive damages allowed by NRS 42.0005 and NRS 42.0007 to set an example to others who believe they are above the law and can manipulate the system with fraud.

In *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), this Court agreed with the district court, which held that administrative actions rather than prosecutorial were not subject to immunity. The U.S. Court of Appeals for the Ninth Circuit agreed, finding that the prosecutor had failed to show the necessary close association with the judicial phase of the trial in order to invoke immunity.

Judge Estes ordered that Professional Services was community property and ordered Lauara to sell the asset and divide the proceeds with me. I confirmed in my BRIEF FOR OCTOBER 11 HEARING, exhibit 14, that Lauara violated the order, closed the company, opened a new company, retained the assets and clients, and continued in business.

Judge Hill and Judge Estes were furnished with the documentation that Lauara was reimbursed for the loans to her son, Adam, yet insisted that they be awarded to me. The two judges, outside the scope of their authority, have colluded to cheat me out of more than $2,600,000 by ignoring the appellate court's

instructions and allowing the theft. If, for some reason, the Court determines they are immune because of the decision in *Ashelman*, 793 F.2d at 1078, the Fourth Judicial District Court and its employees, and the remainder, the "private parties" are not. Under 42 U.S.C Section 1988(b), "suits brought against individual officers for injunctive relief are for all practical purposes suits against the State itself," and therefore, the state must "bear the burden of the counsel fees award." *Hutto v. Finney*, 437 U.S. 678, 700 (1978). The State of Nevada is obligated for my damages.

I argued in my BRIEF FOR OCTOBER 11 HEARING (Exhibit 14), citing the Nevada Supreme Court in *Canarelli v. Eighth District Court,* March 2022, which stated,

> "…trustees urge us to apply NCJC Rule 2.1I(A) in lieu of the general rule we established in *Kirksey*. NCJC Rule 2.11(A)(1) requires a judge to recuse herself "in any proceeding in which the judges impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or **has personal knowledge of facts that are in dispute in the proceeding**."… Considering that principle, we held in *Kirksey* that where the alleged bias does not stem from an extrajudicial source, the party seeking disqualification must show the judge formed an opinion based on the facts introduced during the proceedings and that this "opinion displays 'a deepseated favoritism or antagonism that would make fair judgment impossible. 112 Nev. at 1007, 923 P.2d at 1119 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))…

Judge Estes showed a *deep-seated favoritism* and improperly waited years to recuse himself and the Fourth Judicial District Court. See Exhibit 54. In my BRIEF FOR OCTOBER 11 HEARING (Exhibit 14), I cited *Rippo v. Baker*, 239 U.S. 807, 137 S.Ct.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 137

905, 907, 197 L.Ed.2d 167 (2017), in which the United States Supreme Court recently

overruled the Nevada Supreme Court, stating,

> "We vacate the Nevada Supreme Court's judgment because it applied the
> wrong legal standard. Under our precedents, the Due Process Clause may
> sometimes demand recusal even when a judge " 'ha[s] no actual bias.'
> " *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825, 106 S.Ct. 1580, 89
> L.Ed.2d 823 (1986). Recusal is required when, objectively speaking, "the
> probability of actual bias on the part of the judge or decisionmaker is too
> high to be constitutionally tolerable." *Withrow v. Larkin,* 421 U.S. 35,
> 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ; see *Williams v.*
> *Pennsylvania,* 579 U.S. ——, ——, 136 S.Ct. 1899, 1905, 195 L.Ed.2d
> 132 (2016) ("The Court asks not whether a judge harbors an actual,
> subjective bias, but instead whether, as an objective matter, the average
> judge in his position is likely to be neutral, or whether there is an
> unconstitutional potential for bias" We vacate the Nevada Supreme Court's
> judgment because it applied the wrong legal standard. Under our
> precedents, the Due Process Clause may sometimes demand recusal even
> when a judge " 'ha[s] no actual bias.' " *Aetna Life Ins. Co. v. Lavoie,* 475
> U.S. 813, 825, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Recusal is required
> when, objectively speaking, "the probability of actual bias on the part of the
> judge or decisionmaker is too high to be constitutionally
> tolerable." *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d
> 712 (1975) ; see *Williams v. Pennsylvania,* 579 U.S. ——, ——, 136 S.Ct.
> 1899, 1905, 195 L.Ed.2d 132 (2016) ("The Court asks not whether a judge
> harbors an actual, subjective bias, but instead whether, as an objective
> matter, the average judge in his position is likely to be neutral, or whether
> there is an unconstitutional potential for bias"

Judge Estes had a bias. Judge Estes, Judge Hill, and Judge Riggs *held a deep-*

*seated favoritism and antagonism that made a fair judgment impossible.* All should

have recused themselves pursuant to NCJC Rule 2.11(A)(1). See Nevada Supreme

Court in *Canarelli v. Eighth District Court,* March 2022.

Judge Hill signed an improper vexatious litigant designation against me and

allowed it to stand even when I confirmed that the defendants had agreed it was improper. Following my informing her that, after I had sued Judge Estes, I could not find an attorney to represent me, Judge Hill allowed every exhibit from the defendants, including ones that were knowingly fraudulent and those that violated HIPAA. Judge Hill disallowed all of mine. Judge Hill then strengthened the vexatious litigant designation against me, preventing me from responding to or opposing the defendant's pleadings. Judge Hill knowingly aided and abetted the defendant's crimes against me. Judge Hill allowed defendant's attorney, Shawn B. Meador, to file a new Wilfong Affidavit, which I have confirmed was fraudulent, covered up his and her client's crimes, falsely accused me of criminal acts and violations of Rule 11, and insisted he be awarded additional attorney fees based upon that fraud. Judge Hill's actions violated NRS 195.020 and all the requirements of the 9th Circuit Court of Appeals, The Ninth Circuit Court of Appeals Rule 4.1 Aiding and Abetting (18 U.S.C. § 2(a)). All defendants, including Judge Hill, have obstructed justice in violation of NRS § 197.190 and 18 U.S. Code § 1505.

Judge Hill aided and abetted and obstructed justice with my second attorney, Debra Amens. As confirmed above, Judge Hiss refused to allow Ms. Amens to answer my question if she knew about HIPAA regulations, following confirming that Ms. Amens had allowed Lauara to file discovery with her that violated HIPAA and had refused to provide either me or my last attorney, Mr. Bushur, that discovery. Like Lauara's attorneys, Judge Hill allowed all of Ms. Amens' Exhibits and disallowed all of mine. When I confirmed that Ms. Amens had not

timely filed the affidavit required by NRS 18.170 with her 2020 Motion for Attorney Fees,

Judge Hill believed she could find a way around the requirement. Ms. Amens, trying to

circumvent NRS 18.170, filed an affidavit during the 10/14-16/2025 hearing. See Exhibit 70.

