Exhibit 114.

Case 2502-152 Confirmation of Report of Elder Abuse to Sevier Co. Sheriff's Office, Sheriff Nathan Curtis



## OFFICE OF THE SHERIFF

835 East 300 North, Suite 200
Richfield, Utah 84701

Phone (435) 896-2600
Fax (435) 896-2654

### SHERIFF NATHAN J. CURTIS

## VOLUNTARY STATEMENT

Case #: 2502-152

NAME: Raymond "Max" Snyder          DATE: Feb 11, 2025

ADDRESS: PO Box 69          CITY: Aurora

STATE: Utah    ZIP: 84620    HOME PHONE: _____

CELL#: 801 641-6844          WORK#: _____

DOB: _____    SS#: _____    DL#: 010435964

Notice: Pursuant to section 76-8-504.5, Utah Code Annotated, 1953 as amended, you are notified that statements you are about to make may be presented to a magistrate or judge in lieu of your sworn testimony at a preliminary examination. Any false statement you make and that you do not believe to be true may subject you to criminal punishment as a Class A Misdemeanor.

I do give this statement of my own free will. I understand that I have the right to remain silent, that anything I say can be used against me in a court of law, that I have the right to talk to an attorney, and to have him present when I make this statement, that if I cannot afford an attorney one will be appointed for me if I so desire. I understand that I have the right to stop answering questions at any time.

Fully understanding the rights above I make the following statement.

_Raymond "Max" Snyder_
signature

_[signature]_
witness

The thefts described in the attached complaint are from Max, a resident of Sevier County. They ultimately occurred and were filed in Sevier County in a foreign judgment. The Sheriff's Office's filing of criminal charges against Max on behalf of his

against

Over

ex-wife, Lauara Lisk, and the participation of Sheriff Nathan Curtis while allowing Lauara, her family, her attorneys, and their firms to steal millions from Max was and is discrimnatory. It has resulted in the ongoing criminal actions described in the attached Complaint. The accompaning complaint and flash drive include supporting documentation. Max respectively requests Sheriff Curtis to extend the same courtesy to him. Max requests criminal charges be brought against the individuals named in the attached complaind and like the charges brought against Max these individuals be ordered to Pay Max's damages

Raymond Max Snyder Plaintiff
PO Box 69
Aurora, Utah 84620
Phone: 801-641-6844

February 11, 2025,

Sevier County Sheriff's Office
835 East 300 North, Suite 200
Richfield, UT 84701
Phone: (435)-896-2600


COMPLAINT No. _2502-152_____. Received _FEB 11 2025_____

This is a violation of the Rules of Professional Conduct and a criminal complaint against the following Individuals for theft, extortion, and threatening me.

1) Lauara Ann Lisk (Lauara) and her family,
   a. Adam Lisk (Adam).
   b. Ryan Lisk (Ryan).
   c. Denise Lisk (Denise).
2) Lauara Ann Lisk's Utah Attorney and the attorney's firms,
   a. Matthew Howell, (Mr. Howell) Provo, UT.
   b. Mr. Howell's Firm Filmore Spencer, 3301 N University Ave, Provo, UT 84604.
3) Lauara Ann Snyder's Nevada Attorneys and their firm,
   a. Shawn B. Meador (Mr. Meador).
   b. Shay Wells (Mr. Wells).
   c. Bronagh Kelly (Ms. Kelly).
   d. Woodburn & Wedge, 6100 Neil Rd Ste 500, Reno, NV 89511.

Please fill in the required information above (Case No.), date it, and return the extra cover page using the self-addressed envelope provided.

The flash drive provided contains corroborating documentation in the form of Exhibits and Pleadings, confirming the theft of in excess of $2,300,000 from me. This is but one of the thefts by these individuals. They Exhibits can be accessed by clicking on Exhibit A1, Exhibit A2, and OBJECTION TO ATTORNEY FEES. The above-named individuals and their firms stole several million from me. Following their thefts and believing that law enforcement would not protect me they filed a Motion in the Nevada Second Judicial District Court requesting the court award Lauara's Utah attorney, Mr. Howell, his attorney fees for stealing from me and asking the court to declare me a vexatious litigant to prevent me from

1

continuing to expose these individuals criminal violations and from obtaining relief from the thefts.

OBJECTION TO ATTORNEY FEES, is a pleading. Exhibit A1 contains all the exhibits other than Exhibit A2. If you wish to go through a step-by-step outline of the thefts and extortion it can be done by opening OBJECTION TO ATTORNEY FEES and following the referenced exhibits corroborating the crimes.

