# Exhibit 113.

Case 2409-168, 9/13/2024 Confirmation of Report of Elder Abuse to Sevier Co. Sheriff's Office, Sheriff Nathan Curtis.



**OFFICE OF THE SHERIFF**

835 East 300 North, Suite 200
Richfield, Utah 84701

Phone (435) 896-2600
Fax (435) 896-2654

## SHERIFF NATHAN J. CURTIS

## VOLUNTARY STATEMENT

Case #: 2409-168

NAME: Max Snyder  DATE: Sept. 13, 2024

ADDRESS: PO Box 69  CITY: Aurora

STATE: Utah  ZIP: 84620  HOME PHONE:

CELL#: 801 641-6844  WORK#:

DOB: June 14, 1947  SS#:  DL#:

Notice: Pursuant to section 76-8-504.5, Utah Code Annotated, 1953 as amended, you are notified that statements you are about to make may be presented to a magistrate or judge in lieu of your sworn testimony at a preliminary examination. Any false statement you make and that you do not believe to be true may subject you to criminal punishment as a Class A Misdemeanor.

I do give this statement of my own free will. I understand that I have the right to remain silent, that anything I say can be used against me in a court of law, that I have the right to talk to an attorney, and to have him present when I make this statement, that if I cannot afford an attorney one will be appointed for me if I so desire. I understand that I have the right to stop answering questions at any time.

Fully understanding the rights above I make the following statement.

_Max Snyder_  _____
signature  witness

This is an Obstruction of Justice Complaint against Adam Lisk for filing a false Report with the Sevier County Sheriff in Case No 2407-006 in violation of the Utah Code Sec. 76-8-307 The Complaint is provided in the accompanying pages and the Exhibits on the flash drive provided herewith.

Over

## FOLLOW-UP TO COMPLAINT NO. 2407-006, AGAINST ADAM LISK FOR ADAM'S OBSTRUCTION OF JUSTICE AND VIOLATIONS OF UTAH CODE § 76-8-306.

My Initial Complaint Against Adam Lisk Provided To Sheriff Nathan Curtis Was Voluminous. It Appears Too Voluminous To Fully Digest. Sheriff Curtis's Initial Report And His Final Report Following Receipt of Adam's **Report-Voluntary Statement** Contained Mistakes. The Mistakes Were Compounded By Adam's Lies And Covering Up His And His Family's Criminal Actions And Thefts From Max And Adam' Threats To Harm Max. This Follow-Up Complaint Confirms Adam's Criminal Actions And The Misrepresentations By Adam In His **Report-Voluntary Statement** Provided To The Sheriff's Office To Cover Up His And His Family's Criminal Actions. Adam's Actions Constitutes Obstruction Of Justice As Defined By Utah Code § 76-8-306. These Are Second Or Third Degree Felonies.

Adam Lisk's **Report-Voluntary Statement** attempts to implicate the Sevier County Sheriff and the Sheriff's Office in his violations of Utah Code § 76-8-306 with false statements of facts made to appear they were furnished him by law enforcement.

A copy of this Complaint and the supporting documentation/Exhibits to this Complaint are furnished on the accompanying flash drive.

In my original Complaint against Adam Lisk to Sheriff Nathan Curtis the Sheriff mistakenly stated that I had accused Adam Lisk of belonging to organized crime. I corrected the Sheriff's mistake in a priority letter to Sheriff Curtis mailed with tracking receipt No. 9505 5158 1207 4230 6079 31 on August 17, 2024. **See Exhibit 1**. The letter and the flash drive with the original complaint also confirmed that the Lisk family including Adam Lisk, Ryan Lisk, Denise Lisk, and Lauara Lisk had stolen, as of August 2024, $2,289,555.08 from me. **See Exhibit 1's Exhibit C10**.

The thefts came from money, mostly mine, that I and Lauara loaned to Adam which Lauara secretly allowed Adam to put in his LLC bankruptcies listing her as the sole creditor. Following Lauara allowing Adam to place our loans in Adam's bankruptcies, Lauara was secretly reimbursed the funds. That reimbursement/theft was covered up by the Lisk family and their attorneys.

