Raymond Max Snyder
PO Box 69
Aurora, Utah 84620
Phone: 801-641-6844
maxsnyder@yahoo.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND MAX SNYDER<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF NEVADA, for allowing the defendant judges, courts, and private party defendants to violate Plaintiff's Civil Rights.<br><br>JUDGE KRISTON N. HILL, Individually and in Her Official Capacity as Justice of The Fourth Judicial District Court, of Elko County, Nevada,<br><br>JUDGE TAMMY RIGGS, Individually and in Her Official Capacity as Justice of The Second Judicial District Court, of Elko County, Nevada,<br><br>FOURTH JUDICIAL DISTRICT COURT, Clerks Office<br>Elko County, Nevada,<br><br>FOURTH JUDICIAL DISTRICT COURT, Elko County, Nevada,<br><br>FOURTH JUDICIAL DISTRICT COURT, Attorney, Megan Smith<br>Elko, County Nevada | CASE NO. 3:25-CV-00751<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO NRCP AND FRCP RULE 56 AND MOTION FOR DEFAULT JUDGMENT PURSUANT TO NRCP AND FRCP RULE 55(B) AGAINST ALL DEFENDANTS AND FOR DAMAGES<br><br>AND<br><br>PLAINTIFF'S MOTION TO PROVIDE DOCUMENTATION TO LAW ENFORCEMENT FOR AN INVESTIGATION<br><br>AND<br><br>PURSUANT TO (NRS) 200.5093 AND (NRS) 200.5099 AND UTAH CODE 26B-6-205, ORDER EACH DEFENDANT TO FILE AN ELDER ABUSE COMPLAINT OF PLAINTIFF TO FEDERAL LAW ENFORCEMNT TRAINED IN THE DOJ ELDER JUSTICE INITIATIVE FINACIAL EXPLOITATION PROGRAM, PROVIDING COMPLAINT AND EXHIBITS |

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 1

1  SECOND JUDICIAL DISTRICT COURT.
2  Washoe County, Nevada,

AND

3  THE NEVADA SUPREME COURT
4  Washoe County, Nevada,

PURSUANT TO NEVADA CODE OF
JUDICIAL CONDUCT 2.11(A)
AND FEDERAL CODE OF JUDICIAL
CONDUCT 2.11(A), REFER THIS CASE
TO THE SOUTHERN DISTRICT

5  THE NEVADA STATE BAR
   Clark County, Nevada

6  THE UTAH STATE BAR
7  Salt Lake County, Utah,

8  And collectively,

9  Shawn B. Meador, Jose Tafoya, Seth
10 Adams, Woodburn & Wedge, Lauara Ann
   Lisk, et al, The WW Defendants.

11 And collectively

12
   Matthew Howell R. Howell, Fillmore
13 Spencer, The Fillmore Spencer Defendants

14 And collectively,

15
   Debra M. Amens, Amens Law, Ltd., The
16 Amens Defendants.

17 The Nevada Judicial Commission,

18 The Nevada State Bar,

19 The Utah State Bar.

20 Nathan Curtis, Sevier Co. Sheriff, Richfield,
21 Utah

22 And

23 John and Jane Does 1 through 10

24        Defendant(s)

25

26

27

28 COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
   THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
   ATTORNEY FEES, AND FOR A NEW TRIAL - 2

# INTRODUCTION

This Memorandum in Support of Motion for Summary Judgment Pursuant to NRCP and FRCP Rule 56 and Motion for Default Judgment Pursuant to NRCP and FRCP Rule 55(b) (Memorandum) is to confirm that there is no genuine dispute as to any material fact and that Plaintiff is entitled to judgment as a matter of law. This Memorandum precedes Plaintiff's requested Meet-and-Confer with opposing parties required by Local Rule 26-1 and his Motion for Summary Judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES
## STATEMENT OF FACTS

Plaintiff's Complaint confirms the continuing violations of his civil rights and that he has exhausted state remedies. See the Complaint page 59:18-60:8 and the referenced documentation. The *Rooker-Feldman* doctrine does not apply. The hearing held from October 14-16, 2025, in the Fourth Judicial District Court, Elko, Nevada, allowed the Defendants to increase their exploitation and abuse of the Plaintiff, a disabled elder, in violation of NRS 200.5093 and NRS 200.5099. As a result, it greatly increased the documentation required for this Complaint. Plaintiff's Memorandum is supported with evidence, exhibits, depositions, affidavits, and transcripts that are irrefutable and cannot be overcome by Defendants.

## ELDER EEXPLOIATION

In Nevada, elder exploitation laws protect people age 60 and over. In Utah, it is 65 years old and older. Exhibit 62, Verified Complaint confirms the theft by Defendant

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 3

Lauara Ann Lisk (Lauara) and her son, Adam Lisk (Adam). The exploitation is ongoing.

The Complaint confirms that following this suit, in 2019, when Plaintiff was 72, Plaintiff discovered at Lauara's Deposition, with Lauara's attorney Shawn Meador (Mr. Meador) representing Lauara, that she allowed Adam to place the couple's loans in his bankruptcy but still claimed the loans existed and would be repaid by Adam. That same year, Plaintiff discovered that Lauara had been reimbursed for the loans and hidden the funds, and that she, her son, Adam, and her son, Ryan Lisk, had secretly sold the loans and had hidden the funds. From the beginning, Lauara and her family intended to "romantically exploit" Plaintiff using Lauara's and Plaintiff's relationship/marriage.

Lauara and Mr. Meador's Resident Witness Affidavit for Lauara confirms that they claimed Lauara was a Utah resident until sometime in early 2018. Lauara retained Mr. Meador, months earlier, in March 2017, at which time they began secretly scripting Lauara's divorce from Plaintiff. Page 36:20-38:20 of the Complaint, **Cash Loans To The Community**, confirms that in an email to Mr. Meador on 12/28/2017, when Plaintiff was 70 and while Lauara still claimed Utah residency, Lauara first claimed that she had purportedly taken about $100,000 in cash from a Nevada business and deposited it into the couple's joint account. Within a month, the amount claimed by Lauara and Mr. Meador exceeded $240,000. The deposits were fabricated to extort Plaintiff. The Amended Complaint and its **ARGUMENT** confirm that the amount that the two claimed was put into the joint account, was changed six times.

This began Lauara and Mr. Meador's combined elder exploitation of Plaintiff

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 4

while Lauara claimed to be a Utah resident. The other events that amount to elder

exploitation, including that in Exhibit 62, are confirmed in the Complaint. Utah's elder

exploitation statute, Utah Code 62A-3-305, requires every individual to report elder

exploitation. In violation of Utah Code 62A-3-305, neither Lauara nor her attorneys ever

reported Plaintiff's elder abuse at their hands. Each of the other Defendants followed

Lauara and Mr. Meador down their elder abuse rabbit hole.

**Nevada District Courts:**

Generally, a Nevada court (or the judge/officials involved) has an ethical and

potentially legal duty to bring discovered criminal activity to light, often by informing

law enforcement or the District Attorney, especially if it impacts the current case or

involves serious offenses. While there are mandatory reporting exceptions (like for

child/elder abuse, which require reporting), courts handle new crimes by referring to the

DA or police, ensuring justice processes aren't undermined by hidden illegal acts.

1.  **Ethical Duty:** Judges and court personnel are sworn to uphold the law, meaning
    they can't ignore serious criminal conduct they witness or discover during
    proceedings.

2.  **Conduct of attorneys:** Nevada Judges must report the ethical violations of *other
    lawyers,* but generally, they are not required to *self-report* their own ethical issues,
    though they face discipline for failing to act.

