WOODBURN AND WEDGE
Seth J. Adams (Nev. Bar No. 11034)
Jose Tafoya (Nev Bar No. 16011)
6100 Neil Road, Ste. 500
Reno, NV 89511
E-Mail: sadams@woodburnandwedge.com
jtafoya@woodburnandwedge.com
Telephone: (775) 688-3000
Facsimile:  (775) 688-3088

Attorneys for Defendants Woodburn & Wedge,
Meador, Adams, Tafoya

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND MAX SNYDER, | Case No. 3:25-cv-00751 |
| Plaintiff, | |
| v. | **MOTION TO DISMISS WOODBURN AND WEDGE, SHAWN B. MEADOR, JOSE TAFOYA, AND SETH ADAMS** |
| THE STATE OF NEVADA, for allowing the defendant judges, courts, and private party defendants to violate Plaintiff's Civil Rights, JUDGE KRISTON N. HILL, Individually and in Her Official Capacity as Justice of The Fourth Judicial District Court, of Elko County, Nevada, JUDGE TAMMY RIGGS, Individually and in Her Official Capacity as Justice of The Second Judicial District Court, of Elko County, Nevada, FOURTH JUDICIAL DISTRICT COURT, Clerks Office, Elko County, Nevada, FOURTH JUDICIAL DISTRICT COURT, Elko County, Nevada, FOURTH JUDICIAL DISTRICT COURT, Attorney, Megan Smith, Elko County Nevada, SECOND JUDICIAL DISTRICT COURT, Washoe County, Nevada, THE NEVADA SUPREME COURT, Washoe County, Nevada, THE NEVADA STATE BAR, Clark County, Nevada, THE UTAH STATE BAR, Salt Lake County, Utah, and collectively Shawn B. Meador, Jose Tafoya, Seth Adams, Woodburn & Wedge, Lauara Ann Lisk, et al, the WW | |

Defendants, and collectively MATTHEW HOWELL R. HOWELL, FILLMORE SPENCER, The Fillmore Spencer Defendants, and collectively, DEBRA M. AMENS, AMENS LAW LTD., The Amens Defendants, THE NEVADA JUDICIAL COMMISSION, THE NEVADA JUDICIAL COMMISSION, THE NEVADA STATE BAR, THE UTAH STATE BAR; SHERIFF NATHAN CURTIS, Sevier County Sheriff's Office, Richfield, Utah, and JOHN AND JANE DOES 1 THROUGH 10,

Defendants.

Defendants WOODBURN AND WEDGE, SHAWN B. MEADOR, JOSE TAFOYA, AND SETH ADAMS (the "WW Defendants"), by and through their attorneys, Woodburn and Wedge, hereby file their Motion to Dismiss pursuant to Rules 12(b)(6) and other controlling bodies of law compelling dismissal. This Motion is based on the following Memorandum of Points and Authorities, all pleadings and papers on file herein, and such further oral argument and testimony as the Court may permit or require.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Raymond Max Snyder has an extensive history of frivolous, and failed litigation. The present Complaint[1] is only the most recent iteration of a long and troubled history of failed actions Plaintiff files against innocent parties due to nothing more than his dissatisfaction with the result of his divorce in Nevada state court. WW Defendants have now been sued by Plaintiff in a multitude of other Courts on the same bases that he presents now, and such actions have been dismissed either by the Courts or by Plaintiff himself. Plaintiff's current Complaint is nothing more than a recycled action in a forum that has already dismissed a nearly identical complaint of his in the hopes that this Court will grant him relief from valid Nevada State Court

---

[1] To date, Plaintiff has already filed three separate complaints and amended complaints in this action. ECF Nos. 3, 14, 22. Other defendants have filed various responses to these various complaints. While WW Defendants address the Second Amended Complaint filed as ECF No. 22 (the "Complaint"), all three of his complaints are interchangeable for purposes of this Motion and may be dismissed on the same grounds, regardless of which complaint this Court ultimately considers the operative complaint.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

1   judgments.[2]

2   **II.    STATEMENT OF FACTS**

3          As a preliminary matter, in deciding a motion to dismiss "a court may consider matters

4   of public record, inasmuch as their factual contents are not subject to reasonable dispute," without

5   turning the motion to dismiss into one for summary judgment. *Nguyen v. Wash. Mut. Bank, N.A.*,

6   2013 U.S. Dist. LEXIS 106500, at *4 n.2 (D. Nev. July 24, 2013) (citing to *United States v.*

7   *Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011)); *see also Khoja v. Orexigen*

8   *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (indicating courts "may take judicial notice

9   of matters of public record without converting a motion to dismiss into a motion for summary

10  judgment," but "cannot take judicial notice of disputed facts contained in such public records.").[3]

11  The long and troubled history of Plaintiff's frivolous conduct and recycled claims is well

12  documented in the public record by courts across multiple jurisdictions, and considered by this

13  Court as recently as 2024 and 2025 in Case No. *Snyder v. Hill, et al., No. 3:24-cv-00267-MMD-*

14  *CSD*.

15         **A.  Nevada Divorce Action.**

16         On December 12, 2017, Plaintiff filed for divorce from Lauara Ann Snyder ("Lauara")

17  in Case No. DR-MD017-757 before the Fourth Judicial District Court, State of Nevada (the

18  "Divorce Action"), currently still pending as the State district court decides issues on remand

19  from the Nevada Court of Appeals. WW Defendants represented Max's ex-wife in that action.

20         After an extensive trial, Judge Estes, having heard the testimony and evaluated the

21  evidence, entered his Findings of Fact, Conclusions of Law and Decree of Divorce on November

22  10, 2020 ("Divorce Decree"). **Exhibit 1**. Judge Estes found Plaintiff to be an untrustworthy

---

[2] This Court already considered and dismissed a complaint by Snyder seeking nearly identical relief in *Snyder v. Hill, et al., No. 3:24-cv-00267-MMD-CSD*. The Court's dismissal and judgment in that case is currently pending on an appeal by Snyder to the Ninth Circuit Court of Appeals. As is discussed more thoroughly in Section E below, the facts and legal arguments that warranted dismissal of that action are directly applicable here and warrant dismissal of this action. Rather than accept the dismissal or wait for a decision by the Ninth Circuit Court of Appeals, Snyder has instead immediately pivoted to game the judicial system and essentially re-file the same complaint here in the hopes that he will obtain a different result based on the same alleged facts and law that have been discredited time and time again. His conduct warrants dismissal and appropriate sanctions.

