# EXHIBIT 1
# Utah District Court, Snyder v. Snyder, et al.
# Complaint Filed July 20, 2023

Raymond Max Snyder
PO Box 69
Aurora, Utah 84620
Phone: 801-641-6844
maxsnyder@yahoo.com

FILED US District Court-UT
JUL 20 '23 AM09:31

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RAYMOND MAX SNYDER<br>Plaintiff,<br>vs.<br>JUDGE ALEX GOBLE<br>Individually and in His Official Capacity as a Justice of The Sixth Judicial District Court, of Sevier County,<br>American Family Insurance, American Family Insurance's attorney, Stewart Harmon; Lauara Ann Lisk; Shawn B. Meador; Detective Brandt Deaton Sevier County, Sheriff's Office; and Sevier County Attorney Casey Jewkes.<br>and John and Jane Does 1-10.<br>Defendant(s) | Case No.:<br>COMPLAINT |

Case: 4:23-cv-00056
Assigned To : Kohler, Paul
Assign. Date : 7/20/2023
Description: Snyder v Goble et al

The instances of improper actions against Plaintiff referenced in this Complaint began the day Plaintiff was married in 2001. They have and are continuing as of the time this Complaint was filed. This has resulted in voluminous supporting documentation.

Plaintiff Raymond Max Snyder, pursuant to Rule 8(a), Fed.R.Civ.P., complains and alleges for a cause of action against Defendant(s) as follows:

**PRELIMINARY STATEMENT**

This is a civil rights action in which the Plaintiff, Raymond Max Snyder (Max), seeks relief for the Defendant(s) violation of his rights guaranteed by the United States Constitution, specifically, the Fifth and Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah. Plaintiff seeks damages, both compensatory and punitive; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This is further action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the Plaintiff by the Fifth and Fourteenth Amendments of the Constitution of the United States and arises under the law and statutes of the State of Utah.

**I. The Parties to This Complaint**

**A. The Plaintiff**

Raymond Max Snyder,

| | |
|---|---|
| Address | PO Box 69<br>Aurora, Utah 84620 |
| County | Sevier |
| Telephone Number | (801) 641-6844 |
| Email Address | maxsnyder@yahoo.com |

**B. The Defendant(s)**

Judge: Alex Goble

| | |
|---|---|
| Address | Sixth Judicial District Court<br>845 East 300 North<br>Richfield Utah 84701 |
| County | Sevier |
| Telephone Number | (435) 896-2700 |
| Email Address | 6thsevierdocs@utcourts.gov |

American Family Insurance
Address 6000 American Parkway
Madison, WI 53783
800-692-6326
twelp@amfam.com

Stewart Harman
Address Plant Christensen & Kanell
250 E 200 S., Suite 340
Salt Lake City, UT 84111
(801) 363-7611
sharman@pckutah.com

Lauara Ann Lisk
Address 427 Mesa Street
West Wendover NV 89883
(801) 891-7260
Lauara@yahoo.com

Detective Brandt Deaton, Sevier County Sheriff's Office
Address 835 East 300 North, Suite 200
Richfield, Utah 84701
(435) 896-2600

Sevier County Attorney, Casey Jewkes
Address Sevier County Attorney
835 E 300 N, Ste. 300
Richfield, UT 84701
(435) 896-2675

Shawn B. Meador
Address Woodburn & Wedge
6100 Neil Rd.
PO Box 2311
Reno, NV 89505
(775) 688 3000
smeador@woodburnandwedge.com

And John and Jane Does 1-10

## II. Basis of Jurisdiction

Case 2:23-cv-00705-MPD-DBP Document 1 Filed 01/20/26 Page 4 of 42

A. This suit is against a State official(s) (a 1983 Claim) against Judge Alex Goble (Judge Goble), Sevier County Sheriff Detective, Brandt Deaton (Detective Deaton), the Sevier County Attorney, Casey Jewkes (Mr. Jewkes), and against American Family Insurance (AmFam), AmFam's attorney, Stewart B Harman (Mr. Harman), Lauara Ann Lisk (Lauara), and Lauara's attorney, Shawn B. Meador (Mr. Meador) for aiding and abetting and accessories to the state official(s). This action arises under the United States Constitution and federal law, particularly under the provisions of the Fifth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

B. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

C. The claims made in this Complaint occurred and arose in the States of Utah and Nevada, and in the District of Utah. Venue is therefore proper under 28 U.S.C. § 1391, 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

D. Plaintiff is seeking damages under federal law pursuant to the claims for relief specified below, in amounts to be proved at trial.

E. This Court has the authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

F. This Court also has jurisdiction over any pendant State claims Plaintiff may wish to bring, or has brought, pursuant to 28 U.S.C. § 1367, and 28 U.S.C. § 1391.

## III. Statement of the Claim

**IV. Breach of Contract and Violations of Rule 11 by American Family Insurance an the Sixth Judicial District Court.**

1. On November 2, 2020, Plaintiff, Raymond Max Snyder (Max), filed a Complaint against, American Family Insurance (AmFam), in the Sixth Judicial District Court in and for Sevier County, Richfield, Utah, for breach of contract, breach of implied covenant of good faith, loss of use, fraud… with a Jury Demand paid for, Case No. 200600078. The case was assigned to Judge Marvin Bagley (Judge Bagley).

2. The case proceeded to a hearing on December 20, 2022, at which Judge Bagley instructed each party to prepare an order and that he would sign one. See Appendix Volume XX Exhibit 3, 6505-6507, the court minutes of the hearing, #346.

3. Max prepared an order and furnished it to the district court on December 30, 2022. See Appendix Volume XX, Exhibit 7, 6527-6554. Note, Volume XX is Max's Rule 60(d) Motion and its Exhibits entered with the Sixth District Court on May 23, 2022, titled, Notice of Motion to Vacate Judgment for URCP Rule 60(d) Fraud on the Court and Rules 60(b)(1) Mistake Etc., Rule 60(b)(6) Other Reason to Vacate Judgment.

4. AmFam prepared an order and furnished it to the district court on December 30, 2022. Judge Bagley signed AmFam's order on January 19th, 2022. See Appendix Volume XX, Exhibit 4, 6508-6528.

5. On January 20, 2023, Plaintiff filed an objection to the Order prepared by AmFam and signed by the district court stating it violated Rule 60 and violated his civil rights. See Appendix Volume XX Exhibit 2 at 6504.

6. On January 23, 2023, Plaintiff filed a civil rights complaint against Defendant AmFam and Judge Bagley in the U.S. District Court in and for Utah, Case No. 4:23-cv-00007-

DN-PK.

7. On January 24, 2023, as a result of Plaintiff filing the civil rights complaint, Defendant, AmFam, filed an exparte motion to be allowed to file an overlength Rule 83 motion to have Plaintiff declared a vexatious litigant.

8. A hearing was set to hear AmFam's Motion to have Max declared a vexatious litigant, and to argue the judgment signed by Judge Bagley which was confirmed to be only a "**proposed judgment**". A scheduling hearing was held on March 6, 2023, to schedule a hearing to hear and argue AmFam's Motion to have Plaintiff declared a vexatious litigant and the "proposed judgment." AmFam proposed to Max that it would withdraw its vexatious litigant motion against Max if Max would withdraw his objection to the "proposed judgment." Max declined. AmFam asked Judge Bagley if he was aware that Max had filed against him in federal court. Judge Bagley was not and recused himself from the case. See Appendix Volume XX Exhibit 5, 6520-6523.

9. Judge Alex Goble was assigned to replace Judge Bagley. Max filed an objection against Judge Goble citing that the judge was related to the county attorney who was prosecuting Max on a charge of auto theft and was related to Jason Goble whom Max had the Sheriff trespass following which Jason Goble returned to Max's property and stole items from Max's property. The Sheriff's Office refused to pursue calling the theft a **civil issue**. Judge Goble declined to recuse himself. A scheduling hearing was held on May 8, 2023, before Judge Goble to schedule a hearing to hear AmFam's vexatious litigant motion against Max, and the "proposed judgment" signed by Judge Bagley. AmFam's attorney, Stewart Harman (Mr. Harman) falsely stated that the hearing was scheduled to hear a "new proposed order that was needing to be filed." See Appendix Volume XX Exhibit 2 6492-6496. The clerk printed out the fake proposed order and

wrote "Proposed" across the top, and handed it to Max. Mr. Harmon claimed it had been filed with the court and provided to Max in an email. Max's email, Appendix Volume XX Exhibit at 6497, and the court docket at 6504 confirm it had not. Mr. Harman lied to the court about the authenticity of the document and that it was to be argued. Mr. Harmon violated Rule 11. Judge Goble declined to allow argument on the January 19, 2023 "proposed order", violating Max's due process.

