# EXHIBIT 9
# Nevada District Court, Snyder v. Robert Estes, et al., Amended Complaint and Jury Demand Filed January 25, 2023

Case 3:23-cv-00048-ART-CSD Document 39 Filed 03/29/26 Page 1 of 15

Raymond Max Snyder
PO Box 69
Aurora, Utah 84620
Phone: 801-641-6844
maxsnyder@yahoo.com

✓Filed __Received __Entered __Served On
Counsel/Parties of Record
MAR - 3 2023
Clerk US District Court
District of Nevada
By: ______ Deputy

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND MAX SNYDER<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT E. ESTES<br><br>Individually and in His Official Capacity as Justice of The Fourth Judicial District Court of Elko County.<br><br>And John and Jane Does 1-10.<br><br>Defendant(s). | Case No.: 3:23-cv-48<br><br>AMENDED COMPLAINT<br>AND<br>JURY DEMAND |

Plaintiff, Raymond Max Snyder (Max), pursuant to Rule 8(a), Fed.R.Civ.P., complains and alleges for a cause of action against Defendant as follows:

PRELIMINARY STATEMENT

This is a civil rights action in which Max seeks relief for the Defendant, Judge Robert Estes' (Judge Estes), violation of Max's rights guaranteed by the United States Constitution, specifically the Fifth and Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Nevada. Max seeks damages, both compensatory and punitive; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This is further action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to

Max by the Fifth and Fourteenth Amendments of the Constitution of the United States and arises under the law and statutes of the State of Nevada.

## I. The Parties to This Complaint

### A. The Plaintiff

| | |
|---|---|
| Raymond Max Snyder, | |
| Address | PO Box 69 |
| | Aurora, Utah 84620 |
| County | Sevier |
| Telephone Number | (801) 641-6844 |
| Email Address | maxsnyder@yahoo.com |

### B. The Defendant

| | |
|---|---|
| Judge: Robert E. Estes | |
| Address | 31 South Main Street |
| | Yerington, Nevada 89447 |
| County | Lyon |
| Telephone Number | (775) 684-1765 |
| Email Address | roberteestes@hoymail.com |

## II. Basis of Jurisdiction

A. This suit is against a State official (a 1983 Claim). This action arises under the United States Constitution and federal law, particularly under the provisions of the Fifth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

B. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

C. The claims made in this Complaint occurred and arose in the State of Nevada, and in the District of Nevada. Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

Case 3:23-cv-00500-MMD-CSD Document 39 Filed 01/29/24 Page 3 of 15

D. Plaintiff is seeking damages under federal law pursuant to the claims for relief specified below, in amounts to be proved at trial.

E. This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

F. This Court also has jurisdiction over any pendant State claims Plaintiff may wish to bring, or has brought, pursuant to 28 U.S.C. § 1367.

## III Statement of the Claim

1. Plaintiff, Raymond Max Snyder (Max) and Lauara Ann Snyder (Lauara) were married on October 13, 2001. It was Max's third marriage and Lauara's second. No minor children were involved.

2. Max had been debt free for several years and owned his home outright. Lauara was under-water in debt.

3. Max put his name on Lauara's loans and the couple paid off her businesses and home.

4. Max and Lauara were divorced in Elko, Nevada at a trial from August 18-21, 2020, presided over by Judge Robert E. Estes (Judge Estes).

5. Following the trial, Lauara was debt free and awarded all the businesses and her home, paid for by her and Max and worth millions.

6. Max was left with an initial sums owed in a judgment for $358,063.

7. At trial following stating how qualified Max's expert CPA witness was, Judge Estes declined to allow the witness to testify in violation NRS 50.275.

8. At trial Judge Estes declined to allow Max's trial exhibits and Lauara's trial exhibits that Max tried to use which exhibits confirmed Max and Lauara jointly owned the

Nevada business property in violation of NRCP 16.2(i).

