# EXHIBIT 23
# Fourth Judicial District Court, Utah, Snyder v. Snyder, Complaint Filed August 16, 2022

FILED

AUG 16 2022

4TH DISTRICT
STATE OF UTAH
UTAH COUNTY

Raymond Max Snyder
PO Box 69
Aurora, UT 84620
Phone (801) 641-6844
maxsnyder@yahoo.com

FOURTH JUDICIAL DISTRICT COURT

IN AND FOR UTAH COUNTY STATE OF UTAH

| | |
|---|---|
| Raymond Max Snyder<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN D. HEIDEMAN ESQUIRE<br><br>THOMAS R, McCOSH ESQUIRE<br><br>and<br><br>HEIDEMAN & ASSOCIATES, A LAW FIRM<br><br>Defendants | Case No.: 220401233<br>Judge Eldridge<br><br>COMPLAINT |

**JURISDICTION & VENUE**

1. Jurisdiction and Venue in this court are proper in accordance with UTAH 24-1-103

2. This Court has pendent jurisdiction over State law in this case.

**PARTIES**

3. Plaintiff is a resident of the State of Utah, whose address is 1850 S Interchange Road, PO Box 69, Aurora, Utah 84620

4. Plaintiff Raymond Max Snyder hereby complains and avers against Defendants as follows:

5. Defendant, Justin D. Heideman, is an adult resident of the state of Utah, residing at 1967 N 1350 W, Provo, Utah 84604, and a partner in the law firm of Heideman & Associates.

6. Defendant, Thomas R. McCosh, is an adult resident of the state of Washington, residing at 7822 Husky Way Se, Lacey, Washington, 98503, who worked for defendant Heideman & Associates, as senior attorney representing Plaintiff.

7. Defendant, Heideman & Associates, is a Utah Law firm with offices located at, 2696 N University Ave. Ste 180, Provo Utah 84604. Further, the cause of action which is the subject of this suit occurred and accrued in Utah County, State of Utah.

8. On June 25, 2019, Plaintiff, Raymond Max Snyder (Max), entered into a flat cap contract with Defendant, Justin D. Heideman (Justin) and Defendant, Heideman and Associates (Heideman), to provide legal services for Max in connection with his divorce in Elko, County Nevada, and the debt collection from his son-in-law, Adam Lisk, in North Carolina.

9. Following retaining Defendants, Plaintiff dismissed his Nevada attorney, Debra Amens (Debra).

10. The contract, both written and oral, with Defendants required Defendants to cover all Plaintiff's costs associated with the Nevada divorce and the North Carolina case, including but not limited to all attorney fees of Plaintiff's Nevada and North Carolina attorneys.

11. In the course of handling Plaintiff's legal matters, Defendants failed to honor the Contract with Plaintiff.

12. On September 16, 2019, in a conversation between Plaintiff and Defendant Justin, Justin reassured Plaintiff the flat-cap contract they had entered into included paying all Max's attorneys both for Stephanie Cooper in North Carolina, and Debra Amens in Nevada. In that conversation, Defendant, Justin, confirmed Defendants implied covenant of good faith and fair dealing and that they intended to honor the contract, paying the North Carolina attorneys,

even to their detriment.

13. Justin stated they needed Stephanie Cooper in North Carolina to move forward and he would pay Cooper half that day, "honoring the contract... it was part of the contract."

14. Justin stated Cooper's bill was almost $20,000 and that he would pay half that day.

15. On September 16, 2019, the same day and following talking to Justin, Max called Cooper Law and spoke with Cooper's accountant, Elizabeth, to see what Cooper's bill was. It was $4,754.90, not the $20,000 Justin had claimed.

16. Neither Justin not Heideman Law were not licensed in Nevada or North Carolina and were required to have co-counsel, licensed in their respective states, to argue their cases in those states, Cooper in North Carolina, and Amens in Nevada. Justin agreed he would pay Amens.

17. On December 9, 2019, in a conversation between Plaintiff, Nevada attorney, Aaron Bushur and Defendant, Justin, Justin assured Plaintiff that he was bringing attorney, Aaron Bushur (Aaron), onboard in Nevada to replace Amens, to be allowed to argue Plaintiff's divorce case.

18. Defendant, Justin, asked Plaintiff if he wanted to stay the course with him. Plaintiff responded yes and Defendant, Justin agreed they would stay the course.

19. On March 4, 2020, in a conversation with the Plaintiff and Aaron, Defendant Justin was concerned with the amount of money Heideman had spent in North Carolina, "almost $40,000." Justin said he would send a line-item schedule of what they had spent in North Carolina. Justin claimed he had spent 70% of what Max gave him. Justin claimed he was happy to do the job and acknowledged he had to pay Aaron.

20. Justin stated he would prepare documents for Aaron, a substitution of attorney, to sign off on for the court and opposing counsel.