On day 3 of the hearing, I asked Ms. Amens about NRS 18.170 and if she had timely filed an

affidavit. With a stumbling answer, Ms. Amens stated she had not, though normally she would

have, and would have included the Brunell Factors. Judge Hill had to correct her and ask if she

meant the Brunzell Factors. See Exhibit 97, the 10/16/2025 Hearing transcripts, page 11:1-25.

Ms. Amens did not even know what factors her affidavit required. A review of it seems to

confirm it was prepared by Ms. Amens following her reviewing Mr. Meador's entry two days

before the hearing began, the day before Ms. Amens entered hers. See Exhibit 68. Mr.

Meadors' first Wilfong Affidavit. Ms. Amens's No. 4 Brunzell statement that she had brought

Mr. Bushur up to speed for trial was made knowing it was false. Mr. Bushur did not have the

discovery from Ms. Amens. Mr. Bushur had not amended the Federal Complaint against

Adam Lisk, replacing Mr. Lisk or confirming that Lauara had been repaid the loans. Ms.

Amens' Affidavit was signed and entered by Ms. Amens, knowing it was fraud on the court.

Judge Estes, Judge Hill, and the district court employees held an unconstitutional

bias against me, and violated my rights guaranteed by the due process clause of the 14th

Amendment." I had cited *Rippo v. Baker* in several pleadings, confirming Judge Estes

lacked the right to continue and thus lacked jurisdiction. Judge Hill is no different.

In *Mireles v. Waco*, 502 U.S. 9 (1991) No. 91-311, the United States Supreme

Court ruled on the appeal from the Ninth Circuit Court of Appeals. In the case before the

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 140

District Court for the District of Nevada, Judge Mireles moved to dismiss the complaint as to him, pursuant to Civil Rules 12(b)(1) and (6), for failure to state a claim upon which relief could be granted. The District Court dismissed the claim against the judge and entered final judgment as to him, pursuant to Civil Rule 54(b), on grounds of "complete judicial immunity." App. to Pet. for Cert. D-2. On *Waco's* appeal, the United States Court of Appeals for the Ninth Circuit reversed that judgment. *Waco v. Baltad*, 934 F.2d 214 (1991). The court determined that Judge Mireles was not immune from suit.

The Supreme Court stated,

> Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227 -229; *Stump v. Sparkman*, 435 U.S., at 360 . [502 U.S. 9, 12]  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Id., at 356-357; *Bradley v. Fisher*, 13 Wall., at 351.

Pursuant to *Rippo v. Baker* and other cases cited above, Judge Estes, Judge Hill and the Fourth Judicial District Court lacked jurisdiction and acted as if they did.

> The Court, however, has recognized that a judge is not absolutely immune from criminal liability, *Ex Parte Virginia*, 100 U.S. 339, 348 -349 (1880), or from a suit for prospective injunctive relief, *Pulliam v. Allen*, 466 U.S. 522, 536 -543 (1983), or from a suit for attorney's fees authorized by statute, id., at 543-544.

Judge Estes's and Judge Hill's actions in collusion with the criminal actions of the private defendants were also criminal. They are not immune from criminal liability or suit for injunctive relief. See *Judicial Commission v. Michele Fiore*.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 141

The State of Nevada is responsible for the misconduct of its courts, judges, and officers of the court.

Defendant Lauara Ann Lisk, her attorneys, and the Court's allegations are supported only by lies, false affidavits, threats, intimidation, and violations of my due process. As a result, it has taken voluminous documentation on my part to refute their lies. My case is supported by irrefutable documentation confirming their fraud and fabrication of evidence. They cannot be allowed to prevail on fraud, false statements, and fabricated evidence.

Following my prevailing on appeal with the Nevada Court of Appeals, Lauara's Utah Attorney, Mr. Howell, obtained a vexatious litigant designation against me in the Sixth Judicial District Court of Utah. I have confirmed that the designation violated URCP Rule 83 and the Utah Appellate Court case of *Strand v. Nupetco*, 397 P.3d 724 (Utah App. 2017). This prevented a pro se litigant from being designated vexatious if he stood a chance to prevail. The US Supreme Court upheld the decision. I had already prevailed on appeal and could not be declared vexatious. The designations that followed were all based upon Mr. Howell's original designation, including the one in the Fourth Judicial District Court, Elko, Nevada. Mr. Howell and the Woodburn and Wedge Attorneys brought suit against me in the Second Judicial District Court in Reno to have me declared vexatious and to prevent me from further exposing their fraud. At the May 13, 2025, hearing in that matter, I cited *Strand v. Nupetco* and the Nevada District Court, District of Nevada case of *Allison v. U.S. District Courts Clerks Office*, Case 2:2022-cv-

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 142

01114, July 8, 2022. The *Allison* Court also required that a pro se litigant could not be declared vexatious if he stood a chance to appeal. Judge Riggs agreed, as did Mr. Howell and the Woodburn and Wedge attorneys. To obtain a vexatious litigant designation in the Second Judicial District Court, they all agreed that every vexatious designation that preceded the June 13, 2025, Reno hearing was incorrect, but that the one they entered at that time was not. The argument they used in the Second Judicial District Court was that I filed the Complaint to harass them. This is laughable. I was suing to try to recoup the millions these people had stolen from me. In a fair hearing, I would have prevailed at any hearing or trial. The Second Judicial District Court declared me vexatious in violations of the *Strand* and *Allison* court decisions.

At the October 14-16, 2025, Elko hearing in the Fourth Judicial District Court, once I exposed the additional fraud by Lauara and her attorney, Mr. Meador, Judge Hill violated my civil rights by strengthening the already fraudulent vexatious litigant designation she had entered previously. The judges and defendants colluded to prevent me from further exposing the fraud by Lauara and her attorneys, and preventing "the truth from coming out."

In violation of their protocol, the Nevada State Bar declined to keep me up to date on my complaints to provide me with a single decision on a single one of my Complaints. The Nevada State Bar colluded with the defendants and violated my civil rights and due process by closing all the complaints without investigating them.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 143

The sums certain owed me by defendants are shown in Exhibit 92, the Amortization Schedule for the loans to Adam Lisk, which confirms that the loan values as of January 1, 2026, exceed $2,600,000. My attorney fees exceed $627,000, see Exhibit 92.5, plus treble punitive damages pursuant to NRS 42.005. My miscellaneous costs to appeal to date, as of 12/12/2025, are $71,971.69. See Exhibit 110. My damages also include replacing my home with a comparable property of my choice, following the destruction of its value, and destroying my reputation in the community following the filing of false criminal charges against me.