### The following outline is the easiest and fastest way to understand the theft from me, of the loans to Lauara's son Adam.

Lauara and I were married in 2001. We immediately began lending large sums of money to her son Adam. In 2017 we began a divorce.

In Lauara's March 28, 2018, Nevada divorce deposition, with her attorney Mr. Meador present, Lauara first divulged that she, in 2010 had secretly allowed her son Adam to place $650,000 of our loans to Adam in his LLC bankruptcy, listing Lauara as the sole creditor. At her 2018 deposition, Lauara assured everyone that the loans still existed and that Adam would repay the loans. See Exhibit 3

On August 18, 2018, Lauara's Utah attorney Mr. Howell disposed me.  Mr. Howell and Lauara insisted the loans to Adam were still in place. See Exhibit A1's Exhibit 9.

Over the next few months, I discovered that Lauara had been secretly repaid the loans. Lauara and her kids sued me in North Carolina over the loans claiming they still existed. At my February 24, 2020, deposition by Lauara in North Carolina, I testified that following Lauara's Nevada deposition I had learned that the loans had been secretly repaid to Lauara. See Exhibit A7.

At Lauara's February 26, 2020, North Carolina Deposition, Lauara testified again that the loans still existed. See Exhibit A4.

At Lauara's son, Ryan's February 25, 2020, North Carolina Deposition, Ryan testified that the loans, Lauara's creditor debt in Adam's LLC bankruptcy, and Ryan and his wife's creditor debt in Adam's LLC bankruptcy had never been repaid. See Exhibit A5.

At Lauara's daughter-in-law and Ryan's wife, Denise's February 25, 2020, North Carolina deposition Denise testified that she and Ryan had never been repaid their creditor debt in Adam's bankruptcy. See Exhibit A6.

Lauara, Ryan, Denise, Mr. Howell, Mr. Meador, and the Woodburn & Wedge attorneys listed above had all lied, committed fraud, and violated Rules 11 and 60. All of Lauara's family had secretly sold their creditor debt in Adam's LLC bankruptcy. The loans had been secretly repaid to Lauara in 2013. See Exhibit K.

2

At trial in August 2020, Lauara and her attorney Mr. Meador falsely testified the loans still existed and insisted they be awarded to me as my share of the community property and awarded at the value I set for the loans. See Exhibit A8. As a result, the notes to Adam Lisk were awarded to me by the Court. See Exhibit A1's Exhibit12, the Divorce Decree page 8, No. 8. I continued trying to get compensated for the loans from Lauara, her Utah attorney Mr. Howell, Lauara's Nevada divorce attorney Mr. Meador, and the attorneys' firms.

Knowing the loans had been repaid to Lauara, on June 21, 2023, Mr. Meador drafted and filed a pleading with the divorce court claiming that I had violated Rule 11 claiming the loans still existed. The pleading included the affidavit of Adam Lisk drafted by Mr. Meador swearing the loans had never been repaid. See Exhibit A1's Exhibit 11. All these parties are still falsely claiming the loans awarded to me are still unpaid and that I am the one that is in violation of Rule 11, filing false documents.

On November 30, 2022, I filed suit against the individuals listed above, which included the loans repaid to Adam. See Exhibit L, the Complaint cover page, and **Complaint V.**

The loans that Lauara and these individuals stole from me, which they owe me are now worth in excess of $2,300,000. See Exhibit A9 the loan amortization schedule.

On December 6, 2024, Mr. Howell filed a Motion with the same court, the Second Judicial District Court in Elko concerning the suit I filed against him and Lauara's other attorneys for their thefts from me. See Exhibit M. Mr. Howell's Motion is an attempt to extort attorney fees from me for his costs caused by my exposing his and Lauara's thefts from me. See Exhibit M.

Following exposing Adam's false affidavit, (Exhibit A1's Exhibit 11) Adam sent me an email threatening to shoot me. I then filed a Motion to have criminal charges filed against Adam. See Exhibit N.

I'm requesting the attorneys named have their licenses canceled and criminal charges be filed against these individuals to protect me and to recover the funds these individuals stole from me.