Adam claimed in No. 5, on page 7 of his **Report- Voluntary Statement** that he alone was the recipient of the money loaned. Adam claimed that Max was the beneficiary of his "repayment" of the loans. These are lies, just two of several by Adam. Adam

1

Lisk, Ryan Lisk, and Lauara Lisk each sold their creditor debt in Adam's LLC bankruptcies in 2013. That debt included the loans to Adam for which Lauara was listed as a creditor in Adam's bankruptcies. See **Exhibit K**. Adam was not the lone recipient of the loans to him.

At Lauara's and her attorney's insistence, Max was awarded the nonexistent loans at trial in 2020. The repayment to Max that Adam describes as "his" repayment was in fact Max being repaid with Max's own funds, with funds that Lauara had been secretly reimbursed in 2013, seven years earlier, funds Max was awarded at trial. See the amortization schedule for the loans, **Exhibit 1's Exhibit C10 page 10 of 13, Nos. 50-51**. At the divorce trial in 2020, Lauara had the divorce court award the loans to Max. See **Exhibit 2**.

The explanations and supporting **Exhibits 1 through K** are referenced herein below to confirm the Lisks' crimes. They are furnished on the flash drive. The amount still owed Max as of this month exceeds $2,300,000. See **Exhibit 1's Exhibit C10**.

Max provided documentation in his original Complaint that Lauara had secretly allowed Adam to place the loans into his LLC bankruptcies listing Lauara as the sole creditor for the loans. **See Exhibit 2**, Lauara's March 26, 2019, Nevada divorce deposition confirms that she had secretly allowed Adam to put her and Max's loans into Adam's LLC Bankruptcies listing her as the sole creditor.

At her Nevada Divorce deposition in March 2019, Lauara claimed the loans had not been repaid and promised that Adam would repay the loans. Lauara also testified at her North Carolina Deposition that the loans had not been repaid. **See Exhibit 7**.

At Lauara's son, Ryan Lisk's North Carolina Deposition, Ryan testified that Adam's creditor debt to him, in the same LLC and the other creditor debts including Lauara's (Max and Lauara's loans to Adam), had not been repaid. **See Exhibit 6**. Ryan's wife, Denise Lisk also testified Adam's creditor debts had not been repaid. **See Exhibit 5**. At Max's North Carolina deposition, Max testified that he had learned the loans had been repaid to Lauara. **See Exhibit 3**. There is no question that the Lisks obstructed justice and violated Rule 60. There is no statute of limitations for this type of Rule 60 fraud.

At Max and Lauara's divorce trial, nearly two years following the Lisks depositions, Lauara testified that the loans had not been repaid and that she did not want to be

awarded the loans. Lauara insisted the court award Max the loans at the value Max set for the loans. **See Exhibit 4**. Lauara intentionally lied at her depositions knowing the loans had been secretly repaid to her, and lied at trial knowing they had been repaid prior to Lauara, Ryan, and Denise's depositions.

Lauara Lisk, Ryan Lisk, and Denise Lisk lied at their depositions and at trial. Adam Lisk lied in his August 27, 2024 **Report- Voluntary Statement**. The family and their attorneys set out to steal from Max. The actions of these people are criminal and serious enough to be considered violations of the RICO Act. It is not a civil matter. Utah has a long-arm statute to bring these individuals to justice in Utah.

Nothing in Adam's **Report- Voluntary Statement** can be considered true including his claim that he did not threaten to shoot Max. Adam's threat was to shoot Max and he realized Max would take his threat seriously. Max's original complaint to Sheriff Curtis confirmed Adam is a scary and violent person, that he's been charged with assault, that he has numerous felony drug crimes in North Carolina, that he is an addict, that he sells drugs, and that he has ties to organized crime.

Adam states on page 6 of his **Report- Voluntary Statement** that all of Max's legal actions have been adjudicated against him (Max), ultimately lack substantial merit and appear to be part of a calculated effort to inflict financial hardship and emotional distress upon my mother primarily and our family as a whole. Adam admits the action includes the "Lisk family". Exhibits 1 through K confirm that the family intended to steal from Max and that they did steal substantial sums from Max through false depositions, perjured testimony at trial, fraud, Adam's LLCs, the bankruptcy court, and violations of Rules 11 and 60 by Lauara her family, and their attorneys.

The Divorce Decree between Max and Lauara has been gutted as a result of Max's actions and exposing these individuals' fraud and thefts. Upon request, this can be confirmed by Max or Max's local attorney Jared Peterson.