3.  **Case Integrity:** A new crime might be relevant to the case, potentially affecting
    evidence, witness credibility, or the fairness of the proceedings.

4.  **Public Safety:** Courts have a broader responsibility to ensure public safety by not
    allowing criminal activity to go unaddressed.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 5

5. **Notification:** The judge typically notifies the District Attorney's office (prosecutor) or local law enforcement.

6. **Investigation:** The DA or police will then investigate the newly discovered crime, potentially leading to new charges.

7. **Obligation, Nevada:** Nevada courts are obligated to report the abuse of an elder. Nevada Revised Statute (NRS) 200.5093 mandates certain professionals, including healthcare workers, social workers, and those in law enforcement and the courts, to report suspected cases of elder abuse, including exploitation.

8. The Nevada Attorney General's Office's **Elder Abuse, Neglect and Exploitation: Legal Resources and Remedies Guide**, page 11, **Report of abuse, neglect, exploitation, isolation or abandonment of older person; voluntary and mandatory reports, investigation, penalty. NRS 200.5093** states:

A report must be made to Aging and Disability Services Division of the Department of Health and Human Services or law enforcement as soon as reasonably practicable, but not later than 24 hours after the person knows or has reasonable cause to believe the older person (age 60 years and older) has been abused, neglected, exploited, isolated, or abandoned. *Mandated reporters include, but are not limited to any person who,* in a professional or occupational capacity, knows or has reasonable cause for concern (financial institutions staff, medical personnel including paramedics, EMTs and ambulance drivers, therapists, athletic trainers, licensed dietitian, hospital personnel, coroner, personal care services, employee of the Department of Health and Human Services, any employee of a law enforcement agency, social workers, funeral home personnel, firefighters and community health workers). Law enforcement officers are required to inform victims of suspected domestic violence about the following: information about the arrest process for the abuser and orders for protection via an informational card.

**Mandated reporters in Nevada:** Nevada law includes a broad range of professionals on its mandated reporter list, including:
* Physicians, nurses, dentists, psychologists, social workers.
* Peace Officers, firefighters.
* Attorneys, accountants, trustees, guardians, conservators.

    \*      Financial institution employees.

    \*      Staff at elder care facilities.

9. **Exploitation (NRS 200.5091-50995)** Exploitation means any act taken by a person who has the trust and confidence of an older and/ or vulnerable person or any use of the power of attorney or guardianship of an older and/or vulnerable person to obtain control, through deception, intimidation or undue influence, over the older person's or vulnerable person's money, assets or property with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property;. This may also include converting money, assets or property of the older and/or vulnerable person with the intention of permanently depriving the older and/or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property.

10. **Obligation Utah:** Utah Code 62A-3-305 requires that any person who has reason to believe that a vulnerable adult has been the subject of abuse, neglect, or exploitation must report it to Utah Adult Protective Services or the nearest law enforcement agency.

11. **Emotional or psychological abuse:** refers to verbal or nonverbal behaviors that inflict anguish, fear, or distress. Examples include humiliation, threats, or harassment.

Elder exploitation by one spouse of another is a criminal offense in Nevada. In Utah and Nevada, romantic exploitation is a criminal offense. See U.S. v. *Powell*, U.S. District Court of Utah 05-30-2020, Case No 4:19-cv-00128-DN-PK. According to NRS 200.5099, it is a crime to exploit an older or a vulnerable person, which includes financial exploitation. The law categorizes elder abuse and neglect as gross misdemeanors or class C felonies, with severe penalties for the first and subsequent offenses. Financial exploitation can involve deceiving the victim into signing over their assets or depriving

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 7

them of their assets. It is important to report such exploitation to law enforcement.

In this case, the elder exploitation of Plaintiff was accomplished first by Lauara and her family, then joined by her attorneys and the district courts. As in the Powell case, these individuals are a fraud ring. Like Powell, their exploitation is a felony.

In Utah, financial exploitation of an elderly spouse can be a crime if it involves misrepresentation, false pretense, or false promise to induce the elderly spouse to enter into a contract or agreement. This included actions that may involve intimidation, isolation, or neglect, which can lead to severe penalties.

Financial exploitation involves the misuse of an elder's assets without consent. Utah law defines this as taking or misusing money, property, or resources through deception, coercion, or undue influence. Common examples include fraudulent changes to wills, misuse of power of attorney, or unauthorized withdrawals.

Offenders face criminal and civil penalties, second-degree felony charges for financial losses exceeding $5,000, punishable by up to 15 years in prison and fines.

In this case, the exploitation involved Lauara, her family, her lawyers, Plaintiff's attorneys, and the Nevada district courts. Long after the divorce was initiated, Lauara, her attorney, Mr. Meador, and Lauara's son, Adam, continued telling Plaintiff, who was a vulnerable elder, that the loans they had made to Adam would be repaid when, in fact, Lauara and her son had sold the loans in 2013.

Plaintiff has claimed elder abuse from day one and throughout the divorce. See Exhibit 62. The Amended Complaint includes elder abuse by the Defendants on page

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 8

158. The Complaint confirms throughout that the Defendants exploited the Plaintiff, a disabled elder. Plaintiff requested damages for elder abuse.

Pursuant to NRS 200.5093, NRs 200.5099, NRS 41,1395, and NRS.200.50955. Plaintiff confirmed in his Amended Complaint that the Fourth Judicial District Court and its judges lacked jurisdiction and are not exempt from criminal or financial damages pursuant to the *Rooker-Feldman* Doctrine. Judge Robert E. Estes (Judge Estes) participated in the abuse and declined to report the misconduct of Lauara, her attorneys, or their exploitation of the Plaintiff, a disabled elder in violation Of NRS 200.5099. Judge Estes's actions were not mistakes. Judge Kriston N. Hill (Judge Hill) participated in the exploitation of Plaintiff, a disabled elder, in violation of NRS 200.5099 and NRS 200.50995. Judge Hill's acts were not mistakes. Judge Hill declined to report the misconduct of Judge Estes, the attorneys for Lauara, Plaintiff's attorney Debra Amens (Ms. Amens), or the exploitation of the Plaintiff, a disabled elder, in violation of NRS 200. 5093. Judge Hill colluded with Defendants to cover up their acts in violation of NRS 195.020, NRCP Rule 60, NRS 200.5099,  NRS 200.5093, and NRS 200.50995.

Judge Riggs participated in the abuse and exploitation of Plaintiff, a disabled elder, in violation of NRS 195.020, NRS 200.5099, NRS 200.50995, and NRS 200.50955, and declined to report Plaintiff's exploitation in violation of NRS 200.5093. Plaintiff's original RICO Complaint with the Second Judicial District Court included Elder Exploitation. See Exhibit 112. Had Judge Riggs reviewed the Complaint, she would have realized the Plaintiff, a disabled elder, was exploited.

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 9

Judge Riggs declined to report the fraud on the court by attorneys Matthew Howell (Mr. Howell) and Adam McMillen (Mr. McMillen), in falsifying documents, including the original vexatious litigant designations, which resulted in damaging Plaintiff's health. See Exhibit 37.1, pages 15-20. Judge Riggs participated in the abuse and exploitation of a disabled elder in violation of NRS 200.5099, NRS 200.50995 and failed to report in violation of NRS 200.5093. The case has been fully argued in the Nevada State Courts. Judge Riggs ignored Plaintiff's original Complaint, which included Elder Exploitation, upon which Plaintiff would have prevailed in a fair trial. See Exhibit 112 and Plaintiff's Amended Complaint (Complaint), pages 20:15-30:6.