[3] Although the documents referenced herein are part of the public record, as a courtesy to the Court WW Defendants will include as exhibits some of the filings in the various actions should the Court wish to review them.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

litigant, often contradicting his own testimony throughout the same documents or court proceeding. *Id.* at Finding 6. Judge Estes specifically found that the "[a]ttorneys' fees incurred by [Lauara] were greatly increased because of the vexatious nature of [Plaintiff's] litigation. [Plaintiff's] actions created a flagrant waste of the community estate." *Id.* at Finding 26, p. 6:5-9.

Through prior court motions, Plaintiff disregarded Court procedural rules, filing motion after motion, primarily resulting in denials for improperly filed documents. The trial court found that, "[n]one of [Plaintiff's] motions complied with Local Rules…Mr. Snyder's post-trial motion practice was in violation of Court Rules and common sense and constitutes unreasonable, abusive and unjustified litigation practice and an abuse of process." **Exhibit 2** at Finding E, Order After Hearing on March 31, 2021. The trial court further found, "Subsequent to entry of the Decree, Mr. Snyder took affirmative steps, in direct violation of the Decree, that were designed and intended to prevent [Lauara] from receiving the benefits of the Decree." Ex. 2 at Finding G, p. 3.

On October 13, 2021, Plaintiff filed an emergency Petition for Writ of Mandamus in the Nevada appellate courts that challenged the trial court's refusal to consider and rule on various post-divorce decree motions. *See* **Exhibit 3**, Order Denying Petition for Writ of Mandamus, dated October 22, 2021. Plaintiff sought the writ even though he had already filed a separate appeal that sought review of the very same orders challenged in his writ petition. *See id.* The Nevada Supreme Court denied Plaintiff's Petition based on clearly established Nevada law stating that a writ of mandamus may only issue when no adequate and speedy remedy at law exists. In doing so, the Supreme Court noted the existence of Snyder's already-pending appeal. *Id.*

On or around October 20, 2021, Plaintiff filed a second emergency Petition for Writ of Mandamus with the Nevada Supreme Court which sought to disqualify the trial court judge from presiding over the underlying divorce and post-decree proceedings for alleged bias. Specifically, Plaintiff accused the trial judge of (1) improperly reducing an order to a judgment in enforcement proceedings, (2) allowing opposing counsel to "forge" orders, and (3) improperly presiding over the case after Plaintiff filed a complaint against the judge with the Commission on Judicial

Discipline.

On December 17, 2021, the Nevada Supreme Court denied Plaintiff's Petition based on its determination that Snyder "has not demonstrated, in his petition, that disqualification is warranted." *See* **Exhibit 4**, Order Denying Petition for Writ of Mandamus, dated December 17, 2021. This determination was based on clearly established Nevada case law stating that (1) a judge is presumed to be unbiased, (2) the rulings and actions of a judge during the course of a judicial proceeding do not establish grounds for disqualification, and (3) a judge is not automatically disqualified solely because a party in a pending case has filed a complaint against the judge with a disciplinary body. *See id.*

On June 17, 2022, Plaintiff filed a third Petition for Writ of Mandamus with the Nevada Supreme Court that sought "a writ directing the district court to grant him certain relief with respect to the divorce proceedings." *See* **Exhibit 5**, Order Denying Petition for Writ of Mandamus, dated 6/21/22. After reviewing Plaintiff's submission, the Supreme Court found that "in filing this writ petition, petitioner is simply attempting to reply to the answering brief filed in his consolidated appeals from a divorce decree." *See id.* The Nevada Supreme Court denied Plaintiff's Petition after finding that it was "an inappropriate use of the writ procedures" because "these matters have already been addressed in the consolidated appeals." *See id.* In doing so, the Court noted that Snyder had requested a criminal investigation into his ex-wife's counsel, and to disqualify that attorney based on alleged violations of the Rules of Professional Conduct. Those matters were denied as moot based on the court's denial of the petition. *Id.* at n.1.

On October 20, 2022, the Nevada Court of Appeals entered its Order Affirming in Part, Reversing in Part and Remanding (Docket No. 81887-COA) and Dismissing Appeals (Docket No. 82756-COA and Docket No. 83029-COA). *See* **Exhibit 6**. The Nevada Court of Appeals reversed or remanded portions of the Divorce Decree for further consideration, but otherwise affirmed all other aspects of the Divorce Decree.

Substantively, Plaintiff's current "claims" alleging fraud and other inflammatory accusations against WW Defendants, such as fabrication of evidence, are simply recycled and

baseless accusations he has raised across nearly every court that has dealt with his divorce.[4] In the Divorce Action on or about October 14, 2020, Plaintiff filed a Motion for a Criminal Investigation and for Sanctions accusing Defendant Meador and Plaintiff's own counsel of "colluding" to fix the case, and of "intentionally misleading the court." *See* **Exhibit 7** at p. 4:23–24. As an exhibit, Plaintiff attached correspondence between him and his counsel, where Snyder, seemingly aware he had no legal basis to file a document, states to his counsel: "call it a motion for sanctions for Fraud in the Court for Shawn's continued crime fraud. Do whatever ever is necessary but it goes to the court. Aaron I hope I've made myself clear. The pleading goes to the court." *Id.* at p. 3 of Exhibit 1, emails dated October 12. Plaintiff's counsel advised Plaintiff of his duties under NRCP 11 and advised Plaintiff he would not be signing off on Plaintiff's proposed filing. *Id.*

On or about November 21, 2020, Plaintiff filed a Motion to Review and Turn Over Pleading to Law Enforcement for Criminal Investigation, again accusing Defendant Meador of criminal conduct. *See* Motion attached hereto as **Exhibit 8**. On or about December 14, 2020, Snyder filed a 60(b) motion wherein he argued the Divorce Decree was obtained by fraudulent conduct. *See* 60(b) Motion attached as **Exhibit 9** at p. 6:8–9[5]. On or about January 4, 2021, Snyder filed a Motion to be Awarded Community Property wherein he argued Lauara and her counsel "deliberately prejudiced the Court against Mr. Snyder with a scheme of fabricated exhibits and statements resulting in the courts unfair order." *See* Motion to be Awarded Community Property at p.3:12–14, attached hereto as **Exhibit 10**. On or about January 4th, 2021, Snyder filed a Motion to Set Aside Judgments for Fraud on the Court and Perjury and a Second Motion to Set Aside Judgments for Fraud on the Court and Perjury, *again* arguing "Ms. Snyder and her attorney fabricated evidence, lied to the court and intentionally withheld evidence…"

---

[4] As will be discussed below, it is nearly impossible to know what exactly Plaintiff is claiming as his basis for relief. The 178 page Complaint in large part functions as means for Plaintiff to air his frustrations with the ongoing state Divorce Action without pleading any cognizable claims that can survive dismissal based on the legal standards discussed in greater detail below.