10. A review of Max's Order presented to the district court, and the documents it referenced, confirmed that AmFam violated Rule 11, committed fraud on the court and fabricated evidence, then included it in its Second Motion for Summary Judgment entered by the district court. Judge Goble declined to hear the argument on Judge Bagley's January 19, 2023, "proposed order" which was confirmed as "proposed" only. Mr. Harman stated that if the Judge signed his never before seen proposed judgment "that if the (new, unseen) proposed judgment is signed by the court the Rule 83 motion (the vexatious motion against Max) may be withdrawn." See Appendix Volume XX Exhibit 2, 6493-6496. See the scheduling hearing minutes 6502-6503. Judge Goble declined to sign the new, fake proposed judgment presented by Mr. Harmon, which violated Rule 11. Judge Goble improperly allowed the "proposed judgment" that was to be argued, then set argument for the Rule 83 motion for September 29, 2023. This violated Max's due process rights guaranteed by the 14th Amendment. By attempting to substitute a false proposed judgment and entering it with the court, Mr. Harmon violated rule 11.

11. On or about May 22, 2023, Max filed a pleading titled Notice of Motion to Vacate Judgment for URCP Rule 60(d) Fraud on the Court and Rules 60(b)(1) Mistake Etc., Rule 60(b)(6) Other Reason to Vacate Judgment, with the Sixth District Court in Richfield Utah, Case

No 200600078, citing the violations of his civil rights and the Rule 60 violations by AmFam. See Appendix Volume XX 6549-6486. The Motion's Exhibits are included.

12. On May 30, 2023, Max filed a Complaint with the Sevier County Sheriff's Office, and the Sixth Judicial District Court through his attorney. The Complaint filed with the Sheriff included Exhibit AA, a pleading titled, Hearing Brief For the October 11, 2023 Hearing, And Supporting Argument for Rule 60(b)(1) Through 60(b)(6), Rule 60(d)(3), NRS 199.210, NSCR 2.11, and the Due Process Clause of the 14th Amendment…, For Vacating the Divorce Decree as Exhibit AA. Exhibit AA a pleading included its exhibits. The Complaint with the Sheriff's Office, Exhibit AA, with supporting Exhibits, confirmed on page 9, that the division of property in the divorce was decided on a document provided to the divorce court a month following the divorce. The document was presented to the divorce court, a month following the divorce trial, as Exhibit A and swapped out Defendant, Lauara's, original Trial Exhibit A. <u>See Exhibit AA 158-162 for complete details</u>. Lauara and her attorney Mr. Meador violated Rule 11. Max confirmed for the Sheriff where the documents were located in his Complaint Exhibit AA--- at No. 115 and Nos. 142 to 146. The Court and the County Attorney should have dismissed its Complaint against Max at that time. They have not. See Exhibit III.

13. On June 23, 2023, Judge Goble filed his order, Rule 60 Decision Denying Plaintiff's Motion for Relief From Judgment. See Exhibit JJJ.

14. In his order Judge Goble confirmed that 1) The Ruling Order was signed on January 19, 2023", and 2) complained about Max's motion and exhibits being over 300 pages in length. See Exhibit 2 pg. 1. Note, Appendix Volume XX is Max's Rule 60 Motion referenced above. Judge Goble declined to review AmFam's order presented at the May 8, 2023, scheduling hearing though he stated on pg. 2 of his order in No. 7. "a new judicial assignment was made to

discuss the outstanding judgments in the case and the Defendant submitted a Proposed Judgment the same day." This was the swapped-out proposed judgment that violated Rule 11. The January 19, 2023, order was the "proposed order" that was to be argued and was set to be argued by the court. Mr. Harman tried to insert an improper document in its place in violation of Rule 11.

Judge Goble's refusal to consider Max's order or allow Max to argue the January 19, 2023 "proposed order" as scheduled, violating Max's 14th Amendment due process rights. A review of Max's proposed Order Appendix Volume XIX Exhibit 7 6527-6545, and its Exhibit 8, Amended Plaintiff's Response to Defendant American Family Insurance's Second Motion for Summary Judgment… 6546-6568 and its accompanying Exhibits AA(E), Amended Declaration of Plaintiff Raymond Max Snyder… 6570-6583 and the rest of the Exhibits, from 6584 through 6771, the remainder of Max's Rule 60(d)… Motion to Vacate the Judgment signed by Judge Goble confirms that AmFam committed fraud on the court, fabricated evidence violated Rule 11 and that Max should have prevailed, and his order signed by the district court.

15. Judge Goble ordered that Max had not timely filed his Rule 60 motions within 90 days. Max had filed the first Rule 60 motion against the January 19, 2023 "proposed order" within a day of the order being signed by Judge Bagley. Max filed his Rule 60(d) motion titled Notice of Motion to Vacate Judgment for URCP Rule 60(d) Fraud on the Court and Rules 60(b)(1) Mistake Etc., Rule 60(b)(6) Other Reason to Vacate Judgment with the Sixth District Court in Richfield Utah, Case No 200600078, on May 22, 2023, See Appendix Volume XX 6486, 14 days following Judge Goble not allowing Max to argue the "proposed order" at the May 8, 2023 scheduling hearing. Both were well under the 90-day period Judge Goble states. It needs to be noted that Rule 60(d) motions have no statute of limitations. Rules 60(b)(1), (2), and (3) have 90-day statutes.

16. Judge Goble threatened and falsely accused Max of violating Rule 11 stating on pg. 8. of his order, "The Plaintiff is advised against attempting to assemble a conflict of interest then assert that the "6th District is prejudice against the Plaintiff." Max filed an FRCP Rule 11(c)(1)(A) Motion with Mr. Harmon only, allowing Mr. Harman the 21 days provided by the Rule to correct his Rule 11 violations. Mr. Harman's response was, "*I appreciate you sending this over to me. I will certainly respond to your frivolous motion if or when it is filed. I do appreciate you providing me another exhibit to our Rule 83 Motion against you. Good afternoon and have a wonderful weekend.* See Exhibit KKK. Mr. Harman confirmed the Court's prejudice against Max.

17. Judge Goble had continued Judge Bagley's allowing AmFam's attorney Mr. Harman, and its star witness, Lauara, to violate Rule 11 and fabricate evidence. See Case No. 4:23-cv-00007-DK-PK.

18. Judge Goble failed to consider Max's Rule 60 motion and entered AmFam's Order that contained several false findings. In signing his Order, Judge Goble violated Max's 5th and 14th Amendment rights and violated Rule 11.

**V. Sevier County Sheriff's Office, Detective Brandt Deaton, Fabricating Charges of Theft Against Plaintiff.**

19. Max realleges and incorporates by this reference all allegations set forth in paragraphs 1. through 18. as though fully set forth herein.

20. Judge Goble took over the case against Max filed by his purported relative, Sevier Count Attorney, Casey Jewkes. See Exhibit LLL. The County's charge against Max was for second decree auto theft for the theft of an "operable vehicle", brought by, Detective Brandt Deaton (Detective Deaton) of the Sevier County Sheriff's Office, See Exhibit LLL.

22. Max had provided his attorney with an audio tape that confirmed that Lauara agreed that the vehicle she had accused Max of stealing was Max's. The audio tape also confirmed that in 2017 Lauara's son, Adam Lisk, and his brother Ryan Lisk claimed they had the funds to repay Max and Lauara's loans to Lauara's son, Adam Lisk (Adam), but that Adam's business partners came first. Max sent his attorney a second confirmation of the transcripts absent the video to confirm the first production to Mr. Jeweks. See Exhibit RRR.

23. Detective Deaton brought the charges against Max for stealing an "operable vehicle" knowing the vehicle was not "operable"; that Max was insured to drive the vehicle; the vehicle had Max's property inside; and that after Max repaired it; Max moved it from the neighbor's property to his to make further repairs and remove his personal property; that Max had called the Sheriff's office when he moved the vehicle, and that Max left it in open sight. See Exhibit MMM. Max again provided this information to the Sevier County Attorney through his attorney. See Exhibit QQQ.

24. In the case against the Sevier County Sheriff and Sgt. Crane, Case No 4:23-cv-00007, Max confirmed he was arrested and charged by Detective Deaton in October 2020 following Max exposing that Sgt. Crane of the Sevier County Sheriff's Office had covered up Max's alleged attempted murder by his ex-wife, Lauara. The 2005 F350 that Max was accused of stealing had, since being purchased, been kept and insured at Max's home in Sevier County. It was insured in Max's name and at his property up to and until May 5, 2021, seven months after Detective Deaton arrested Max. Lauara paid the insurance premiums on the vehicle. At the time of Max's arrest, Max was still insured to drive the F350 for another month. Following Max's arrest Lauara renewed the policy on November 5, 2020, leaving Max on the policy for another six months through May 5, 2021. See Exhibit EEE. Detective Deaton declined to consider this.