9. The Order following the trial awarded Lauara all her community property IRAs and allowed Lauara's payments to her attorneys from those IRAs in violation of a Financial Restraining Order in place and drafted by Lauara's attorney.

10. Then Judge Estes ordered Max to divide his IRA with Lauara.

11. Lauara's attorney fees included those against Max's son Casey.

12. Judge Estes awarded Lauara $425,000 in attorney fees, which included her attorney fees against Max's son, following Lauara's testimony that her attorney fees were only $326,872.92.

13. The $425,000 in attorney Max was ordered to pay Lauara included payments of $2,000 per month for 150 months to be made by Max to Lauara.

14. Max filed 26 pre-trial pleadings compared to Lauara's 135. Judge Estes falsely stated in the decree that Max was the vexatious litigant.

15. Judge Estes awarded Lauara half of the $260,000 she claimed the couple made in improvements to Max's home though Lauara's ledger confirmed there was nearly $100,000 less than $260,000 and that those costs were fabricated.

16. Judge Estes' decree stated Max's testimony was vague, evasive, and incomplete. The transcripts confirm otherwise.

17. Judge Estes' divorce decree falsely stated Defendant (Lauara) had resided in the State of Nevada for a period of six (6) weeks immediately proceeding commencement of the divorce action. To qualify for filing for divorce in Nevada a person is required to be physically present in Nevada for six weeks. Lauara was not.

18. Judge Estes awarded Lauara the majority of Max's separate disability

account.

19. Following the divorce decree being entered on September 11, 2020, on November 3, 2020, Judge Estes signed an order setting a November 10, 2020 Order to Show Cause Hearing.

20. A Hearing Notice was mailed to Max on November 4, 2020, in violation of NRS 155.010 which required a ten-day notice. It was just six (6).

21. Max received the notice the day following the hearing.

22. For health reasons Max, who lived 400 miles from the court, had filed a motion to be allowed to attend hearings telephonically.

23. The day of the hearing, Max's former attorney emailed Max informing Max of the hearing that was to take place shortly.

24. Max called and emailed Judge Estes asking to be allowed to attend telephonically. Judge Estes refused. Preventing Max from attending the hearing violated Max's civil rights under the Fifth and Fourteenth Amendments.

25. Max had appealed the divorce decree. The order to show cause hearing required an NRCP Rule 59(e) Motion and remand from the appellate court to take place. Neither was obtained.

26. Judge Estes confirmed that the only things he could rule on were collateral matters independent from the appealed order.

27. Judge Estes then reduced the sums awarded Lauara in the decree to a judgment to allow a lien to be placed on Max's property. This was not a collateral matter and violated the court's collateral Rule and Rule 59(e).

28. With the new order Lauara was able to place a lien on Max's home he had

for sale, preventing its sale.

29. Knowing Max would not be present at the hearing Lauara had an Order in hand that Judge Estes signed ordering Max to pay Lauara $358,063.96

29. This violated Max's due process under the 5th and 14th Amendments.

30. A second Order to Show Cause Hearing was scheduled for March 31, 2021. Max was allowed to attend telephonically.

31. This hearing was again held without a motion to and a remand from the appellate court required by Rule 59(e).

32. Max was not allowed to argue his case at the hearing violating his 5th and 14th Amendments rights.

33. The order from the March 31, 2021 hearing was again drafted by Lauara's attorney. Judge Estes signed the Order which contained several knowingly false statements that included the following:

34. *Mr. Snyder transferred water rights awarded to Ms. Lisk to a friend.*

This statement is false and was never confirmed anywhere in the hearing transcripts or by any documentation.

35. *He (Mr. Snyder) offered no relevant legal authority and failed to identify any facts that if true, would justify a bond in an amount less than the amount of the full judgment.* This statement was knowingly false. Max cited NRS 20.037 more than once, which allowed a reduced bond.