21. Aaron acknowledged Plaintiff had paid him $10,000.00 of what Justin was obligated to pay.

22. Aaron asked about his getting paid. Aaron was assured that was coming from Defendant. Everyone agreed and Justin stated he understood.

23. Plaintiff reminded Defendant how stressful the thing had been on him. Defendant Justin stated he understood.

24. Plaintiff stated he wanted to hire a forensic accountant. Defendants agreed and asked to be provided the accountant's qualifications.

25. On March 26, 2020, Defendant, Justin, called Plaintiff and informed him that Defendants had just $32,000 to $33,000 left in Plaintiff's account and that they wanted to quit. Defendant, Justin, claimed there was a miscommunication regarding them paying other attorneys, so they did pay some.

26. Plaintiff said he had gone into a tailspin when Justin changed his position on paying all attorneys and that he was concerned with having a nervous breakdown.

27. Plaintiff reminded Defendant Justin that he had never been provided the reconciliation on costs that Defendants had promised several times to provide.

28. On March 30, 2020, Plaintiff informed Defendants that as a result of their behavior and threatening to quit, he was suffering anxiety attacks requiring hospitalization.

29. On March 31, 2020, in a conversation between Plaintiff and Defendant, Justin, Plaintiff suggested that Defendants hold off paying the North Carolina attorneys, that Plaintiff needed

Defendants on the divorce.

30. Defendant, Justin, stated the bulk of Max's money had gone to other attorneys.

31. Defendant, Justin, agreed he had to pay Aaron and stated he would get with Aaron "today." Defendant never made the arrangements forcing Plaintiff to pay Aaron.

32. On April 2, 2020, in a conference call between Defendant, Thomas McCosh, Defendant Justin, Plaintiff and Aaron Bushur, to get every onboard with moving forward with the divorce, it was acknowledged that Casey Snyder had been dismissed from the case leaving Defendants free to represent Plaintiff without any perceived conflict.

33. Defendant Justin stated he would put in notice to the court stating they were moving forward as Plaintiff's attorney in the divorce.

34. Defendant Justin stated that to date Defendants had paid out over $36,119.13, attorney fees and expected Plaintiff to pick up those charges.

35. Plaintiff told Defendant, Justin, that he expected Defendants to honor the contract and pay the other attorneys.

36. Plaintiff reminded Defendants that in their September 2019 conversation that Justin had agreed that Defendants were responsible for all attorney fees including the North Carolina attorneys and that if they lost money it was on Defendants.

37. Justin claimed the actual total of fees to other attorneys was closer to $50,000, one third of what Max had sent them, was sent to other firms.

38. Defendants Justin and McCosh agreed to discuss the matter further in order to make a decision on going forward and that they get back with Plaintiff and Aaron the following day. They never did.

39. It was agreed that there never was a stipulation that prevented Plaintiff from seeking a community property interest in the businesses.

40. On April 15, 2020, Defendants sent Plaintiff a Notice of Termination of Relationship and Withdrawal.

41. Plaintiff avers that Defendants were negligent and breached their contract and fiduciary duties to Plaintiff in the following regard:

**FIRST CLAIM FOR RELIEF**
**DEFENDANTS, BREACH OF CONTRACT**

Plaintiff hereby incorporates each and every averment and allegation of the foregoing paragraphs 1 through 41 as if set forth in their entirety below.

42. Defendants deliberately and knowingly breached the contract with Plaintiff.

43. As a direct result of these breaches, Plaintiff has suffered damages in an amount to be proven at trial which amount is believed to exceed $150,000.00.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH**

44. Plaintiff hereby incorporates each and every averment and allegation of the foregoing paragraphs 1 through 43 as if set forth in their entirety below.

45. Defendants deliberately and knowingly breached an implied covenant of good faith with Plaintiff, stating again on April 17, 2019, that they stood by their original contract and that they would pick up all attorney fees for other attorneys in Nevada and North Carolina. Defendants broke that implied covenant of good faith and fair dealing.

46. As a direct result of Defendant's breach of its implied covenant of good faith, Plaintiff

has suffered damages, including consequential damages in an amount to be proven at trial which amount is believed to exceed $150,000.00.

47. Plaintiff's damages were caused by the breach; the amount of damages is reasonably certain, and the damages were within the contemplation of the parties when the contract was entered into.

48. Therefore, as a direct result of Defendants breach of contract, breach of implied covenant of good faith, Plaintiff respectively requests consequential damages which were reasonably foreseeable by the parties at the time the contract was entered into.

**THIRD CAUSE OF ACTION, FRAUD & PUNITIVE DAMAGES**

49. Plaintiff hereby incorporates each and every averment and allegation of the foregoing paragraphs 1 through 48 as if set forth in their entirety below.