### HIPAA VIOLATIONS:

*A spouse cannot unilaterally disclose protected health information without the spouse's permission or a court order. HIPAA regulations require that any disclosure of a patient's health information must be authorized by the patient or a legally authorized representative. This includes any family member, such as a spouse, unless the patient has explicitly granted permission or designated a personal representative.*

*HIPAA governs who can access and share PHI, and divorce does not grant a **spouse** or their attorney automatic rights to obtain or disseminate this information.*

*PHI protected health information includes insurer correspondence and billing*

**HIPAA** governs who can access and share PHI, and divorce does not grant a **spouse** or their attorney automatic rights to obtain or disseminate this information.

**PHI protected health information includes insurer correspondence and billing**.

**PHI** includes insurer correspondence and billing information. Under **HIPAA**, **PHI** encompasses any information that can identify an individual, including medical records, billing details, and other personal health-related data. This includes not just the account numbers and payment history but also information about medical procedures, diagnoses, or treatments. Therefore, any i

nformation related to medical care or payment for services is conside red PHI and must be handled with the
necessary security measures to protect it from unauthorized access a nd disclosure.

In Nevada, violations of HIPAA can lead to significant legal consequences, including civil penalties, criminal charges, and liability for unauthorized disclosure of protected health information (PHI).

The criminal penalties for improperly disclosing Protected Health Information under the HIPAA can include fines ranging from **$50,000 to $250,000 and imprisonment for up to ten years**, depending on the severity and intent of the violation, with higher penalties for offenses committed with the intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm. Defendants' misuse of HIPAA documents fits the maximum range, including imprisonment.

On May 10, 2012, the United States Court of Appeals for the 9th Circuit held that an individual may be criminally convicted of knowingly obtaining health information in violation of HIPAA, even if the individual did not know that the access was illegal. The decision serves as a reminder to health care providers, health plans, and their business associates that ignorance of the law is not an excuse to criminal prosecution with respect to HIPAA, and that significant repercussions may result from accessing patient information without a valid reason. The case involved Huping Zhou, a former research assistant at the University of California at Los Angeles Health System (UCLA). UCLA terminated Zhou, effective Nov. 14, 2003. After his

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 145

termination, Zhou looked up patient records of celebrities and co-workers on at least four

separate occasions. The U.S. Attorney's Office for the Central District of California brought

criminal charges for a misdemeanor violation of HIPAA's prohibition of "knowingly"

obtaining individually identifiable health information in violation of HIPAA. Unlike Zhou,

Lauara and the others disclosed my HIPAA in an effort to steal millions from me.

The **Divorce Decree** was obtained by extrinsic fraud on the Court by

Lauara's attorneys, by Judges of the Fourth Judicial Court, and other officers of the court.

> Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

> "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

## **VIOLATIONS OF RULE 11:**

I have confirmed that the affidavits drafted and filed by Mr. Meador for

himself, Adam Lisk, Lauara, and Lauara's Resident Witness, and other motions by

Defendants were drafted and entered knowing they were fraudulent and violated NRCP

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 146

Rules 11 and 60. Those affidavits were extrinsic fraud and prevented me from presenting my claim or defense in court. Defendants deliberately misled the court to the very heart of the issues with fraudulent affidavits and fabricated evidence.

> "District courts can use Rule 11 to impose sanctions on any party that files a motion for improper purpose or who does so without a legal factual basis." *Center for Auto Safety v. Crysler Grp. LLC*, 809 F.3d 1092 (9th Cir. 2016).

For Defendants' false affidavits and other extrinsic fraud that cost me millions. I am entitled to sanctions for those losses, attorney fees, and treble punitive damages pursuant to RICO, NRS 42.005 and 42.007.

## CAUSATION:

> A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)); see also *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc); *Stevenson v. Koskey*, 877 F.2d 1435, 1438–39 (9th Cir. 1989); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743); see also *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020); *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018); *Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004); *Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999); *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997); *Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir. 2022 24 1988); *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987).

> This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637

F.2d 1350, 1355 (9th Cir. 1981); see also *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Wong*, 373 F.3d at 966; *Stevenson*, 877 F.2d at 1438–39; *Leer*, 844 F.2d at 634.

When making the causation determination, the court "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer*, 844 F.2d at 633–34.

Lauara's attorneys, Mr. Meador, Mr. Tafoya, Mr. Adams, Mr. Wells, Ms. Kelly, and Mr. Howell, joined in the fraud of the Woodburn & Wedge Defendants. Mr. Meador continues to commit additional affirmative acts of fraud. Mr. Meador and the other defendants omitted to perform an act which they were legally required to do, required by the "Rules of Professional Conduct," that furthered the causes, the deprivation which my complaint confirmed. Mr. Meador and the other defendants should be sanctioned and declared vexatious. Defendant's extrinsic fraud prevented me, a disabled 78-year-old pro se litigant, from presenting my claim or defense in court.

**Second Judicial District Court, Reno, Nevada.**

I have confirmed that the vexatious litigant designations in the courts were improper per *Strand* and *Allison*. I prevailed on appeal of the **Divorce Decree,** the crux of my Complaint against Defendants in this case. My RICO complaint against Lauara, her North Carolina family members, and her attorneys for stealing the funds from the loans to Adam beginning in 2004 fits all the requirements of a RICO action. I should have prevailed in my RICO Complaint in the Second Judicial District Court as well. My RICO Complaint had not been answered. It could have been amended to a conventional theft/fraud Complaint. I stood an excellent chance of prevailing with another court. See

Exhibit 8, the May 13, 2025, hearing transcripts from the Second Judicial District Court, page 23:3-24:11. Pursuant to the decision in *Allison v. U.S. District Courts Clerks Office*, Case 2:2022-cv-01114, July 8, 2022, the Second Judicial District Court violated my due process and constitutional rights in declaring me vexatious. See Exhibit 8, the May 13, 2025, hearing transcripts from the Second Judicial District Court, pages 8:24-9:9.

This Court must apply the *Strand* and *Allison* cases and refrain from considering me vexatious.

Defendants violated and continue to violate my constitutional rights. They are responsible for my damages due to causation.

Every vexatious litigant designation against me and every award based on those designations was improper. The designations were vindictive and retaliatory, aimed at me, a 78-year-old, disabled, pro se, construction worker who exposed a divorce trial fixed by two Nevada Supreme Court judges. See Nevada Supreme Court in *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025.