Thanks,

/s/ Raymond Max Snyder

Raymond Max Snyder

3

 **UTAH GOVERNMENT RECORDS REQUEST FORM**

TO: _Sevier County Sheriffs Office_    Contact Person: _Julie Barton_
     (Department/Office holding the records)

Address of Office: _835 E 300 N_    _Richfield_    _UT_    _84701_
                                      (City)        (State)   (Zip)

**Description of records requested (records must be described with reasonable specificity):**
_CASE# 1502-152_
_____
_____
_____
_____

1. Choose One:
   ☐ I am requesting access to inspect (view) records; or
   ☑ I am requesting ___1___ copies of the records identified. I understand that I may be responsible for fees associated with copying charges and/or research charges as permitted by UCA 63G-2-203.

2. UCA 63G-2-203 (4) encourages agencies to fulfill a records request without charge. Based on these guidelines, I am requesting a waiver of copy costs because:
   ☑ I am the subject of the record or their authorized representative (Attach copy of Release Consent)
   ☐ Releasing the record primarily benefits the public rather than a person. Please explain:
   _____
   _____

   ☑ My legal rights are directly affected by the record and I am impoverished.
   (Please attach information supporting your request for a waiver of the fees)

3. If the requested records are not public, please explain why you believe you are entitled to access.
   ☐ I am the subject of the record.
   ☐ I am the person who provided the information.
   ☐ I am authorized to have access by the subject of the record or by the person who submitted the information.
   (*Documentation required by UCA 63G-2-202, is attached*)
   ☐ Other. Explain: _____

4. I am requesting expedited response as permitted by UCA63G-2-204(3)(b).
   (*Please attach information that shows your status as a member of the media and a statement that the records are required for a story for broadcast or publication; or other information that demonstrates that you are entitled to expedited response.*)

Requester's Name: _Raymond Max Snyder_
Mailing Address: _PO Box 69_    _Aurora UT_    _84620_
                  (Address-PO Box)    (City, State)    (Zip)

Daytime Telephone No.: _801 641-6844_

_Raymond Max Snyder_    _Feb 11, 2025_
Signature of Person Making Request    Date

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**FOR AGENCY USE ONLY**

Classifications:

☐ Private:          Medical records
Employee performance records
Private individual info (address, telephone, SSN, etc.)
Criminal background

☐ Controlled:     Medical, psychiatric or psychological info

☐ Protected:     Impair on-going investigation, prosecution or trial
Jeopardize life or safety of person
Security concern for government property
Work product (prepared solely for litigation)
Drafts of documents
Litigation strategy records

☐ Public:          No protection

Access Authorization:

Private:      ☐   Requester is subject of record.
          ☐   Requester is authorized by subject of record.

Controlled:  ☐   Requester is a physician, psychologist, social worker, or insurance provider with
a signed release from patient.

Protected:   ☐   Requester is person who submitted the record.
          ☐   Requester is authorized by protected class.

Public:       ☐   Any person is authorized to have his record.

Request Response:

☐ Approved. (Attach ID verification form if necessary)
☐ Extension required. (Attach extension form)
☐ Denied. (Attach denial form)

Signature:_____     Date: _____
       (Record Manager/Record Custodian)

**SEVIER COUNTY SHERIFF'S OFFICE**              5590
835 East 300 North              (435) 896-2600
Richfield, Utah 84701

# RECEIPT                        DATE 02/11/2025

RECEIVED FROM Max Snyder

Address: _____

How Paid:   Cash ☒   Check ☐   Check No. _____   Amount 5⁰⁰

FOR: Report 2502-152

By: _____

```
02/11/25                    Sevier County Sheriff's Office                   869
08:29                          LAW INCIDENT TABLE              Page:    1
     City                     : RICHFIELD
     Occurred after           : 10:54:45 09/13/2024
     Occurred before          : 10:54:45 09/13/2024
     When reported            : 10:55:41 09/13/2024
     Date disposition declared : 10/22/2024
     Incident number          : 2409-168
     Primary incident number  :
     Incident nature          : Citizen Assist
     Incident address         : 835 E 300 N; B1
     State abbreviation       : UT
     ZIP Code                 : 84701
     Contact or caller        : JULIE
     Complainant name number  :
     Area location code       : SCSO
     Received by              : Janie Hawley
     How received             : T Telephone
     Agency code              : SCSO Sevier County Sheriff's Office
     Responsible officer      : DAN DEMILLE
     Offense as Taken         : CIT  Citizen Assist
     Offense as Observed      :
     Disposition              : CLO Closed Case
     Misc. number             :
     Geobase address ID       : 199
     Long-term call ID        : 1061020
     External CAD ID          :
     Clearance Code           :
     Judicial Status          :
= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =
```