Adam states that Max was charged by the Sevier County Sheriff and granted a pretrial release after posting a bond on the condition that Max was not to try to leave the country. These are additional lies to cover Adam threatening Max. With these lies, Adam is attempting to implicate the Sixth Judicial District Court, the Sevier County Attorney, the Sheriff, and the Sheriff's Office as the source for these statements.

In Adam's statement on page 5 of his **Report- Voluntary Statement** he insists on "my (his) willingness and desire to participate with him and his (Max's) egregious litigation in a lawful manner." On page 7 Adam states that he is prepared to outperform him (Max) directly in the legal arena, where I believe I can just outperform him based on my "superior intellect". The term describing Adam's belief that he is smarter than everyone is associated with heavy drug use and is termed **"criminal thinking"** or **"criminal mindset."** "This refers to a set of beliefs and attitudes that justify or rationalize illegal behavior, including the belief that one can outsmart law enforcement. This mindset often includes a sense of superiority and a belief that one is above the law."

Adam's requests should be honored. Adam should be brought to Utah to do just that, to outperform Max and everyone in Sevier County with his "superior intellect", to explain his justification for his and his family's crimes against Max and his obstruction of justice by filing false statements in a criminal investigation with the Sevier County Sheriff's Office.

Adam's false information provided to law enforcement during a criminal investigation constitutes Obstruction of Justice as defined by Utah Code § 76-8-306. Adam's Obstruction is a second or third-degree felony.

Max insists that Adam and the Lisk family be brought to Utah to answer for their crimes against Max and crimes against the Sevier County Sheriff's investigation.

_____        _____
Signature                        Witness

4



**Intermountain Computer Services**

70 N Main St
Richfield, UT 84701

Questions? Problems? Call us!

**435-896-4451**

# Invoice

| Date | Invoice # |
|---|---|
| 9/12/2024 | N855 |

**PAID 09/12/2024**

| Bill To |
|---|
| Max Snyder<br>PO Box 69<br>Aurora, Utah 84620 |

| Balance Due | $0.00 |
|---|---|

| | | | P.O. Number | Terms | Due Date |
|---|---|---|---|---|---|
| | | | | | 9/12/2024 |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| | Custom Laptop | Lenovo 16" laptop, upgrade 4TB SSD | 1,450.00 | 1,450.00T |
| | Misc | 4TB External HD | 150.00 | 150.00T |
| | | UT Sales Tax | 6.75% | 108.00 |

All returns are subject to a 15% restocking fee and must be in resaleable condition, and returned within 15 days of purchase. Warranties: shop labor is warrantied for 30 days upon pickup. Parts are warrantied for 30 days or up to the remainder of the manufacturers/distributors warranty, whichever is greater, excluding wear and tear. Refurbished computers are warrantied for 90 days.

| Total | $1,708.00 |
|---|---|
| **Payments/Credits** | -$1,708.00 |
| **Balance Due** | $0.00 |



# UTAH GOVERNMENT RECORDS REQUEST FORM

TO: **Sevier County Sheriff's Office**   Contact Person: **Julie Barton**
(Department/Office holding the records)

Address of Office: **835 E 300 N**   **Richfield**   **UT**   **84701**
                                      (City)        (State)   (Zip)

**Description of records requested (records must be described with reasonable specificity):**
**CASE# 2409-168**

1. Choose One:
   ☐ I am requesting access to inspect (view) records; or
   ☒ I am requesting _____ copies of the records identified. I understand that I may be responsible for fees associated with copying charges and/or research charges as permitted by UCA 63G-2-203.

2. UCA 63G-2-203 (4) encourages agencies to fulfill a records request without charge. Based on these guidelines, I am requesting a waiver of copy costs because:
   ☒ I am the subject of the record or their authorized representative (Attach copy of Release Consent)
   ☐ Releasing the record primarily benefits the public rather than a person. Please explain:
   _____
   ☒ My legal rights are directly affected by the record and I am impoverished.
   (Please attach information supporting your request for a waiver of the fees)

3. If the requested records are not public, please explain why you believe you are entitled to access.
   ☐ I am the subject of the record.
   ☒ I am the person who provided the information.
   ☐ I am authorized to have access by the subject of the record or by the person who submitted the information.
   (Documentation required by UCA 63G-2-202, is attached)
   ☐ Other. Explain: _____

4. I am requesting expedited response as permitted by UCA63G-2-204(3)(b).
   (Please attach information that shows your status as a member of the media and a statement that the records are required for a story for broadcast or publication; or other information that demonstrates that you are entitled to expedited response.)