Plaintiff's Complaint confirms that his elder exploitation went unreported by the Second Judicial District Court and the Court's judges, including Judge Riggs.

II.    **The Nevada State Bar and Utah State Bar:**

The Nevada State Bar and the Utah State Bar are obligated to report any crime they discover as part of their disciplinary process. This includes any serious crimes that may affect an attorney's fitness to practice law. Neither State Bar did. Both colluded with Defendants to cover up their unlawful acts in violation of NRS 200.50995. Utah Code 62A-3-305 requires any person who has reason to believe that a vulnerable adult has been the subject of abuse, neglect, or exploitation to report it to Utah Adult Protective Services or the nearest law enforcement agency. The Nevada State Bar violated NRS 195.020, NRS 200.5093, NRS 200.5099, and NRS 200.50995. The Nevada State Bar's improper dismissal of all of Plaintiff's Complaints confirms the abuse. The Nevada State Bar

violated NRS 200.5099 and NRS 200.5093. Nevada's NRS 193.130 makes it a felony if the individual declines to report the exploitation a second time. The Defendants have declined to report Plaintiff's exploitation numerous times.

The Utah State Bar declined to report the exploitation and falsified its report from Plaintiff's complaint against Mr. Howell, claiming that Plaintiff accused Mr. Howell of stealing $150,000 from Plaintiff and that Plaintiff provided insufficient evidence to confirm. See Exhibit 106. The State Bar confirms that Plaintiff claimed that Mr. Howell assisted his ex-wife in misrepresenting a loan and filing a false vexatious litigant designation against Plaintiff, without documentation. Plaintiff supplied the Bar with a flash drive that contained Exhibit K, confirming that Lauara sold the loans belonging to Plaintiff. Exhibit 98 confirms the Utah State Bar dismissed a Complaint with the same evidence earlier stating that it should be brought up in a different forum. By not reporting, the Utah State Bar participated in the exploitation of Plaintiff, a disabled Elder, in violation of Utah Code Sections 75-5-111 and 26B-6-205.

Following the Utah State Bar being served in this case on 12/30/2025, on 01/05/2026, the Utah State Bar dismissed Plaintiff Complaint against Plaintiff's attorney, Justin Heideman who Plaintiff confirmed had stolen the $150,000, and refused to go to mediation with the Bar and threatened to sue Plaintiff. See Exhibit 118, Complaint No. 2601-073's Exhibit A. When the Plaintiff asked what the Bar's decision on his original Complaint against Heideman had been, the Bar stated it had been destroyed and, due to the passage of time, could not be provided. A review of the decision in Plaintiff's

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 11

Complaint against attorney, Adam McMillen, confirms the Bar's practice of convoluting facts to reach a decision to protect attorneys. See Exhibit 119, the Bar's decision in the McMillen complaint.

Originally, the Nevada State Bar ignored Plaintiff's reports of theft by his attorney, Andrew Wasilewski (Mr. Wasilewski). Five years following Clark County's successful prosecution of Mr. Wasilewski for stealing from the Plaintiff, the State Bar parachuted to the front of the parade, took the credit, and had the crime filed with the Nevada Supreme Court. Mr. Wasilewski's license was suspended for 5 years. See the Complaint pages 12:19 through 13:21 and Exhibit 93. The Nevada State Bar chose to ignore Plaintiff's Complaints against his second and third attorneys. Ms. Amens and Aaron Bushur (Mr. Bushur), who assisted Lauara and her attorneys in stealing millions from the Plaintiff. The Bar declined to acknowledge them. See Exhibit 93. The Bar chose to dismiss all the complaints against the Defendants' attorney without an investigation. See Exhibit 93. The Bar violated NRS 200.5099, 200.5093 and 200.50995 numerous times. Plaintiff provided the same information to all defendants, including Sheriff Nathan Curtis. None of their decisions refusing to act matched. It was clear that Plaintiff, an disabled elder, veteran, and Caucasian's civil rights were not protected any better than those of 1950, African Americans in 1950 Alabama. Plaintiff must not be allowed to drink from the same fountain as officers of the court and law enforcement.

## III.    The Nevada Commission on Judicial Discipline:

The Nevada Commission on Judicial Discipline is obligated to report any crime it

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 12

discovers as part of its investigative process. This includes complaints against judges and judicial officers, which may involve uncovering the criminal conduct of judges, not just mistakes that could be appealed. The documentation of Nevada's Fourth Judicial Court, and Second Judicial Court, the Utah State Bar, the Nevada State Bar, Lauara, her attorneys, and attorneys Ms. Amens and Mr. Bushur's crimes are irrefutably confirmed in Plaintiff's Complaint and its documentation/exhibits. These acts amount to elder abuse.

Knowing that the cases from the complaints against all judges had been fully argued in the State of Nevada, the Nevada Commission on Judicial Discipline declined to pursue charges against Judges Estes, Hill, and Riggs. See Exhibit 111 provided herewith, and Exhibits 92.5 and 93. Also see the Complaint page 127:8-27. The Commission of Judicial Commission allowed the abuse of Plaintiff, a disabled elder, in violation of NRS 200.5093, NRS 200.5099, NRS 200.50995 and NRS 200.50955.

Plaintiff confirmed that the Nevada Supreme Court colluded with the Defendants to cover their fraud. See Complaint pg. 59:18-60:8 and the referenced documentation. The state remedies have been exhausted. The *Rooker-Feldman* Doctrine is not applicable, nor is the Nevada Commission on Judicial Discipline's reasoning for its refusal to investigate Defendants.

## IV.    Conduct of Attorneys:

Defendants' attorneys, including but not limited to Mr. Meador, Jose Tafoya (Mr. Tafoya), Seth Adams (Mr. Adams), Mr. Howell, and their firms, Woodburn & Wedge, and Fillmore Spencer, fabricated evidence against Plaintiff a disabled elder, filed

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 13

numerous false affidavits, threatened Plaintiff, covered up Plaintiff's poisoning, violated

Rules 11 and 60, NRS 195.020, NRS 200.5093, NRS 200.5099 and NRS 200.50995. The

affidavits of Mr. Meador were intentionally criminal. See Complaint pg.20:1-27, pg.

56:13-59:17, **pg. 60:9-87:6**. and others. Pursuant to NRS 41.1395(1), Plaintiff is entitled

to double damages, and NRS 41.1395(2) attorney fees and costs, plus treble punitive

damages pursuant to NRS 42.005. Like the *Powell* gang in *U.S. v Powell*, U.S. District

Court of Utah 05-30-2020 Case No 4:19-cv-00128-DN-PK, Mr. Howell, who drafted the

original improper vexatious designation against Plaintiff, was part of Lauara and her

family's gang in its elder exploitation of the Plaintiff.

Defendant and her attorney, Mr. Meador, used several exhibits that violated

HIPAA. One of the documents in violation of HIPAA that they disclosed and used was

the Plaintiff's Stipulated Agreement with an insurer. Defendant and her attorney, Mr.

Meador, fraudulently attempted to verify that the document confirmed Plaintiff had had a

work-related injury during the marriage that had caused Plaintiff to miss work from the

injury, and that Plaintiff had received workers' compensation for the work missed. They

claimed Lauara was entitled to, and were awarded, hundreds of thousands of dollars from

the workers' compensation benefits, which they falsely claimed that Plaintiff was paid for

the work he missed as a result of his on-the-job injury, plus half of Plaintiff's bank

account. Using the same document on cross, Plaintiff showed that the Stipulated

Agreement confirmed the injury was several years before the marriage, that he had

missed no work during the marriage for the injury during the marriage, and that the

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 14

Stipulated Agreement confirmed penalties against the insurer for its bad faith, and unrelated to any funds in Plaintiff's bank account or workers' compensation for missed work. See the Complaint pages 30 through 32. This is but one of several examples of the Defendants' fraud allowed by Judge Hill.