[5] 121 pages of exhibits to the 60(b) motion have been omitted in the interest of judicial economy and to not overburden this Court. Defendants have omitted most exhibits attached to Plaintiff's pleadings before other courts as many are voluminous and ultimately provided no support for Plaintiff's frivolous pleadings. These documents are part of the public record. Should this court nevertheless request full copies of the cited documents with the included exhibits, Defendants will supplement this pleading to provide them.

Second Motion to Set Aside Judgments for Fraud on the Court and Perjury at p. 4:7–10, attached hereto as **Exhibit 11**; *see also* First Motion to Set Aside Judgments for Fraud on the Court and Perjury at p. 6:5–13, attached hereto as **Exhibit 12** (arguing Defendant Meador committed fraud, but providing no evidence of such). In a "Brief in Advance of Hearing" filed on or about March 26, 2021, Plaintiff again alleged Defendant Meador committed fraud, alleging "the verdict reached in this case was the result of fraud on the court by defendant, defendant's attorney and Mr. Snyder's attorney." *See* **Exhibit 13** at p. 2:16–18. On or about April 22, 2021, Plaintiff filed another 60(b) motion on the basis of fraud, and a Rule 11 Motion for Sanctions against Defendant Meador, alleging that he committed fraud on the Court, and requesting the Court vacate the orders and award him an unequal distribution of the property. Rule 11 Motion for Sanctions at p. 2:6–21, attached hereto as **Exhibit 14**. None of Plaintiff's motions made on the basis of alleged fraud or forgery were granted.

Plaintiff's baseless accusations of fraud also continued at the appellate level in his Divorce Action. In his docketing statement for Appeal No. 81887 under "Nature of Action," Plaintiff states:

> This was a divorce. There was an unfair distribution of marital assets as a result of fraud on the court committed by both attorneys. Aaron Bushur for Appellant and Shawn Meador for Respondent who colluded to throw the case. Mr. Meador made knowingly false statements that prejudiced the court . . . .

Docketing Statement at ¶ 8, attached hereto as **Exhibit 15**. On December 24, 2020, Plaintiff filed a 1,184 page Motion for Summary Judgment with exhibits in Appeal No. 81887 alleging a wide array of perceived errors by the Fourth Judicial Court, and accused Defendant Meador of lying to the Court, and committing "fraud upon the court." Dec. 24, 2020 Motion for Summary Judgment at p.14, attached hereto as **Exhibit 16**. After a litany of motion work which included repeated allegations from Plaintiff of fraud by Defendant Meador to obtain the Divorce Action Judgment, Plaintiff eventually filed his opening brief on October 7, 2021. In his Opening Brief, Plaintiff argued "Max asserts the Divorce Decree resulted from Lauara's fabricated evidence, perjury, and violations of Rules 60(b), 59, and NRS 205.090. Max timely filed Rule 60(b) Motions to have the district court review. The District Court declined to review his post-trial pleadings. The district court erred relying upon and entering findings based on the fraud by

Lauara and drafted by her attorney….” Opening Brief at p. 4:22–26, 5:1–2, attached hereto as **Exhibit 17**. Plaintiff also argued that Lauara's attorney provided “false testimony” to disqualify Max's CPA expert. *Id.* at p. 8:25–28, 9:1–19. Plaintiff also argued in his Opening Brief that the “orders drafted by Meador and signed by the judge relied on fabricated and false evidence. Max believes they engaged in an unlawful conspiracy under at least two provisions of Nevada's conspiracy law. . . to arrive at the desired outcome in the Decree and, to deny Max a new trial.” *Id.* at p. 19:13–18. In his Reply Brief filed on May 10, 2022, Plaintiff again stated that two questions on appeal were whether “the divorce Decree was a true and lawful result of a fair trial,” and “whether [Lauara and Meador] be held responsible for violations of [statutes and rules] or will their violations of legal statutes to financially destroy Appellant be overlooked.” Appeal No. 81887 Reply Brief at p. 1, attached hereto as **Exhibit 18**. The Reply Brief itself again accuses Defendant Meador of fraud and forgery. *Id.* at p. 18. The Appellate Court's Order did not discuss Snyder's baseless claims of fraud and forgery nor use them as a basis for any of the remanded items, and expressly stated “Insofar as the parties raise arguments that are not specifically addressed in this order, we have considered them and conclude that they either do not present a basis for relief or need not be reached given our disposition of these appeals. For the same reason, we deny all of Raymond's pending requests for relief.” Exhibit 6 at p. 34:n.18. Presumably, if the Court did find his numerous fraud and forgery allegations had merit, it would have remanded the entire decree or used Plaintiff's allegations as a basis to remand portions of the divorce decree.

### B.  Second Judicial Nevada State Court Action.

Snyder, knowing he already raised all the arguments he raises in this action in the Fourth Judicial District Court and the Nevada Supreme Court, and knowing those courts saw no merit in his baseless accusations to grant him the relief he sought, nevertheless initiated subsequent actions against WW Defendants renewing his arguments and continuing his abusive litigation meant solely to harass Defendants. He filed the first of such actions in the Second Judicial District Court, County of Washoe, Case NO. CV22-01929 (“Second Judicial Action”) on November 30, 2022, wherein he sued WW Defendants and the Utah attorneys which

domesticated the Nevada divorce judgment in Utah. *See* Second Judicial Action Complaint, attached hereto as **Exhibit 19**.