25. Like the Sevier County Sheriff before him, who had told Max the issue was **civil** and that Max could retrieve the truck, Detective Deaton confirmed to Max in a phone conversation on July 7, 2023, that moving the truck was a **civil matter** yet Detective Deaton had cuffed, arrested, placed Max in jail and filed the 2nd-degree auto theft charges against Max. In the same conversation, Detective Deaton claimed that Lauara's theft of over $2,000,000 from Max, assisted by her attorney, Mr. Meador, and her son Adam was also **civil**. Detective Deaton refused to get involved with the theft by Max's ex-wife and her attorney because it was a **civil matter**. Case No. 2307-089, Exhibit BBB, and Lauara's voluntary polygraph, Exhibit FFF, and the fact that Lauara's attorney Mr. Meador and Lauara's son, Adam Lisk participated in the theft and coverup confirm this was not a **civil matter**. Max furnished this information to the Sevier County Attorney through his attorney. See Exhibit QQQ.

26. In October 2020, Detective Deaton arrested and jailed Max and with Mr. Jewkes filed 2nd-degree auto theft charges against Max for stealing an "operable vehicle". Max had to repair the vehicle to get it to his home and then did additional repairs. More than five months later, on March 31, 2021, the trial judge who drafted the divorce decree, Exhibit B, confirmed that Max did not steal the vehicle. See Exhibit UUU, hearing transcripts from March 31, 2021, pg. 18:20-19:1. This has been previously provided to the Sheriff's Office.

27. Unlike the fabricated charges of theft against Max, the theft from Max was not by Lauara alone and was not a civil issue. The theft was by Lauara, Adam, and Mr. Meador. All three benefited from the theft. Mr. Meador from attorney fees from assisting Lauara and Adam in laundering money from his bankruptcies. Mr. Meador was an accomplice to the theft as defined by Nevada statutes NRS 195.020 and NRS 195.030. Mr. Meador resided in and filed his motions in Nevada. The case was **not civil** and violates Rule 11.

28. In Sevier County the Sheriff's office and the County attorney allowed individuals to steal from Max calling it a **civil matter** and refusing to pursue them. In Sevier County, these same people then fabricated evidence of theft by Max and acknowledged it was **civil**, arrested, charged Max, and are attempting to have him sent to prison for several years. In Sevier County, a **civil issue** and the law are defined and applied differently to Max than to anyone else.

29. Judge Goble was assigned the auto theft case against Max, Case no 201600283 FS. A scheduling hearing was held on May 30, 2023. See Exhibit PPP. It was confirmed at the hearing that the vehicle was an issue in the couple's divorce. Max's attorney confirmed that Max had prevailed on appeal and asked Judge Goble for time to review the divorce matter. Judge Goble declined, dismissed the diversion agreement that was to run until December 2023, and put the case on regular track setting a pretrial hearing for August 22, 2023.

## VI. Theft of $2.055,405.32 From Max By Defendants Lauara Ann Lisk, Adam Lisk, and Attorney Shawn B. Meador.

30. Max realleges and incorporates by this reference all allegations set forth in paragraphs 1. through 29. as though fully set forth herein.

. In Sevier County following a Grama records request for a copy of police reports, the reports are reviewed by the County Attorney for legal issues prior to release. Max has requested and paid for the officer reports of several of his complaints with the Sevier County Sheriff's Office. Several they have refused to provide. See Exhibit OOO. Detective Deaton told Max his complaint against Lauara, Mr. Meador, and Adam was civil and refused to bring an action against these individuals for their thefts from Max. Max requested and paid for a copy of Detective Deaton's report, then called every day to see when the report would be released. Each time Max was told the County Attorney had not released it yet. To date, the Sevier County

Attorney has declined to release the report. See Exhibit OOO. If after filing this Complaint the report is provided to Max it will be furnished as Exhibit SSS.

31. Exhibit BBB and its Exhibits 1-14, and Exhibit FFF confirm that Lauara was secretly repaid the loans she and Max made to her son and that Lauara told Sgt. Crane of the Sevier County Sheriff's Office that she had been repaid the loans. See Exhibit BBB, page 6:13-20 referring to Max's Brief Appendix Volume XIX 5516.

32. The Exhibits in Max's "BRIEF", Exhibit AA, are voluminous and have been provided to the Court in Max's Complaints against Sixth District Court Judge Marvin Bagley et al, Case No. 4:32-cv-00007. These exhibits were filed on June 21, 2023. They were also filed in Max's Complaint against Sixth District Judge Robert Faust et al, Case No 4:23cv-00008 as Exhibit AA Max's "BRIEF" and its Exhibits, Exhibit A through 37 including Appendix Volume XIX, numbers 1 through 9(c). Referring back to these two cases, Judge Goble's threatening Max for violating Rule 11 for Max claiming the Sixth District Court is prejudiced against him is a baseless threat confirming that the Court is prejudiced. Judge Goble's Order makes no mention of AmFam's and its attorney, Mr. Harman's numerous Rule 11 violations.

33. Max provided Detective Deaton with his pleading titled Notice to Strike Defendant's Opposition to Nevada Justice Ct. R. Civ. Rule 11 Motion for Sanctions Against Attorney Shawn B. Meador... See Exhibit BBB. Max's pleading was a response to a pleading drafted by Mr. Meador for his client, Lauara, titled Opposition to Nevada Justice Ct. R. Civ. Rule 11 Motion for Sanctions against Attorney Shawn B. Meador… and included a Motion for Sanctions against Max. Mr. Meador's and Lauara's pleading included the affidavit of Lauara's son, Adam, to whom the couple had made sizeable loans. See Exhibit BBB's Exhibit 5. In the June 20, 2023 pleading, Mr. Meador, Lauara, and her son are now claiming the loans that Lauara

had told Sgt. Crane, of the Sevier County Sheriff's Office, had been repaid Lauara and Max, had actually never been repaid. These three individuals now claim the loans were still outstanding, and that Adam had listed them in his latest Bankruptcy.

Mr. Meador filed his pleading titled, Opposition to Nevada Justice Ct. R. Civ. Rule 11 Motion for Sanctions against Attorney Shawn B. Meador… on *May 20, 2023*. See Exhibit BBB's Exhibit 5. Mr. Meador had previously been provided documentation confirming that Lauara had been repaid the loans. The last time he was provided the documentation confirming the loans had been repaid to Lauara was on May 30, 2023, less than 3 weeks before Mr. Meador claimed the loans had not been repaid. Max again provided the information to Mr. Meador in Max's HEARING BRIEF FOR THE OCTOBER 11, 2023 HEARING, AND SUPPORTING ARGUMENT FOR RULE 60(b)(1) THROUGH 60(b)(6), RULE 60(d)(3), NRS 199.210, NSCR 2.11, AND THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT…, FOR VACATING THE DIVORCE DECREE. See Max's Exhibit AA, filed with the district court and Mr. Meador on May 30, 2023, and also provided to the Sheriff's office and the County Attorney in Complaint No. 2010-044 on May 30, 2023, See Exhibit III. referencing Appendix Volume XIX 9(a), 6496-6508, and Appendix Volume XIX Part 5, 6202. Volume XIX Part 5, 6201-6209 is the bankruptcy court's CHAPTER 11 POST-CONFIRMATION REPORT PURSUANT TO ORDER CONFIRMING PLAN, showing each class of creditor, including Lauara. V XIX 6202 is the confirmation page signed by Adam and his attorney. Appendix XIX Part 5, 6201-6209, are the confirmation pages showing the schedule of repayments to each class of creditors. Lauara was listed as a Class 8. V XIX 6206 confirms these creditors had been paid. The signature page, V XIX 6202, is also provided for convenience as Exhibit BBB's Exhibit 9. Mr. Meador, Lauara, and Adam intentionally violated Rule 11.

34. On June 20, 2023, Mr. Meador filed with the divorce court a motion titled, Opposition to Nevada Justice Ct. R Civ P. Rule 11 Motion for Sanctions Against Attorney Shawn B. Meador and His Firm Woodburn and Wedge and Countermotion to Find That Mr. Snyder has Repeatedly Violated Rule 11 of the Nevada Rules of Civil Procedure. See EWxhibit BBB's Exhibit 5. In his motion, Mr. Meador included the affidavit of Lauara's son, Adam, to whom the couple made the loans that Mr. Meador, Lauara, and Adam were now claiming had not been repaid to Lauara. *See* Exhibit BBB's Exhibit 5. Exhibit BBB is Max's complaint to the Sheriff's Office and Detective Deaton, which included Max's pleading titled Notice to Strike Defendant's Opposition to Nevada Justice Ct. R. Civ. P. Rule 11 Motion for Sanctions… which confirmed the loans to Lauara's son Adam had been secretly repaid to Lauara.