36. *Mr. Snyder did not deny any of the facts outlined by Ms. Lisk's counsel.* This statement is knowingly false.

37. *He admitted that he had not cooperated with the QDRO.* This statement is

false and cannot be found on the transcripts.

38. Max timely provided a QDRO to the court. Judge Estes denied Max had.

39. *He* (Mr. Snyder) *admitted he transferred water rights that were awarded to Ms. Lisk to a third person.* This statement is false and can be found nowhere in the transcripts.

40. *Mr. Snyder insisted the Decree is in error so, in fact he should not be obligated to comply with the Decree. He cited no authority for his position.* This statement is false and can be found in the transcripts.

41. *Ms. Lisk's counsel presented a Wilfong affidavit regarding fees and costs Ms. Lisk incurred as a result of Mr. Snyder's contempt of court abusive litigation conduct and her efforts to enforce the Decree and to respond to Mr. Snyder's meritless Motions.* Lauara's attorney stated he had an affidavit with him. Judge Estes declined to review it. The transcripts confirm this is a false statement.

42. The Order was a forgery under NRS 205.090.

43. *As sanctions for his wrongful and abusive post-Decree litigation conduct, and his multiple actions in contempt of court, Mr. Snyder shall be required to pay Ms. Lisk's post-Decree legal fees in the sum of $56,575.*

44. To be awarded this, Lauara claimed that once Max's attorney withdrew following trial, Max was not allowed to file post-trial pleadings and had Max sanctioned the $56,575.

45. Although Max had confirmed a number of times that the local rule, 4JDCR 13(2)(c) allowed him to file his own pleadings, Judge Estes signed the order sanctioning Max $56,575.

46. *If Mr. Snyder does not comply with his obligations of this Order within two weeks*

*of March 31, 2021, a warrant will be issued for his arrest and he will be incarcerated until he complies.* Lauara's attorney drafted an Order to arrest Max if he did not comply with their forged Orders, with her fabricated evidence, perjury, and subornation of perjury.

47. *Fields v. Turner,* 147 N.Y. S2d 542 (Sup. Ct . 1955) (false information in an affidavit used to procure an arrest warrant subjects attorney to liability).

48. On March 22, 2021, Lauara's attorney drafted an Order for the district court, signed by the court clerk, stating that Max had been ordered to pay Lauara $4,000 per month in attorney fees for 150 months, double the $2,000 per month ordered in the decree by Judge Estes. This constitutes fraud.

49. A Writ of Execution for the $4,000.00 per month, double what was ordered, was not provided to Max but was furnished to the sheriff's office with instructions to enforce and to arrest Max.

50. As a result of the Writ of Execution the Order following the March 31, 2021 Order to Show Cause Hearing ordered Max to pay Lauara $715,479, double what the November 10, 2020, hearing four months previous had ordered.

51. The March 31, 2021 order to show cause hearing was also held without an NRCP Rule 59(e) Motion and remand.

52. Max's rights guaranteed by the 5th and 14th amendments to the constitution were violated.

53. Max testified at trial the couple's motorhome had been damaged and was inoperable following Lauara hiding in storage for two years where it was vandalized and burglarized by Lauara.

54. At trial, Lauara testified that the motorhome was worth $140,000 more

than the couple paid for the RV years previous.

55. On May 5, 2021, an order was drafted by Lauara's attorney ordering Max to pay Lauara an additional $70,000.00 for her share of the couple's motorhome. The order was signed by Judge Estes.

56. On May 5, 2021, Lauara's attorney drafted an order signed by Judge Estes quitclaiming the couple's jointly owned property on Florence Street in Wendover Nevada to Lauara.

57. Lauara sold the property for $125,000 of which Max's share would have been $62,500.

58. Adding these additional amounts, Judge Estes raised the judgment against Max from $358.063 to $847,997.

59. Professional Services, a jointly owned company was ordered to liquidate and split the proceeds. Lauara opened a new business doing the same thing, retained Professional Services assets, customers, and accounts, moved them to the new company and continued business as usual. Lauara then closed Professional Services a month later without compensating Max. Judge Estes allowed this.