**Elements of Fraud:**

50. (1) Defendants Justin Heideman and Heideman & Associates made the representation they would represent Plaintiff in his divorce and would guide and pick up all attorney fees in North Carolina and Nevada;

(2) Concerning the present and existing material facts; the divorce in Nevada and Plaintiff's going after the loans he and his wife, Lauara Ann Snyder (Lauara), had made Lauara's son in North Carolina;

(3) Defendants' representation was false;

(4) Which representation, Defendants' knew to be false;

(5) Defendants' made the representation for the purpose of inducing Plaintiff to act upon it and enter into a contract where Plaintiff paid Defendants $150,000;

(6) Plaintiff acted upon Defendants representation and entered into a contract with Defendants;

(7) Plaintiff did in fact rely upon Defendant's representation in entering into the contract;

(8) As a result, Defendants breach, Plaintiff has suffered damages in an amount to be proven at trial which amount is believed to exceed $150,000.00.

51. As a result of Defendants' intentional fraud, Plaintiff respectively asks the Court for punitive damages in an amount equal to ten times the actual damages.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL AFFLICTION OF PAIN AND SUFFERING**

52. Plaintiff realleges and incorporates by this reference all allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

53. The conduct of the Defendants was done intentionally and with the knowledge that the conduct would cause and was causing Plaintiff severe emotional distress. Furthermore, the conduct of the Defendants was outrageous and wanton, amounting to a willful, intentional, and reckless disregard for Plaintiff's rights and his health thereby causing Plaintiff to suffer anxiety attacks, mental anguish, and severe emotional and physical distress. Plaintiff is thereby entitled to recover exemplary punitive damages to set an example and punish Defendants and deter their wrongdoing.

**PAST DAMAGES**

54. Plaintiff realleges and incorporates by this reference all allegations set forth in

Paragraphs 1. through 53. as though fully set forth herein.

55. The past damages Defendants are liable to Max for include but are not limited to are: (1) the attorney fees for Nevada attorneys Amens and Bushur and the attorney fees for North Carolina attorneys Stephanie Cooper, Cooper Legal Firm, Alex Heroy, Max's second North Carolina attorney, and Matt Howell who was awarded attorney fees for the entry of the North Carolina foreign judgment into Utah.

56. Max appealed the divorce decision in Nevada for several issues including lack of jurisdiction. The Nevada Court of Appeals has indicated it will dismiss the case for lack of Jurisdiction.

57. Defendants knew or should have known the Nevada court lacked jurisdiction.

58. Defendants are obligated for all of Max's costs in the divorce, the appeal, and going forward to complete the divorce.

**FUTURE DAMAGES**

59. Plaintiff realleges and incorporates by this reference all allegations set forth in Paragraphs 1. through 58. as though fully set forth herein.

60. Plaintiff has incurred legal expenses in his appeal of the Nevada divorce for which Defendants are liable.

61. Once the divorce is dismissed Plaintiff will incur additional attorney fees in the same

divorce. Under Plaintiff's contract with Defendants, Defendants are liable for all Plaintiff's attorney fees going forward.

62. In the course of handling the legal matter for Plaintiff, Defendants negligently failed to Act with the degree of competence and honesty generally possessed and required by attorneys in the State who handle legal matters. Plaintiff paid Defendants a substantial amount of money for the sole purpose of representing Plaintiff in Utah and North Carolina in said legal matters.

63. Plaintiff avers that Defendants were negligent and committed breach of contract and Breach of fiduciary duties to Plaintiff in the following regard:

(a) By failing to honor their contract with Plaintiff to represent him in his Nevada divorce and North Carolina suit.

(b) By falsely representing to the Plaintiff that they would be responsible for all attorney fees and all costs associated with the Nevada divorce and North Carolina suit.

(c) By holding out to Plaintiff that they were acting in his best interest when they were not.

(d) By taking a large sum of money from Plaintiff under the guise that it was a flat-cap and that it would cover all costs, then changing direction and representing to Plaintiff at various times inconsistent and differing amounts they had paid outside attorneys and promising then declining to furnish Plaintiff an accounting for those costs.

64. In addition to the negligence and false statements made by Defendants as confirmed

herein, Defendants fraudulently induced Plaintiff to pay a one-time large sum of money by making representations regarding the flat cap contract that Defendants had no intention of keeping.

65. As a direct and proximate result of Defendants actions and fraudulent inducement, Plaintiff has sustained actual damages in an amount to be proven at trial that exceeds $150,000.

68. In addition to actual damages Defendant are liable to Plaintiff for consequential and punitive damages for their actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff hereby demands judgment of and from the Defendants for all costs to date and those going forward plus ten times Plaintiff's actual damages in compensatory and punitive damages, together with pre-judgment and post-judgment interest and all costs accrued herein.

Respectively submitted this 16 day of August, 2022

Raymond Max Snyder

Raymond Max Snyder, Plaintiff