I confirmed at the 10/15/2025 hearing, Exhibit 96, hearing transcripts pages 119:5 through 124:18, that my Exhibit 37.1, my argument for the Oct 14-16, 2025, hearing, confirmed that I could argue that the divorce trial was fixed and that the fix included both Judge Estes and Judge Hill. I confirmed that the fix went as high as the Nevada Supreme Court, which falsified NRAP Rules 25 and 32 in its Order dismissing my Writ of Mandamus. The Nevada Supreme Court violated my civil rights. Not only did I seek, with the district court, to have the loans to Adam that were sold by Lauara awarded to me

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 149

at the value Lauara agreed I set for them, I also requested the same from the Nevada

Supreme Court in a Writ of Mandamus. Beginning on page 20 of my Exhibit 37.1, my

testimony for the October 14-17, 2025, hearing, at **This Court Agrees to Provide Me**

**with Documents**, and running through page 27, I confirmed that the Nevada Supreme

Court covered up the criminal act of the defendants by fraudulently citing Rules 32 and

25. The Nevada Supreme Court's actions were deliberate and to cover up the fraud and

biased actions of the Fourth Judicial District Court and its Judges, Judge Robert Estes and

Judge Kristin Hill. I outlined this in my **Plaintiff's Argument Allowed by Nevada**

**Supreme Court... Rule 60 Motion to be Relieved of Judgment... Dec. 2022**,

(**Plaintiff's Argument**) provided herewith as Exhibit 36.

## STATE REMEDIES:

Generally, exhaustion of state judicial or state administrative remedies is
not a prerequisite to bringing an action under § 1983. *Patsy v. Bd. of
Regents*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions
rejected the argument that a § 1983 action should be dismissed where the
plaintiff has not exhausted state administrative remedies."); *Monroe v.
Pape*, 365 U.S. 167, 183 (1961) ("The federal remedy is supplementary to
the state remedy, and the latter need not be first sought and refused before
the federal one is invoked."), overruled on other grounds by *Monell v.
Dep't of Soc. Servs.*, 436 U.S. 658 (1978). See also *Lira v. Herrera*, 427
F.3d 1164, 1169 (9th Cir. 2005) (noting that, generally, exhaustion is not a
prerequisite to an action under § 1983, but explaining that the Prison 2022
73 Litigation Reform Act created an exhaustion requirement for suits
brought by prisoners under 42 U.S.C. § 1983 with respect to prison
conditions). Exhaustion of state tort claim procedures is not required. See
*Rumbles v. Hill*, 182 F.3d 1064, 1070 (9th Cir. 1999), overruled on other
grounds by *Booth v. Churner*, 532 U.S. 731 (2001).

Though exhausting the remedies is not a requirement to bringing an action under

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 150

§ 1983, I exhausted the Nevada State remedies when the Nevada Supreme court violated NRAP Rules 32 and 25 to avoid ruling against the district courts' and the defendant and her attorneys' fraud.

## DAMAGES:

The Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. See *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("[P]laintiffs may seek damages against a state official in his personal capacity."); *Hafer v. Melo*, 502 U.S. 21, 30–31 (*Mitchell v. Washington*1991); , 818 F.3d 436, 442 (9th Cir. 2016) (stating the Eleventh Amendment does not "bar claims for damages against state officials in their personal capacities"); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394–95 (9th Cir. 1997); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). "[W]hen a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity." *Mitchell*, 818 F.3d at 442 (citing *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999)). "A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations." *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988); see also *Smith v. Wade*, 461 U.S. 30, 52 (1983) ("Compensatory damages … are mandatory.").

The Supreme Court has held that entitlement to compensatory damages in a civil rights action is not a matter of discretion: "Compensatory damages ... are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." *Smith v. Wade*, 461 U.S. 30, 52, 103 S. Ct. 1625, 75 L.Ed.2d 632 (1983) (emphasis added). *Hazle v. Crofoot*, 727 F.3d 983, 992 (9th Cir. 2013) ("[W]hen a plaintiff has indisputably suffered an actual injury in a case … an award of compensatory damages is mandatory.").

Compensatory damages include actual losses, mental anguish and humiliation, impairment of reputation, and out-of-pocket losses. See *Stilwell v. City of Williams*, 831 F.3d 1234, 1247 (9th Cir. 2016) (stating that compensatory damages in § 1983 suits may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 151

of reputation, personal humiliation, and mental anguish and suffering); *Borunda*, 885 F.2d at 1389; *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760–61 (9th Cir. 1985). "[D]amages in § 1983 actions are not to be assessed on the basis of the abstract 'value' or 'importance' of the infringed constitutional right." *Sloman v. Tadlock*, 21 F.3d 1462, 1472 (9th Cir. 1994).

Lauara had the Sevier County Sheriff's Office arrest and jail me for false crimes she and Mr. Meador pushed. They damaged my reputation in the county where I reside. Two plus years later, and prior to trial in the Sixth Judicial District Court, where Mr. Howell entered the fraudulent foreign judgment, the court was forced to dismiss the charges with prejudice. I am entitled to "mandatory" compensatory damages, including damages against Lauara, her attorneys, her attorneys' firms, against the Divorce Court Defendants in Case No. DR-MD-17-757, in their personal capacity, and the Woodburn & Wedge Defendant for damaging my reputation.

I have confirmed I should be awarded compensatory damages. If brought in the District Court of Nevada, my "compensatory damages ... are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss."

## PUNITIVE DAMAGES:

Punitive damages are available under § 1983. See *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991); *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985); *Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014) ("[P]unitive damages may be recovered in appropriate circumstances under § 1983."); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005); *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 577 n.21 (1984). Punitive damages are available even when

the plaintiff is unable to show compensable injury. See *Smith v. Wade*, 461 U.S. 30, 55 n.21 (1983); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1485 (9th Cir. 1991), superseded by statute on other grounds as stated in *Davis v. City of San Francisco*, 976 F.2d 1536 (9th Cir. 1992).

For their violations of my constitutional rights, Defendants are liable to me for an updated confirmation of the damages outlined in my pleadings.

A complete review of my pleadings and **Motion for Summary Judgment**, and Sanctions confirms the above-cited violations, and much more. For their fraud and their violations of NRCP Rule 11 and NRCP Rule 60, their violations of the rule of law, their violations of Rules of Professional Conduct, their violations of 18 U.S.C. sec 1962(c), Lauara, the Woodburn & Wedge, its attorneys, Lauara's Utah attorney, Matthew Howell, and his firm, are liable to me for my attorney fees, see Exhibit 92.5, my actual damages, plus the treble punitive damages available under RICO, and NRS 42.005, and NRS 42.007.