INVOLVEMENTS:

| Px | Record # | Date | Description | Relationship |
|----|----------|------|-------------|--------------|
| NM | 1556 | | SNYDER, RAYMOND MAX | Complainant |
| CA | 1061020 | 09/13/24 | 10:55 09/13/24 Citizen Assist | *Initiating Call |

LAW INCIDENT NARRATIVE:

```
02/11/25                Sevier County Sheriff's Office              869
08:29                     LAW INCIDENT TABLE            Page:    2
```

CITIZEN ASSIST-SCSO, COMPLAINT OF OBSTRUCTION OF JUSTICE, FWD TO SHERIFF
By Detective Dan Demille

---

Dispatch advised of a citizen assist at the Sheriff's Office.  I responded and
met with Raymond Snyder.  He handed me several papers and a thumb drive.  He
then ordered me to get him copies after I sign the paperwork with a case number.
 The complaint is stated to be an obstruction of justice complaint on Adam Lisk.
 Raymond stated in a witness statement that Adam filed a false report to the
Sevier County Sheriff's Office in case # 2407-006.

I gave Raymond a copy of the paperwork and he filled out a Gramma Request on the
spot.  I then went to speak with the Detectives about this.  As we were talking
the Sheriff walked in.  The paperwork was then handed over to him.

EOR, DD

LAW INCIDENT OFFENSES DETAIL:

```
   Se Offe Offense code                    Arson Dama
   -- ---- ------------------------------ ----------
    1  CIT   Citizen Assist                    0.00
```

LAW INCIDENT RESPONDERS DETAIL:

```
   Se Responding offi Unit number           Unit number
   -- --------------- --------------------- -----------------------------
    1  DAN DEMILLE     1U19                  MCLEAN,MATT
```

```
02/11/25                   Sevier County Sheriff's Office                    869
08:36                        LAW INCIDENT TABLE                  Page:      1
    City                         : SCO AURORA GRID
    Occurred after               : 16:42:34 07/03/2024
    Occurred before              : 16:42:34 07/03/2024
    When reported                : 16:42:34 07/03/2024
    Date disposition declared    : 09/05/2024
    Incident number              : 2407-006
    Primary incident number      :
    Incident nature              : THREATS
    Incident address             : 1850 S INTERCHANGE RD
    State abbreviation           : UT
    ZIP Code                     : 84620
    Contact or caller            :
    Complainant name number      : 1556      RAYMOND MAX SNYDER
    Area location code           : AUR   Aurora
    Received by                  : NATHAN CURTIS
    How received                 : T Telephone
    Agency code                  : SCSO Sevier County Sheriff's Office
    Responsible officer          : NATHAN CURTIS
    Offense as Taken             :
    Offense as Observed          : THRE Threat
    Disposition                  : UNF Unfounded
    Misc. number                 :
    Geobase address ID           : 33355
    Long-term call ID            :
    External CAD ID              :
    Clearance Code               : CLI Closed, by Investigator
    Judicial Status              :
= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

INVOLVEMENTS:
    Px   Record #   Date    Description                  Relationship
    ------------------------------------------------------------------------
    NM      1556            SNYDER, RAYMOND MAX           *Complainant

LAW INCIDENT NARRATIVE:
```

```
02/11/25                Sevier County Sheriff's Office              869
08:36                     LAW INCIDENT TABLE              Page:       2
```

THREATS-AURORA, RCVD TEXT MESSAGE, BELIEVES IT IS A THREAT AGAINST HIS LIFE
By Sheriff Nathan Curtis
_____

```
CASE #2407-006
DATE: 7-1-2024
TIME: 0940 HOURS
INCIDENT: THREATS
LOCATION: 1850 S INTERCHANGE RD, AURORA, UT
COMPLAINANT: RAYMOND MAX SNYDER
DOB:
ADDRESS:
PHONE:

SUBJECT: ADAM LISK
DOB:
ADDRESS:
PHONE: 910-352-0634
```

INITIAL REPORT

SYNOPSIS:
Complainant received a text message from the subject that he believes is a threat against his life.