Requester's Name: **Max Snyder**
Mailing Address: **PO Box 69**   **Aurora Utah**   **84620**
                 (Address-PO Box)   (City, State)   (Zip)
Daytime Telephone No.: **801 641 6844**

Signature: *Max Snyder*   Date: **Sept 13, 2024**
Signature of Person Making Request

**SEVIER COUNTY SHERIFF'S OFFICE**
835 East 300 North          (435) 896-2600
Richfield, Utah 84701

5530

# RECEIPT

DATE 09/13/2024

RECEIVED FROM Max Snyder

Address: _____

How Paid: Cash ☒   Check ☐   Check No. _____   Amount 5.00

FOR: Report

By: JBarton

```
09/12/24              Sevier County Sheriff's Office                     869
08:51                      LAW INCIDENT TABLE                  Page:       1
    City                          : SCO AURORA GRID
    Occurred after                : 16:42:34 07/03/2024
    Occurred before               : 16:42:34 07/03/2024
    When reported                 : 16:42:34 07/03/2024
    Date disposition declared     : 09/05/2024
    Incident number               : 2407-006
    Primary incident number       :
    Incident nature               : THREATS
    Incident address              : 1850 S INTERCHANGE RD
    State abbreviation            : UT
    ZIP Code                      : 84620
    Contact or caller             :
    Complainant name number       : 1556       RAYMOND MAX SNYDER
    Area location code            : AUR    Aurora
    Received by                   : NATHAN CURTIS
    How received                  : T Telephone
    Agency code                   : SCSO Sevier County Sheriff's Office
    Responsible officer           : NATHAN CURTIS
    Offense as Taken              :
    Offense as Observed           : THRE Threat
    Disposition                   : UNF Unfounded
    Misc. number                  :
    Geobase address ID            : 33355
    Long-term call ID             :
    External CAD ID               :
    Clearance Code                : CLI Closed, by Investigator
    Judicial Status               :
= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

INVOLVEMENTS:
   Px   Record #    Date      Description                 Relationship
   ------------------------------------------------------------------------
   NM    1556                 SNYDER, RAYMOND MAX         *Complainant

LAW INCIDENT NARRATIVE:
```

```
09/12/24                Sevier County Sheriff's Office                    869
08:51                      LAW INCIDENT TABLE                  Page:        2
```

THREATS-AURORA, RCVD TEXT MESSAGE, BELIEVES IT IS A THREAT AGAINST HIS LIFE
By Sheriff Nathan Curtis

---

CASE #2407-006
DATE: 7-1-2024
TIME: 0940 HOURS
INCIDENT: THREATS
LOCATION: 1850 S INTERCHANGE RD, AURORA, UT
COMPLAINANT: RAYMOND MAX SNYDER
DOB:
ADDRESS:
PHONE:

SUBJECT: ADAM LISK
DOB:
ADDRESS:
PHONE: 910-352-0634

INITIAL REPORT

SYNOPSIS:
Complainant received a text message from the subject that he believes is a threat against his life.

INITIAL COMPLAINT:
On 7-1-24 the complainant came into the sheriff's office to report he had been threatened by the subject via text message. The complainant showed me the text messages on his phone. The messages were from a known number to the complainant. The name at the top indicated "AL". the complainant said this was Adam Lisk, his ex-wife's son.
The subject initiated the message conversation with the complainant about not including the subject in a recent court filing. The suspect in the body of the text and states "I'm your huckleberry" and continues the text message. Later in the day the subject sends another long message about taking a wager over who will go to jail first, the complainant or the subject.
The initial text message came in at 1021 hours on 6-28-24. The second message group came at 1443 hours.
THREAT:
The complainant provided me with a witness statement with a document that was attributing the statement "I'm your huckleberry" from the movie Tombstone, as not being a friendly greeting. The article was written in 2020 by a subject name s Paul Ehrlich. In the movie, the character of Doc Holliday is quoted as saying this line twice, once right before shooting another character in the movie.
I asked the complainant if he knew where the suspect was at the time he received the text message. The complainant told me he believed the suspect was in North Carolina or New York. I asked why he thought this was a threat to his life, the complainant said he knows the subject has a dangerous history and has connections to the mob. The complainant said he had someone at his house a year and half ago on his doorbell camera with a gun in his hand. (see Sevier County Sheriff's Office case #2203-165).
The second part of the threat the complainant reports is the subject used the phrase "I will play your Reindeer Games". The complainant believes this in reference to Rudolph the Red Nosed Reindeer not being allowed to play or win games. And when used in the message, the complainant believes the subject is saying he will no longer tolerate being taunted by the complainant.

```
09/12/24                Sevier County Sheriff's Office                        869
08:51                        LAW INCIDENT TABLE                    Page:        3
```