Plaintiff's Complaint confirms his attorneys colluded with Defendants' attorneys in violation of NRS 195.020, NRS 200.5093, NRS 200.5099 and NRS 200.50995. Plaintiff's attorney, Ms. Amens, confirmed in a Complaint she drafted for the Plaintiff with this Court, Verified Complaint, Case No. 3:18-cv-00588-LRH-CLB, the exploitation of Plaintiff, an elder. See Exhibit 62, Verified Complaint, page 13:22-15:17. Ms. Amens discussed with the Plaintiff what actions he wanted to take. The Plaintiff insisted that Ms. Amens list the exploitation on the Verified Complaint and report the exploitation to authorities. Amens transferred the case to Plaintiff's third attorney, Mr. Bushur, on May 8, 2019, with the same instructions. See Exhibit 26 Notice of Substitution of Attorney in Federal Case. Plaintiff assumed that Ms. Amens and Mr. Busher had noticed law enforcement. This Court had the Report of Elder Abuse in Ms. Amens Verified Complaint. Plaintiff assumed the Court had also reported the elder abuse to law enforcement. None did.

Although Ms. Amens had assured the Plaintiff that she had filed a complaint with authorities, when the Plaintiff recently checked with the Aging and Disability Services Division of the Department of Health and Human Services, he discovered that no one had reported his exploitation. Attorneys in Nevada and Utah are mandated to report elder

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 15

abuse and exploitation. All attorneys violated the Nevada and Utah mandates.

Pursuant to NRS 41.1359(1), if an older person "suffers a loss of money or property caused by exploitation," the perpetrator is liable for "two times the actual damages incurred." This provision also applies to vulnerable persons, so long as the perpetrator knew that the victim was a vulnerable person. All the Defendants knew Plaintiff was elderly. Ms. Amens' Verified Complaint made that clear from the beginning. Still, Defendants continued to exploit and are still exploiting the Plaintiff.

Plaintiff's Complaint confirms that when Ms. Amens discovered the actual amount loaned to Adam was $650,000, she told Plaintiff she would amend the Verified Complaint. Neither she nor Mr. Bushur did. Both filed motions to be dismissed and were dismissed as Plaintiff's attorneys without amending the Complaint.

Aside from Lauara, her attorney, Mr. Meador, is the person most responsible for the exploitation and its continuation. He has filed many fraudulent affidavits to conceal his role in exploiting the Plaintiff. Mr. Meador assisted his client and her family in acquiring Plaintiff's property through fraud and undue influence. Then, to cover up the theft, Mr. Meador drafted a false affidavit for Defendant's son, Adam, falsely swearing that the loans the couple made to Adam had not been repaid but still existed, when, in fact, Adam and Lauara had sold them to a third party. See Complaint page 55, **THE PROMISSORY NOTES…The loans to Defendant Lauara Lisk's son, Adam Lisk,** through page 57:26 and the supporting documentation. Mr. Meador was an integral part of the elder exploitation of Plaintiff in violation of NRS 200.5093, NRS 200.5099 and

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 16

NRS 200.50995. Like the *Powell* gang in *U.S. v Powell*, U.S. District Court of Utah 05-30-2020 Case No 4:19-cv-00128-DN-PK, Mr. Meador was part of Lauara and her family's gang in its elder exploitation of the Plaintiff. Charges were filed against each member of the *Powell* gang who participated in the elder exploitation. The district court referred to Powell's accomplices as the Powell gang. Like Lauara's family, the *Powell* gang included members of Powell's family.

NRS 155.097 is a Nevada Revised Statute that aims to protect elderly and dependent adults from acquiring property through fraud, duress, or undue influence. It establishes that any transfer made under such circumstances is void. Defendant's lien on Plaintiff's property is void and must be immediately removed.

ABA Rule 1.2(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law. All of Lauara's attorneys assisted her in the thefts from Plaintiff, a disabled elder, in violation of ABA Rule 1.2(d), NRS 195.020, NRS 200.5093, and NRS 200.5099, NRS 200.50995, and NRS 200.50955. All are responsible and liable for Plaintiff's losses.

In Nevada, elder abuse cases can be elevated to a felony when the circumstances involve significant harm, malicious intent, emotional distress, or substantial financial loss. The classification of the offense and the severity of harm inflicted, the monetary

value in cases of financial exploitation, and the accused person's intent…financial

exploitation involving assets exceeding the state-defined threshold, can lead to felony

charges. A pattern of ongoing, intentional, or grossly negligent behavior that places an

elder in a situation likely to produce harm can also warrant a felony charge. Nevada's

threshold for felony theft is $1,200. The Defendants' patterns of emotional and financial

exploitation are ongoing and intentional. Defendants' elder exploitations are felonies.

During her representation of Plaintiff, Ms. Amens made a mistake that cost

Plaintiff everything. She had Lauara served in a North Carolina complaint against Mr.

Meador's instructions. See Complaint page 93, **Timeline of Amens' Collusion With**

**Lauara and Mr. Meador** beginning with 1. When Plaintiff asked Ms. Amens to engage

her insurer to correct the mistake, instead of engaging her insurer and filing a complaint

with law enforcement over the exploitation of Plaintiff, Ms. Amens filed a motion to be

dismissed as Plaintiff's attorney. Then, Ms. Amens began cooperating with Defendant

and her attorneys to commit fraud and filed for fabricated legal expenses against Plaintiff.

Plaintiff's Complaint confirms Ms. Amens's collusion with Defendant and Judge

Hill. See the Complaint and referenced exhibits, pg. 16, No. 8, pg. 21:24-24:14, pg.

32:20-33:26, pg. 46:1-5, pg. 49:7-51:17, pg. 54:1-16, pg. 60:9-19, pg. 63:1-65:14, pg.

75:15-23, **pg. 90:8-108:27**, pg. 112:17-113:1, **pg. 117:7-119:13**, pg. 130:13-27…

Ms. Amens violated NRS 195.020, NRCP Rules 11 and 60, NRS 200.093, NRS

200.5099, and NRS 200.50995

While she was still representing Plaintiff, Ms. Amens filed an Opposition to

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 18

Motion For Disqualification. See Exhibit 27. In her Opposition, Ms. Amens confirmed

that after filing the original Verified Complaint on the loans to Defendant's son, Adam, it

was discovered at Lauara's deposition that the loans were considerably more and totaled

$650,000. See Exhibit pages 2 through 3. Ms. Amens promised Plaintiff she would

amend the Federal Complaint to show the $650,000. Neither she nor Mr. Bushur did.