In the Second Judicial Action, Plaintiff engaged in abusive litigation practices with no other purpose than to harass WW Defendants, repeating frivolous claims and allegations that had already been fully litigated and addressed, ad nauseam, in the divorce action, in the appeals from the divorce action and the Utah domestication action. The Second Judicial Action alleged the WW Defendants engaged in a series of fraudulent and illegal activities such as racketeering aimed at harming Snyder in his Divorce Action. *See* generally Exhibit 19. Plaintiff was simply dissatisfied, yet again, with the orders and judgments from the Divorce Action and the resulting orders stemming therefrom.

On January 2, 2023, Snyder filed a false proof of service claiming Shawn Meador was served, even though Defendant Meador was not served until January 5, 2023. On January 14, 2023 Snyder responded to one of Defendant's Motion to Dismiss, wherein he admitted the matters in his Second Judicial Action were in fact brought at trial in the Divorce Action. *See* Snyder Motion to Dismiss Response at p. 3:16–17, attached hereto as **Exhibit 20**, ("Howell's claim that these matters should have been brought at trial is unsupported is false. They were brought at trial."). On July 18, 2023, presumably aware his meritless case was about to be dismissed, Plaintiff voluntarily dismissed the Second Judicial Action, with his eyes set on the next forum in which he would frivolously sue WW Defendants. The Court in the Second Judicial Action ultimately found Snyder to be a vexatious litigant on May 29, 2025, such Order attached hereto as **Exhibit 29**. The Second Judicial Court found in part:

> Here, Snyder has filed the current case, attempting, yet again, to re-litigate his 2017 divorce. Snyder's filings in this action have been voluminous, and frivolously aimed at challenging aspects of his divorce action which are not proper before this court and which have already been resolved in his various prior lawsuits and appeals. Snyder's filings have forced defendants to waste significant resources in addressing them.

*Id.* at p. 6. This finding continues to ring true in this action.

### C.  Utah District Court Federal Action Against WW Defendants[6]

Just two days after voluntarily dismissing his Second Judicial Action, Snyder once again filed suit against the WW Defendants in the United States District Court, District of Utah, Case No. 4:23-cv00056-DN ("Utah Federal Action"). *See* Utah Federal Action Amended Complaint, attached hereto as **Exhibit 21**. As to WW Defendants, Plaintiff appeared to allege a breach of contract where he treated the Divorce Decree as the controlling document, and a number of other claims he had made against WW Defendants in the Second Judicial Action including racketeering under Nevada statutes, and crimes related to that charge (i.e. forgery, offering false evidence, etc.). Tellingly, part of Plaintiff's prayer for relief in the Utah Federal Action was that "the Divorce Decree be dismissed with prejudice for Mr. Meador's Rules 11 and 60 violations." Ex. 21 at p. 54.

On October 5, 2023, the Utah District Court Magistrate judge entered his Report and Recommendation in the Utah Federal Action, as well as two other cases Plaintiff filed in the Utah Federal Court related to the Divorce Action. The Report and Recommendation succinctly indicated all of Plaintiff's federal actions "represent a continuation of litigation between Plaintiff and his now ex-wife, Lauara Ann Lisk. Not content with the result of their ongoing divorce proceedings and related civil and criminal proceedings, Plaintiff brings these actions against judges, attorneys, and others involved in the state court litigation." *See* Utah Federal Action Report and Recommendation at p. 2, attached hereto as **Exhibit 22**.

The Report and Recommendation also analyzed *Younger* abstention and determined that the three *Younger* elements were met, those being: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. *See* Ex. 22 at p. 3 (citing to *Younger v. Harris*, 401 U.S. 37 (1971)). The Utah Federal District Court specifically emphasized the Nevada Divorce Action and the

---

[6] There are multiple actions Snyder has filed in Utah Federal Court which have all since been dismissed. 4:23-CV-00007, 4:23-CV-00008 and 4:23-CV-00056

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

progeny of cases that stemmed from it, noting such state cases provided Plaintiff an adequate forum for his claims, and the state proceedings involved important state interests to family and criminal law, thereby requiring abstention by the Federal District Court. *See* Ex. 22 at pp. 3-4.

The Report and Recommendation further recommended that Snyder be designated a restricted filer because of his "lengthy history of abusive litigation" including his conduct in the Divorce Action and the Second Judicial Action. *See id.* at p. 5. The Court noted that Snyder engages in a pattern of filing "meritless motions and other documents," filing "case after case," and "placing a burden on Court's staff and opposing parties." *See id.* at pp. 5-6. The Court indicated that based on Plaintiff's conduct in the numerous cases he initiated, "it is clear that [Snyder] is a vexatious litigant and reasonable procedures are necessary to restrict future abuses," setting forth a procedure to make Snyder a restricted filer, and screening any new complaint he seeks to file so innocent parties are not subjected to more frivolous lawsuits. *See id.* at pp. 6-7.

The District Court Judge adopted the Report and Recommendation, finding that it was required to abstain from ruling on Plaintiff's cases, and further finding that Plaintiff "is a vexatious litigant and reasonable procedures are necessary to restrict future abuses," ordering that Plaintiff be placed on the restricted filer list and have certain enumerated restrictions applied to him. *See* Memorandum Decision and Order Adopting Report and Recommendation, attached hereto as **Exhibit 23** at pp. 5-6; *see also* Utah Federal Action Judgment (dismissing Snyder's action with prejudice) attached hereto as **Exhibit 24**.

### D. Plaintiff's Bankruptcy

On September 1, 2022, Plaintiff filed a bankruptcy petition in the U.S. Bankruptcy Court for the District of Utah. On January 23, 2023, the Bankruptcy Trustee filed Trustee's Continuing Objection to Confirmation. *See Trustee's Objection*, attached hereto as **Exhibit 25.** In Trustee's Objection, the Trustee stated "it appears the primary purpose of the case is to frustrate the division of assets in the Debtor's divorce case…." *Id.* at ¶ 15. On February 3, 2023, after his attorney sought to withdraw from representing Plaintiff citing "irreconcilable differences," Plaintiff filed an Objection to a Motion to Dismiss his bankruptcy action. Plaintiff's Objection again alleged, with no supporting evidence, that a litany of documents had been forged or

fabricated, and recycled many of the unfounded allegations Snyder has raised in multiple failed cases. On February 16, 2023, just one week after Lauara had successfully obtained relief of the automatic stay to be able to proceed in the divorce action before the Fourth Judicial District Court in Nevada, Plaintiff filed a motion voluntarily withdrawing his bankruptcy, seemingly confirming Trustee's suspicion that Snyder's sole intent in filing for bankruptcy was to frustrate the division of the divorce assets.