The couple's loans to Adam began in 2004 and were verbal. *See* Adams's Affidavit, Exhibit BBB's Exhibit 5, pg. 1 No. 2. It was agreed, from the beginning, that the loans were not to any company owned by Adam.

35. Max's "BRIEF" Exhibit AA, previously furnished to this Court, confirms that at trial Lauara insisted the loans to Adam be awarded to Max. See Exhibit BBB's Exhibit 11, pg. 98:10-99:17 and pg. 144:3-9, transcripts from day three of the divorce trial. Lauara asked the court to award the couple's notes to Adam, to Max at the value Max claimed they were worth. The district court obliged and awarded the notes to Max. Then, following trial Lauara and Mr. Meador threatened to come after Max for half the loans. *See* Max's "BRIEF Exhibit AA" Appendix Volume XIX Part 5 6212-6215 provided herewith as Exhibit 8 of Exhibit BBB. This amounts to extortion by Mr. Meador and his client. To date, the combined loans of $210,000 and $440,000 are worth $2.055,405.32. See Exhibit NNN.

36. In Adam's Affidavit, located in Exhibit BBB's Exhibit 5, Adam's statement on

pg. 2:11-15 confirm that he informed his mother (Lauara) that he was including the couple's loans in his business bankruptcies. However, at Lauara's deposition on March 26, 2019, Lauara testified that her son asked her if he could list the loans in his bankruptcies. *See* Max's "BRIEF" Exhibit AA and No. 47 referring to the supporting exhibit, Lauara deposition. *See* Max's "BRIEF" Exhibit AA, Volume XIX 6133- 6138, pg. 6134. For the Court's convivence, they are also provided herewith as Exhibit 6 of Exhibit BBB. In her deposition, Lauara stated on pg. 157:12-20,

> "Well, it really doesn't matter. I know what he told me. We had not signed those agreements for the notes yet. And we did in 2012, I believe. But he said that he was going to claim we had lent him on his bankruptcies, he wanted to know if that was okay, but that he wasn't really not going to pay. And I said sure."

At pg. 160:12-15 Lauara testified,

> "he didn't ask me or tell me what he was filing. He asked if he could put the debt that he owed us in his bankruptcy, and I said sure. He said, "But Mom, I will still pay you."

When the notes were drafted in 2012 they had already been in Adam's bankruptcies for 2 years. The notes were to Adam not to any company he owned or to any bankruptcy as Lauara and Adam claim. There was never a mention of a statute of limitations. Adam needed Lauara's and Max's permission to place the funds in his bankruptcy. He only received Lauara's. Lauara and her son confirm Max was intentionally kept out of the know. Adam asked Lauara in 2010 if it was alright to put the loans that began in 2004 into his bankruptcy. This was six years after the "verbal" loans began and two years before the loans were confirmed in writing. Nothing was mentioned about the loans being for Adam's company bankruptcies in the drafts, drafted two years after the couple's loans were placed in Adam's bankruptcies. *See* Adam's Affidavit pg. 2, No. 4. Lauara never revealed this to Max. *See* pg. 160:23-25 of her deposition. Adam and Mr. Meador assisted Lauara in breaching her fiduciary duty to Max, keeping all this from Max and

listing only Lauara as a creditor. It was all a plan to steal the money from Max.

37. Adam, Lauara, and Mr. Meador claimed the loans were past the statute of limitations and therefore not enforceable. However, the loans were drafted in 2012 after Adam filed for bankruptcy of his companies in 2010. The drafts did not reflect the loans. There was no provision included in the loans for a statute of limitations when they were verbal or later. If there had been or if one existed by law, it would have been applied from 2012 when the loans were fraudulently drafted forward. The Parol evidence rule would have precluded one for fraud, mistake, or invalidating cause. Furthermore, Adam unconditionally promised to repay the loans if Lauara agreed to put them in his bankruptcy, and as a stipulation, Adam promised to pay them with no conditions, no restrictions. This is an exception under the parol evidence rule. The testimony of Lauara confirms that it was never intended that there be a statute of limitations just as there was no statute of limitations on Max's Rule 60(d) motion for relief.

38. First, Adam acknowledges the loans to him were $650,000 and claims he told Lauara he was putting their loans on his bankruptcy. However, Lauara testifies that Adam asked her if it was alright that the couple claimed they had loaned Adam the money for his bankruptcies, and as a condition, Adam unconditionally guaranteed he would repay her. Lauara said Okay.

39. Second, it is impossible to have agreed to lend Adam the money for his bankruptcy in 2010 from loans beginning in 2004. (see Adam's Affidavit pg. 1. No. 2) and not drafted until 2012, and without Max knowing about the bankruptcies. Adam, Lauara, and Mr. Meador are lying to cover their theft from Max, Adam for stating this in an affidavit, and Lauara and Mr. Meador for providing it in their Motion. A review of Adam's affidavit confirms it was drafted by Mr. Meador's firm. Mr. Meador, Lauara, and Adam are fabricating evidence to cover

up previous fabricated evidence. This is a violation of Rule 11 to cover up previous violations of Rule 11.

40. Third, Max reported to the Sevier County Sheriff's Office and Sgt. Crane that Lauara had been repaid the loans. Sgt. Crane's report confirms that Lauara told him that she had been repaid but that Max knew and was part of it. *See* Max's "BRIEF" Exhibit AA, Appendix Volume XIX 5516. In Adam's affidavit, he claims the loans were never repaid, and that they were now beyond the statute of limitations even though Lauara testified that Adam promised unconditionally that he would repay the loans if she allowed him to put them in his bankruptcy. Neither Adam nor Lauara intended to honor the loans and repay Max. Adam, Lauara, and Mr. Meador are still responsible for repaying Max. Mr. Meador insists that Adam is judgment proof with numerous judgments against him. Knowing Adam was judgment-proof makes Mr. Meador liable.

41. Though the loans had been repaid Lauara, in 2017 Adam claimed he had the money to repay Max the loans but that his business partners came first. See Exhibit RRR. Exhibit BBB's Exhibit 14 and No. 49 below which confirm that Adam was laundering money from his business's bankruptcies. Defendant Mr. Meador had this information. This tape was also provided during the discovery of the divorce. On 12-2-2017, a few weeks after Lauara left Max Lauara and Adam were still telling Max the loans had never been repaid. They never confirmed that the loans had ever been put in Adam's bankruptcies until Lauara's deposition with her attorney, Mr. Meador, in March 2019. Up until that point Max still believed the loans were outstanding and sued to collect them. Lauara, Mr. Meador, and Adam allowed Max to sue knowing the loans had been repaid.

42. The parole evidence rule prohibits Lauara, Mr. Meador, and Adam from claiming

there was a statute of limitations.

**PAROL EVIDENCE RULE**

The Nevada Supreme Court in *Crow-Spieker 23 v. Robinson* 629 P.2d 1198 (1981) stated,

> The existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol." *Alexander v. Simmons*, 90 Nev. 23, 24, 518 P.2d 160, 161 (1974).

> Supreme Court of Ohio. *GALMISH, Appellant, et al., v. CICCHINI*, Appellee, et al. No. 99-1337. Decided: September 20, 2000, "The parol evidence rule states that "**absent fraud, mistake or other invalidating cause**, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4.

> *Novell v. The Canopy Group* :: 2004 :: Utah Court of Appeals,

> "The parol evidence rule "**operates in the absence of fraud to exclude** [prior and] contemporaneous conversations, statements, or representations offered for the purpose of varying or adding to the terms of an integrated contract." Union Bank v. Swenson, 707 P.2d 663, 665 (Utah 1985) (emphasis omitted). "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." Eie v. St. Benedict's Hosp., 638 P.2d 1190, 1194 (Utah 1981) (quotations and citation omitted)."

There was "fraud" and other "invalidating causes" in this case, by Lauara, Mr. Meador, and Adam. The verbal contracts are the only contracts that can be considered. The ones at the beginning of the loans and the promises Adam Made Lauara in 2010 when she allowed him to put them on his bankruptcy. even without the parol evidence rule. The parol evidence rule makes the contracts even stronger.

43. Additionally, in his Affidavit Adam acknowledged that Max obtained a default judgment against him in Nevada. The default judgment was in the U.S. District Court of Nevada. Adam failed to respond to Max's Complaint. Adam alone was listed in the Nevada complaint.

Max originally listed Lauara in his North Carolina Complaint as well but dropped her prior to her answering. Considering that Lauara, insisted the notes be awarded to Max and then threatened to come after Max for half of the funds awarded to Max by the court, confirms the validity of the loans, and that no statute of limitations applied. Lauara cannot tell Sgt. Crane the loans were repaid and then two years later furnish a pleading claiming they were not. This violates Rule 11. Max sued in good faith, believing that the loans had not been repaid.