60. The orders were forgeries in violation of NRS 205.090.

61. Lauara fabricated cash loans to the couple for $240,000 at 10% interest with no documentation and claimed she had never paid taxes on the cash and needed to pay the back taxes to the IRS.

62. This was done to obligate Max to hundreds of thousands of dollars in loans and interest.

63. Judge Estes ordered Max to cooperate in filing amended returns to the IRS

Case 3:23-cv-00104-ART-CLB Document 39 Filed 03/03/23 Page 10 of 15

thus obligating Max to hundreds of thousands of dollars in false loans to Lauara.

64. Max made an appointment with the IRS and invited Lauara, her attorney, and her accountant to join him. They declined.

65. Max confirmed with the IRS that the loans did not exist.

66. Lauara forged Max's name to amended tax returns. The IRS returned all her money. Max discovered in January 2023 that this took place for the tax years 2013-3016 and filed an NRCP Rule 60(b)(2) motion for newly discovered evidence. Judge Estes has declined to acknowledge it.

67. Max filed multiple complaints against Judge Estes with the Nevada Judicial Commission, filed motions to have Judge Estes recuse himself, and filed Writs of Mandamus confirming Judge Estes' prejudice. The judge should have recused himself under NV.Sup.Ct.R 2.11, 28 U.S.C 455, NRS 1.230(1) and *Tarsey v. Dunes Hotel* 343 P.2d 910 (1959). He has refused to recuse himself.

68. Max is pro se requiring him to have his subpoenas' signed by the court. Max sent a subpoena to Judge Estes for his signature ordering Lauara to provide copies of the amended tax returns. Judge Estes has declined to sign them.

69. Max has confirmed this and other fraud by Lauara with a Rule 60(b) Motions to the district court.

70. Judge Estes has declined to respond.

71. Near the end of the trial Judge Estes stated he was not going to decide the case on, nor review the evidence/documents of the case, instead, instructing attorneys to tell the court what they wanted and he would make his decision from that.

72. In addition to other violations of Max's civil rights, Judge Estes acted unconstitutionally in an egregious discriminative manner against Max, a senior, and a male in a divorce action, giving rise to Max's claim of denial of equal protection under the Fourteenth Amendment.

73. Judge Estes had, prior to trial, "**personal knowledge of facts that are in dispute in the proceeding",** which knowledge established a personal bias. Judge Estes has retained that personal bias and prejudice since, making fair judgments impossible.

74. Lauara sent pleadings directly to Judge Estes, bypassing the Court. On 7/27/2020 Lauara requested to be allowed to file a Pre Trial Statement. Two days later on 7/29/2020 Judge Estes signed an Order allowing the Pre Trial Statement. On 8/13/ 2020, just days prior to trial, Defendant filed her Pre Trial Order which prejudiced Judge Estes. Thereafter, Judge Estes declined to consider the trial exhibits and allowed the false statements in Defendant's Pre Trial Statement to be included in the Divorce Decree.

The false inclusions in Defendant's Pre Trial Statement included, but were not limited to Lauara's altered 2022 Financial Statement, altered shortly before trial from her previous two, the first filed with the Court on 1/26/2018 and a duplicate with the same joint and separate property lists, filed on 3/11/2019.

In her 2020 Financial Statement, Lauara did not show her disbursements from the businesses or from her simple IRAs that were both community property. Lauara's total monthly expenses went from $3,137.00 in 2018 to $19,436.00 in 2020. Lauara's 2020 Financial Statement showed $212,000.00 in joint vehicles. Lauara's 2018 and 2019 financial statements do not list the $212,000.00 in vehicles.