## AWARDING ATTORNEY FEES AGAINST OPPOSING ATTORNEYS:

Relying on federal statutes and rules of professional conduct, in *Thomas v. Girardi,* (IN RE GIRARDI) 529 F.3d 1199, 2010 WL 2735731 (2010), the Ninth Circuit sanctioned a group of attorneys who, in <u>seeking to enforce a foreign judgment, made false statements to the court. The sanctions included monetary sanctions and reprimands ranging from a six-month suspension, depending on the mental state, experience, and the degree of involvement of each attorney.</u>

All Defendant attorneys, including Mr. Howell, Mr. Meador, and the remaining Woodburn & Wedge attorneys, are not exempt from a suit for damages or being disbarred.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 153

A review of Mr. Meador's and the other attorneys' actions confirmed herein, considering *Thomas v. Girardi,* confirms that I am entitled to sanctions against Defendants, including all attorneys, for the damage confirmed in my pleadings. Mr. Meador should be disbarred for his actions, and the others, depending on their mental state, experience, and the degree of involvement, sanctioned and/or disbarred.

## WELL-PLEADED FACTUAL ALLEGATIONS:

*Walter Process Equipment v. Food Machinery,* 382 U.S. 172 (1965) ... in a "motion to dismiss, the material allegations of the complaint are taken as admitted". From this vantage point, courts are reluctant to dismiss complaints unless it appears the plaintiff can prove no set of facts in support of his claim which would entitle him to relief (see *Conley v. Gibson,* 355 U.S. 41 (1957)).

"Factual allegations must be enough to rise above the speculative level." *Bell Atlantic Corp v. Twombly,* 550 U.S. S Ct. (2011) at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. S Ct. (2001) at 678 quoting *Twombly,* 550 U.S. at 570. Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal,* 556 U.S., S. Ct. 662 (2001).

The Ninth Circuit confirmed in *Whitaker v. Tesla Motors, Inc., No.* 19-56497, that in *Twombly,* the Supreme Court considered the adequacy of a complaint.

My pleadings confirmed the extrinsic fraud and fabrication of evidence by the Defendants that prevented me from properly presenting my claim or defense in court.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 154

Defendants deliberately misled the court to the very heart of the issues with false claims, fraudulent affidavits, and fabricated evidence. As a result of my exposing the defendants' extrinsic fraud, drafting false affidavits, and fabricating evidence, the Court ruled against me. The reasoning behind Defendants using the courts to have me declared vexatious is 1) to prevent me from further exposing their criminal actions by preventing me from ever being able to defend myself, and 2) to steal everything I have taken his life to acquire.

Defendant's attorneys have used their profession and this Court as weapons to steal millions from me with their extrinsic fraud. I am entitled to the relief I seek pursuant to confirmation of defendants' extrinsic fraud and violations of my constitutional rights.

In my Federal Complaint against Judge Hill and the district court's personnel, Judge Hill and the district court defendants declined to respond to my Complaint. The claims were supported by factual content and irrefutable documentation. The Court must accept them as true and rule in my favor, awarding me attorney fees, my damages outlined in the Complaint, awarding treble punitive damages as outlined in RICO and NRS 42.005 and NRS 42.007, and for damages to my health and reputation.

**NRS 18.010(2)(b)**

NRS 18.010(2)(b) is a section of the Nevada Revised Statutes that **explicitly states its purpose to punish or deter vexatious or frivolous claims or defenses.** The section provides that the winning party in a justice court case is awarded reasonable attorney's fees as part of the costs in the case. The district court may also make an allowance of attorney fees where it "finds that the claim, or defense, of the opposing

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 155

party was brought or maintained without reasonable ground or to harass the prevailing party". EDCR 7.60 also provides that the court may order a party to pay attorney fees if it finds that the party presents a frivolous or unnecessary motion, or unreasonably and vexatiously multiplies the proceedings, amongst other things. Defendants maintain their false allegations without reasonable grounds. They are the vexatious parties. I must be awarded all my attorney fees to date.

## **VINDICTIVE ORDERS:**

See Nevada Supreme Court in *Stewart v. Nevada Board of Parole*, Case No. 89355, September 25, 2025, ruled that vindictive orders based upon retaliation must be thrown out.

> *To combat the potential vindictiveness in sentencing, the United States Supreme Court in North Carolina v. Pearce, 395 U.S. 711 (1969), overruled in part on other grounds by Alabama v. Smith, 490 U.S. 794, 799 (1989), recognized a rebuttable presumption of such when a more severe sentence is imposed after an original conviction has been set aside and the defendant is again convicted after a retrial. This court has also recognized this presumption of vindictiveness in such cases. See Holbrook u. State, 90 Nev. 95, 98, 518 P.2d 1242, 1244 (1974); Bowser v. State, 135 Nev. 118, 120, 441 P.3d 540, 542 (2019).*

Judge Hill, Judge Estes, and the Fourth Judicial District Court have ruled vindictively against me in retaliation for my exposing the criminal collaboration between Judge Robert E. Estes and Lauara's attorneys.

Judge Hill's actions at the October 14-16, 2025, hearing showed an undeniable bias against me. Judge Hill *held a deep-seated favoritism and antagonism that made a fair judgment impossible.* Like Judge Estes, Judge Hill should have recused herself

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 156

pursuant to NCJC Rule 2.11(A)(1). See the Nevada Supreme Court in *Canarelli v. Eighth District Court,* March 2022.

Judge Estes has never denied my criminal claims against him. They have been assumed to be true. All defendants who have been named in this Complaint have aided and abetted one another and colluded in criminal acts in violation of NRS 195.020. The Watergate scandal with President Richard Nixon confirmed that no one is above the law and that those who colluded with him to cover up the actions were criminally charged and convicted. This case is no different. The defendants must all be referred to law enforcement for their roles in violating my civil rights and aiding and abetting Judge Robert Estes' and Judge Hill's crimes.

**Questions Presented.**

1. Alexei Navalny was correct, "Lies can only last so long. The truth will come out." This is not Russia. Why haven't the courts, the officers of the courts, and the state agencies done their jobs to correct the injustices? Both Navalny and I exposed the corruption of prominent individuals. Navalny exposed the head of government. I exposed Judge Estes, a Nevada Supreme Court judge, the head of the judicial system in Nevada. Both Mr. Navalny and I were poisoned. Both of us had everything we owned unlawfully taken from us. The threats against both of us continued.

2. Where the court system refuses to investigate and continues to cover up the criminal acts of the Defendants, and where they relied upon Clark County's investigation and prosecution of Mr. Wasilewski to do their job, is there any excuse for them refusing

to turn this matter over to law enforcement for investigation and prosecution of the Defendants?

## VIII. Injuries

As a result of the district court's employees and judges, Lauara, her family, and her attorneys' actions, I have been poisoned, threatened, hospitalized, and treated for anxiety attacks. In addition, I have suffered from depression, and my family is concerned for my safety in Sevier County, Utah, where I live. I have sustained heart damage resulting from being poisoned. My reputation has been further damaged and will weigh heavily against him in future matters, including anything heard in the district courts in Nevada or Utah.