INITIAL COMPLAINT:
On 7-1-24 the complainant came into the sheriff's office to report he had been threatened by the subject via text message. The complainant showed me the text messages on his phone. The messages were from a known number to the complainant. The name at the top indicated "AL". the complainant said this was Adam Lisk, his ex-wife's son.
The subject initiated the message conversation with the complainant about not including the subject in a recent court filing. The suspect in the body of the text and states "I'm your huckleberry" and continues the text message. Later in the day the subject sends another long message about taking a wager over who will go to jail first, the complainant or the subject.
The initial text message came in at 1021 hours on 6-28-24. The second message group came at 1443 hours.
THREAT:
The complainant provided me with a witness statement with a document that was attributing the statement "I'm your huckleberry" from the movie Tombstone, as not being a friendly greeting. The article was written in 2020 by a subject name s Paul Ehrlich. In the movie, the character of Doc Holliday is quoted as saying this line twice, once right before shooting another character in the movie.
I asked the complainant if he knew where the suspect was at the time he received the text message. The complainant told me he believed the suspect was in North Carolina or New York. I asked why he thought this was a threat to his life, the complainant said he knows the subject has a dangerous history and has connections to the mob. The complainant said he had someone at his house a year and half ago on his doorbell camera with a gun in his hand. (see Sevier County Sheriff's Office case #2203-165).
The second part of the threat the complainant reports is the subject used the phrase "I will play your Reindeer Games". The complainant believes this in reference to Rudolph the Red Nosed Reindeer not being allowed to play or win games. And when used in the message, the complainant believes the subject is saying he will no longer tolerate being taunted by the complainant.

```
02/11/25                 Sevier County Sheriff's Office              869
08:36                     LAW INCIDENT TABLE          Page:     3
```

Copies of the text messages were provided by the complainant on a usb thumb
drive under the heading of exhibit EEE. Text copy of the messages is below.
        "10:21 AM
Hey just saw u filed more stuff... Why didn't you include me?
lam always a good sport....
In the words of doc holiday...
*I am your huckleberry!*
Please don't be stingy and only sue people that have to pay attorneys......
I would welcome the opportunity to play your reindeer games with you...
I assume others would even let you amend your complaint....
After all you can amend now...
Nobody has filed responsive pleadings.....
I don't think you have it in ya...
Let me know so i can accept service....
Good day and god speed.
Look forward to the opportunity to see again...

2:43 PM
Well hope your well...
It seems like your heart isn't in it....
I guess you lack the ability to take shots at someone you know will best you...
I understand it's always good to be the 18 year old still in middle school...
You get to bully people around...
Yet avoiding anyone that you know is just better than you....
I understand it's probably best you keep kicking rocks at those you can....
On another note.....
Can we have a side bet as to who gets to spend time in the clink....
First?
I will take 3-1 odds you will spend at least 30 days before I spend one....
What do u have to bet?"

The complainant makes a single comment after the first message and says: "Not
sure where to serve you. Are you incarcerated?"

SUSPECT STATEMENT:
On 7-1-24 I called the subject and asked him about the text messages he sent to
the complainant. The subject explained to me the intent of the messages was to
goad the complainant into including the subject into the most recent court
filings the complainant has filed. The subject said he is in North Carolina and
has no intention of coming to Utah to cause any harm to the complainant. The
complainant will fill out a witness statement online.

LAW INCIDENT OFFENSES DETAIL:

| Se | Offe | Offense code | Arson | Dama |
|----|------|--------------|-------|------|
| 1 | TH | Transporting/Harboring Aliens | | 0.00 |

LAW SUPPLEMENTAL NARRATIVE:

| Seq | Name | Date |
|-----|------|------|
| 2 | Julie Barton | 14:39:48 08/29/2024 |

```
02/11/25                    Sevier County Sheriff's Office                    869
08:36                          LAW INCIDENT TABLE                Page:     4
```

```
02/11/25                Sevier County Sheriff's Office              869
08:36                       LAW INCIDENT TABLE            Page:       5
```

SUPPLEMENTAL REPORT-VOLUNTARY STATEMENT ADDED TO CASE
By Julie Barton

---

Voluntary Statement copied & pasted as a Supplemental report at the request of
Sheriff Curtis.

Voluntary Statement
Case#: 2407-006
Name: Adam Lisk    Date: 08/27/2024

Notice: Pursuant to section 76-8-504.5, Utah Code Annotated, 1953 as amended,
you are notified that statements you are about to make may be presented to a
magistrate or judge in lieu of your sworn testimony at a preliminary
examination. Any false statement you make and that you do not believe to be true
may subject you to criminal punishment as a Class A Misdemeanor.

I do give this statement of my own free will. I understand that I have the right
to remain silent, that anything I say can be used against me in the court of
law, that I have the right to talk to an attorney, and to have him present when
I make this statement, that if I cannot afford an attorney on will be appointed
for me if I so desire. I understand that I have the right to stop answering
questions at any time.