Copies of the text messages were provided by the complainant on a usb thumb drive under the heading of exhibit EEE. Text copy of the messages is below.
      "10:21 AM
Hey just saw u filed more stuff... Why didn't you include me?
lam always a good sport....
In the words of doc holiday...
*I am your huckleberry!*
Please don't be stingy and only sue people that have to pay attorneys......
I would welcome the opportunity to play your reindeer games with you...
I assume others would even let you amend your complaint....
After all you can amend now...
Nobody has filed responsive pleadings.....
I don't think you have it in ya...
Let me know so i can accept service....
Good day and god speed.
Look forward to the opportunity to see again...

2:43 PM
Well hope your well...
It seems like your heart isn't in it....
I guess you lack the ability to take shots at someone you know will best you...
I understand it's always good to be the 18 year old still in middle school...
You get to bully people around...
Yet avoiding anyone that you know is just better than you....
I understand it's probably best you keep kicking rocks at those you can....
On another note.....
Can we have a side bet as to who gets to spend time in the clink....
First?
I will take 3-1 odds you will spend at least 30 days before I spend one....
What do u have to bet?"

The complainant makes a single comment after the first message and says: "Not sure where to serve you. Are you incarcerated?"

SUSPECT STATEMENT:
On 7-1-24 I called the subject and asked him about the text messages he sent to the complainant. The subject explained to me the intent of the messages was to goad the complainant into including the subject into the most recent court filings the complainant has filed. The subject said he is in North Carolina and has no intention of coming to Utah to cause any harm to the complainant. The complainant will fill out a witness statement online.

LAW INCIDENT OFFENSES DETAIL:

```
  Se Offe Offense code                   Arson Dama
  -- ---- ------------------------------ ----------
   1 TH   Transporting/Harboring Aliens        0.00
```

LAW SUPPLEMENTAL NARRATIVE:

```
  Seq Name              Date
  --- ---------------   --------------------
   2  Julie Barton      14:39:48 08/29/2024
```

```
09/12/24              Sevier County Sheriff's Office                869
08:51                    LAW INCIDENT TABLE              Page:        4
```

```
09/12/24                Sevier County Sheriff's Office                    869
08:51                      LAW INCIDENT TABLE                   Page:       5
```

SUPPLEMENTAL REPORT-VOLUNTARY STATEMENT ADDED TO CASE
By Julie Barton

---

Voluntary Statement copied & pasted as a Supplemental report at the request of Sheriff Curtis.

Voluntary Statement
Case#: 2407-006
Name: Adam Lisk     Date: 08/27/2024
Address: PO BOX 30693    City: Raleigh
State: NC     Zip:       Home Phone: (910)352-0634
Cell Phone: (910)352-0634    Work Phone:
DOB: 8-16-1978    SSN:
DL#:

Notice: Pursuant to section 76-8-504.5, Utah Code Annotated, 1953 as amended, you are notified that statements you are about to make may be presented to a magistrate or judge in lieu of your sworn testimony at a preliminary examination. Any false statement you make and that you do not believe to be true may subject you to criminal punishment as a Class A Misdemeanor.

I do give this statement of my own free will. I understand that I have the right to remain silent, that anything I say can be used against me in the court of law, that I have the right to talk to an attorney, and to have him present when I make this statement, that if I cannot afford an attorney on will be appointed for me if I so desire. I understand that I have the right to stop answering questions at any time.

I fully understand the rights above I make the following statement.
Signature: Adam Lisk    Confirm: I confirm this is my statement
Witness: Does this Need Notorized    Confirm: I confirm I am the witness.