Following Ms. Amens' and Plaintiff's third attorney, Mr. Bushur, quitting, Plaintiff was

forced to take over Case No. 3:18-cv-00588-LRH-CLB when this Court sent notification

that it was about to be dismissed. Both of his attorneys were colluding with the

Defendants and filed motions to withdraw without amending or continuing through with

the Verified Complaint with this Court. See Exhibit 62. Both refused to amend the

Complaint in Case No. 3:18-cv-05888 to $650,000 in damages and refused to name

Lauara as a Defendant. See Complaint pg. 63:10-66:2. When this Court sent notice that

the Complaint against Adam was about to be dismissed, Plaintiff was forced to take over

the Case before this Court closed the case. Plaintiff was forced to proceed against Adam

alone for the original sum. See Complaint pg. 99:14-108:27. Though both his attorneys

abandoned him in violation of NRS 195.020, NRS 200.5093, NRS 200.5099 and NRS

200.50995. Plaintiff prevailed, further confirming the collusion between his attorneys,

Ms. Amens, Mr. Bushur, and the other Defendants. The problem with prevailing against

Adam was, as Lauara and Mr. Meador bragged, Adam was judgment-proof. Adam has

numerous judgments against him that he has declined to pay. Plaintiff confirmed in

Exhibit 37.1, page 36, the Trial Statement drafted by Mr. Meador, Exhibit 49, stated on

page 21. No. 14, Plaintiff had sued Lauara's son, Adam, for the unpaid loans, knowing

that he was judgment-proof and that Plaintiff had wasted community funds going after

the loans. Plaintiff testified at trial that Lauara and her sons told him the loans had not

been repaid, day 2 page 81:17-27. Exhibit 37.1 and the referenced

documentation/exhibits confirm from page 54 through 61 that the Divorce Decree was

drafted directly from Mr. Meador's fraudulent Trial Statement and not the testimony or

what was produced during the trial. As was the case with the *Powell* gang in *U.S. v.*

*Powell*, U.S. District Court of Utah 05-30-2020 Case No 4:19-cv-00128-DN-PK, Mr.

Meador was part of Lauara and her family's gang in the elder exploitation of the Plaintiff.

## V.   Exploitation:

Defendant's elder exploitation of Plaintiff fits the definitions set forth in NRS

200.5091-50995. The remaining Defendants aided and abetted the Defendant's elder

exploitation of Plaintiff.

Plaintiff's Planning Meeting Report in Case No. 3:24-cv-00267, EFC No. 76,

before this Court, stated on page 2. 1(a) that the case was an elder abuse case.

Although Plaintiff's attorney had confirmed the elder abuse of Plaintiff in her

Verified Complaint (Exhibit 62, pages 13:22-15:17), the Court declined to refer this

matter to law enforcement in Case No. 3:24-cv-00267, claiming there was no such legal

authority. See document EFC. No. 111 from case No. 3:24-cv-00267. The Court, in its

denial, referred to Defendants' Opposition. Defendants' Opposition to Plaintiff's Motion

to turn over to law enforcement was drafted by Defendant's attorney, Mr. Tafoya. Mr.

Tafoya cites Plaintiff's vexatious nature as the reasoning for the Court not to turn the violations of the law by Defendants over to law enforcement. See EFC No. 83 from Case No. 3:24-cv-00267. This is the same Mr. Tafoya who with Defendant, Mr. Adams, at the May 13, 2025 hearing before Judge Riggs admitted the vexatious designations against Plaintiff were improper following Plaintiff citing this Court's case, *Allison v. U.S. District Courts Clerks Office,* Case 2:2022-cv-01114, July 8, 2022, where the Court ruled that a pro se litigant could not be declared vexatious if he stood any chance of prevailing.

Defendants conceded that all the previous vexatious designations against Plaintiff were improper. Plaintiff had prevailed on appeal of the divorce. Plaintiff prevailed again against Judge Estes in this Court Case No. 3:23-cv-00048. See Complaint pages 18:5-19:3. Plaintiff prevailed in having the 4th Judicial District Court and Judge Estes recused. See Exhibit 54. Most Importantly Plaintiff prevailed against Adam Lisk in this Court in Case No. 3:18-cv-00588. See Exhibit 64. The Defendants have been hiding behind improper vexatious designations against the Plaintiff to justify their fraud and participation in the Plaintiff's elder abuse.

Judge Hill and the others hid behind vexatious designations against Plaintiff, including the latest. The vexatious designations against Plaintiff were their only defense.

Exhibit 37.1 page 83, Plaintiff's testimony and exhibits for the October 14-16, 2025, hearing before Judge Hill, confirms Plaintiff is a 78-year-old, disabled individual, an elder who was exploited by Defendants and had everything stolen from him. It confirms that Plaintiff would have prevailed at a fair trial.

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 21

At the 10/14-16/2025 hearing before Judge Hill, Plaintiff also cited *Allison* and confirmed that Defendants had conceded at the May 13, 2025, hearing before Judge Riggs in the Second Judicial District Court, that the Fourth Judicial District Court's vexatious designation against Plaintiff was improper. Judge Hill should have dismissed her original vexatious designation. Instead, Judge Hill strengthened it, preventing Plaintiff from further exposing Defendant's fraud and allowing Mr. Meador to file a second, "subsequent Wilfong Affidavit" on October 24, 2025, that contained nothing but lies. Judge Hill aided and abetted the Defendants' fraud and elder abuse of Plaintiff.

Judge Hill's reaction to Plaintiff's confirmation that her vexatious designation was improper and that the attorneys agreed was to strengthen her improper vexatious designation, making it impossible for Plaintiff to respond or file a pleading.

The Sevier County Sheriff's Office, Sargent Mark Crane, was first to take a complaint from the Plaintiff that Lauara had stolen the money the couple had lent Adam. See Exhibit 116. Sgt. Crane declined to find in Plaintiff's favor, stating Plaintiff was fully aware and shared in Lauara being repaid the loans, and that it was a civil matter. See Exhibit 116. Subsequently, Plaintiff filed the same Complaint with Detective Bradt Deaton of the Sevier County Sheriff's Office. Detective Deaton referencing Sgt. Crane's report, relied upon it and found the same. See Exhibit 112.5.

Discovering new irrefutable evidence that Lauara and her son had secretly sold the couple's loans, which Lauara had secretly allowed Adam to place in his bankruptcies. Plaintiff filed complaints with the Sevier County Sheriff's Office and with Sheriff Nathan

Curtis (Sheriff Curtis). See Exhibit K. Now, no one in good faith could claim that

Plaintiff knew about and shared in the loans, that Lauara was secretly repaid, nor that

Lauara benefited solely from the sale, or that it was not elder exploitation, or that it was a

civil matter. See Exhibits 113, 114, Plaintiff's Complaints to Sheriff Curtis, and Exhibit

115, Sheriff Curtis and the county attorney prohibiting Plaintiff from filing complaints. A

Motion Hearing was held on the felony complaint by the Sheriff's Office against Plaintiff

on 07/30/2025. See Exhibit 117. The next day, the felony complaint was dismissed with

prejudice without requiring Plaintiff to file Complaints through his attorney. See Exhibit

83. In refusing to allow Plaintiff to file, Sheriff Curtis violated Plaintiff's civil rights to

continue his harassment following filing bogus criminal charges against Plaintiff.

   In Exhibit 114, Sheriff Curtis's 2/11/2025 response to Plaintiff's complaint about

Lauara, her family, and attorneys stealing from him. Sheriff Curtis included Lauara's son,

Adam Lisk's response to Sheriff Curtis denying the claims in Plaintiff's Complaint. At

the bottom of page 2 of Exhibit 114, Plaintiff confirms he provided Sheriff Curtis Exhibit

K confirming Lauara and Adam selling the loans. Sheriff Curtis ignored the obvious

thefts and accepted Adam's response and denied Plaintiff's Complaint.

   Sheriff Curtis confirmed that he based his closing of Plaintiff's claim on Adam's

response. In reference to Adam's response, and to show how ridiculous Adam's excuses

were, the excuses Sheriff Curtis cited to based his denial of Plaintiff's Complaint against

Adam were, **1)** Exhibit 114, page 6-7.s No. 3 of Adam's voluntary statement, Adam

praises Sheriff Curtis for charging and arresting Plaintiff for a felony; preventing Plaintiff

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 23

from traveling, etc.; **2)** page 7, No. 5., refencing Plaintiff's allegation that Adam was threatening Plaintiff, Adam states that Plaintiff's recent allegations are lies and that he, Adam, alone managed the repayment of monies from the loans and that Max was the sole beneficiary of monies due him and his mother. Exhibit K showed that Lauara and Adam sold the loans. Adam perjured himself, and Sheriff Curtis knew it; and **3)** page 8, No. 7, where Adam infers that the Sheriff should jail Plaintiff for at least 30 days for his arrest and charges. Adam was colluding with the Sheriff, praising him for his criminal charges against Plaintiff and the harm they did.