### E.  Nevada District Court Federal Action.

Snyder's baseless claims of fraud, forgery, and fabrication are not exclusive to WW Defendants, but against nearly any member of the legal profession remotely involved in his Divorce Action. On January 25, 2023, Snyder filed suit against Judge Estes in the United States District Court, District of Nevada, Case No. 3:23-cv-48-ART-CSD, for Judge Estes' role as the judge in Snyder's Divorce Action, alleging Judge Estes violated his Fifth and Fourteenth Amendment. In the complaint, Plaintiff accuses Judge Estes of entering "knowingly false" orders, and again argues certain orders were forgeries. *See e.g. id.* at p. 7–9. The Nevada District Court dismissed Snyder's complaint on November 21, 2023, just days after Snyder filed another action against WW Defendants in the Fourth Judicial District Court, State of Nevada.

**Most recently, Snyder sued WW Defendants and other Defendants in this same Court on nearly identical grounds related to his allegations of wrongdoing surrounding the Divorce Action and seeking to overturn the results of his divorce. *See Snyder v. Hill, et al., No. 3:24-cv-00267-MMD-CSD.*** That lawsuit has since been dismissed on the basis that the Rooker-Feldman doctrine deprived the court of subject matter jurisdiction. Snyder has a pending appeal before the Ninth Circuit Court of Appeals challenging that dismissal. Case No. 25-435. Snyder's attempts at relitigating issues which have been dismissed time and time again are so apparent, this present Motion is in large part identical to one WW Defendants filed in the *Snyder v. Hill, et al., No. 3:24-cv-00267-MMD-CSD* action. The relief sought by Snyder now and the alleged grounds for such relief are substantively identical to the case currently on appeal, and compels a dismissal of this "new" action.

1    **F.  Fourth Judicial Nevada State Court Action Against WW Defendants.**

2    Despite his mounting failures, Snyder sued WW Defendants in the Fourth Judicial

3    District Court, the same Nevada state Court in which the Divorce Action is still pending.

4    Unsurprisingly, the basis of Plaintiff's Fourth Judicial action was more barebones accusations

5    that WW Defendants engaged in a pattern of fraud, forgery and fabrication. *See* Plaintiff's Fourth

6    Judicial Complaint, attached hereto as **Exhibit 26.** The Court ultimately dismissed Plaintiff's

7    Complaint with prejudice, finding Plaintiff failed to state a claim because the Fourth Judicial

8    Complaint appeared to be "a motion for relief from the judgment issued in the companion divorce

9    case to this matter under another name. Plaintiff's bald allegations of wrongdoing in the divorce

10   matter, without more, do not rise to the level of cognizable legal claims…." See Fourth Judicial

11   Order Granting Defense Motion to Dismiss Case with Prejudice, attached hereto as **Exhibit 27**.

12   The Fourth Judicial District Court further found that:

13   Reviewing the public record of Plaintiff's previous divorce matter in front of Hon.
     Estes, this Court finds that Plaintiff is re-litigating the exact same issues and claims
14   regarding fraud which were presented to that court at the time of the initial divorce
     trial; those issues were later decided on the merits in the Estes court's Decree of
15   Divorce

16   …

17   [A]ll of [Plaintiff's] claim regarding fraud on the court were actually and
     necessarily presented to the Estes court and litigated
18   …

19   The Court finds that amending would be futile here; even if Plaintiff were able to
     fit his factual allegations into cognizable legal claims in an amended complaint, all
20   of these claims would still stem directly from his divorce matter, raising issues of
     *res judicata* again.
21   

22   In a subsequent order, the Fourth Judicial District Court also designated Plaintiff a

23   vexatious litigant, finding:

24   These repetitive cases, crossing between states and between the state and federal
     court systems, are clearly both frivolous and designed to harass their respective
25   defendants.
     …
26   [Max Snyder] therefore clearly understands that he is re-litigating not merely
27   related matters across state and federal courts, but the exact same issues in the exact
     same case, making the exact same arguments each time.
28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

Order Granting Motion to Place Plaintiff on Vexatious Litigant List, at p. 4, attached hereto as **Exhibit 28**. That Order has been amended twice to account for the ongoing Divorce action while protecting innocent parties from Snyder's abusive litigation. Such amendments are attached hereto as **Exhibits 30 and 31**. Snyder appealed the Fourth Judicial Court's Order dismissing his complaint to the Nevada Court of Appeals Case No. 88129-COA, and the district court Order has been affirmed.

III.    **Legal Argument**

A.  **Plaintiff's "Complaint" Fails to State a Short and Plain Statement for Relief.**

FRCP 8(a)(2) requires that a pleading for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. Although a Court may construe a *pro se* litigant's liberally, such pro se status does not excuse a litigant from his obligation to comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995) ("Although a *pro se* litigant . . . may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong"). As other Courts in the Ninth Circuit have held, a short and plain statement requires that the party identify the transactions or occurrences giving rise to the claims and the elements of each claim alleged, amounting to more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Stanfill-El v. Bay*, 2024 WL 1286540, at *4 (D. Or. Mar. 26, 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Failure to comply with FRCP 8(a) can be grounds for dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to rule 41(b).")

In its analysis that could be applied verbatim to this action, the Oregon District Court in *Stanfill-El, supra,* stated:

> Plaintiff's complaint falls short of asserting a short and plain statement showing that he is entitled to relief. It is unclear how Plaintiff's factual allegations (and the many documents he appends to his complaint) are relevant to the constitutional and statutory provisions he has listed, and confusingly, his complaint refers to individuals whom he has not listed as Defendants . . . Accordingly, Plaintiff's complaint does not comply with Rule 8 and must be dismissed.