44. Mr. Meador's Motion on pg. 2:3-6 claims that Adam listed his debt to Max in his affidavit provided as Exhibit 1. *See* Max's Exhibit BBB, Exhibit 5. In Adam's affidavit, included as Exhibit 1. to Mr. Meador's Motion, Adam states on pg. 4:26-5:2 that he has been transparent in his promissory notes and has shown Max's lawsuit in his latest bankruptcy and that he furnished it in Exhibit A of his Affidavit. There was no Exhibit A attached to his Affidavit or in Mr. Meador's Motion. Adam's transparency includes never involving Max in placing Max's loans into bankruptcy. There is a single page preceding Adam's affidavit that lists Max's lawsuit in North Carolina, but not as Exhibit A. Adam did not list his mother, Lauara, who would have been the first person he should have listed. Lauara had been repaid the notes. *See* Max's "BRIEF" Exhibit AA filed with the Court, No. 45 which refers to Adam's bankruptcy citing Max's Exhibit at Appendix Volume XIX 6216-6223, and provided here for the Court's convenience as Exhibit BBB's Exhibit 7. A review of those documents in Max's "BRIEF", and considering Adam's purported Affidavit, Exhibit A, Adam's present bankruptcy did not list either Lauara or Max. Additionally, Adam declined to list Max's judgment against him in the U.S. District Court of Nevada, or the North Carolina Court in his recent bankruptcy. *See* Exhibit 7. Though Adam listed the other debtors shown on the first page of his affidavit, Adam did not list Raymond Max Snyder v. Adam Lisk... in either of Max's Complaints against him. *See*

Exhibit 7. Mr. Meador's Motion and Adam's affidavit were fabricated to hide the notes being repaid to Lauara, and violate Rule 11.

45. Lauara, Adam, and Mr. Meador allowed Max to sue Adam in Nevada and North Carolina knowing the loans to Adam had been repaid. They induced Max, who did not know the loans had been repaid, into filing frivolous lawsuits. Only Lauara, Mr. Meador, and Adam were responsible for the frivolous suits. Frivolous lawsuits are seriously punished. There are monetary penalties and other charges that might be levied including fines, criminal charges, and charges for contempt of court. If a lawyer is caught up in a frivolous lawsuit, they could face a suspension of their state bar license, citations, or fees. Mr. Meador was involved. His license should be suspended and he and his firm should be ordered to pay all Max's attorney fees and damages pursuant to Rule 11 and in accordance with Nevada statute, NRS 42.005. As a result of Mr. Meador's and Lauara's pre-Trial Statement the divorce court found, *"The Court specifically finds that most of Mr. Snyder's legal entanglements constitute a waste to community property especially in the North Carolina...what he was trying to do or tried to do was sue Mrs. Snyder with some of her own money."* *See* trial transcripts day V XIX 6389-6390, pgs. 8:23-9:4. This came from Exhibit A, Lauara's pre-Trial Statement, at 20:21-21:4.

46. On pg. 4 of his affidavit, Adam confirms that his bankruptcies in 2010 were for two businesses. Those Businesses were Old Mill Forestry and Carol Lynn Properties. Carol Lynn Properties listed Lauara as a creditor for $210,000. *See* Exhibit BBB's Exhibit 3 pg. 2. which confirmed that the company had assets of $3,000,961.00 and debts of just $1,431,291.19, *See* pg. 3. After deducting its debt, the company was worth over $1,550.000 when Adam placed it into bankruptcy.

47.. The second business was Old Mill Forestry. Old Mill Forestry had assets of

$8,130,080.00 and debts of $2,357,621.34. *See* Exhibit BBB's Exhibit 4, pg. 2. The Company was worth $5,872,550 after accounting for its debt. Lauara was listed as a creditor for $440,000. *See* pg. 3. Adam filed bankruptcy on the companies though they had assets that exceed debt by $7,422,550. $650,000 of the debt was attributed to loans from Max and Lauara which was not a business debt but an asset of Max and Lauara. This constitutes fraud. It's impossible to say just how much Adam was hiding in the bankruptcy. By his admission, it far exceeded the $7,422,550 he and his attorney listed.

48. Lauara was kept up to speed with the status of Adam's bankruptcy by the bankruptcy court, and the hearing that was scheduled with creditors to confirm they had been repaid. *See* Exhibit BBB's Exhibit 13. Max was never involved and knew nothing about the bankruptcies, or the hearing for creditors to confirm their repayment.

49. At the same time in June 2015, Adam sent Max and Lauara an email. The email confirmed Adam was funneling funds from Old Mill Forestry through his bank in North Carolina. *See* Exhibit BBB's Exhibit 14. At the time this meant nothing to Max. If Max had been involved as he should have been, Max would have been at the bankruptcy hearing to claim his and Lauara's loans and expose Adam's laundering money. Lauara had been repaid by then and knew that her son was funneling funds in excess of $7,422,550 out of the companies to conceal it from people like Max. Adam did not claim Max and Lauara's loans as his funds in the bankruptcies as he claims. He listed Lauara as a creditor. This is simple theft by Adam, Lauara, and Mr. Meador.

50. In his "BRIEF," Exhibit AA, Max confirmed with exhibits in Appendix Volume XIX 9(a), 6496-6508, and V XIX 6202 that Lauara had been secretly repaid the loans and that Adam and Adam's attorney had confirmed that with their signatures on 11/4/2015, 11/5/2015

and 11/17/2015, confirming that the October 27, 2011, Plan of Reorganization, approved by the Bankruptcy Court, had been completed and that all creditors, including Lauara, had been repaid. *See* Exhibit BBB's Exhibit 9, V XIX 6202, furnished for the Court's convenience. The remaining documents confirming this more completely and that all creditors had been repaid can be located in Appendix Volume XIX 9a, 6496-6508.

51. Exhibit BBB's Exhibit 14, showing Adam laundering money from the bankruptcy further confirms Lauara was repaid the loans. The remaining documents showing when Lauara was repaid can be located and viewed in Max' "BRIEF".

52. Lauara, Mr. Meador, and Adam would have us believe that companies with more than $7,422,550 in assets above debt; 1) that was confirmed by Adam and his attorney; and 2) that with Adam and his attorney's signatures on the bankruptcies confirmed the creditors had all been paid; and 3) with Lauara being involved by the bankruptcy court and promised that she would be repaid; 4) that somehow Lauara, who chose not to attend the bankruptcy hearing or involve Max, and considering she was not listed in Adam's latest bankruptcy, had never been repaid. Mr. Meador's, Lauara's, and Adam's latest claim that Lauara was never repaid the loans intentionally violates Rule 11 to cover up previous Rule 11 violations. Lauara, Adam, and Mr. Meador take everyone for fools.

53. Following retaining Mr. Meador to represent her in the divorce, and a few months before leaving Max, Lauara insisted on taking a polygraph test to confirm to Max that everything was fine with the loans to Adam. See Exhibit FFF. The last page of the report, Examiners Professional Opinion, confirms that Lauara was not truthful about the loans to her son. Not only is Lauara the star witness in the loans to Adam. She is AmFam's, and Mr. Harman's star witness, and Sevier County's star witness that Max stole an "operable vehicle".

54. Lauara had been repaid the loans on or before 2015. Lauara had been kept up to speed on Adam's bankruptcy progress by the bankruptcy courts. See Exhibit BBB's Exhibit 13, Notices from the Bankruptcy court informing Lauara of the November 24, 2015 hearing scheduled to hear Adam and his attorney's Reorganization Plan confirming all the creditors had been repaid. Max had never been included. Because she had been repaid Lauara chose not to attend the court hearing, and Lauara and Adam chose to not inform Max.

55. On May 14, 2023, to prevent Max from further exposing his Rule 11 violations, Mr. Meador filed a Motion to place Max on a vexatious litigant list with the Nevada divorce court. See Exhibit TTT pgs. 1-12.

56. On June 5, 2023, Max filed a Rule 11 Motion for Sanctions against Mr. Meador under NRCP Rule 11(c)(1)(A) and 11(c)(2) requesting Mr. Meador remove his Rule 11 violations from court documents that Max had confirmed in his Hearing Brief for the October 11, 2023 Hearing… Max's Exhibit AA and his Rule 11 violations in his Motion to place Max on a vexatious litigant list. See Exhibit TTT pages 12-20. Mr. Meador declined to acknowledge or remove his Rule 11 violations from the record in the divorce trial.

57. On June 24, 2023, Max filed a second Rule 11(c)(1)(A) and 1(c)(2) requesting "Mr. Meador address each of Max's allegations of fabrications of evidence, false documents that Max confirmed in his Brief for October 11, 2023 Hearing and Supporting Argument for Rule 60(b)(1) through 60(b)(2)…, acknowledge they are false and remove them from the record." See Exhibit TTT pages 21-28. Mr. Meador refused and instead sent Max a threatening letter on July 7, 2023, demanding Max withdraw the motion. See Exhibit TTT page 29.