Lauara's 2018 and 2019 Financial Statement showed notes receivable from

her son, Adam Lisk, amounting to $168,000.00. Lauara's 8/6/2020 Financial Statement shows $0.00, confirming that she had been secretly repaid the loans to her son. At trial, Lauara insisted the loans repaid her be awarded to Max. Judge Estes awarded the notes to Max. Lauara's bogus 2020 Financial Statement was used by Judge Estes to set values for and to award all property. This is only a fraction of the false statements in Lauara's Pre Trial Statement that made their way into the Divorce Decree.

Judge Estes was prejudiced prior to the trial and as a result, stated on day three of the trial that he was not going to consider the documents (trial exhibits) used at trial. Judge Estes continued his prejudicial behavior against Max stating in the Decree that Lauara had been a resident of Nevada for more than six weeks at the commencement of the action, to keep from dismissing the case. Judge Estes continued the prejudicial behavior through two Order to Show Cause hearings, one on November 10 2020 and another on March 31, 2020. Judge Estes allowed both hearings to continue without the required Rule 59(e) motion and remand from the appellate court.

Judge Estes declined to allow Max to attend the November 10, 2020 hearing and disallowed him to argue his case at the March 31, 2021 hearing. *See* Exhibit 1. Judge Estes acknowledged he could only rule on collateral issues because Max had appealed the Decree but signed Orders that included raising awards for Defendant and other issues that were not collateral. Judge Estes signed Orders that contained knowingly false statements ---forged Orders.

Judge Estes wrongfully sanctioned Max $56,575 for filing post-trial pleadings in violation of AJDCR 13(2)(c). Judge Estes doubled the fee Plaintiff was ordered to pay Defendant. NRCS [1] **(A)** A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

> *[2] A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed.*

Amended effective 1/19/2010. [1] Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (6) apply. The Nevada Supreme Court in *Canarelli v. Eight District Court,* March 2022, stated,

> "...trustees urge us to apply NCJC Rule 2.1I(A) in lieu of the general rule we established in *Kirksey*. NCJC Rule 2.11(A)(1) requires a judge to recuse herself "in any proceeding in which the judges impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or **has personal knowledge of facts that are in dispute in the proceeding**."... Considering that principle, we held in *Kirksey* that where the alleged bias does not stem from an extrajudicial source, the party seeking disqualification must show the judge formed an opinion based on the facts introduced during the proceedings and that this "opinion displays 'a deepseated favoritism or antagonism that would make fair judgment impossible. 112 Nev. at 1007, 923 P.2d at 1119 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994))...

Judge Estes had, prior to trial, "**personal knowledge of facts that are in dispute in the proceeding**", which knowledge established a personal bias. Judge Estes has retained that personal bias and prejudice since, making a fair judgment impossible.

Judge Estes should have rescued himself following allowing and receiving Defendant's Pre Trial Statement. He did not. The Divorce Decree and subsequent Orders by Judge Estes and the Fourth Judicial District Court must be dismissed.

## IV. Injuries

75. As a result of Defendant's actions, Max has suffered anxiety attacks, requiring hospitalization. In addition, Max has suffered from depression and suicidal thoughts.

## V. Relief

Case 3:25-cv-00740-MMA-DTS Document 39 Filed 03/03/26 Page 15 of 16

WHEREFORE, Plaintiff demands judgment against Defendants as follows: 1. 1. For the divorce to be dismissed and for general compensatory damages in an amount to be determined at trial but not less than $8,000,000;

2. For special damages as are shown at trial;

3. For punitive damages against named individuals as may be allowed by law.

4. For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

5. For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

6. For such other and further relief as the Court deems just and proper.

**VI. Certificate of Closing** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase costs of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

//

//

**A.** I am retired and travel. I wish all pleadings and documents be emailed. I agree to provide the Clerk's Office with any changes to my address where case-related

papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED this 1st day of February 2023.

*/s/ Raymond Max Snyder*

Raymond Max Snyder