## XI.    Abuse of an Elder

I am currently seventy-eight (78) years old. I was seventy (70) years of age when Laura retained Woodburn & Wedge, Mr. Meador, and her other attorneys. I have suffered losses of over $10,821,000 from Defendants' willful and egregious conduct. I have suffered health issues and damage to my reputation from Defendant's willful and egregious acts. Defendants had personal knowledge of my age and the damage they were causing. Based on NRS 41.1395, Defendants owe me double damages due to my status as an elderly person, the Defendant's knowledge of the same, and the damage they were causing. Because of the despicable and egregious conduct of Defendants as herein confirmed and their knowledge that their acts violated the law, they should be held accountable for their actions both legally and to the states(s) in which they were performed.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 158

XI.   **Relief**

WHEREFORE, Plaintiff demands judgment against Defendant(s) as follows:

1.    That all orders against me, including in North Carolina, be dismissed with prejudice;

2.    That all judgments entered against me, including interest, are the responsibility of Defendant(s) to pay;

3.    For general compensatory damages in an amount to be determined at trial, but not less than $9,450,000;

4.    Defendant(s) will provide me with all the items I reported stolen, with all the couple's financial statements, and with documentation and an accounting of the money Lauara funneled from the couple's joint accounts through the Nevada businesses;

5.    Defendant(s) are responsible for and are to pay all costs for having the motorhome transported to and from the RV's manufacturer and repaired to my satisfaction;

6.    Going forward, defendants will provide me with the attorney(s), forensic accountants, and the witnesses of m choice:

7.    For special damages as shown at trial;

8.     For punitive damages against named individuals as may be allowed by law;

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 159

9.    For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

10.    For my costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

11.    For such other and further relief as the Court deems just and proper.

12.    For sums certain, including 1) attorney fees in excess of $627,309, Exhibit 92.5 plus interest, 2) miscellaneous costs of $71,971.69 plus. See Exhibit 110.  3) the value of the loans to Adam Lisk, in excess of $2,600,000, Exhibit 92. 4) treble punitive damages pursuant to NRS 42.005, 5) defendants will be ordered to remove the lien on my home, at the value it would now be if it still had all the water rights and was under full irrigation,  and 6) a new trial to determine the additional damages.

**XII.    Certificate of Closing** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase costs of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 160

**A.**    I retired and attempt to travel to see family. I respectfully request

to be allowed to provide and be provided pleadings and other documents electronically. I

agree to provide the Clerk's Office with any changes to his address where case-related

papers may be served. I understand that failure to keep a current address on file with the

Clerk's Office may result in the dismissal of his case.

**B.**    Woodburn & Wedge and its attorney, Seth Adam, have ties with the

Northern Division of the U.S. District Court, District of Nevada, Reno,

Nevada Office. I respectfully request that this case be transferred to the

Southern Division.

DATED this 17 th day of December, 2025.

/s/ Raymond Max Snyder

_____

Raymond Max Snyder

# CERTIFICATE OF SERVICE

The undersigned certifies that on or after June 24, 2024, a true and correct copy of the foregoing COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, for punitive damages, to set aside the divorce decree for fraud, for past and future costs and past and future attorney fees, AND for A NEW TRIAL will be served on the following via the U.S. Postal Service or by physical service of process:

<u>Judge: Kriston N. Hill</u>
Address                         Fourth Judicial District Court
                                571 Idaho Street
                                Elko, Nevada 89801
County                          Elko
Telephone Number                (775) 748-0269

Megan Smith
Address                         Fourth Judicial District Court
                                571 Idaho Street
                                Elko, Nevada 89801
County                          Elko
Telephone Number                (775) 748-0269


<u>Fourth Judicial District Court, Court Clerk(s),</u>
Address                         571 Idaho Street
                                Elko, Nevada 89801
Telephone Number                (775)  733-4600

<u>Fourth Judicial District Court</u>
Address                         571 Idaho Street
                                Elko, Nevada 89801
County                          Elko
Telephone Number                (775) 748-0269

<u>Lauara Ann Lisk</u>
Address                         Wendover Ambulance
                                427 Mesa Street
                                West Wendover NV 89883
Telephone Number                (801) 891-7260
                                Lauara@yahoo.com

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 162

<u>Shawn B. Meador</u>
Address                          Woodburn & Wedge
                                 6100 Neil Road, Suite 500
                                 PO Box 2311
                                 Reno, Nevada 89505
Telephone Number                 (775) 688-3000


Jose Tafoya
Address                          Woodburn & Wedge
                                 6100 Neil Road, Suite 500
                                 PO Box 2311
                                 Reno, Nevada 89505
Telephone Number                 (775) 688-3000


Seth Adams
Address                          Woodburn & Wedge
                                 6100 Neil Road, Suite 500
                                 PO Box 2311
                                 Reno, Nevada 89505
Telephone Number                 (775) 688-3000


<u>Woodburn & Wedge</u>
Address                          6100 Neil Road, Suite 500
                                 PO Box 2311
                                 Reno, Nevada 89505
Telephone Number                 (775) 688-3000

<u>Matthew R. Howell</u>
Address                          Fillmore Spencer
                                 3301 N.
                                 Provo, UT 84604
County                           Utah
Telephone Number                 (801) 426-8200

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL · 163

Fillmore Spencer
Address                          Fillmore Spencer
                                 3301 N.
                                 Provo, UT 84604
County                           Utah
Telephone Number                 (801) 426-8200

Debra M. Amens
Address                          Amens Law Ltd.
                                 432 S. Broad St.
                                 Battle Mountain, NV 89820
Telephone Number                 (775)235-2222

Amens Law, Ltd
Address                          Amens Law Ltd.
                                 432 S. Broad St.
                                 Battle Mountain, NV 89820
Telephone Number                 (775)235-2222

The Nevada State Bar
Address                          3100 W Charleston Blvd. Ste 100
                                 Las Vegas, NV 89102
County                           Clark
Telephone Number                 (701) 382-0504

The Nevada Judicial Commission
Address                          PO Box 18123
                                 Reno, NV 89511
County                           Washoe
Telephone Number                 (775) 687-4017

The Utah State Bar
Address                          645 South 200 East
                                 Salt Lake City, UT 84111
County                           Salt Lake
Phone Number                     (801) 531-9077

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 164

<u>The Nevada Supreme Court</u>
Address                    201 South Carson Street
                           Carson City, NV 89701
County                     Washoe
Telephone Number           (775) 684-1600

<u>Nevada Attorney General's Office</u>
Address                    100 N Carson Street
                           Carson City, NV 89701
County                     Washoe
Telephone Number           (775) 684-1100

Judge Tammy M. Riggs
Address                    Second Judicial District Court
                           75 Court Street
                           Reno, Nevada 89501
County                     Washoe
Telephone Number           (775) 328-3189


DATED this 17th day of December 2025.