I fully understand the rights above I make the following statement.
Signature: Adam Lisk    Confirm: I confirm this is my statement
Witness: Does this Need Notorized    Confirm: I confirm I am the witness.

Statement: Adam Lisk

8/27/2024
Sevier County Sheriff's Office
835 East 300 North, Suite 200
Richfield, Utah 84701
Dear Sherriff Curtis,
Re: Voluntary Statement Regarding Text Messages and GIF Sent to Max Snyder
I, Adam Lisk am submitting this voluntary statement to provide clarity and
context to my recent communications with Max Snyder, my mother's ex-husband.
These communications, which included several text messages and a GIF sent on
July 1, 2024, were intended to challenge Max's ongoing abuse of the legal system
and to clarify my willingness and desire to participate with him and his
egregious litigation in a lawful manner. This statement outlines the context, my
motivations, and my intentions in sending these messages, as well as a response
to Max's recent allegations that mischaracterize the nature of my
communications.
1. Background Information and Context:
o For several years now, my mother, Mrs. Draper has been involved in a
protracted and acrimonious divorce process with Max Snyder. Throughout this
time, Max has demonstrated a consistent pattern of filing numerous lawsuits and

legal claims against her and our family and anyone that in anyway encounters him and does not agree with him. This includes but is not limited to attorneys (including his own) judges, Clerks, DA's, Sherriff Departments and the list goes on and on. These legal actions, which have all been or will be adjudicated against him ultimately, lack substantial merit, appear to be part of a calculated effort to inflict financial hardship and emotional distress upon my mother primarily and our family as a whole.
o To date, the ongoing litigation initiated by Max has resulted in my mother incurring over a million dollars in legal expenses. Each time Max files a new lawsuit or motion, my mother is forced to pay her attorney to respond, defend, or otherwise engage with the legal process, which has become both financially draining and emotionally taxing. In stark contrast, Max represents himself pro se, allowing him to file these actions at minimal to no cost to himself. This disparity in the cost burden is one of the many ways Max has continued to exert pressure on my mother, seemingly as a form of harassment.
o It is important to note that the courts have formally recognized Max as a vexatious litigant. This designation means that Max is required by court order to obtain an attorney's approval before filing any new legal actions. Despite this, Max has repeatedly ignored or circumvented this requirement, continuing to file actions independently, thereby escalating the emotional and financial toll on my mother and exacerbating the overall stress on our family. All while suffering no consequences.

2. Pattern of Delusional Behavior:
o Max has a documented history of filing false and delusional reports with the sheriff's office, (as well as other legal filings) which further illustrates his detachment from reality and propensity to fabricate events. In one such incident, Max reported that a man was attempting to kill him and claimed that this individual was at his door with a gun. However, upon investigation by the sheriff's office, it was determined that the supposed "gun" was, in fact, a cell phone. This incident is not isolated but rather indicative of Max's broader pattern of delusional behavior, where he perceives threats and constructs elaborate scenarios that have no basis in reality.
o This tendency to distort reality and invent fictional narratives extends to his legal actions as well. Max's relentless litigation against my mother, despite having no substantial grounds, is part of this broader pattern. His filings are often based on unfounded accusations and imaginary grievances, designed more to harass and intimidate than to seek legitimate legal redress. This behavior underscores his mental instability and his inability to separate fact from fiction, which is a serious concern given the impact it has on my mother and our family.

3. Max's Disregard for Law and Order:
o In addition to his delusional behavior and misuse of the legal system, Max has demonstrated a complete and utter disregard for law and order. Max was previously charged with a felony in Sevier County by the sheriff's office and was subsequently granted a pretrial release after posting a bond. One of the conditions of this pretrial release bond was that Max was not to leave the country or attempt to leave the country.
o Despite this clear condition, Max has flagrantly violated the terms of his release. By his own admissions, Max has attempted to travel into Canada but was turned back and denied entry. Furthermore, Max has stated in numerous legal filings that he plans to travel to Canada and is unable to participate in court proceedings as a result of these travel plans. These actions not only constitute a breach of the court's order but also reflect Max's blatant disregard for the legal obligations imposed upon him.
o Based on my recollection of reading these filings, I believe this information

to be accurate to the best of my knowledge. If needed, I am more than willing to
provide these documents in their certified form to substantiate the fact that
Max continues to show a complete disrespect and disregard for the orders of the
court, the rule of law, and basic principles of human decency. I respectfully
request that the sheriff's office take appropriate enforcement action within its
jurisdiction to address Max's violations and uphold the integrity of the legal
process.