Statement: Adam Lisk
PO Box 30693
Raleigh, NC
8/27/2024
Sevier County Sheriff's Office
835 East 300 North, Suite 200
Richfield, Utah 84701
Dear Sherriff Curtis,
Re: Voluntary Statement Regarding Text Messages and GIF Sent to Max Snyder
I, Adam Lisk am submitting this voluntary statement to provide clarity and context to my recent communications with Max Snyder, my mother's ex-husband. These communications, which included several text messages and a GIF sent on July 1, 2024, were intended to challenge Max's ongoing abuse of the legal system and to clarify my willingness and desire to participate with him and his egregious litigation in a lawful manner. This statement outlines the context, my motivations, and my intentions in sending these messages, as well as a response to Max's recent allegations that mischaracterize the nature of my communications.
1. Background Information and Context:
o For several years now, my mother, Mrs. Draper has been involved in a protracted and acrimonious divorce process with Max Snyder. Throughout this time, Max has demonstrated a consistent pattern of filing numerous lawsuits and

legal claims against her and our family and anyone that in anyway encounters him and does not agree with him. This includes but is not limited to attorneys (including his own) judges, Clerks, DA's, Sherriff Departments and the list goes on and on. These legal actions, which have all been or will be adjudicated against him ultimately, lack substantial merit, appear to be part of a calculated effort to inflict financial hardship and emotional distress upon my mother primarily and our family as a whole.
o To date, the ongoing litigation initiated by Max has resulted in my mother incurring over a million dollars in legal expenses. Each time Max files a new lawsuit or motion, my mother is forced to pay her attorney to respond, defend, or otherwise engage with the legal process, which has become both financially draining and emotionally taxing. In stark contrast, Max represents himself pro se, allowing him to file these actions at minimal to no cost to himself. This disparity in the cost burden is one of the many ways Max has continued to exert pressure on my mother, seemingly as a form of harassment.
o It is important to note that the courts have formally recognized Max as a vexatious litigant. This designation means that Max is required by court order to obtain an attorney's approval before filing any new legal actions. Despite this, Max has repeatedly ignored or circumvented this requirement, continuing to file actions independently, thereby escalating the emotional and financial toll on my mother and exacerbating the overall stress on our family. All while suffering no consequences.

2. Pattern of Delusional Behavior:
o Max has a documented history of filing false and delusional reports with the sheriff's office, (as well as other legal filings) which further illustrates his detachment from reality and propensity to fabricate events. In one such incident, Max reported that a man was attempting to kill him and claimed that this individual was at his door with a gun. However, upon investigation by the sheriff's office, it was determined that the supposed "gun" was, in fact, a cell phone. This incident is not isolated but rather indicative of Max's broader pattern of delusional behavior, where he perceives threats and constructs elaborate scenarios that have no basis in reality.
o This tendency to distort reality and invent fictional narratives extends to his legal actions as well. Max's relentless litigation against my mother, despite having no substantial grounds, is part of this broader pattern. His filings are often based on unfounded accusations and imaginary grievances, designed more to harass and intimidate than to seek legitimate legal redress. This behavior underscores his mental instability and his inability to separate fact from fiction, which is a serious concern given the impact it has on my mother and our family.

3. Max's Disregard for Law and Order:
o In addition to his delusional behavior and misuse of the legal system, Max has demonstrated a complete and utter disregard for law and order. Max was previously charged with a felony in Sevier County by the sheriff's office and was subsequently granted a pretrial release after posting a bond. One of the conditions of this pretrial release bond was that Max was not to leave the country or attempt to leave the country.
o Despite this clear condition, Max has flagrantly violated the terms of his release. By his own admissions, Max has attempted to travel into Canada but was turned back and denied entry. Furthermore, Max has stated in numerous legal filings that he plans to travel to Canada and is unable to participate in court proceedings as a result of these travel plans. These actions not only constitute a breach of the court's order but also reflect Max's blatant disregard for the legal obligations imposed upon him.
o Based on my recollection of reading these filings, I believe this information

```
09/12/24                Sevier County Sheriff's Office                    869
08:51                      LAW INCIDENT TABLE                  Page:        7
```

to be accurate to the best of my knowledge. If needed, I am more than willing to provide these documents in their certified form to substantiate the fact that Max continues to show a complete disrespect and disregard for the orders of the court, the rule of law, and basic principles of human decency. I respectfully request that the sheriff's office take appropriate enforcement action within its jurisdiction to address Max's violations and uphold the integrity of the legal process.