Though it did, the Sheriff's office could no longer rely on Lauara's and Adam's claims. Adam goes on in No. 6 in his response, stating that he welcomes the chance to engage Max again and "smash" him again as he had done in the past. Plaintiff was forced to take over the understated Complaint against Adam in this Court for Adam's refusal to repay the loans. Plaintiff prevailed against Adam, confirming Adam lied about prevailing. Adam and his mother, Lauara, stole millions from the Plaintiff and Sheriff Curtis knew it.

With the new irrefutable evidence, Sheriff Curtis still had no intention of making a decision based on the truth. A review of the minutes from the last hearing on the criminal charges the Sheriff's Office filed against Plaintiff confirms that. It also affirms that Plaintiff was not required to file complaints through his attorney. See Exhibit 117, July 30, 2024, Hearing Minutes. Even though the charges against Plaintiff had to be dropped with prejudice the day following the hearing, Sheriff Curtis's mind was made up. He was not able to send Plaintiff to prison to stave off his participation in Plaintiff's elder

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 24

exploitation. Instead, he was going to allow the thefts from Plaintiff by preventing him from further reporting his elder exploitation. Sheriff Curtis was complicit in the thefts.

Sheriff Curtis participated in the elder abuse by refusing to address the theft of millions from the Plaintiff and allowing Adam to threaten, insult, ridicule, and harass the Plaintiff. By then, Sheriff Curris could not deny that Lauara, her family, and her attorneys… and he had stolen millions from Plaintiff, a disabled elder, and that the thefts were felonies. See *April Parks v. the State of Nevada* and *U.S. v. Powell*.

When Plaintiff persisted with complaints confirming he had been exploited by Lauara, her family, and her attorneys, Sheriff Curtis refused to acknowledge the obvious, the elder exploitation. He hid behind the threats by Adam, addressing them only to avoid responding to Plaintiff's confirmation of the millions stolen from him. Utah Code 76-5-111 provides examples of abuse which include * emotional or psychological abuse: infliction of anguish, pain, or distress through verbal or nonverbal acts; verbal assaults, insults, threats, intimidation, and harassment… This is abuse applied to an elder whom you have financially exploited, corroborate the continuing elder exploitation. In Nevada, NRS 200.571 provides the penalties for harassment. Sheriff Curtis could not and cannot claim that Adam's threats and verbal assault were not taunting, elder exploitation, or that the thefts from Plaintiff were not elder exploitation. Sheriff's Curtis's statement, "At this time there has been no evidence to support or indicate the complainant was in imminent danger…" is a cowardly excuse not to pursue elder exploitation for the thefts he refused to address. Like the members of the *Powell* gang, Sheriff Curtis was a part of Lauara's

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 25

gang, exploiting the Plaintiff. Sheriff Curtis violated Utah Code 53-6-211 (1)(g)-(h)-(i)

## VI.   NCJC 2.11(A) and FCJC 2.11(A):

It needs to be noted that Defendant, attorney Seth Adams, is this Court's representative before the Nevada State Bar. Both are Defendants in this case. Plaintiff filed a complaint against Judge Craig S. Denny pursuant to the relationship of he, Defendant Seth Adams and the Nevada State Bar. When Plaintiff filed his complaint confirming Judge Denny's connections with Defendant Woodburn & Wedge, Judge Miranda Du finished the case. There has been at least one recusal to date. Given Defendant Woodburn and Wedge's, improper influence in Norther Nevada, confirmed by the Complaint, Pursuant to NCJC 2.11(A) and FCJC 2.11(A), Plaintiff respectively requests the Court should refer this matter to the Southern District.

## VII.   Case No. 3:18-cv-00588, Snyder v. Lisk:

Plaintiff prevailed in this case against Defendant Lauara Ann Lisk's son, Adam Lisk. See Exhibit 64. Plaintiff's Complaint confirms on pages 55, **The Promissory Notes**…, through page 66 that: **1)** Defendant's attorney Mr. Meador had Plaintiff's attorneys removed for conflicts of interest that did not exist, that of going after the couple's loans to Lauara son Adam when he and Lauara knew the loans had been sold, **2)** that Mr. Meador drafted false affidavits including for himself, his client, and for Adam claiming the loans had not been repaid, **3)** that Plaintiff's second attorney, Ms. Amens, drafted the Complaint against Adam prior to knowing that Lauara had been reimbursed the loans to her son Adam, **4)** that Ms. Amens and Plaintiff's third attorney, Mr. Bushur,

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 26

both declined to amend the Complaint to $650,000 when it was discovered that Lauara had been reimbursed for the loans, **5)** that both Ms. Amens and Mr. Bushur withdrew as Plaintiff's attorneys without following through on the Complaint forcing Plaintiff to take it over without Lauara having been named a defendant (Lauara was the only one that would have repaid) and without the actual theft of $650,000 added, **6)** that Plaintiff was forced to move forward with the Complaint as originally drafted for less than half the loan amount, without Lauara as a Defendant and prevailed on the smaller amount, **6)** that the Defendant's acknowledged the vexatious designations against Plaintiff (which they were hiding behind) were improper, **7)** that Lauara sold the couple's loans (Exhibit K).

Though Adam declined to answer the Complaint allowing Plaintiff to prevail, Adam threatened Plaintiff, then bragged to Sevier County Sheriff, Nathan Curtis, **1)** how much smarter he was than Plaintiff, **2)** that he had prevailed against Plaintiff previously and, **3)** that he would destroy Plaintiff in any court case... See pages 22-26 above.

## VIII.   Collusion

Plaintiff's Complaint confirmed beyond doubt all Defendants acted in collusion as "joint participants". The private parties entered fabricated evidence. The state actors, knowing that the evidence was fabricated, acted and ruled upon that fabricated evidence, against Plaintiff, violated NRS 195.020, NRS 200.50995 Utah statute 26B-6-205.

The Fifth Circuit found the attorneys could be held liable as state actors, noting that private parties can be deemed state actors if they were "joint participants" with a government official in the unlawful action. *Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005).

The private parties in this case are therefore to be treated as state actors without immunity. The *Ballard* court held that the attorneys conspired together and that Judge Lambert provided "significant aid" to the attorneys in their effort. *See Lugar,* 457 U.S. at 937, 102 S.Ct. 2744. The *Ballard* court confirmed Ballard satisfied the requirements pursuant to Rule 12(b) to prevent the dismissal of his claims by the state district court.

The Ninth Circuit recognizes at least four different criteria or tests to evaluate whether a private actor has engaged in "significant" state action: (1) public function, (2) joint action, (3) compulsion or coercion, and (4) governmental nexus. *Kirtley v. Rainey* ,326F.3d1088,1092; see also *Sutton,* 192 F. 3d at 835-36; *Johnson v. Knowles,* 113F.3d1114, 118, (9th Cir. 1996); *Howerton,* 708F.2d at 382-83. In *Brunette v. Humane Society of Ventura County,* 294 F. 3d 1205 (9th Cir. 2002), the court potentially expanded those criteria by applying what it called the symbiotic relationship test. Satisfaction of any one of the tests is sufficient to find state action by a private actor. *Lee v. Katz,* 276 F.3d 550, at 554 (9th Cir.. 2002).