*Stanfill-El v. Bay*, 2024 WL 1286540, at *4 (D. Or. Mar. 26, 2024). In the present action, Plaintiff's Complaint suffers the same fatal deficiencies. Plaintiff's "Complaint" is 178 pages of baseless allegations without including thousands of more pages in his 115 exhibits appended to the Complaint. It is impossible for WW Defendants to know precisely what Plaintiff is alleging they did wrong in this action, as the inflammatory accusations he raises against WW Defendants are the same accusations he has brought before multiple state and federal courts that have considered and dismissed his baseless allegations. Plaintiff's failure to state a short and plain statement for relief is only made worse if this Court considers Plaintiff's multiple Amended Complaints he has filed thus far, as a party would have to review thousands of pages to attempt to piece together what Snyder is alleging or what his amendments are intending to change. Put simply, WW Defendants could not, and should not be forced to guess as to what Plaintiff is pleading when it his responsibility to make his "Complaint" comply with the rules. Plaintiff's Complaint must be dismissed.

**B.  Plaintiff's Complaint is Barred by the Younger Abstention Doctrine and the Rooker-Feldman Doctrine**

i.    Younger Abstention Bars this Action.

As the Utah Federal District Court held in Plaintiff's Case Nos. 4:23-CV-00007, 4:23-CV-00008 and 4:23-CV-00056, the "Younger Abstention Doctrine" and the companion "Rooker-Feldman Doctrine" bar Plaintiff's most recent "Complaint" in federal court. *See* Ex. 23.

The *Younger* Doctrine prohibits federal courts from intervening in ongoing state court proceedings when: (1) there is an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) the state proceedings provide plaintiff with an adequate forum to raise his federal claims. *Meredith v. Oregon*, 321 F.3d 807, 817 (9th Cir. 2003). "*Younger* abstention is proper only when the federal relief sought would interfere in some manner in the state court litigation." *Id.* (internal quotes omitted); *see also AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) (interpreting a fourth element into the

*Younger* Doctrine that "the policies behind the Younger doctrine must be implicated by the actions requested of the federal court.").

Here, there is no question that there is an ongoing state judicial proceeding. Plaintiff's Divorce Action is still ongoing in Nevada following a remand from the Nevada Court of Appeals. The testimony and arguments made in the hearing on remand are still under consideration by the Court, and Snyder is challenging those state proceedings in this action even though an order has not yet been entered by the state court. *See e.g.* Complaint at p. 30. The proceedings in the state actions also implicate important state interests. Namely, courts in the Ninth Circuit have re-affirmed that issues of family and domestic relations "are important state interests" and a federal court has no jurisdiction in such matters as "state courts have a special expertise and experience." *See Pellum v. Fresno Cty. Child Protective Servs.*, 2009 U.S. Dist. LEXIS 35217, at \*15 (E.D. Cal. Apr. 10, 2009) (citing to *H.C. ex rel. Gordon v. Koppel,* 203 F.3d 610, 613 (9th Cir. 2000)). Plaintiff's claims are directly related to an ongoing divorce action. Additionally, how the State of Nevada's judiciary handles cases and administers justice is an extremely important state interest. Plaintiff's "Complaint" appears to allege extensive deficiencies in the Nevada judiciary, and such deficiencies should be considered either by the state district courts or the Nevada Appellate Courts. Both at the state district court and appellate levels, Plaintiff has had an adequate forum to raise the "claims" he raises now, and has used such forums time and again to make baseless accusations against attorneys and the courts. Plaintiff therefore has had an adequate forum in the state courts to make the claims he makes now, but has simply been dissatisfied that the Nevada judiciary has not bought his lies.

Finally, there is little question that Plaintiff's "Complaint" actually implicates the policies behind the *Younger* doctrine. Plaintiff's requested relief is, among other similarly extreme requests, that this Court "dismiss" all orders (state and federal) that have been entered against him and all judgments that have been rendered against him be paid by Defendants. Complaint at p. 168. This Court could not provide the relief Plaintiff seeks through this action without impermissibly undoing the work of courts across multiple states that have been dealing with Plaintiff and his frivolous antics for years. Indeed, the concepts of comity and federalism

would be obsolete if repeated state court litigants who lost like Max Snyder could simply re-file a recycled action in federal court and have a federal court reverse dozens of state and federal court orders and judgments across multiple jurisdictions. It would also be futile for Plaintiff to amend his Complaint, as any action before this Court seeking the reversal of all state orders entered against him would not be possible without violating the sovereignty of state courts to decide matters of state law and state importance, some matters which are currently still pending in Nevada district and appellate courts. Plaintiff's Complaint must therefore be dismissed with prejudice. *See Harris v. New Rez, LLC*, 2023 WL 5925909, at *6 (9th Cir. Sep. 12, 2023) (holding dismissal with prejudice is appropriate when amending a complaint would be futile).

  ii.  The Rooker-Feldman Doctrine Bars this Action

  Plaintiff's Complaint is also barred by the Rooker-Feldman Doctrine. Under the Rooker-Feldman doctrine, federal courts are prohibited from considering suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005)). "A suit brought in federal district court is a 'de facto appeal' forbidden by *Rooker-Feldman* when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)).

  This Court already dismissed a substantively identical action by Snyder in Snyder v. Hill, et al., No. 3:24-cv-00267-MMD-CSD, ECF No. 124, on Rooker-Feldman grounds, stating: "[t]he specific relief sought by Snyder further supports the conclusion that Plaintiff is essentially appealing the state court rulings," and providing Snyder "with the relief he seeks would require this Court to analyze the state courts' alleged legal errors and void the orders entered in those cases, which is squarely barred by Rooker-Feldman." A detailed review of Plaintiff's Complaint shows it is still a de facto appeal of state orders and decisions that should be dismissed by this Court. *See e.g.* Complaint at p. 168, calling for complete reversal or dismissal of orders entered against him.

Plaintiff cannot avoid dismissal under the Rocker-Feldman doctrine by arguing that his claims are constitutional in nature. Other federal circuits have in similar circumstances held that "attempts to recast state court losses as deprivations of constitutional rights do not overcome the Rooker-Feldman jurisdictional bar." *Bruce v. City of Denver*, 57 F.4th 738, 749 (10th Cir. 2023). Thus, Plaintiff's bald citations to authority such as 42 U.S.C. 1983 do not give this Court a basis to decide this case, when the substance of Plaintiff's complaint immediately divulges into a rant indicating Plaintiff's displeasure with how the state court and subsequent appeals handled his divorce. Plaintiff repeatedly alleged there were erroneous decisions by the Nevada state court judges, and is seeking relief from state court judgments based on those alleged erroneous decisions. That is precisely what is barred by the Rooker-Feldman Doctrine, and precisely why Plaintiff's Complaint must be dismissed with prejudice.