58. Max's allegations of Mr. Meador's violations of Rule 11 in his Brief for October 11, 2023, Hearing and Supporting Argument…, Max's Exhibit AA provided herewith, are

overwhelming in confirming Rule 11 violations by Mr. Meador and confirm the outcome of the divorce trial was predetermined. The Divorce Decree must be dismissed.

59. The Fourteenth Amendment states,

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

> *U.S. v. Throckmorton,* 98 US 61 WHEREAS, officials and even judges have no immunity See, *Owen vs. City of Independence*, 100 S Ct. 1398; Maine vs. Thiboutot, 100 S. Ct. 2502; and *Hafer vs. Melo*, 502 U.S. 21; officials and judges are deemed to know the law and sworn to uphold the law; officials and judges cannot claim to act in good faith in willful deprivation of law, they certainly cannot plead ignorance of the law, even the Citizen cannot plead ignorance of the law, the courts have ruled there is no such thing as ignorance of the law *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401 (1958). "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it.

The law in this case is and was at the time clearly established. It was not established after the violations by the Sevier County Defendants, the Sevier County Attorney, Casey Jewkes, Detective Deaton, and Judge Goble. Mr. Meador and Lauara are included in the violation of Max's due process. Not one of the defendants claim ignorance of the law or incompetence. They do not qualify for qualified immunity under either the incompetence or ignorance prong.

> Courts must heed "the Supreme Court's warning in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978)), against the temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.' " *Bruno's Restaurant*, 13 F.3d at 290 (quoting *Christiansburg*, 434 U.S. at 421-22); see also *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1422 (9th Cir. 1988).

**VII. Fabricating Evidence and Rule 11 Violations by Defendants Lauara Ann Snyder and Attorney Shawn B. Meador Confirmed in Plaintiff's Exhibit AA, Hearing Brief For The**

**October 11, 2023 Hearing, And Supporting Argument For Rule 60(B)(1) Through 60(B)(6), Rule 60(D)(3), NRS199.210, NSCR 2.11, And The Due Process Clause Of The 14th Amendment…, For Vacating The Divorce Decree,**

60. Max realleges and incorporates by this reference all allegations set forth in paragraphs 1. through 59. as though fully set forth herein.

61. In Max's Exhibit AA, Max's Hearing Brief For The October 11, 2023 Hearing, And Supporting Argument For Rule 60(B)(1) Through 60(B)(6), Rule 60(D)(3), NRS199.210, NSCR 2.11, And The Due Process Clause Of The 14th Amendment…, For Vacating The Divorce Decree (Max's BRIEF), provided herewith Exhibit AA, Max confirmed in Nos. 191-194, that Lauara and Mr. Meador fabricated evidence, and that included in Lauara's pre-Trial Statement with false statements and allegations disparaging Max. Lauara Trial Statement was used to draft the Divorce Decree. Max discovered this in late 2021/early 2022.

62. No. 194, A through SS of Max's BRIEF confirms that Lauara's and Mr. Meador's pre-Trial Statement made false derogatory statements about Max, had numerous false statements and cited documents not allowed at trial. Each section, A through SS confirms where a false statement in the Trial Statement is transferred to and cited in the Divorce Decree.

63. In Nos. 195-232 of Max's BRIEF, confirms that Mr. Meador drafted Orders with knowingly false inclusions which were signed by the judge in violation of Rule 11.

64. In Nos. 233-252, of Max's BRIEF, confirms that Lauara and Mr. Meador used the false police reports of the Sevier County Sheriff's Office to gain an advantage and have Lauara awarded her attorney fees. This violated Rule 11 and several statutes Max cited. 233-252 also confirm that the Sevier County Sheriff's Office covered up Max's alleged poisoning by Lauara and that Mr. Meador divulged the product Lauara had used. No. 245 references Max's Exhibit confirming the chemical that poisoned Max. Max had no idea where it came from. No. 247 of

Max's BRIEF confirms that at Max's deposition on March 27, 2019, Mr. Meador stated what the compound Max had ingested that contained the chemical that poisoned him. At the time Max had no idea.

65. In Nos. 61-85, of Max's BRIEF, confirms that Lauara and Mr. Meador fabricated false cash loans they claimed Lauara made herself to obligate Max for hundreds of thousands of dollars in repayment. This included Lauara claiming she had to amend the couple's tax returns to show the loans she had never reported to the IRS. The Court ordered she could and Max was to cooperate.

66. Nos. 74-85 of Max's BRIEF confirms Lauara amended returns for different years than ordered by the court. Lauara refused to allow Max to participate in the amended taxes and all the funds Lauara sent were returned. However, Lauara has continued claiming that she had paid the taxes and that Max owes her half.

67. Nos. 106-108 of Max's BRIEF confirms Lauara and Mr. Meador falsely claimed that Lauara and Max had made $260,000 in improvements to Max's home. The divorce court awarded Lauara half, $130,000. Nos. 194 H and 194 AA confirm these fabrications came from the pre-Trial Statement drafted by Mr. Meador. Lauara and Mr. Meador violated Rule 11 and several other Nevada statutes Max cited.

68. Nos. 22-37 of Max's BRIEF confirms that Lauara falsely testified at trial that Max's disability was workers' compensation from Max being injured on the job during the marriage and off work. Lauara did this to be awarded half and she was awarded half of Max's disability. Max confirmed that the disability was not workers' compensation, that he was not off work, and that besides the large portion improperly awarded to Lauara as a result of her perjury, Max had deposited $307,800 off his separate disability award into the joint account. Max

confirmed in No. 194 BB that this fabricated statement originated in Lauara's pre-Trial Statement and was transferred to the Divorce Decree. No. 33 of Max's BRIEF confirms that Max deposited an additional $203,373 in separate funds from a premarital pension into the joint account. Max is entitled to recoup half the disability payments and half the premarital pension benefits deposited into the joint account.

69. Nos. 13-19 of Max's BRIEF confirms that Lauara falsely testified that Max had paid his attorney Justin Heideman $150,000 from community property. The funds were not community property and Lauara was awarded over half from Max's personal account. Mr. Heideman was disqualified by the judge from representing Max for a purported conflict of interest. Nos. 194 FF and 194 GG confirm this false allegation originated in Lauara's pre-Trial Statement and was transferred to the Divorce Decree. In No. 113, of Max's BRIEF, Max confirms that Mr. Meador acknowledged Max only paid Heideman $7,000.00 and that was to petition the court for permission to represent Max. This is a Rule 11 violation by Mr. Meador. No. 194 Y confirms Mr. Meador insisted Max pay Lauara $109.063 of his $218,127 personal account then at No. 194 QQ confirms that Max is ordered to pay Lauara $75,000 from the same personal account. Max was ordered to pay Lauara $184,063, $85% of his separate account. Max confirmed that the account was his separate account only. Max provided deposit statements to confirm this. See Nos. 32-35.

70. No. 10 of Max's BRIEF confirms that Mr. Meador drafted a Temporary Mutual Property and Financial Restraining Order and entered it with the district court. The order prohibited either party from touching their IRAs. With Mr. Meador's knowledge Lauara paid his attorney fees from her community property IRAs. Nos. 18-20 of Max's BRIEF confirms Lauara testified she paid Mr. Meador from her IRAs. Lauara had a minimum of $312,147 in her IRAs to

begin. No. 117 of Max's BRIEF confirms the district court allowed Lauara's payments to Mr. Meador from her community property IRAs. The court then improperly order that what was left of Lauara's IRA be combined with Max's and split which allowed Lauara to retain 100% of her IRA and receive a large portion of Max's.

71. Nos. 51-60 of Max's BRIEF confirms that Mr. Meador's pleadings falsely claimed Max's pleadings violated the local rules. This resulted in the divorce court disallowing all of Max's post-trial pleadings and sanctioning Max by quitclaiming jointly owned property to Lauara. This violated Rule 11 and several Nevada statutes cited by Max.

72. Nos. 111-116* of Max's BRIEF confirms that the trial judge should have recused himself as provided by NV.Sup.Ct.R 2.11, 28 U.S.C 455, NRS 1.230(1) and *Tarsey v. Dunes Hotel* 343 P.2d 910 (1959), and the Nevada Code of Judicial Conduct. Nos. 115-116 of Max's BRIEF confirms that the judge declined to consider the trial exhibits and argument at trial or allow Max's expert witness to testify in violation of Nevada law and instead drafted the Divorce Decree from Lauara's false pre-Trial Statement. Nos. 182-196 of Max's BRIEF also confirms the judge should have recused himself.