                              /s/  *Raymond M. Snyder*
                              Raymond Max Snyder

## AFFIDAVIT OF PLAINTIFF RAYMOND MAX SNYDER

STATE OF UTAH )
                      ) ss.
COUNTY OF SEVIER )

I, Raymond Max Snyder, being first duly sworn, depose and state as follows:

1. I am the Plaintiff in this matter and stand behind my pleadings, documents, and all statements provided herein are true to the best of my knowledge.

2. The exorbitant fees in this case and the excessive pleadings resulted from the Defendant, Lauara Ann Lisk, and her attorneys' fraud, fabrication of evidence, violations of NRCP Rules 11 and 60, and perjury.

3. Pursuant to Miller v. Wilfong, 121 Nev. 619, 621, 119 P.3d 727, 729 (2005), the affidavit supporting a request for an award of legal fees must address the *Brunzel* factor including: a) the quality of the advocate; b) the character and difficulty of the work; c) the work performed; and 4) the result obtained.

4. <u>Quality of the Advocate</u>: I am an honest, high school graduate who has worked in the construction field. I was forced to represent myself following the escalating costs of this case caused by Defendants' fraud and my inability to hire an attorney after suing Judge Estes.

5. <u>Character & Difficulty of the Work</u>: This should have been a simple divorce. The divorce should have cost $50,000 each at most. The above Complaint confirms that, Contrary to Defendant's attorney, Shawn B. Meadors' statement in his Wilfing Affidavit, there was significant community property acquired during the marriage, which the defendant and her attorneys misappropriated and stole before and during the divorce, making my work

very difficult and skyrocketing the costs. Mr. Meadors's claim on page 7 in his Wilfong Affidavit that my attorneys had conflicts of interest in going after the loans to Lauara's son, Adam Lisk, was a deliberate lie. My Complaint above confirms the loans had been repaid to Lauara and that she and her attorney continue pushing the lie and several others. Therefore, nothing in Mr. Meador's affidavit can be accepted as fact.

6. <u>Work Performed</u>: As a result of Mr. Meador and his clients' fraud, and Mr. Meador's two fraudulent Wilfong Affidavits, confirmed in the above Complaint, it caused my and everyone's costs to skyrocket. My sums certain confirm this.

7. <u>The Results Obtained</u>: The above Complaint confirms the collusion of the parties named as defendants. Going forward, I will incur additional costs from the defendants' fraud. It needs noting in this affidavit that I swore to the accuracy of my statements in the Complaint. Mr. Meador declined to swear to the accuracy of his statements in his affidavits.

8. DATED this 11th day of December, 2025.

By _Raymond Max Snyder_
Raymond Max Snyder

STATE OF UTAH ⟩
                              ⟩ ss.
COUNTY OF SEVIER ⟩

This instrument was acknowledged before me on __11__ this day of __DECEMBER__ 2025, by <u>Raymond Max Snyder</u>



_Notary_

BRINNLEY NIELSON
Notary Public - State of Utah
Comm. No. 743206
My Commission Expires on
May 21, 2029

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 167

## PLAINTIFF'S EXHIBIT LOG

Exhibit 1.    (5-13-24) Vexatious Order 4th dist. Court
Exhibit 2.    Docket
Exhibit 3.    2nd Part Writ, Motion to Respond
          a.  Motion
          b.  Appendix Part 2
          c.  Appendix Part 1
          d.  Request for Documents

Exhibit 4.    Defendant Counterclaimants New Folder
          a.  Defendant Claimants' Motion to Enforce Vexatious Order
          b.  Defendant Request for Clarification

Exhibit 5.    NTS Housing Receipts
Exhibit 6.    Letter to Super Lawyers
          a.  Exhibit A
          b.  Exhibit B
Exhibit 7.    Exhibit 9's Exhibit 7, North Carolina Depositions of Lauara Snyder, Ryan Lisk, and Raymond M. Snyder.
Exhibit 8.    Transcripts of May 13, 2025, Hearing Case No. CV22-0929.
Exhibit 9.    Consolidated Motion for New Trial and Objection to Defendant's Motion to Amend the Court's Order After Supreme Court Remand…
          a.  Exhibit K Defendant Lauara Lisk and her sons secretly selling the couple's loans to Adam
          b.  Exhibit 7. North Carolina Depositions of Lauara Lisk, Ryan Lisk, and Plaintiff Raymond Max Snyder

Exhibit 10.   Consolidated Motion for New Trial
Exhibit 11.   Amended NRCP Rule 60 and NRCP…Newly discovered Evidence.
Exhibit 12.   Appendix Volume 3
Exhibit 13.   Appellate Court Order Affirming in Part…
Exhibit 14.   Hearing Brief for October 11-14 Hearing Part 1(a) and Part 1(b)
Exhibit 15.   Hearing Brief for October 11-14 Hearing Part 2
Exhibit 16.   Motion for Leave to Commence Joint Representation
Exhibit 17.   December 2020 Motion for Summary Judgment Part 1
Exhibit 18.   December 2020 Motion for Summary Judgment Part 2
Exhibit 19.   December 2020 Motion for Summary Judgment Part 3
Exhibit 20.   December 2020 Motion for Summary Judgment Part 4
Exhibit 21.   December 2020 Motion for Summary Judgment Part 5
Exhibit 22.   Motion to Disqualify Counsel (Debra Amens)
Exhibit 23.   Motion to Disqualify Counsel (Andrew Wasilewski)