4. My Intentions and Motivation for Communicating with Max:
o My motivation for sending the text messages and GIF to Max was straightforward
and rooted in a desire to directly confront his persistent misuse of the legal
system. I have substantial experience in representing myself in court and am
fully confident in my ability to effectively deal Max's legal tactics and lack
of candor. I wanted to make it unequivocally clear to Max that I am prepared to
participate with him directly in the legal arena, where I believe I can just
outperform him based on my superior intellect, legal knowledge and experience.
o Furthermore, I believe Max is not only engaging in these frivolous legal
battles out of spite but is also driven by deeper psychological issues. From my
perspective, Max appears to be detached from reality, often concocting elaborate
and unfounded narratives that serve no purpose other than to inflict harm and
confusion. His actions suggest a profound lack of understanding or
acknowledgment of reality, and it is my assessment that he is capable of
inventing scenarios more suited to fiction than to any reasonable or factual
basis.
o The tone of my messages was intended to be curt and direct, reflecting my
frustration and growing intolerance for Max's actions. I have reached a point
where I can no longer stand by while Max continues to misuse the legal process
to torment my mother. My objective was to prompt Max to include me in his legal
filings so that I could directly participate and counter his actions in court. I
was hopeful that appealing to Max's ego might provoke him into taking such
action, thereby allowing me to confront him head-on.

5. Allegations Concerning Monies Owed and Misinterpretation of Communications:
o Max has recently alleged that the text messages I sent to him somehow
reference monies owed and imply some form of admission of guilt on my part. I
categorically deny these baseless allegations. There is no reference to any such
monies in the text messages I sent, nor do they contain any admission of guilt
regarding any financial matter.
o The record is clear regarding any financial transactions between Max and
myself. Numerous civil filings already exist that thoroughly address any claims
related to money. To the extent there is any question regarding monies owed, I
would like to state unequivocally that I, and I alone, was the recipient of
these funds. Any repayment of such monies was managed solely by me, and Max was
a direct beneficiary of these repayments.
o In fact, Max continues to enjoy the benefits of these financial transactions,
as evidenced by his continued use of a motor home that I paid for. This vehicle,
which he considers his prized possession, was paid for as a partial repayment of
monies due to him and my mother, currently he remains the sole beneficiary of.
Any assertions to the contrary are purely delusional and have no basis in fact.
o If Max wishes to pursue these matters further in a civil court, I welcome the
opportunity to address these claims once again. I am confident in my ability to
"smash" any baseless accusations he may bring, as I have done in the past.
However, I ask that he direct any such legal actions towards me alone and
refrain from involving my mother and my family in his frivolous disputes.

6. Content of the Text Messages and GIF:
o On July 1, 2024, I sent a series of text messages to Max Snyder. The first

```
02/11/25                  Sevier County Sheriff's Office                     869
08:36                        LAW INCIDENT TABLE                 Page:        8
```

message read as follows:
"Hey just saw u filed more stuff...
Why didn't you include me?
I am always a good sport...
In the words of Doc Holliday...
I am your huckleberry!
Please don't be stingy and only sue people that have to pay attorneys...
I would welcome the opportunity to play your reindeer games with you...
I assume others would even let you amend your complaint...
After all, you can amend now...
Nobody has filed responsive pleadings...
I don't think you have it in ya...
Let me know so I can accept service...
Good day and god speed.
Look forward to the opportunity to see you again..."
o Following this initial message, I sent a GIF that depicted a clown tapping its
hands, as if waiting for a reply. This visual was meant to inject a bit of humor
into the situation, albeit in a pointed manner, and to underscore my readiness
to engage with Max legally. The use of the clown imagery was intended to
highlight what I perceive to be the absurdity of Max's actions, my belief that
he acts like a clown and his reluctance to involve me directly, knowing I have
successfully defended myself against his previous lawsuits.