4. My Intentions and Motivation for Communicating with Max:
o My motivation for sending the text messages and GIF to Max was straightforward and rooted in a desire to directly confront his persistent misuse of the legal system. I have substantial experience in representing myself in court and am fully confident in my ability to effectively deal Max's legal tactics and lack of candor. I wanted to make it unequivocally clear to Max that I am prepared to participate with him directly in the legal arena, where I believe I can just outperform him based on my superior intellect, legal knowledge and experience.
o Furthermore, I believe Max is not only engaging in these frivolous legal battles out of spite but is also driven by deeper psychological issues. From my perspective, Max appears to be detached from reality, often concocting elaborate and unfounded narratives that serve no purpose other than to inflict harm and confusion. His actions suggest a profound lack of understanding or acknowledgment of reality, and it is my assessment that he is capable of inventing scenarios more suited to fiction than to any reasonable or factual basis.
o The tone of my messages was intended to be curt and direct, reflecting my frustration and growing intolerance for Max's actions. I have reached a point where I can no longer stand by while Max continues to misuse the legal process to torment my mother. My objective was to prompt Max to include me in his legal filings so that I could directly participate and counter his actions in court. I was hopeful that appealing to Max's ego might provoke him into taking such action, thereby allowing me to confront him head-on.

5. Allegations Concerning Monies Owed and Misinterpretation of Communications:
o Max has recently alleged that the text messages I sent to him somehow reference monies owed and imply some form of admission of guilt on my part. I categorically deny these baseless allegations. There is no reference to any such monies in the text messages I sent, nor do they contain any admission of guilt regarding any financial matter.
o The record is clear regarding any financial transactions between Max and myself. Numerous civil filings already exist that thoroughly address any claims related to money. To the extent there is any question regarding monies owed, I would like to state unequivocally that I, and I alone, was the recipient of these funds. Any repayment of such monies was managed solely by me, and Max was a direct beneficiary of these repayments.
o In fact, Max continues to enjoy the benefits of these financial transactions, as evidenced by his continued use of a motor home that I paid for. This vehicle, which he considers his prized possession, was paid for as a partial repayment of monies due to him and my mother, currently he remains the sole beneficiary of. Any assertions to the contrary are purely delusional and have no basis in fact.
o If Max wishes to pursue these matters further in a civil court, I welcome the opportunity to address these claims once again. I am confident in my ability to "smash" any baseless accusations he may bring, as I have done in the past. However, I ask that he direct any such legal actions towards me alone and refrain from involving my mother and my family in his frivolous disputes.

6. Content of the Text Messages and GIF:
o On July 1, 2024, I sent a series of text messages to Max Snyder. The first

```
09/12/24              Sevier County Sheriff's Office                    869
08:51                       LAW INCIDENT TABLE                Page:      8
```

message read as follows:
"Hey just saw u filed more stuff...
Why didn't you include me?
I am always a good sport...
In the words of Doc Holliday...
I am your huckleberry!
Please don't be stingy and only sue people that have to pay attorneys...
I would welcome the opportunity to play your reindeer games with you...
I assume others would even let you amend your complaint...
After all, you can amend now...
Nobody has filed responsive pleadings...
I don't think you have it in ya...
Let me know so I can accept service...
Good day and god speed.
Look forward to the opportunity to see you again..."
o Following this initial message, I sent a GIF that depicted a clown tapping its hands, as if waiting for a reply. This visual was meant to inject a bit of humor into the situation, albeit in a pointed manner, and to underscore my readiness to engage with Max legally. The use of the clown imagery was intended to highlight what I perceive to be the absurdity of Max's actions, my belief that he acts like a clown and his reluctance to involve me directly, knowing I have successfully defended myself against his previous lawsuits.