Plaintiff has confirmed that Judges Estes, Hill, and Riggs, the Fourth Judicial District Court, the Second Judicial District Court, and their personnel provided "significant aid" to the attorneys in their effort. *See Lugar,* 457 U.S. at 937, 102 S.Ct. 2744. This case fits all the criteria to find that the private actors are responsible for Plaintiff's damages. Plaintiff is entitled to a summary judgment.

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 28

# ARGUMENT

Plaintiff prevailed against Defendant Lauara's son, Adam, in this Court. The actual damages confirmed in the Complaint must be entered against Lauara and her attorneys. Plaintiff's Complaint affirms that he will prevail against all in this matter.

The unlawful actions by Lauara in covertly transferring the couple's loans to Adam, by allowing Adam to place them in his bankruptcy, and then covertly transferring them again, violated NRS 123.320. It is a theft crime against another. Pursuant to NRS 205.0832 and NRS 20583 in violation of the theft crimes defined in NRS 205. Pursuant to NRS 205.0835(2)(e), Lauara and her accomplices' crime is a class B felony punishable by 1 to 20 years in state prison. NRS 205.0835(3) requires the Defendant to pay restitution. Pursuant to NRS 41.1395(1), Plaintiff is entitled to double damages, and NRS 41.1395(2) attorney fees and costs, plus treble punitive damages pursuant to NRS 42.005.

Judges Estes, Hill, and Riggs, the Fourth Judicial District Court, the Second Judicial District Court, and their personnel, the Utah and Nevada State Bars, the Nevada Judicial Commission, and Sevier County Sheriff Nathan Curtis provided "significant aid" to the Defendant and her attorneys, fraud. Plaintiff must prevail.

Plaintiff insisted his attorneys report his elder abuse. They did not. Plaintiff has always insisted that his confirmation of abuse be turned over to law enforcement for investigation. This Court confirmed that Plaintiff requested that his abuse be reported to law enforcement. All Defendants must report the elder exploitation of Plaintiff to a DOJ EJI-qualified law enforcement investigator.

In the *State of Nevada v. April Parks*, Parks was sentenced to 16-40 years for stealing around $500,000 from elders. On appeal, *April Parks v. the State of Nevada* (2023) No. 84612-COA, the sentence and fine remained much the same. Parks stole a fraction from her clients compared to the millions that Defendants stole from Plaintiff.

Lauara used undue influence over Plaintiff, her marriage and romantic connection, "romance fraud" (see *U.S. v Powell*, U.S. District Court of Utah 05-30-2020 Case No 4:19-cv-00128-DN-PK) to induce Plaintiff into loaning money to her son, Adam, promising that her son would repay the loans. Had Plaintiff not been in a romantic relationship with Lauara, he would never have loaned money to Adam. In *U.S. v Powell*, Frank Powell engaged in romance fraud by enticing the victim to enter into a romantic relationship. He used the romantic relationship to manipulate the victim into giving him money and assets. Powell and eight members of his family used Powell's romantic relationship with an elderly woman to exploit her for approximately $273,849, a fraction of what Lauara, her family, her attorneys, and the other Defendants exploited from the Plaintiff. Powell was sentenced to 10 years in Federal Prison and ordered to pay $273,849.20 in restitution to the victim.

**Law enforcement agency**: NRS 200.50955 A law enforcement agency shall promptly seek to obtain a warrant for the arrest of any person the agency has probable cause to believe is criminally responsible for the abuse, neglect, exploitation, isolation, or abandonment of an older and/or vulnerable person. Warrants for Lauara, her family members, and attorneys must be obtained and carried out. In this Case, Lauara and her

family, with the aid of Mr. Meador and his firm, Woodburn & Wedge, and the others

cited, began and sustained the abuse of Plaintiff, a disabled senior and veteran, in

violation of NRS 200.50995. These individuals must be arrested.

Pursuant to NRS 41.1395, Plaintiff can sue Lauara and her coconspirators who are

obligated to the Plaintiff for double his actual damages plus attorney fees and costs.

Pursuant to NRS 42.005, Defendants are obligated to the Plaintiff for treble punitive

damages. Each attorney, including Plaintiff's attorneys and the other Defendants, should

have reported the elder abuse. They declined. In not reporting, each defendant aided and

abetted the ongoing exploitation and abuse. The documentation in the Complaint and its

Exhibits is irrefutable, strong enough to support a summary judgment. Each Defendant

must be ordered to furnish a copy of Plaintiff's Amended Complaint and its exhibits to

qualified DOJ, EJI law enforcement, and provide proof to Plaintiff and the Court.

Defendant Judge Hill must be ordered to report the fraud by Lauara, and her

attorneys, including M. Meador and Mr. Tafoya, to DOJ, EJI-qualified law enforcement,

and provide documentation to the Plaintiff and the Court of the filings. All Defendants'

actions must be referred to DOJ, EJI-qualified law enforcement for investigation.

This matter should be transferred to the U.S. District Court, Southern Division.

Defendant Lauara fits the requirements to be charged with elder exploitation set forth in

NRS 200.5091-50995. She must be charged.

All Defendants assisted Lauara in the exploitation of Plaintiff, a disabled elder, in

violation of NRS 195.020, NRS 200.5099, NRS 200.50955, and/or declined to report the

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 31

abuse in violation of NRS 200.5093 and Utah Code 62A-3-305. Mr. Meador and his firm,

Woodburn & Wedge, sustained the elder abuse against Plaintiff. Plaintiff is entitled to

and should receive:

1.    Pursuant to NRS 41.1395, they are obligated to the Plaintiff for double

actual damages plus attorney fees and costs;

2.    Pursuant to NRS 42.005, they are obligated for treble punitive damages,

3.    Prejudgment interest, as provided by law,

4.    An order that the judgment rendered against Defendant is not dischargeable

in bankruptcy due to the operation of 11 U.S.C. 523 (2), (4), and (6),

5.    For such other relief as the Court may deem just and proper.

In 1986, the United States Supreme Court decided two cases that undermined the

"slightest doubt" standard: *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L.

Ed. 2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S. Ct. 2505, 91

L. Ed. 2d 202 (1986). While not addressing the "slightest doubt" standard directly, the

Supreme Court in *Celotex* noted that Rule 56 should not be regarded as a "disfavored

procedural shortcut" but instead "as an integral part of the Federal Rules as a whole,

which are designed `to secure the just, speedy and inexpensive determination of every

action.'" *Celotex,* 477 U.S. at 327, 106 S. Ct. 2548 (quoting Fed.R.Civ.P. 1). In *Liberty*

*Lobby,* the Supreme Court went further in abrogating the slightest doubt standard when it

focused on the rule's requirement that there be no "genuine" issues of "material" fact:

By its very terms [the summary judgment standard] provides that the mere

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 32

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact. ... [T]he substantive law will identify which facts are

material. Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes

that are irrelevant or unnecessary will not be counted. *Liberty Lobby*, 477 U.S. at 247-48,

106 S. Ct. 2505.

**CONCLUSION**

Pursuant to NRS 200.50955 and NRS 200.50955, Lauara, her family members, her

attorneys, and others must be arrested for probable cause to believe they exploited

Plaintiff, an elder. Plaintiff has shown that there is no genuine dispute as to any material

fact, and the movant is entitled to judgment as a matter of law. This Case must be

referred to law enforcement trained in the Department of Justice's EJI program.