### C. Plaintiff's Complaint Fails to State a Claim and Is Barred by the Doctrine of Res Judicata.

"A district court should dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) if the claims asserted are barred by the doctrine of res judicata." *Marino v. Ocwen Loan Servicing LLC*, 2017 WL 3671294, at *6-7 (D. Nev. Aug. 25, 2017) (citing to *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002). Res judicata encompasses two separate principles – issue preclusion and claim preclusion. Issue preclusion applies when "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 858 n.8 (9th Cir. 2016). Claim preclusion applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

#### i. Issue Preclusion Bars Plaintiff's Complaint.

As shown by the extensive statement of facts, every issue in Plaintiff's Complaint is

either one that has been decided in one of the multiple state or federal lawsuits Plaintiff has brought, or one that is currently pending on remand. Plaintiff's own prayer for relief shows that he is requesting that this court re-consider all the issues that have been decided by other courts as he is requesting that such orders from all other courts be "dismissed with prejudice." Other requests in Plaintiff's prayer likewise request specific relief concerning certain documents and property in the divorce action which Plaintiff is seemingly unhappy with how they've been handled at the state level. The first element for issue preclusion is satisfied.

Second, "if the case is brought to an issue, heard on evidence submitted pro and con, and decided by the verdict of a jury or the findings of a court, the judgment rendered is on the merits." *Wight v. Mont.-Dakota Utils. Co.*, 299 F.2d 470, 477 (9th Cir. 1962). Here, either through the Divorce Decree, the remand from the Nevada Court of Appeals, the multiple orders dismissing Plaintiff's actions, and the multiple orders declaring Plaintiff a vexatious litigant, there are multiple final judgments on the merits that have considered and analyzed the multitude of Plaintiff's frivolous filings. Most recently, this Court expressly held that "[t]he specific relief sought by Snyder further supports the conclusion that Plaintiff is essentially appealing the state court rulings." Snyder v. Hill, et al., No. 3:24-cv-00267-MMD-CSD, ECF No. 124. Other Courts have concluded the same, as the Fourth Judicial District Court expressly found that "reviewing the public record of Plaintiff's previous divorce matter in front of Hon. Estes, this Court finds that Plaintiff is **re-litigating the exact same issues and claims regarding fraud which were presented to that court at the time of the initial divorce trial; those issues were later decided on the merits** in the Estes court's Decree of Divorce… [A]ll of [Plaintiff's] claim regarding fraud on the court were actually and necessarily presented to the Estes court and litigated" *See* Ex. 27 at p. 4. Plaintiff already tried raising these issues at the federal level, but upon losing, now brought them to this Court, *again*. *See* January 17, 2024 Memorandum Decision and Order Adopting Report and Recommendation, United States District Court, District of Utah, Case No. 4:23-cv-00056-DN (noting that Plaintiff's federal complaint was a continuation of the divorce litigation, and the facts that Plaintiff's lawsuits relied on to support his claim were civil rights violations by the state courts, collusion between the courts and attorneys, fabrication of evidence

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

in the divorce, a police cover-up, and a "set up" to have Plaintiff arrested). The second element of issue preclusion is satisfied.

Third, as shown in the statement of facts, either at the appellate level in the Divorce Action or in the multiple failed lawsuits against WW Defendants, Plaintiff has sought to lay his legal failings at the feet of the WW Defendants with his baseless accusations of conspiracies, fraud, and fabrication of evidence. There is little doubt that both Plaintiff and WW Defendants have been parties or had privity with the parties in Snyder's lawsuits stemming from the Divorce.

Plaintiff's blatant forum-shopping to attempt to relitigate all his state losses should not be permitted. All the issues now before this court have been litigated by the parties before other courts which have found Plaintiff's claims to be frivolous, and dismissed the same.

### ii.    Claim Preclusion Bars Plaintiff's Complaint.

Just as Plaintiff's "Complaint" fails to provide a short and plain statement for relief, it also fails to list which specific claims he is alleging. Upon a review of the allegations, it *appears* Plaintiff's claims are that the Divorce Decree was a product of fraud and fabricated evidence by both the court and the attorneys involved in his divorce. Such claims are identical to every other lawsuit where he has time and time again pled, unsuccessfully, that WW Defendants fraudulently caused him to lose at the state level. *See e.g.* Ex. 26, which were the claims brought against WW Defendants by Plaintiff and which were dismissed with prejudice after the state court found Plaintiff had already pursued claims of fraud against WW Defendants related to his divorce action. As such, there is an identity of claims that were pursued by Plaintiff in all his prior actions, and the present action.

As with issue preclusion, there are also multiple judgments on the merits across multiple courts where Plaintiff has raised the same claims he raises now. Similarly, the same history of Plaintiff's failed litigation shows that both Plaintiff and WW Defendants have either been parties or in privity with the parties in the prior actions. As such, Plaintiff's Complaint must be dismissed with prejudice.

### iii.    Plaintiff Fails to State a Claim.

To survive a 12(b)(6) motion, a complaint must have "sufficient factual matter, accepted

as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As demonstrated extensively above, it is entirely unclear on what basis Plaintiff seeks relief when every allegation he makes concerns issues that have already been considered and dismissed by various other courts, or matters which are currently still pending before other state district and appellate courts.

Assuming arguendo that this court construes Plaintiff's Complaint as a 1983 claim, Plaintiff's complaint still fails. "A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 48, (1988)). "While generally not applicable to private parties, a § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" *Id.* (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).