73. Nos. 118-121 of Max's BRIEF confirms that Lauara was awarded $425,000 in attorney fees though she claimed $326,872 and that these fees included Lauara's attorney fees against Max's son. Max was ordered to pay Lauara $50,000 within a few weeks trial, then $2,000 per month for 150 months for her attorney fees. This violated Rule 11. No. 138 of Max's BRIEF confirms that on March 27, 2021, Mr. Meador drafted an Order signed by the court that increased the $2,000 to $4,000 per month, doubling the award against Max. This violated Rule 11 and the Nevada statutes Max cited.

74. Nos. 122-133 of Max's BRIEF confirms that Max was unlawfully kept from

attending an Order to Show Cause hearing on November 10, 2020, thus violating his civil rights. At the hearing, Mr. Meador handed the judge a preprepared order violating Rule 11 and awarding Lauara additional sums from Max. Nos. 134-140 of Max's BRIEF confirms that though Max was allowed to attend the March 31, 2021 Order to Show Cause hearing he was not allowed to present an argument, was sanctioned and Lauara's award against him was significantly increased in violation of Rule 11 and other Nevada statutes. Both hearings were held during Max's appeal of the divorce and without the district court having jurisdiction.

75. No. 137 of Max's BRIEF confirms that Mr. Meador drafted the Order following the March 31 hearing and it was signed by Judge Estes. Nos. 140-144 of Max's Brief confirms Mr. Meador sent pleadings directly to the judge bypassing the court; confirmed the vandalized motorhome was overvalued by Lauara to allow Lauara a larger award, and the judge refused to allow Max to argue about the motorhome and refused or review Max's hearing brief on the issue.

76. Max had produced a police report from the Henderson Police Department that confirmed the motorhome had not been broken into and that Lauara had returned to the vehicle several times and had removed. Items. Max provided AmFam with documentation confirming that it was Lauara who had burglarized and vandalized the RV. AmFam acknowledged but declined to pursue stating they were going to honor the claim anyway.

77. Nos 195-213 of Max's Brief and the exhibits referenced confirm Mr. Meador fabricated evidence and made false statements about Max's transfer of water rights; that Max offered no legal authority to allow a lower bond when Max had; That Max did not deny these facts; that Max admitted not cooperating with the QDRO… and that he had an affidavit he could supply the court proving all this. Mr. Meador declined to provide an affidavit. Mr. Meador insisted that Max be arrested for his false allegations then drafted the Order including all this

false information and an order to arrest Max if he did not comply.

78. The Divorce Decree ordered one of the Nevada businesses was community property, that was to be closed and assets sold and split. Lauara obtained a new business license under a different name; retained the company assets and clients; transferred them to the new company: closed the original company; and continued in business without compensating Max. See No. 141 of Max's BRIEF.

79. Nos 167-168 of Max's BRIEF confirms the court improperly awarded the rest of the Nevada Business to Lauara.

80. No. 259 of Max's BRIEF confirms the divorce court found "*The Court specifically finds that most of Mr. Snyder's legal entanglements constitute a waste to community property especially in the North Carolina...what he was trying to do or tried to do was sue Mrs. Snyder with some of her own money.*" *See* trial transcripts day V XIX 6389-6390, pgs. 8:23-9:4. This came from Exhibit A, Lauara's pre-Trial Statement, at 20:21-21:4.

81. No. 194 OO confirmed the couple lent Wendover Ambulance money and the Nevada Court of Appeals confirmed that those needed to be repaid.

These are not all the violations Max cites in his BRIEF.

## CONCLUSION

Lauara and her accomplices set out to steal everything from Max and did. Lauara and her attorneys should be referred to competent law enforcement for an investigation into their actions including Max's poisoning and the coverup by her attorneys and the Sevier County Sheriff's Office.

Lauara her attorneys and the other defendants assisted in violating Max's constitutional rights guaranteed by the 5th and 14th Amendments. The Sevier County Attorney, Detective

Deaton and Judge Alex Goble assisted in allowing Lauara, Mr. Meador and Adam Lisk to steal from Max and coverup his alleged poisoning.

Lauara and her attorneys insisted the loans to Lauara's son that were secretly paid to Lauara be awarded to Max as his separate property. These individuals must be ordered to pay Max the sum of what the loans to Lauara's son, Adam, are worth going forward to the time the payment of those loans is paid in full to Max.

All liens placed on Max's private property for the falsely based orders and sanctions must be removed.

Lauara be ordered to furnish Max with all the 2001 – 2008 financial records.

The Nevada companies, the loans to Wendover Ambulance and all Nevada property were community property and need to be split evenly.

Lauara, and her attorneys, must be ordered to restore Max to his financial condition prior to Max filing his complaint for divorce, setting the values of Max's separate properties at those shown in Lauara's 2020 financial statement and ordering these individuals to purchase those assets from Max and at the rate allowed by NRS 42.005.

Max has shown that a total of $307,800.29 of his separate disability checks went into the joint account. Max is entitled to be reimbursed by Lauara for half that amount. Max has shown that $203,373.00 from his Intermountain Ironworkers Pension went into the joint account. Max is entitled to be reimbursed by Lauara for half that amount.

Lauara is required to reimburse Max for half her paychecks not deposited into the joint account following hiring her lawyers and to reimburse Max for half the funds she funneled from the joint account to the Nevada companies during the entire marriage.

Lauara is required to reimburse Max for half of her IRAs that she used to pay her

attorneys in violation of the financial restraining order.

Lauara and her attorneys are responsible for all of Max's attorney fees.

Lauara and her attorneys should be referred to competent law enforcement for an investigation into their actions.

## VIII. Damages

| | | | |
|---|---|---|---|
| 1. | Motorhome, | | $97,500 + out of pocket expenses. |
| 2. | Repairs to the motorhome | | $80,000-100,000 estimate |
| 3. | F550 pickup, | | $30,000 + whatever it costs to upgrade. |
| 4. | Max's Utah home | | $1,200,000, Defendants order to purchase |
| 5. | 50% of the value of PSC. | | $500,000. |
| 6. | Wendover Ambulance | | $2,000,000 |
| 7. | Loans to Adam | | $2,055,405.32 + continuing interest |
| 8. | Max's disability Pension. | | $10,000 + the continuing payments |
| 9. | Lauara's legal fees. | | $500,000 + any additional. |
| 10. | Max's disability account. | | $352,856 + interest. |
| 11. | Max's NV judgments | | |
| | a. | judgments. | $715,487.85 |
| 12. | Water shares to Lauara | | $42,000 + |
| 13. | Taxes on Max's IRA withdrawal | | $60,000 + |
| 14. | Loans to Mt. West to buy WAS | | $315,517+ interest |
| 15. | Half the NV community prop. | | $1,000,000. |
| 16. | Quitclaimed NV Prop.to Lauara | | $62,500.00 + interest. Florence Street |
| 17. | Half the value of the NV home | | $80,000+ interest |
| 18, | Payments from Max's pension | | $10,000+ plus interest |
| 19. | Max's attorney fees Nevada: | | |
| | a. | Wasilewski | $59,850 |
| | | Sanction | $8,531 |
| | | NC depositions | $10,141 |
| | b. | Amens | $79,571.24 |
| | | owed | $27,500.00 |
| | c. | Bushur | $41,500.00 |
| | d. | Heideman | $150,000 |
| | e. | Mendez | $350.00 |
| | f. | Anderson Fam. Law | $300.00 |
| | g. | Mustoe Law | $295.00 |
| | h. | Mike Kolsch | $125.00 |
| | i. | Jonathan King Reno | $150.00 |
| | j. | Misc. expenses NC | $5,000.00 |

| | | | |
|---|---|---|---|
| | k. | Jared Peterson | $? |
| | l. | Jeff Dickerson | $50.00 |
| Max's attorneys North Carolina | | | |
| | a. | Cooper | $28,770.15 |
| | owed | | $37,274.56 |
| | sanctioned | | $14,845.00 |
| | b. | Alex Heroy | $50,000 |
| | | NC Judgment | $85,000.00 |
| | c. | Arbitration | $600.00 |
| | d. | Howell attorney fees | $7,742.50 |
| | e. | Blue Bee bankruptcy | $9,302.00 |
| | f. | 1st trip to NC Hearing | $6,000.00 |
| 20. | Max's 31 shares of water | | $186,000+ interest |
| 21. | Sold personal property | | $10,000+ interest |
| 22. | Lauara removed from Businesses Oct/Nov 2017 | | $913,956 + interest |
| 23. | False home improvements to Max's house | | $260,000 |
| 24. | Half Lauara's IRAs disbursements | | $165,000 ( half of $309,000 - $76,000) |
| 25. | Lauara award from Max's IRA | | $54,000 |
| 26. | Unfair split of vehicles | | $50,000 |
| 27. | Lauara's loans to herself of | | $204,188 =10% interest $600,000 est. |
| 28. | All Max's attorney fees going forward to be decided. | | |
| 29. | Costs to move | | $20,000. |
| 30. | Misc. copies, transcripts… | | $28,009.04 through August 24, 2022. |
| 31. | Lauara's false loans to herself | | $28,498. |
| 32. | Awarded $70K motorhome twice | | $140,000. |
| 33. | U.S. and District Court filings & costs | | $8,000 approx. |

## VIX. Injuries

As a result of Defendants, Judge Alex Goble, Lauara Ann Lisk, and her attorney, Shawn B. Meador, American Family Insurance, and their attorney Stewart Harman, Detective Brandt Deaton of the Sevier County Sheriff's Office, Sevier County Attorney Casey Jewkes and the defendants that preceded them in Cases Nos. 4:23-cv-00007 and 4:23-cv-00008, Max has lost his entire life savings, his life's accumulations and has been hospitalized and treated for anxiety attacks. In addition, Max has suffered from depression and he and his family are concerned for

his safety in Sevier County. Max's reputation has been further damaged and will weigh heavily against him in future matters, including anything heard in the Sixth District Court.