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 168

Exhibit 24.    Notice of Entry of Order 07-01-2025
Exhibit 25.    Notice of Entry of Notice of Improper Motion and Amended Response to August 6, 2025 Order amending Order Placing Plaintiff on Vexatious Litigant List.
Exhibit 26.    Notice of Substitution of Attorney
Exhibit 27.    Opposition to Motion for Disqualification
Exhibit 28.    Opposition to Nevada Rule 11 for Sanctions.
Exhibit 29.    Order Addressing Defendant/Counter-Claimant's Request for Clarification and Motion to Comple Plaintiff's Compliance with Vexatious Litigant Restrictions.
Exhibit 30.    Order and Notice Evidentiary Hearing
Exhibit 31.    Order Amending Order Placing Plaintiff on Vexatious Litigant List
Exhibit 32.    Order Amending Attorney Fees
Exhibit 33.    Order Carving Out Exception to Order Placing Plaintiff on Vexatious List
Exhibit 34.    Order Denying Petition, Writ of Mandamus
Exhibit 35.    Order Granting Motion to Disqualify
Exhibit 36.    Plaintiff Raymond Max Snyder's Argument Allowed by the Nevada Supreme Court…Rule 60 Motion be relieved of Judgment… Dec. 2020
Exhibit 37.1  Plaintiff Raymond Max Snyder's Argument/Testimony Pursuant to NRS Rule 50.245 for October 14-17 Hearing
Exhibit 38.    Plaintiff's Supplemental Disclosure of Documents and Witnesses 05-02-2025
Exhibit 39.    Pre-Hearing Statement 05-30-2025
Exhibit 40.    Transcripts of Audio Tape A, March 7, 2012, Disclosed by Debra Amens
      a.  Audio tape of call
Exhibit 41.    Recorded Transcripts of Proceedings Motions
Exhibit 42.    Reply in Support of Motion to disqualify
Exhibit 43.    Request for Documents
Exhibit 44.    Response to August 6, 2025, Order Amending Order Placing Plaintiff on Vexatious Litigant List
Exhibit 45.    Transcripts Divorce Trial Vol 2.
Exhibit 46.    Transcripts Divorce Trial Vol. 3
Exhibit 47.    Transcripts Divorce Trial Vol. 1
Exhibit 48.    Transcripts Divorce Trial Vol. 4
Exhibit 49.    Defendant's Trial Statement
Exhibit 50.    Case No. CV22-01929, Nevada 2nd District Court, Recusal of Judge
Exhibit 51.    Order Case No. CV22-01929
Exhibit 52.    Case No. CV22-01929, May 13, 2025 Hearing Minutes
Exhibit 53.    June 3 and 4, 2024, emails to Judge Robert Estes and the 4th District Court
Exhibit 54.    Recusal of Judge Robert Estes and the Fourth Judicial District Court

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 169

Exhibit 55.    Order After Supreme Court Remand
Exhibit 56.    May 30. 2024 Status Hearing Minutes
Exhibit 57.    March 20, 2023, Nevada Supreme Court Instructions
Exhibit 58.    Case Against Judge Hill et al
Exhibit 59.    IRS Refund Notices for 2015 and 2016
Exhibit 60.    Back Injury
Exhibit 61.    Amended Objection to Court's October 2, 2025, Notice of Hearing on
               Motion for Attorney Fees
Exhibit 62.    Verified Complaint
Exhibit 63.    Motion to Withdraw as Counsel
Exhibit 64.    Order in Federal Case
Exhibit 65.    Reply in Support of Motion to Disqualify
Exhibit 66.    Fourth Judicial District Court's eFlex Docket
Exhibit 67.    Court's Refusal to Provide Documents
Exhibit 68.    Affidavit of Shawn B. Meador
Exhibit 69.    Objection to Shawn Meador Affidavit and Request to Submit
Exhibit 70.    Debra Amens Oct. 15, 2025 Affidavit
Exhibit 71.    Debra Amens' Motion for Attorney Fees
Exhibit 72. Part 1.    Proof of Service Federal Case No. 3:24-cv-267
Exhibit 72. Part 2.    Docket Case No. 3:24-cv-00267
Exhibit 72. Part 3.    Proof of Service Case 3:24-cv-00267
Exhibit 72. Part 3.    Amended Complaint Case No. 3:24-cv-00267
Exhibit 73.    Exhibit E2's Exhibit K, Federal Complaint 3:24-cv-00267
Exhibit 74.    Order Case No. 3:23-cv-00048
Exhibit 75.    Plaintiff's Trial Exhibit 15.
Exhibit 76.    Lauara's Hearing Exhibit W
Exhibit 77.    Amended Opposition to Affidavit of Shawn B. Meador and Request for
               Review
Exhibit 78.    Response to Shawn B. Meador Affidavit
Exhibit 79.    Pre-Trial Pleadings
Exhibit 80.    NRCP Rule 60(b)(2) and NRCP Rule 59(b)(2) Motion for New Trial for
               Newly Discovered Evidence and Motion for a New Trial Based Upon
               Judge Estes's Violation of the Nevada Code of Judicial Conduct 2.11(A)
               Through (A)(6)
Exhibit 81     Request to Submit NRCP Rule 60(b)(2) and NRCP Rule 59(b)(2) Motion
               for New Trial for Newly Discovered Evidence….
Exhibit 82.    Criminal Charges Dismissed With Prejudice
Exhibit 83.    Rejection of Plaintiff's Response Affidavit
Exhibit 84.    Supplemental Affidavit of Shawn B. Meador
Exhibit 85.    COA Order Affirming in Part, Reversing in Part, and Remanding.
Exhibit 86.    Divorce Decree

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 170

Exhibit 87.    Voluntary dismissal case No. 15-CV-OTH-2022-0169
Exhibit 88.    Supplemental Information in Support of Motion
Exhibit 88.5   Amens Billing, Previous to her Supplemental Billing, Provided the Court in Exhibit 88
Exhibit 88.7   Attorney Justin Heideman Billing
Exhibit 89.    Docket Case No DR-MD-17-757
Exhibit 90.    Amens Furnished all Exhibits
Exhibit 91.    12/17/2019 Hearing Motions
Exhibit 92.    Amortization Schedule for the Old Mill Forestry LLC and Carol Lynn Properties LLC
Exhibit 92.5   Attorney Fees.
Exhibit 93.    Requests of the Nevada Judicial Commission and the Nevada State Bar Association
Exhibit 94.    Criminal Charges Against Attorney Andrew Wasilewski Brought by Clark County
Exhibit 95.    October 14, 2025, COA Remand Hearing Transcripts
Exhibit 96.    October 15, 2025, COA Remand Hearing Transcripts
Exhibit 97.    October 16, 2025, COA Remand Hearing Transcripts.
Exhibit 98.    Complaint Against Matthew Howell.
Exhibit 99.    Second Amended Vexatious Litigant Designation
Exhibit 100.   Complaint Against Debra Amens
Exhibit 101.   Complaint Against Aaron Bushur
Exhibit 102.   Lauara's Fabricated Cash Loans to Herself
Exhibit 103.   Debra Amens Fraud and Collusion
Exhibit 104.   Old Mill Forestry LLC Disclosure Statement.
Exhibit 105.   Carol Lynn Properties LLC Disclosure Statement
Exhibit 106.   Adam Lisk's threat to shoot me.
Exhibit 107.   Docket of Old Mill Forestry Bankruptcy
Exhibit 108.   Judge Hill, Megan Smith, and the Court's Collusion
Exhibit 109.   The Utah Bar, Utah Office of Professional Conduct Collusion with Matthew Howell and Filmore Spencer