7. Subsequent Text Exchanges and Further Communications:
o Max responded to my initial message with a reply that seemed to insinuate a
question about my availability or whereabouts, stating: "Not sure where to serve
you? Are you incarcerated?"
o In response to his question, I replied, "Nope. Are you yet?" This response was
intended as a direct and succinct rebuttal to his implication and to challenge
his continued avoidance of engaging with me directly in his legal filings.
o After receiving no immediate response from Max, I sent a follow-up message
that further elaborated on my stance:
"Well hope you're well...
It seems like your heart isn't in it...
I guess you lack the ability to take shots at someone you know will best you...
I understand it's always good to be the 18-year-old still in middle school...
You get to bully people around...
Yet avoiding anyone that you know is just better than you...
I understand it's probably best you keep kicking rocks at those you can...
On another note...
Can we have a side bet as to who gets to spend time in the clink...
First?
I will take 3-1 odds you will spend at least 30 days before I spend one...
What do u have to bet?"
o This series of messages was crafted to underscore my frustration with Max's
behavior and to challenge his apparent reluctance to face someone he knows is
substantially smarter than him and is capable to best him in a legal setting. I
sought to expose what I perceive as his cowardice in targeting only those who
cannot effectively defend themselves without legal counsel, and to make it clear
that I am more than prepared to have him bring the legal fights to me so I can
directly participate through the proper legal channels.

8. Clarification of Intent and Addressing Misinterpretations:
o It has come to my attention that Max has mischaracterized my references to
"Doc Holliday" and "reindeer games" as threats of physical violence, which is a
gross distortion of my intent and reality. These references were made in a
figurative sense, intended to convey my readiness and willingness to engage with

```
02/11/25              Sevier County Sheriff's Office              869
08:36                    LAW INCIDENT TABLE              Page:      9
```

Max in a legal context, not to imply any form of physical harm or violence.
o At no point did I intend to threaten Max, nor do I condone any form of
violence. My communications were solely focused on the legal context of his
actions and were meant to express my determination to counter his frivolous
legal maneuvers using the same system he has abused. The mention of "spending
time in the clink" was a rhetorical challenge, reflecting my belief that Max,
given his history of vexatious litigation, might face legal consequences for his
continued misuse of the court system.
o I want to be unequivocally clear: I am not a violent person, nor do I have any
intentions of engaging in violence. My approach to this situation is rooted in
the desire to see justice served through legitimate, legal means. Max's
portrayal of me as some sort of mob boss or violent figure is not only
inaccurate but also a deliberate attempt to divert attention from his own
actions and to further harass my family through false allegations. Moreover, it
is slanderous and defamation.

9. Aftermath, Actions Taken, and My Commitment to Legal Recourse:
o Following these exchanges, I did not receive any further communication from
Max. It appears that rather than addressing my challenge in a legal context, Max
has instead chosen to misconstrue my words and present a false narrative to your
office as well as other tribunals. This is consistent with his pattern of
behavior-avoiding direct confrontation and instead concocting elaborate and
unfounded claims.
o I am fully prepared to cooperate with the sheriff's office and any other
relevant authorities to clarify this matter. I am also ready to provide any
additional information or documentation that may be necessary to demonstrate the
true nature of my communications with Max.
o Moving forward, I intend to pursue every available legal avenue to hold Max
accountable for his actions and to protect my mother and family from further
harassment. My approach will be guided by honesty, transparency, and a
commitment to the rule of law. I am prepared to challenge Max's actions and to
seek justice through the appropriate legal frameworks that our country provides.

10. Conclusion and Final Remarks:
• In closing, I wish to reiterate that my communications with Max were motivated
by a desire to engage with him directly in the legal arena and to put an end to
his ongoing misuse of the legal system. My intention was never to threaten or
intimidate, but rather to assert my readiness to stand up to his actions in a
lawful and straightforward manner.
• I understand the seriousness of the allegations Max has made, and I am
committed to ensuring that the truth is brought to light. I have no desire to
see this situation escalate further, but I am also unwilling to allow Max to
continue his pattern of harassment unchallenged.
I declare that the above statement is true to the best of my knowledge and
belief.
Sincerely,

/s/ Adam Lisk

Signature: Adam Lisk    Confirm: I confirm this is my statement
Witness: Does this Need Notorize    Confirm: I confirm I am the witness.

EOR
JB

```
02/11/25                Sevier County Sheriff's Office              869
08:36                     LAW INCIDENT TABLE           Page:    10
```

   3   NATHAN CURTIS    16:03:37 09/05/2024

SUPPLEMENTAL REPORT-NO EVIDENCE TO SUPPORT COMPLAINT, CASE CLOSED
By Sheriff Nathan Curtis

---

Case closed.

At this time there has been no evidence to support or indicate the complainant
was in imminent danger. No evidence was provided to substantiate threat against
the complainants life.  While the complainant may have believed it, there was no
evidence to show the subject had taken any action to physically harm the
complainant.

Case closed. N. Curtis