7. Subsequent Text Exchanges and Further Communications:
o Max responded to my initial message with a reply that seemed to insinuate a question about my availability or whereabouts, stating: "Not sure where to serve you? Are you incarcerated?"
o In response to his question, I replied, "Nope. Are you yet?" This response was intended as a direct and succinct rebuttal to his implication and to challenge his continued avoidance of engaging with me directly in his legal filings.
o After receiving no immediate response from Max, I sent a follow-up message that further elaborated on my stance:
"Well hope you're well...
It seems like your heart isn't in it...
I guess you lack the ability to take shots at someone you know will best you...
I understand it's always good to be the 18-year-old still in middle school...
You get to bully people around...
Yet avoiding anyone that you know is just better than you...
I understand it's probably best you keep kicking rocks at those you can...
On another note...
Can we have a side bet as to who gets to spend time in the clink...
First?
I will take 3-1 odds you will spend at least 30 days before I spend one...
What do u have to bet?"
o This series of messages was crafted to underscore my frustration with Max's behavior and to challenge his apparent reluctance to face someone he knows is substantially smarter than him and is capable to best him in a legal setting. I sought to expose what I perceive as his cowardice in targeting only those who cannot effectively defend themselves without legal counsel, and to make it clear that I am more than prepared to have him bring the legal fights to me so I can directly participate through the proper legal channels.

8. Clarification of Intent and Addressing Misinterpretations:
o It has come to my attention that Max has mischaracterized my references to "Doc Holliday" and "reindeer games" as threats of physical violence, which is a gross distortion of my intent and reality. These references were made in a figurative sense, intended to convey my readiness and willingness to engage with

Max in a legal context, not to imply any form of physical harm or violence.
o At no point did I intend to threaten Max, nor do I condone any form of violence. My communications were solely focused on the legal context of his actions and were meant to express my determination to counter his frivolous legal maneuvers using the same system he has abused. The mention of "spending time in the clink" was a rhetorical challenge, reflecting my belief that Max, given his history of vexatious litigation, might face legal consequences for his continued misuse of the court system.
o I want to be unequivocally clear: I am not a violent person, nor do I have any intentions of engaging in violence. My approach to this situation is rooted in the desire to see justice served through legitimate, legal means. Max's portrayal of me as some sort of mob boss or violent figure is not only inaccurate but also a deliberate attempt to divert attention from his own actions and to further harass my family through false allegations. Moreover, it is slanderous and defamation.

9. Aftermath, Actions Taken, and My Commitment to Legal Recourse:
o Following these exchanges, I did not receive any further communication from Max. It appears that rather than addressing my challenge in a legal context, Max has instead chosen to misconstrue my words and present a false narrative to your office as well as other tribunals. This is consistent with his pattern of behavior-avoiding direct confrontation and instead concocting elaborate and unfounded claims.
o I am fully prepared to cooperate with the sheriff's office and any other relevant authorities to clarify this matter. I am also ready to provide any additional information or documentation that may be necessary to demonstrate the true nature of my communications with Max.
o Moving forward, I intend to pursue every available legal avenue to hold Max accountable for his actions and to protect my mother and family from further harassment. My approach will be guided by honesty, transparency, and a commitment to the rule of law. I am prepared to challenge Max's actions and to seek justice through the appropriate legal frameworks that our country provides.

10. Conclusion and Final Remarks:
• In closing, I wish to reiterate that my communications with Max were motivated by a desire to engage with him directly in the legal arena and to put an end to his ongoing misuse of the legal system. My intention was never to threaten or intimidate, but rather to assert my readiness to stand up to his actions in a lawful and straightforward manner.
• I understand the seriousness of the allegations Max has made, and I am committed to ensuring that the truth is brought to light. I have no desire to see this situation escalate further, but I am also unwilling to allow Max to continue his pattern of harassment unchallenged.
I declare that the above statement is true to the best of my knowledge and belief.
Sincerely,

/s/ Adam Lisk

Signature: Adam Lisk     Confirm: I confirm this is my statement
Witness: Does this Need Notorize    Confirm: I confirm I am the witness.

EOR
JB

```
09/12/24                  Sevier County Sheriff's Office                    869
08:51                        LAW INCIDENT TABLE                   Page:      10
```

3   NATHAN CURTIS    16:03:37 09/05/2024

SUPPLEMENTAL REPORT-NO EVIDENCE TO SUPPORT COMPLAINT, CASE CLOSED
By Sheriff Nathan Curtis

---

Case closed.

At this time there has been no evidence to support or indicate the complainant was in imminent danger. No evidence was provided to substantiate threat against the complainants life. While the complainant may have believed it, there was no evidence to show the subject had taken any action to physically harm the complainant.

Case closed. N. Curtis