Plaintiff has shown that Judge Estes, Judge Riggs, and Judge Hill, in different

cases, acting outside the scope of their authority, colluded with the private party

defendants and thus lost their immunity. All Defendants acted in collusion as "joint

participants" in Lauara's unlawful actions in violation of NRS 200.50995. Plaintiff's

Complaint confirmed that the *Ballard* court held that the attorneys conspired together and

that Judge Lambert provided "significant aid" to the attorneys in their effort. *See*

*Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. The Defendants are liable for Plaintiff's

damages, as Plaintiff argued in his Complaint and this Memorandum. In the *Powell* case

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 33

in Utah, all members of Powell's gang were convicted of elder exploitation. The defendants in this action are no different.

Every named Defendant is either a professional mandated reporter in Nevada, a mandated reporter in Nevada, or a mandated reporter in Utah. Plaintiff's elder exploitation has continued nonstop and includes the incidents at the May 13, 2025, hearing in the Second Judicial District Court in Reno, Nevada, the October 14-14, 2025, hearing in the Fourth Judicial District Court in Elko, Nevada, the 07/30/2024, Motion Hearing in Utah Case No. 201600283 FS, and Sheriff Curtis's 2/11/2025 response to Plaintiff's complaint Case No. 2505-152. The unreported elder exploitation allowed Lauara's son, Adam, a party to the exploitation, to threaten and taunt Plaintiff, knowing the Utah and Nevada Courts would allow it. See Exhibit 106. The actions by Adam and Sheriff Curtis are a continuation of the Plaintiff's exploitation.

Had the Defendants reported Plaintiff's elder abuse at any time, the abuse and exploitation of Plaintiff would have stopped, and Plaintiff would have prevailed. Defendants unlawfully declined to report Plaintiff's elder abuse and are responsible for the consequences of their failure to report.

Plaintiff respectively requests that this Court move forward and provide the information provided herewith to a DOJ, EJI qualified investigator, and recommend that an investigation be initiated into the criminal actions of Lauara's family, the Nevada district courts, the Utah and Nevada State Bars, Lauara, Ms. Lisk's attorneys, attorneys Debra Amens, Aaron Bushur, Megan Smith, and others. Plaintiff respectively requests

THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 34

the Court order Defendants to do the same.

Plaintiff respectively requests that this case be transferred to the Southern District.

Plaintiff respectively requests to be awarded the damages provided by law and stated above, including but not limited to, 1) purchasing Plaintiff's home at the market value the home and property would have been if not for the theft of Plaintiff's water rights by the Defendants and the property was still under full irrigation, 2) all past and future attorney fees, pursuant to NRS 41.1395, 3) Plaintiff's costs pursuant to NRS 41.1395, 4) a new trial to determine the other costs and damages, 5) double damages pursuant to NRS 41.1395, 6) Treble punitive damages pursuant to NRS 42.005, 7) an order that the judgment rendered against Defendants is not dischargeable in bankruptcy due to the operation of 11 U.S.C. 523 (2), (4), and (6), 8) Prejudgment interest, as provided by law, and 9) further damages the Court deems just and proper, for such things as destroying Plaintiff health, his reputation, his ability to have a relationship, and destroying 8 plus years of his life.

Plaintiff requests that his elder abuse Complaint be transferred to a Federal agency trained in the DOJ Elder Justice Initiative, Financial Exploitation Program.

DATED this 9th day of January 2026.

/s/ Raymond Max Snyder
Raymond Max Snyder

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 35

## AFFIDAVIT OF PLAINTIFF RAYMOND MAX SNYDER

I, Raymond Max. Snyder, being first duly sworn, and under the penalty of perjury, hereby swear and affirm the above statements to be true and accurate to the best of my knowledge, after review of personal records, information, and notes, as well as upon my personal belief:

1. I am the Plaintiff shown herein above.

2. I hereby confirm that the statements and accounting in my Complaint and Jury Demanded and for Summary Judgment pursuant to Nev. R. Civ. P. 56 are true, accurate, and supported by documentation.

3. I affirm that the contents of this affidavit are made in good faith and are based on my personal knowledge and direct involvement in the matters discussed herein.

DATED this ___9___ day of ___January_____, 2026.


_____
Raymond Max Snyder


STATE OF UTAH                    )

                                 )SS.

COUNTY OF ~~UTAH~~ Sevier        )

On the __9__ day of __January__, 2026, personally appeared before me, a notary public, Raymond Max Snyder, known (or provided) to me to be the person whose name is subscribed to the Affidavit, who acknowledged that he executed the above

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 36

instrument freely and voluntarily for the purpose therein stated. IN WITNESS

WHEREFORE, I have hereto set my hand and affixed my official seal the day and year

first written above.

_____
Notary Public

SARAH PEARSON
Notary Public - State of Utah
Comm. No. 746160
My Commission Expires on
Nov 18, 2029

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE
THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE
ATTORNEY FEES, AND FOR A NEW TRIAL - 37

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I sent a copy of the foregoing to the defendants and the Court listed below. The Clerk of the Court also sent it to all Defendants listed below through the CM/ECF system.

U.S. District Court, District of Nevada, reno-public-docketing@nvd.us.courts.gov
Collectively:
Judge Kriston N. Hill, fourjdc1@elkocountynv.net,
Fourth Judicial District Court, fourjdc1@elkocountynv.net,
Fourth Judicial District Court Clerk's Office, fourjdc1@elkocountynv.net
Megan Smith, 4th Judicial Dist. Court Attorney, fourjdc1@elkocountynv.net
Collectively:
Second Judicial District Court, Elko, NV, caity.skill@washoecourts.us
Judge Tammy Riggs, 2nd Judicial District Court, NV, caity.skill@washoecourts.us
Collectively:
Lauara Ann Lisk, info@woodburnandwedge.com
Shawn B. Meador, info@woodburnandwedge.com
Jose A. Tafoya, info@woodburnandwedge.com
Seth Adams, info@woodburnandwedge.com
Woodburn & Wedge, info@woodburnandwedge.com
Collectively:
Matthew Howell, mhowell@flaw.com
Fillmore Spencer, mhowell@flaw.com
Collectively:
Debra Amens, debra@amenslawfirm.com
Amens Law Ltd., debra@amenslawfirm.com
Collectively:
Nevada Commission on Judicial Discipline, NCJDinfo@Judicial.nv.gov
The State of Nevada, NCJDinfo@Judicial.nv.gov

State Bar of Nevada, Admissions@nvbar.org
Nevada Supreme Court, nvscclerk@nvcourts.nv.gov
Utah State Bar, info@utahbar.org
Nathan Curtis, Sevier Co. Sheriff. ncurtis.scso@hotmail.com.

DATED this 9th day of January 2026.

/s/ Raymond Max Snyder
Raymond Max Snyder

COMPLAINT AND JURY DEMANDED FOR SUMS CERTAIN, FOR PUNITIVE DAMAGES, TO SET ASIDE THE DIVORCE DECREE FOR FRAUD, FOR PAST AND FUTURE COSTS AND PAST AND FUTURE ATTORNEY FEES, AND FOR A NEW TRIAL - 38

**EXHIBIT LOG**

Exhibit 116.  Case 801162.
Exhibit 117.  Minutes Motion Hearing July 30, 2024.
Exhibit 118.  Case No. 2601-073.
Exhibit 119.  Office of Professional Conduct Decision in the Complaint against attorney
            Adam McMillen.


## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)

because the Brief contains 9,168 words, excluding the parts of the brief exempted by Fed.

R. App. P. 32(a)(7)(B)(iii).


DATED this 9th day of January, 2026.

/s/ Raymond Max Snyder
Raymond Max Snyder Pro Se
PO Box 69
Aurora, UT 84620
Phone: (801) 641-6844
email: maxsnyder@yahoo.com