Plaintiff is not the first disgruntled state court loser who has sought to remedy his legal failings in a state family law action by pleading 1983 claims in federal court against attorneys in the state court action. *Secress v. Ullman*, 147 F. App'x 636, 638 (9th Cir. 2005) is on point and instructive. In *Secress*, the appellant argued the district court improperly dismissed her 42 U.S.C. 1983 action alleging that two state court judges, a private mediator, and a court appointed attorney violated her constitutional rights during the course of child custody proceedings in state court. The Ninth Circuit Court of appeals affirmed the dismissal, holding:

> The district court properly dismissed Secress' section 1983 claims against Judges Ullman and Mize because a state court judge is entitled to absolute immunity for judicial actions taken within his jurisdiction.
> …
> The district court **properly dismissed Secress' claims against defendant Stevens- a court-appointed attorney assigned to represent the minor child- because Stevens was not a state actor**. *See Simmons v. Sacramento County Superior Court,* 318 F.3d 1156, 1161 (9th Cir. 2003)(holding that plaintiff cannot sue opposing counsel under section 1983, "because he is a **lawyer in private practice who was not acting under color of state law**" and "**plaintiff's conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient**")
> …
> The district court properly dismissed Secress' conspiracy claims because "vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents,* 673 F.2d

266, 268 (9th Cir. 1982); *see Burns v. County of King,* 883 F.2d 819, 821 (9th Cir. 1989). **Nor is a conclusory allegation of conspiracy between a private person and a judge sufficient to establish the private person acted under color of law**. *See Schucker v. Rockwood,* 846 F.2d 1202, 1205 (9th Cir. 1988).

*Secress v. Ullman*, 147 F. App'x 636, 638 (9th Cir. 2005) (emphasis added). The Ninth Circuit Court's analysis is directly applicable here. WW Defendants are attorneys in private practice that represented Plaintiff's ex-wife. WW Defendants are not state actors, and Plaintiff's repeated conclusory allegations that WW Defendants fabricated evidence or conspired with the state courts are insufficient to establish that WW Defendants acted under color of law. Further, even if Plaintiff is alleging WW Defendants performed some other private cognizable harm (despite there being absolutely zero evidence of such), "purely private conduct, no matter how wrongful, is not within the protective orbit of section 1983…[f]or such conduct the wrongdoer faces potential liability in state courts, but a federal action would not lie under section 1983." *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974) (citing to *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948).

Plaintiff's Complaint must be dismissed with prejudice.

## IV.    CONCLUSION

There is no path forward where Plaintiff's action can be maintained before this Court. As this Court has already found once before, Snyder's Complaint is in effect an appeal of state court decisions and cannot be maintained in this forum. WW Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

DATED this 20th day of January, 2026.

WOODBURN AND WEDGE


By: / s / Seth J. Adams
    Seth J. Adams, Esq.
    Nevada Bar 11034
    Jose A. Tafoya, Esq.
    Nevada Bar No. 16011
    Woodburn and Wedge
    *Attorneys for WW Defendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of Woodburn and Wedge and that on January 20, 2026, I electronically filed the foregoing ***Motion to Dismiss Woodburn and Wedge, Shawn B. Meador Jose Tafoya, and Seth Adams*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record, and I caused a true and correct copy of the aforementioned motion and exhibits to be sent via the United States Postal Office to:

Raymond Max Snyder, *pro per*
PO Box 69
Aurora, Utah 84620
maxsnyder@yahoo.com

                     _____/ s / Kathy Miyoshi_____
                     An employee of Woodburn and Wedge

**Table of Exhibits**

| Exhibit No. | Title | No. of Pages |
|---|---|---|
| 1 | Divorce Decree, November 10, 2020 | 11 |
| 2 | Order After Hearing on March 31, 2021 | 9 |
| 3 | Order Denying Petition for Writ of Mandamus dated October 22, 2021 | 3 |
| 4 | Order Denying Petition for Writ of Mandamus dated December 17, 2021 | 4 |
| 5 | Order Denying Petition for Writ of Mandamus dated June 21, 2022 | 3 |
| 6 | COA Order Affirming in Part, Reversing in Part and Remanding (Docket No. 81887-COA) and Dismissing Appeals (Docket No. 82756-COA and Docket No. 83029-COA), October 20, 2022 | 36 |
| 7 | Plaintiff's Motion for a Criminal Investigation and for Sanctions, October 14, 2020 | 14 |
| 8 | Plaintiff's Motion to Review and Turn Over Pleading to Law Enforcement for Criminal Investigation, November 21, 2020 | 3 |
| 9 | 60(b) Motion | 10 |
| 10 | Motion to be Awarded Community Property, January 4, 2021 | 9 |
| 11 | Second Motion to Set Aside Judgments for Fraud on the Court and Perjury, January 4, 2021 | 11 |
| 12 | First Motion to Set Aside Judgments for Fraud on the Court and Perjury, January 4, 2021 | 15 |
| 13 | Brief in Advance of Hearing, March 26, 2021 | 34 |
| 14 | Rule 11 Motion for Sanctions, April 22, 2021 | 36 |
| 15 | Court of Appeals Docketing Statement | 12 |
| 16 | Motion for Summary Judgment, December 24, 2020 | 29 |
| 17 | Opening Brief, October 7, 2021 | 45 |
| 18 | Reply Brief, May 10, 2022 | 34 |
| 19 | Second Judicial Action Complaint, November 20, 2022 | 91 |
| 20 | Snyder Motion to Dismiss Response, January 14, 2023 | 11 |
| 21 | Utah Federal Action Amended Complaint | 61 |

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

| 22 | Utah Federal Action Report and Recommendation, October 5, 2023 | 9 |
|----|----|----|
| 23 | Memorandum Decision and Order Adopting Report and Recommendation | 7 |
| 24 | Utah Federal Action Judgment | 2 |
| 25 | Trustee's Objection, January 23, 2023 | 5 |
| 26 | Plaintiff's Fourth Judicial Complaint filed November 16, 2023 | 12 |
| 27 | Fourth Judicial Order Granting Defense Motion to Dismiss Case with Prejudice dated January 26, 2024 | 6 |
| 28 | Order Granting Motion to Place Plaintiff on Vexatious Litigant List filed May 24, 2024 (Fourth Judicial District Court) | 7 |
| 29 | Nevada Second Judicial District Court Vexatious Litigant Order filed May 29, 2025 | 7 |
| 30 | Nevada Fourth Judicial District Court Order Amending Vexatious Litigant Order filed August 6, 2025 | 4 |
| 31 | Nevada Fourth Judicial District Second Court Order Amending Vexatious Litigant Order filed November 7, 2025 | 3 |

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000