## X. Relief

WHEREFORE, Plaintiff demands judgment against Defendant(s) as follows:

1. That all orders concerning Max, in all cases heard by or scheduled to be heard by Judge Goble be dismissed with prejudice;
2. That the Divorce Decree be dismissed with prejudice for Mr. Meador Rule 11 violations;
3. All judgments entered against Max including interest are the responsibility of Defendant(s) to pay including the costs shown in **IV. Damages**;
4. For damaging Max's reputation and personal relationships in Sevier County the Sevier County Defendants, Judge Goble, County Attorney Casey Jewkes, and Detective Brandt Deaton be ordered to purchase Max's home at the value their witness, Lauara Lisk, set in her 2020 Financial Statement, plus pay Max the value of the water rights Max was forced to sell, and pay for Max to relocation out of Sevier County;
5. That Defendants Lauara Ann Lisk, Adam Lisk, and Shawn Meador be prosecuted by someone other than the Sixth Judicial District Court for stealing in excess of $2,055,000 from Max;
6. That the Sevier County Sheriff's Office be ordered to turn over all evidence Max provided them in complaints concerning Max's alleged poisoning by Lauara and that they are furnished to outside law enforcement agency for investigation;

7. That the Sixth District court be ordered to sign the Order Max prepared in the motorhome case;

8. That an investigation be ordered into the funds laundered by Adam Lisk to determine if he used any of the funds to bribe defendants;

9. For general compensatory damages in an amount to be determined at trial but not less than $10,450,000;

10. Defendant(s) will provide Max with all the items he reported stolen from the motorhome which, American Family and Lauara claimed to have reimbursed Max for but had not, and which were also denied Max when Judge Goble entered the "proposed judgment" without allowing argument;

11. Defendant(s) are responsible for and are to pay all costs for having the motorhome transported to and from the manufacturer and repaired to Max's satisfaction;

12. For all of Max's attorney fees to date;

13. For special damages as shown at trial.

14. For punitive damages against named individuals as may be allowed by law; Nevada allows for treble damages under Nevada's NRS 42.005. Defendants Lauara and her attorneys are responsible for treble damages, for the loans awarded to Max that were repaid to Lauara, $6,166,215.96, plus treble the other damages they caused as shown above;

15. For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

16. For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

17. For such other and further relief as the Court deems just and proper.

## XI. Certificate of Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase costs of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; (4) the exhibits and supporting documentation referenced in this Complaint have previously, and have again, been furnished the Defendants on a flash drive with this Complaint; and (5) the complaint otherwise complies with the requirements of Rule 11.

**A.** I am retired and attempt to travel to see family. I respectfully request to be allowed to provide and be provided pleadings and other documents by email. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED this 2nd day of March 2023.

*/s/ Raymond Max Snyder*

Raymond Max Snyder

EXHIBIT LOG

1. Exhibit AA, Elko October Hearing Brief.
2. Exhibit A. Lauara's pre-Trial Statement
3. Exhibit B. Divorce Decree
4. Exhibit C. Order setting October 11, 202. Remand Hearing and Court of Appeals Order
5. Appendix Volume XIX Index
6. Appendix Volume XIX Part 1
7. Appendix Volume XIX Part 2
8. Appendix Volume XIX Part 3
9. Appendix Volume XIX Part 4
10. Appendix Volume XIX Part 5
11. Appendix Volume XIX Part 6
12. Appendix Volume XIX Part 7
13. Appendix Volume XIX Part 8
14. Appendix Volume XIX Part 9
15. Appendix Volume XIX Part 9(a)
16. Appendix Volume XIX Part 9(b)
17. Appendix Volume XIX Part 9(c)
18. Exhibit BBB Police Report Case No. 2307-089, Plaintiff's Notice to Strike…
19. Exhibit BBB(1) Hearing Brief for October 11, 2023 Hearing…
20. Exhibit BBB(2) Pre-Trial Pleadings.
21. Exhibit BBB(3) Carol Lynn Properties bankruptcy.
22. Exhibit BBB(4) Old Mill Forestry bankruptcy.
23. Exhibit BBB(5) Opposition to Max's Rule 11 Motion and Motion to put Max on vexatious litigant list.
24. Exhibit BBB(6) Lauara's deposition March 26, 2019.
25. Exhibit BBB(7) Adam Lisk bankruptcy September 22, 2022.
26. Exhibit BBB(8) Letter from Mr. Meador threatening to come after half the loans to Adam Lisk awarded to Max by the divorce court.
27. Exhibit BBB(9) Old Mill Forestry Post Confirmation Report signature pg.
28. Notice to Submit for decision Motion to Dismiss Divorce Decree…
29. Exhibit BBB(10) Notice of Change of Address.
30. Exhibit BBB(11) Divorce Trial transcripts day 3.
31. Exhibit BBB(12) Open.
32. Exhibit BBB(13) Bankruptcy Court notifications sent to Lauara.
33. Exhibit BBB(14) Adam Lisk laundering bankruptcy assets.
34. Exhibit CCC Plaintiff's Rule 11 Motion against Defendant Shawn B. Meador
35. Exhibit DDD Motion for Sanctions against Matthew Howell
36. Exhibit EEE Auto Insurance info
37. Exhibit FFF Defendant Lauara Ann Lisk's polygraph
38. Exhibit GGG. Writ of Execution
39. Exhibit HHH Lauara's Motion to be Relieved of answering Plaintiff's Pleadings
40. Exhibit III File Exhibit AA Elko Order hearing Brief and Complaint filed with the Sevier County Sheriff's Office and the 6th District Judicial Court and Sevier County Attorney.
41. Exhibit JJJ Rule 60 Decision Denying Motion for Relief From Judgment
42. Exhibit KKK Defendant Stewart Harmon declining to answer Rule 11 Motion
43. Exhibit LLL States 2nd Degree auto theft charge against Raymond Snyder
44. Exhibit MMM Confirmation that an operable vehicle was not stolen
45. Exhibit NNN Amortization schedule of loans to Adam Lisk.
46. Exhibit OOO Police reports including those they refused to provide.
47. Exhibit PPP scheduling hearing case No. 201600283 FS

48. Exhibit QQQ July 7 email to Jared Peterson with Taylor Affidavit, and Complaint to sheriff Exhibit MMM
49. RRR. Email to Jared Peterson July 13, 2023 with the transcripts of the tape and transcripts previously handed his in person of conversation with Lauara 12/2/2017.
50. Exhibit SSS. The Sevier County Sheriff's Office Report on Max's Complaint No. 2307-089 (Exhibit BBB) to be provided if it is produced.
51. Exhibit TTT Meador's Motion to place Max on vexatious litigant list and Max's Rule 11 Motion for sanctions against Mr. Meador.
52. Exhibit TTT(1) Order Holding in Abeyance.
53. Exhibit TTT(2) FRCP Rule for Sanctions.
54. Exhibit UUU. Transcripts from March 31, 2021 hearing following the divorce.
55. Appendix Volume XX Part 3.

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Raymond Max Snyder

**(b)** County of Residence of First Listed Plaintiff: Sevier
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Raymond Max Snyder
PO Box 69
Aurora, UT 84620

**DEFENDANTS**
Judge: Alex Goble

County of Residence of First Listed Defendant: Sevier
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

FILED US District Court-UT
JUL 20 '23 AM09:32

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☒ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☒ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: U.S.C. Sec 1983 and 1988
Brief description of cause: Violations of civil rights by gov. defendants & assistance by private

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. DEMAND $
CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ~~4:23-cv-000~~ Nuffer DOCKET NUMBER 4:23-cv-00008

DATE: July 20, 2023
SIGNATURE OF ATTORNEY OF RECORD: Raymond Max Snyder [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

Case: 4:23-cv-00056
Assigned To : Kohler, Paul
Assign. Date : 7/20/2023
Description: Snyder v Goble et al